1  Rakesh N. Kilaru (*pro hac vice*)
   Anastasia M. Pastan (*pro hac vice*)
2  Jenna Pavelec (*pro hac vice*)
   WILKINSON STEKLOFF LLP
3  2001 M Street NW, 10th Floor
   Washington, DC 20036
4  Telephone: (202) 847-4000
   Facsimile: (202) 847-4005
5  rkilaru@wilkinsonstekloff.com
   apastan@wilkinsonstekloff.com
6  jpavelec@wilkinsonstekloff.com

7  Valarie C. Williams (Bar No. 335347)
   Tania Rice (Bar No. 294387)
8  Alston & Bird LLP
   5600 Mission Street, Suite 2100
9  San Francisco, CA 94105
   Telephone: (415) 243-1000
10 Fax: (415) 243-1001
   valarie.williams@alston.com
11 tania.rice@alston.com

12 *Counsel for Defendant Microsoft Corp.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DANTE DEMARTINI, CURTIS BURNS, JR., NICHOLAS ELDEN, JESSIE GALVAN, CHRISTOPHER JOSEPH GIDDINGS-LAFAYE, STEVE HERRERA, HUNTER JOSEPH JAKUPKO, DANIEL DERMOT ALFRED LOFTUS, BEOWULF EDWARD OWEN, and IVAN CALVO-PEREZ, <br><br> Plaintiffs, <br><br> v. <br><br> MICROSOFT CORPORATION, a Washington Corporation, <br><br> Defendant. | Case No. 3:22-cv-08991-JSC <br><br> **DEFENDANT MICROSOFT CORPORATION'S NOTICE OF MOTION AND MOTION TO STAY CASE; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** <br><br> Date:     February 16, 2023, or sooner if possible <br> Time:     10:00 a.m. <br> Location: Courtroom 8 – 19th Floor <br> Judge:    Hon. Jacqueline Scott Corley |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 16, 2023 at 10:00 a.m. or as soon thereafter as this Motion may be heard in Courtroom 8 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Microsoft Corporation will, and hereby does, move this Court for an order staying all proceedings in this case pending the completion of any regulatory proceedings that would prevent Microsoft and Activision Blizzard King from closing their proposed transaction.

The motion will be made based on this Notice of Motion and Motion, the Memorandum of Points and Authorities herein, the accompanying Declaration of Rakesh Kilaru, all other papers and pleadings on file in this action, and any other written or oral argument or evidence that Microsoft might present to the Court.

## REQUESTED RELIEF

Microsoft requests that the Court exercise its discretion to stay all proceedings in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Microsoft respectfully requests that the Court stay this case. Plaintiffs' lawsuit has only one purpose: to enjoin Microsoft's proposed acquisition of Activision Blizzard King. Though Plaintiffs do not mention it, thirteen days before they filed their complaint, the Federal Trade Commission ("FTC") filed an administrative complaint seeking the same relief. *See* Ex. C, Docket in *In re Microsoft/Activision Blizzard*, FTC No. 9412; Ex. A, FTC Complaint (Dec. 8, 2022). Both Plaintiffs and the FTC allege that the proposed acquisition would lessen competition in the video game industry in violation of Section 7 of the Clayton Act. The only practical distinction between the complaints is Plaintiffs are seeking a preliminary injunction, whereas the FTC presently is not.

There is nothing to preliminarily enjoin. For almost a year, Microsoft and Activision have been working cooperatively with regulators around the world, including the FTC, to obtain the necessary approvals to close the transaction. Microsoft and Activision have tried to expedite those processes as much as possible, because the transaction agreement imposes a termination date of July 18, 2023. *See* Ex. H, Microsoft/Activision Merger Agreement (Jan. 18, 2022), at 84. But many of those regulatory reviews remain ongoing. Among them are the European Commission ("EC"), which will review the transaction until at least April 11, 2023, and the United Kingdom's Competition and Markets Authority ("CMA"), which will be examining the transaction until at least April 26, 2023. The transaction will not close while these and certain other regulatory reviews remain open, and those reviews could result in remedies that would "shape the litigation." *South Austin Coal. Cmty. Council v. SBC Commc'ns, Inc.*, 191 F.3d 842, 844 (7th Cir. 1999) (Easterbrook, J.). Further, the FTC has indicated that it may pursue a preliminary injunction to stop the transaction from closing pending the outcome of its lawsuit.

There is accordingly no reason to litigate this case right now. Microsoft is already litigating the issues presented here in front of the FTC, with the possibility of preliminary injunction proceedings involving the FTC if they become necessary. And Microsoft is at least several months away from being able to close the transaction. Judicial economy thus favors staying this action, to avoid needless and duplicative litigation and the risk of inconsistent rulings on identical issues

of fact and law between this case and the FTC proceeding.

Microsoft accordingly requests that the Court stay these proceedings pending the completion of any regulatory proceedings that would prevent Microsoft and Activision from closing their proposed transaction.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether to stay all proceedings in this case pending the completion of any regulatory proceedings that would prevent Microsoft and Activision from closing their proposed transaction.

**STATEMENT OF FACTS**

This case involves a proposed transaction between the third-place manufacturer of gaming consoles and one of many publishers of popular video games. Defendant Microsoft competes in gaming through its Xbox division. Xbox started behind Nintendo and Sony when it began making consoles 20 years ago, and it remains in third place today. Xbox also has next to no presence in mobile gaming, the fastest-growing segment of gaming and the place where 94% of gamers spend their time today. And Xbox and Activision are just two of hundreds of game publishers, who compete by providing different types of games on different platforms at different prices, ranging all the way down to $0.

On January 18, 2022, Microsoft announced its agreement to acquire Activision Blizzard King ("Activision"). Microsoft's vision for the transaction is simple: Xbox wants to grow its presence in mobile gaming, and three quarters of Activision's gamers and more than a third of its revenues come from mobile offerings. Xbox believes it is good business to make Activision's limited portfolio of popular games more accessible to consumers, by putting them on more platforms and making them more affordable. That includes making *Call of Duty*, one of Activision's most popular games, more broadly available. Microsoft made this public pledge on the day the deal was announced. Since then, Xbox has agreed to provide the game to Nintendo (which does not currently have it) and has offered to continue making the game available to Sony for ten years.

Microsoft and Activision's agreement imposes a termination date of July 18, 2023. *See* Ex. H at 84. Because of that deadline, Microsoft and Activision have been working diligently to

1   ensure that they have regulatory approval to proceed with the acquisition.

2   From the moment the deal was announced, Microsoft and Activision have been working
3   cooperatively with regulators around the world to address any competition-related concerns about
4   the transaction. Among others, Microsoft has been engaging with the EC and the CMA to obtain
5   their clearance for the transaction. Both the EC's and CMA's review periods are ongoing and will
6   continue for at least several more months:  the EC's current deadline for completing review is
7   April 11, 2023, and the CMA's deadline is April 26, 2023. *See* Ex. F, European Commission
8   Docket Notice (Nov. 18, 2022); Ex. G, Competition & Markets Authority Notice of Extension
9   (Jan. 5, 2023). Microsoft cannot close the transaction while these and certain other foreign
10  regulatory reviews remain open.

11  The FTC also began reviewing the transaction when it was announced. On December 8,
12  2022, the FTC filed a complaint against Microsoft and Activision before the agency's
13  Administrative Law Judge, alleging that the proposed acquisition violated federal antitrust laws.
14  *See* Ex. A, FTC Complaint (Dec. 8, 2022).  The FTC is seeking to prohibit Microsoft and
15  Activision from combining their businesses (except as approved by the Commission) or any other
16  relief appropriate to remedy the alleged anticompetitive effects of the acquisition. Trial is currently
17  scheduled for August 2, 2023. *See* Ex. E, FTC Scheduling Order (Jan. 4, 2023). Given the time
18  constraints on closing the deal, the parties agreed to an expedited discovery timeline, with fact
19  discovery scheduled to close on April 7, 2023. *See id*. The parties agreed to that schedule to
20  accommodate a possible preliminary injunction proceeding by the FTC. Specifically, if Microsoft
21  obtains the necessary regulatory approvals abroad to close the transaction, expedited discovery
22  will increase the likelihood that any preliminary injunction proceeding can be litigated and
23  resolved by July 18, 2023.

24  Against that regulatory backdrop, and just weeks after the FTC filed its complaint,
25  Plaintiffs, a group of 10 individual gamers, filed this lawsuit and simultaneously moved for a
26  preliminary injunction to block the proposed transaction. Like the FTC, Plaintiffs allege that the
27  proposed acquisition would lessen competition in various markets within the video game industry
28  in violation of Section 7 of the Clayton Act. And Plaintiffs seek precisely the same relief—to

-4-

block the proposed transaction.

## ARGUMENT

### I. This Court should enter a stay of further proceedings in this case.

This Court has the "discretionary power to stay proceedings." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). In determining whether a stay is appropriate, courts consider (i) the "possible damage" that may result if the stay is granted; (ii) the "hardship or inequity" that may result if the stay is denied; and (iii) the "orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* at 1110.

Applying those factors, courts in this district "routinely" grant stays "where there are overlapping issues of fact or law" raised in another pending case. *Vance v. Google LLC*, No. 5:20-CV-04696-BLF, 2021 WL 534363, at *3 (N.D. Cal. Feb. 12, 2021); *see*, *e.g.*, *Noble v. JP Morgan Chase Bank*, No. 22-cv-02879-LB, 2022 WL 4229311, at *9 (N.D. Cal. Sept. 13, 2022) (granting a stay where resolution of related claims in state court would "illuminate similar issues" in the federal lawsuit); *Zurich Am. Ins. Co. v. Omnicell, Inc.*, No. 18-CV-05345-LHK, 2019 WL 570760, at *5–6 (N.D. Cal. Feb 12, 2019) (granting a stay after finding that defendant was "prejudiced" by "having to fight a 'two-front war'") (citation omitted); *McElrath v. Uber Techs., Inc.*, No. 16-CV-07241-JSC, 2017 WL 1175591, at *6 (N.D. Cal. Mar. 30, 2017) (granting a stay where the instant case was "in its early stages" and the outcome of the other case would "have a significant impact on this case"). That is true regardless of "whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979).

Here, all of the relevant factors weigh in favor of granting a stay of this case.

### A. Plaintiffs will not be harmed by a stay.

Courts are "generally unwilling to presume delay is harmful without specific supporting evidence." *Aliphcom v. Fitbit, Inc.*, 154 F. Supp. 3d 933, 938 (N.D. Cal. 2015). Here, Plaintiffs cannot provide any evidence of harm from a stay.

As an initial matter, there is no immediate risk of the transaction closing, because there are several regulatory obstacles to Microsoft completing its proposed acquisition of Activision. The parties cannot close on their deal until they have regulatory approval from foreign regulators including the EC and CMA, and that approval process will take at least several more months. According to their public dockets, the EC's current deadline for completing review is April 11, 2023, and the CMA's deadline is April 26, 2023. *See* Ex. F, EC Docket Notice; Ex. G, CMA Notice of Extension. Given that the parties are meanwhile unable to close the transaction, there is no need to expend court and party resources to temporarily prevent the close of the transaction. *Cf. Cassan Enters., Inc. v. Avis Budget Grp., Inc.*, No. 10-cv-01934-JCC, slip op., at 5 (W.D. Wash. Mar. 11, 2011) ("It is self-evident that Plaintiffs have not suffered any injury from the proposed acquisition: It has not yet taken place.") (emphasis omitted).

Moreover, the FTC's ongoing litigation seeks precisely the same relief that Plaintiffs want—to block Microsoft's proposed acquisition of Activision. *Compare* Ex. A, FTC Complaint, at 23 (seeking a "prohibition against any transaction between Microsoft and Activision that combines their businesses, except as may be approved by the Commission") *with* Plaintiffs' Complaint at 40–41 (seeking to "[p]reliminarily enjoin[] Defendants from consummating the merger" or to "[p]ermanently enjoin[] Defendants from consummating the merger"). Plaintiffs' interests are thus fully represented by the FTC. *Cf. Howard Hess Dental Lab'ys Inc. v. Dentsply dock*factor into its equitable analysis the effect of another injunction on the plaintiff's showing of injury."). The FTC has statutory authority to seek a preliminary injunction or temporary restraining order to block the acquisition. 15 U.S.C. § 53(a), (b). It has not done so yet because there are other approvals currently preventing the parties from closing. At the January 3, 2023 scheduling conference in the FTC matter, the FTC's trial counsel represented to the ALJ that it would pursue a preliminary injunction in federal court at a later date if it becomes necessary. *See* Ex. D, Transcript of FTC Initial Prehearing Scheduling Conference (Jan. 3, 2023), at 8:7–9.

The EC, the CMA, and the FTC are investigating the same issues raised by the Plaintiffs' claims, the parties cannot close because of ongoing investigations, and the FTC can try to stop the transaction to the extent there is any risk of the parties closing before that case is resolved.

1   Therefore, there is no risk of harm in staying Plaintiffs' case while those regulatory proceedings
2   are ongoing.
3         Under these circumstances, a stay of this case would not harm Plaintiffs.
4       **B.**      **Microsoft will suffer hardship if a stay is denied.**
5         By contrast, Microsoft will be harmed if a stay is denied.  Absent a stay, Microsoft will be
6   forced to simultaneously litigate similar legal and factual issues before two different judges.  That
7   two-front litigation would result in unnecessary duplication of litigation efforts and would create
8   a risk of inconsistent rulings.  *See Vance*, 2021 WL 534363, at *5.
9         As for duplication, the Plaintiffs' complaint raises many of the same issues as the FTC's
10  complaint, so there is potential for "significant overlap in the discovery in both cases, creating
11  additional expenses" for the parties.  *Id.* at *6; *see also Arris Enters. LLC v. Sony Corp.*, No. 17-
12  CV-02669-BLF, 2017 WL 3283937, at *3 (N.D. Cal. Aug. 1, 2017) (noting that without a stay in
13  one action, the parties may "have to conduct multiple depositions of the same witnesses").  For
14  example, both complaints articulate similar theories about the potential anticompetitive effects of
15  the proposed transaction, including that Xbox would allegedly have the incentive to make popular
16  Activision games, like *Call of Duty*, exclusive to Xbox (despite Xbox's public pledge to keep
17  existing Activision games on their existing platforms).  Given the considerable overlap between
18  the complaints, there would necessarily be duplicative discovery.  That unnecessary expense and
19  inefficiency would be avoided if the Court stays this case while the FTC case is ongoing.
20        As for the risk of inconsistent rulings, both complaints rest on a number of shared threshold
21  questions, the answers to which could lead to different conclusions about the ultimate antitrust
22  claims.  For example, both complaints will require a determination of the relevant product markets
23  and of the scope of the relevant geographic market for these claims.  If the two tribunals
24  simultaneously consider those questions, there is considerable "potential for inconsistent rulings
25  and resulting confusion."  *Vance*, 2021 WL 534363, at *5 (quotation omitted); *see also SST*
26  *Millennium LLC v. Mission St. Dev. LLC*, No. 18-CV-06681-YGR, 2019 WL 2342277, at *5 (N.D.
27  Cal. June 3, 2019) (finding that denying a stay would pose "hardship" to the moving party due to
28  the "possibility of inconsistent and adverse rulings" in the parallel action).  And there are many,

many other overlapping questions between the two cases.  For example, both complaints make similar allegations about the anticompetitive effects of the transaction:

- Both complaints allege that the acquisition would give Microsoft the ability and incentive to withhold Activision games, like *Call of Duty*, from other platforms;
- Both complaints allege that the acquisition would give Microsoft the ability and incentive to degrade the quality of Activision games, like *Call of Duty*, provided to other platforms; and
- Both complaints allege that the acquisition will allow Microsoft to increase its market power in subscription services and cloud gaming.

Those overlapping questions, and others, further amplify the risk that simultaneous proceedings could "produce a number of factually and legally inconsistent rulings." *Aliphcom*, 154 F. Supp. 3d at 939–40.

There is simply no benefit to litigating the same issues twice—particularly where the resolution of the FTC proceeding, which was first filed, could render the other litigation moot. *See Vance*, 2021 WL 534363, at *5.  Indeed, courts regularly dismiss private plaintiffs' antitrust claims when the relief sought by the private plaintiffs has already been secured by a government enforcement action.  *See*, *e.g.*, *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018) (affirming district court's dismissal of private plaintiffs' antitrust claims where "the DOJ reached a settlement to 'prevent increased concentration' in the market"); *Edstrom v. Anheuser-Busch InBev SA/NV*, No. C 13-1309 MMC, 2013 WL 5124149 (N.D. Cal. Sept. 13, 2013) (dismissing private plaintiffs' antitrust claims where the merging parties had revised their agreement to avoid the alleged anticompetitive behavior pursuant to a court order in a DOJ enforcement action); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. CIV. 13-2664 ADM/SER, 2014 WL 943224, at *9 (D. Minn. Mar. 11, 2014) (dismissing private plaintiffs' request for injunctive relief where the requested relief "duplicates the FTC Order").

The hardship that would result from denying the stay here thus weighs in favor of granting it.

### C. A stay will promote the orderly course of justice.

Finally, judicial economy strongly favors a stay of this action. Generally, "[d]uplication of case management tasks by multiple courts is not an economical use of judicial resources." *Vance*, 2021 WL 534363, at *6. When considering whether to grant a stay, courts thus consider the potential for "simplifying or complicating of issues, proof, and questions of law." *Lockyer*, 398 F.3d at 1110 (quotation omitted).

As discussed above, there is considerable overlap between the legal and factual issues presented in this case and the ongoing FTC litigation. Staying this case while the FTC litigation is ongoing would thus simplify the issues in this matter. *See SST Millennium*, 2019 WL 2342277, at *5 ("[G]iven the interdependence and identical nature of plaintiffs' claims against each defendant, resolution of plaintiffs' claims against [the defendant in one action] will simplify issues, proof, and questions of law with respect to the claims" at issue in the other.") (citation and quotation omitted). Although the FTC's rulings are not binding on this court, "the discovery and the rulings can still benefit this case." *Arris Enters. LLC*, 2017 WL 3283937, at *4. By allowing the FTC to "resolve some of these overlapping issues" in the first instance, this Court can avoid inconsistent rulings and the prospect of wasting judicial resources on duplicative efforts. *Vance*, 2021 WL 534363, at *6. Indeed, as the Seventh Circuit has explained, "[c]ourts often wait for agencies, even when the agencies' views are not legally conclusive not only because the agencies may have something helpful to say, but also because what the agencies do may shape the litigation." *South Austin*, 191 F.3d at 844.

The orderly course of justice would therefore be served by entering a stay in this case.

## II. CONCLUSION

For the foregoing reasons, Microsoft respectfully requests that the Court grant its motion to stay further proceedings in this case. While the case is stayed, Microsoft will provide the Court with timely updates of any material developments in the ongoing regulatory proceedings. If a stay is entered, Microsoft would be willing to provide timely updates regarding any material developments in the regulatory proceedings that would affect the timing of closing the transaction.

Dated:   January 11, 2023

By: <u>*/s/ Rakesh N. Kilaru*</u>
Rakesh N. Kilaru (*pro hac vice*)
Anastasia M. Pastan (*pro hac vice*)
Jenna Pavelec (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com
jpavelec@wilkinsonstekloff.com

Valarie C. Williams (Bar No. 335347)
Tania Rice (Bar No. 294387)
Alston & Bird LLP
5600 Mission Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
Fax: (415) 243-1001
valarie.williams@alston.com
tania.rice@alston.com

*Counsel for Defendant Microsoft Corp.*

Rakesh N. Kilaru (*pro hac vice*)
Anastasia M. Pastan (*pro hac vice*)
Jenna Pavelec (*pro hac vice*)
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Facsimile: (202) 847-4005
rkilaru@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com
jpavelec@wilkinsonstekloff.com

Valarie C. Williams (Bar No. 335347)
Tania Rice (Bar No. 294387)
Alston & Bird LLP
5600 Mission Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
Fax: (415) 243-1001
valarie.williams@alston.com
tania.rice@alston.com

*Counsel for Defendant Microsoft Corp.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| DANTE DEMARTINI, CURTIS BURNS, JR., NICHOLAS ELDEN, JESSIE GALVAN, CHRISTOPHER JOSEPH GIDDINGS-LAFAYE, STEVE HERRERA, HUNTER JOSEPH JAKUPKO, DANIEL DERMOT ALFRED LOFTUS, BEOWULF EDWARD OWEN, and IVAN CALVO-PEREZ,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION, a Washington Corporation,<br><br>Defendant. | Case No. 3:22-cv-08991-JSC<br><br>**[PROPOSED] ORDER GRANTING DEFENDANT MICROSOFT CORPORATION'S NOTICE OF MOTION AND MOTION TO STAY CASE; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:     February 16, 2023, or sooner if possible<br>Time:     10:00 a.m.<br>Location: Courtroom 8 – 19[h] Floor<br>Judge:    Hon. Jacqueline Scott Corley |

**[PROPOSED] ORDER**

Defendant Microsoft moved to stay all proceedings in this case pending the completion of any regulatory proceedings that would prevent Microsoft and Activision Blizzard King from closing their proposed transaction.

After considering the briefs, the arguments of counsel, and the evidence of record, the Court GRANTS Defendant's Motion to Stay and STAYS the case pending further action from this Court.  Defendant SHALL provide timely updates regarding any material developments in the regulatory proceedings that would affect the timing of closing the transaction.

**IT IS SO ORDERED.**

Date: _____, 2023          _____

Hon. Jacqueline Scott Corley

UNITED STATES DISTRICT COURT JUDGE