# EXHIBIT B

PUBLIC

**UNITED STATES OF AMERICA**
**FEDERAL TRADE COMMISSION**
**OFFICE OF ADMINISTRATIVE LAW JUDGES**

|  |  |
|---|---|
| **In the Matter of**<br><br>**Microsoft Corp.**<br>　　　　**a corporation;**<br><br>　　**and**<br><br>**Activision Blizzard, Inc.**<br>　　**a corporation.** | **Docket No. 9412** |

**AMENDED ANSWER AND DEFENSES**
**OF RESPONDENT MICROSOFT CORP.**

Pursuant to Rule 3.12 of the Federal Trade Commission's ("FTC" or the "Commission") Rules of Practice for Adjudicative Proceedings (the "Rules"), Respondent Microsoft Corp. ("Microsoft"), by and through its undersigned counsel, hereby files the following answer to the Commission's Administrative Complaint (the "Complaint") against Microsoft.

## INTRODUCTION

This case involves a transaction between the third-place manufacturer of gaming consoles and one of many publishers of popular video games. Microsoft competes in gaming through its Xbox division ("Xbox"). Xbox started behind Nintendo and Sony when it began making consoles 20 years ago, and it remains in third place today. Xbox also has next to no presence in mobile gaming, the fastest-growing segment of gaming and the place where 94% of gamers spend their time today. And Xbox and Respondent Activision Blizzard King ("Activision") are just two of hundreds of game publishers, who compete by providing different types of games on different

1

platforms at different prices, ranging all the way down to $0.

Microsoft is buying Activision to try to become more competitive in this expanding global industry. Its vision for the transaction is simple: Xbox wants to grow its presence in mobile gaming, and three quarters of Activision's gamers and more than a third of its revenues come from mobile offerings. Xbox also believes it is good business to make Activision's limited portfolio of popular games *more accessible* to consumers, by putting them on more platforms and making them more affordable. That includes making *Call of Duty*, one of Activision's most popular games, more broadly available. Microsoft made this public pledge on the day the deal was announced. Since then, Xbox has agreed to provide the game to Nintendo (which does not currently have it) and has offered ████████ to Sony ████████████████.

The acquisition of a single game by the third-place console manufacturer cannot upend a highly competitive industry. That is particularly so when the manufacturer has made clear it will not withhold the game. The fact that Xbox's dominant *competitor* has thus far refused to accept Xbox's proposal does not justify blocking a transaction that will benefit *consumers*. Giving consumers high-quality content in more ways and at lower prices is what the antitrust laws are supposed to promote, not prevent.

\*       \*       \*

Gaming is the biggest and fastest-growing entertainment industry in the world. Not too long ago, people primarily played video games in arcades, or purchased cartridges or discs to play on game consoles in their homes. The industry looks very different today. Gaming is now more popular than television, books, music, or movies. The industry generates hundreds of billions of dollars of revenue a year, and is projected to grow substantially in the future.

The choices available to gamers today are growing. Gamers play not just on consoles, but

PUBLIC

also on PCs, mobile devices, and even directly on some televisions.  Game developers are churning out an ever-increasing variety of games, ranging from role-play in complex fantasy worlds to sports simulations to simple puzzles.  Hits come out of nowhere, providing consumers with choices beyond the iconic and treasured games they grew up playing.  Indeed, while franchises like Activision's *Call of Duty* and Electronic Arts' *FIFA* have been popular for a long time, so too are games like *Minecraft*, *Splitgate*, *Player Unknown: Battlegrounds*, *Clash of Clans*, and *Among Us*, which burst onto the scene and achieved great success despite being developed by smaller studios.

Gamers also pay for games in different ways.  They can buy individual games—today, primarily by downloading them, rather than purchasing cartridges or discs.  They can subscribe to services that offer the ability to play a variety of games for a monthly fee.  And they can turn to free-to-play games, which may be funded by in-game advertising and in-game purchases (for example, of additional levels or of additional characters).

A few companies, primarily located abroad, exercise outsize influence in this industry. Xbox is not one of them.  Xbox's console lags well behind Sony's and Nintendo's.  While Xbox publishes games for consoles and PCs, it has far fewer popular exclusive games than Sony and Nintendo.  And Xbox has almost no presence in mobile gaming, which is the largest and fastest-growing segment of gaming.

PUBLIC



Microsoft is buying Activision to meet the billions of gamers who choose to play on mobile devices instead of a console or PC, and to learn how to make games that appeal to and engage them. Xbox also wants to make Activision's non-mobile games more broadly available. One way is by continuing to distribute Activision's games everywhere they currently exist and expanding to additional platforms like Nintendo. Another is by adding new Activision console and PC games

4

to Xbox's Game Pass subscription service on the day those new games are released, creating new ways to access those games.  Activision has never before put its new games immediately in subscription.

Maintaining broad availability of Activision games is both good business and good for gamers.  A substantial portion of Activision's financial value to Xbox comes from business as usual, including the continued sale of *Call of Duty*—its most popular game—on Sony PlayStation.  Paying $68.7 billion for Activision makes no financial sense if that revenue stream goes away.  Nor would it make sense to degrade the game experience and alienate the millions of *Call of Duty* players who play together using different types of consoles.  The reputational hit to Xbox would not be worth any theoretical economic benefit from taking *Call of Duty* away from competitors.

It is therefore unsurprising that after nearly a full year investigating this transaction, receiving millions of Microsoft and Activision documents, and speaking to over a dozen witnesses, there is no evidence that Xbox intends to take *Call of Duty* away from PlayStation—or any platform at all.  No emails, no text messages, no testimony.  There is one reason for that: Xbox does not intend to take that step.  Xbox has some exclusive games, which are a necessary feature of any content business.  But Xbox cannot afford to take Activision's games exclusive without undercutting the basic economics of the transaction.  That is why Microsoft has offered to keep *Call of Duty* on PlayStation from the moment this deal was announced.  Xbox's proposal ███ and would extend for ten years— an unheard-of length for contracts in the gaming industry.

Xbox has made this same offer to other competitors, and at least one (Nintendo) has accepted to date.  Sony refuses to deal.  But a vertical merger causes anticompetitive harm only

when the acquired input is "essential."  If *Call of Duty* were truly essential, Sony would have no reason to refuse ███████████████████████.

The Complaint's reference to Microsoft's recent acquisition of ZeniMax—a set of gaming studios acquired in 2020—has no relevance to the current transaction.  After that transaction closed, ZeniMax's first two new games were made exclusive *to PlayStation* for one year post-launch.  Xbox anticipates that three *future* titles—███████████████████████ all of which are designed to be played primarily alone or in small groups—will be exclusive to Xbox and PCs.  But consistent with its historic approach, Xbox has continued to release new updates of existing ZeniMax games such as *Fallout 76* and *Elder Scrolls Online* on both Xbox and PlayStation, because these games are designed to be played together by broad communities of gamers on different platforms.  This last set of games is the one most analogous to *Call of Duty*.  So the ZeniMax experience cuts against the idea that Xbox would make that game exclusive.  And it is not just the ZeniMax games where Xbox has taken this approach; Xbox has also expanded (not contracted) access to *Minecraft*, a similar multiplayer game with a large existing community of gamers who play together from different platforms, since it was acquired.  If there were any remaining doubt, Xbox's offer to put *Call of Duty* on other platforms on commercially favorable terms for those platforms should eliminate it.

Any suggestion that Microsoft's statements to the European Commission about ZeniMax were misleading is incorrect.  Microsoft explicitly said it would honor Sony's existing exclusivity rights and approach exclusivity for future game titles on a case-by-case basis, which is exactly what it has done.  The European Commission agrees it was not misled, stating publicly the day after the Complaint that Microsoft did not make any "commitments" to the European Commission, nor did the European Commission "rely on any statements made by Microsoft about the future

distribution strategy concerning ZeniMax's games."  Instead, the European Commission cleared the transaction "unconditionally as it concluded that the transaction would not raise competition concerns."

Lastly, the gaming subscription service and cloud gaming service Xbox offers are not different products.  The services allow consumers to access games in different ways, whether by paying a low monthly price for a broad catalog of games or playing a game on a variety of devices without first downloading it.  But the games themselves are identical.  Xbox believes these alternative payment and distribution models may have promise in the future.  But consumers will ultimately decide whether Xbox is correct.  If they agree with Xbox's vision, that will simply prompt more competition, including from companies like Sony, which already has a successful subscription service without even including its most popular (and exclusive) games on the day they are released.  Sony may prefer to protect the revenues it gets from more expensive individual game sales, but the antitrust laws do not serve to insulate the dominant market player and its favored business model from competition.

Ultimately, the Commission cannot meet its burden of showing that the transaction would leave consumers worse off, because the transaction will allow consumers to play Activision's games on new platforms and access them in new and more affordable ways.  The relief sought in the Complaint should be denied.

## GENERAL RESPONSES TO THE COMMISSION'S ALLEGATIONS

Except to the extent specifically stated herein, Microsoft denies each and every allegation contained in the Complaint.  Use of headings and subheadings from the Complaint is solely for the benefit of the reader.  Microsoft does not interpret the headings and subheading throughout

the Complaint as well-pleaded allegations to which any response is required.  To the extent such a response is required, Microsoft denies all allegations in the headings and subheadings of the Complaint.  The Commission's unnumbered introductory paragraph characterizes this action and asserts legal arguments and conclusions to which no response is required.  To the extent such a response is required, Microsoft denies the allegations in the Commission's unnumbered introductory paragraph.  Use of certain terms or phrases defined in the Complaint is not an acknowledgement or admission of any characterization the Commission may ascribe to the defined terms.  Unless otherwise defined, capitalized terms shall refer to the capitalized terms defined in the Complaint, but any such use is not an acknowledgement or admission of any characterization the Commission may ascribe to the capitalized terms.

Microsoft does not concede the truthfulness of third-party articles and news sources quoted or referenced in the Complaint.  To the extent a response is required, Microsoft denies all allegations of the third-party articles and news sources quoted in or referenced in the Complaint.  Microsoft additionally denies that the Commission is entitled to any of the relief sought in the Notice of Contemplated Relief on page 23 of the Complaint.  Microsoft reserves the right to amend and/or supplement this Answer at a later stage of the proceedings as permitted by the Rules.  Each paragraph below corresponds to the same-numbered paragraph in the Complaint.

## SPECIFIC RESPONSES TO THE COMMISSION'S ALLEGATIONS

### I.    NATURE OF THE CASE

1.    Paragraph 1 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those

allegations.  Microsoft admits that it seeks to acquire Activision for $68.7 billion; and that the acquisition would be the highest numerical dollar amount that Microsoft will have paid for an acquisition in its history.  Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the relative size of this acquisition within the gaming industry.   Microsoft denies the remaining allegations contained in Paragraph 1.

2.      Microsoft admits that its gaming division, Xbox, develops and sells video game consoles and video games (including the video game, *Halo*); that games created in-house are sometimes referred to as "first-party" titles; that Xbox offers a multigame subscription service, Xbox Game Pass, which provides subscribers with access to a catalog of hundreds of video games to play on console or PC; and that the Xbox Game Pass Ultimate tier offers "cloud gaming" functionality allowing subscribers to stream certain games for play across a variety of devices including consoles, PCs, tablets, and mobile phones.  Microsoft denies the remaining allegations contained in Paragraph 2.

3.      Microsoft admits that Activision develops and publishes video games for multiple devices, including video game consoles, PCs, and mobile devices; that Activision's games include high-quality games; and that the term "AAA" lacks a defined meaning in the industry.  Microsoft denies the remaining allegations contained in Paragraph 3.

4.      Microsoft admits that Activision develops *Diablo*, *Overwatch*, and *Call of Duty*. Microsoft denies the remaining allegations contained in Paragraph 4.

5.      Microsoft admits that *Overwatch 2* was released recently and made available for play on multiple gaming devices, including the Nintendo Switch and PCs; and that *Diablo IV* is slated for release in 2023.  Microsoft avers that it lacks knowledge or information sufficient

to form a belief as to the truth of the allegations concerning the lifetime revenues of the *Diablo* and *Overwatch* game titles; or as to the truth of the allegations concerning when *Diablo* was first introduced and whether its upcoming release is highly anticipated.  Microsoft denies the remaining allegations contained in Paragraph 5.

6.      To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning industry perceptions of *Call of Duty* and *Call of Duty*'s original release date; or as to the truth of the allegations concerning *Call of Duty*'s launch and typical release schedule and the resources and budget Activision allocates to *Call of Duty*, including the number of studios that work on *Call of Duty*.  Microsoft denies the remaining allegations contained in Paragraph 6.

7.      Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of allegations concerning *Call of Duty*'s revenues, sales, and monthly active users.  To the extent the Complaint is referencing documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents.  Microsoft denies the remaining allegations contained in Paragraph 7.

8.      Microsoft denies the allegations contained in Paragraph 8.

9.      Microsoft admits that it produces its own first-party video game titles; and that since 2018, it has acquired 8 companies, one of which operates multiple studios.  Microsoft denies the remaining allegations contained in Paragraph 9.

10.      Paragraph 10 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies the

allegations contained in Paragraph 10.

11.     Microsoft denies the allegations contained in Paragraph 11.

12.     Microsoft admits that it acquired ZeniMax, the parent company of a game developer, in 2021; that following its acquisition of ZeniMax, all ZeniMax titles have been released on PlayStation, including two ZeniMax titles that were exclusive to PlayStation upon release as well as new updates of *Elder Scrolls Online*; and that some future ZeniMax games may be exclusive to Xbox and PC when they are initially released.  Microsoft further avers that this approach is consistent with its representations to the European Commission ("EC"), as the EC has publicly stated.  Microsoft denies the remaining allegations contained in Paragraph 12.

13.     Paragraph 13 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.  To the extent the Complaint is quoting from one or more unidentified sources, Microsoft respectfully refers the Court to any such source for an accurate and complete statement of its contents.  Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Activision's incentives and business strategy.  Microsoft denies the remaining allegations contained in Paragraph 13.

14.     Paragraph 14 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 14.

## II.     JURISDICTION

15.     Paragraph 15 purports to state conclusions of law to which no response is required.

16.     Paragraph 16 purports to state conclusions of law to which no response is required.

17.     Paragraph 17 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 17.

## III.     RESPONDENTS AND THE PROPOSED ACQUISITION

18.     Microsoft admits that it is a publicly traded company incorporated in Washington with headquarters in Redmond, Washington; that it sells software, services, and devices across the technology industry; that its gaming division, Xbox, produces specialized Xbox hardware and sells Xbox content and services; and that for fiscal year 2022, Microsoft's gaming revenue was $16.23 billion and total revenue was $198.27 billion.  Microsoft denies the remaining allegations contained in Paragraph 18.

19.     Microsoft admits that Activision is a publicly traded company, incorporated in the State of Delaware with headquarters in Santa Monica, California; and that Activision develops and publishes video games for consoles, PCs, and mobile devices.  Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 19.

20.     Microsoft admits the allegations contained in Paragraph 20.

## IV.     BACKGROUND

21.     Paragraph 21 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.  Microsoft denies the remaining allegations contained in Paragraph 21.

22.    Microsoft admits that gaming is a part of the entertainment industry; that in 2020 the gaming industry was worth $165 billion, with $85 billion coming from mobile gaming, $40 billion coming from PC gaming, $33 billion coming from console gaming, and the remaining revenue coming from cloud, VR, handheld, and arcade gaming.  Microsoft lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the total revenues of the gaming industry in 2022.  Microsoft denies the remaining allegations contained in Paragraph 22.

23.    Microsoft admits the allegations contained in Paragraph 23.

24.    Microsoft admits that video game content can be played on consoles, PCs, and mobile devices.  Microsoft denies the remaining allegations contained in Paragraph 24.

25.    Microsoft admits that consumers purchase consoles for a variety of reasons.  Microsoft denies the remaining allegations contained in Paragraph 25.

26.    Microsoft admits that the most popular gaming consoles include Sony's PlayStation, Nintendo's Switch, and Microsoft's Xbox.  Microsoft denies the remaining allegations contained in Paragraph 26.

27.    Microsoft admits that there has been vigorous competition in the gaming industry for decades, including competition among video game console makers.  Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the views of unidentified industry participants.  To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents.  Microsoft denies the remaining allegations contained in Paragraph 27.

28.    Microsoft admits that Xbox, Sony, and Nintendo all currently offer competing

gaming consoles; that Xbox and Sony released their most recent consoles (the Xbox Series X|S and the PlayStation 5, respectively) in 2020; and that Nintendo released its most recent console (the Nintendo Switch) in 2017. Microsoft denies the remaining allegations contained in Paragraph 28.

29. Microsoft admits that the Xbox Series X|S are two Xbox consoles offered by Microsoft; that the Xbox Series X is the faster, more powerful model; and that the Xbox Series S is a simpler and more affordable model. To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the remaining allegations contained in Paragraph 29.

30. Microsoft admits that it tracks the performance of its Xbox consoles relative to other gaming consoles on the market. To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the remaining allegations contained in Paragraph 30.

31. To the extent the Complaint is quoting from or characterizing statements made during an earnings call, Microsoft respectfully refers the Court to a transcript or recording of the call for an accurate and complete statement of its contents. Microsoft denies the remaining allegations contained in Paragraph 31.

32. Microsoft admits that the Xbox Series S console is less expensive than the Xbox Series X console and the PlayStation 5 console. To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the remaining allegations contained in Paragraph 32.

PUBLIC

33.     Microsoft admits that different consoles have different technical specifications, including varied graphical processing capabilities; that the Nintendo Switch console allows portable, handheld use; and that the Nintendo Switch console and Xbox Series S console are less expensive than the Xbox Series X console and the PlayStation 5 console.  Microsoft denies the remaining allegations contained in Paragraph 33.

34.     Microsoft admits that gamers have purchased and continue to purchase games through a buy-to-play model, purchasing either physical or digital copies of individual games for play on gaming consoles, PCs, or other devices.  Microsoft denies the remaining allegations contained in Paragraph 34.

35.     Microsoft admits that multigame subscription services generally allow gamers to access a catalog of games for a recurring fee.  Microsoft also admits that it launched its own multigame subscription service, Xbox Game Pass, in 2017; and that other companies have also launched multigame subscription services in recent years.  Microsoft further admits that Xbox Game Pass had 10 million subscribers in 2020 and 25 million subscribers in 2022.  Microsoft denies the remaining allegations contained in Paragraph 35.

36.     Microsoft admits that Xbox Game Pass is a multigame subscription service that provides subscribers with access to a rotating catalog of hundreds of games.  Microsoft further admits that there are three Game Pass offerings: a "Console" offering that allows subscribers to download-to-play a catalog of console games on Xbox; a "PC" offering that allows subscribers to download-to-play a catalog of PC games on PC; and an "Ultimate" version that provides additional features, including the ability to stream a selection of games from the cloud to various devices.  Microsoft denies the remaining allegations contained in Paragraph 36.

37.     Microsoft admits that Sony offers a multigame subscription service known as

PUBLIC

PlayStation Plus that, like Game Pass, offers multiple tiers of pricing, including a top tier that is reported to provide cloud streaming capabilities.  Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the other features and game offerings available on PlayStation Plus, as well as the pricing of this subscription service.  Microsoft denies the remaining allegations contained in Paragraph 37.

38.   Microsoft admits that EA Play and Ubisoft+ are other multigame subscription services.  Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the game offerings of EA Play and Ubisoft+, as well as the pricing of these subscription services.  Microsoft denies the remaining allegations contained in Paragraph 38.

39.   Microsoft admits that video games are typically downloaded to a device and played locally; and that at least since 2013, companies have also offered cloud gaming services that allow players to play games without downloading them locally, in limited circumstances, by streaming games to compatible devices via remote servers.  Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the features available on cloud gaming services other than those offered by Xbox Cloud Gaming.  Microsoft denies the remaining allegations contained in Paragraph 39.

40.   To the extent the Complaint is quoting or characterizing from one or more unidentified sources, Microsoft respectfully refers the Court to any such source for an accurate and complete statement of its contents.  Microsoft admits that cloud gaming has the potential to broaden access to gaming by expanding the universe of devices that can play games. Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the features available on cloud gaming services other than those

offered by Xbox Cloud Gaming.  Microsoft denies the remaining allegations contained in Paragraph 40.

41.     Microsoft admits that it launched cloud gaming as part of the Ultimate tier of its Game Pass subscription service in September 2020; and that more than 20 million gamers have used the service to stream games from the cloud.  To the extent the Complaint is referencing documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents.  Microsoft denies the remaining allegations contained in Paragraph 41.

42.     Microsoft admits that Amazon Luna, Nvidia GeForce NOW, and Google Stadia are other existing cloud gaming services; and that Alphabet Inc. has announced that it is discontinuing Google Stadia in January 2023.  Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning how these cloud gaming services price and host their services.  Microsoft denies the remaining allegations contained in Paragraph 42.

43.     To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the other allegations concerning unidentified industry participants.  Microsoft denies the remaining allegations contained in Paragraph 43.

44.     To the extent the Complaint is quoting or characterizing testimony from an investigational hearing of a Microsoft witness, Microsoft respectfully refers the Court to the full testimony for an accurate and complete statement of its contents. To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents

for an accurate and complete statement of their contents.  Microsoft denies the remaining allegations contained in Paragraph 44.

45.   Microsoft denies the allegations contained in Paragraph 45.

46.   Microsoft admits that Activision, Electronic Arts, Take-Two, and Ubisoft are sometimes referred to as the "Big 4"; and that they publish *Call of Duty* (Activision), *FIFA* (EA), *Grand Theft Auto* (Take-Two), and *Assassin's Creed* (Ubisoft), respectively.  Microsoft denies the remaining allegations contained in Paragraph 46.

47.   Microsoft admits that Epic Games makes *Fortnite*, a free-to-play game released in 2017 that is one of the most popular games in the United States and the world; and that Activision, Electronic Arts, Take-Two, Ubisoft, and Epic are sometimes referred to as the "Big 4 + Epic."  Microsoft denies the remaining allegations contained in Paragraph 47.

48.   To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the remaining allegations contained in Paragraph 48.

49.   Microsoft admits that Xbox produces the franchises *Elder Scrolls*, *Halo*, and *Forza*; and that Sony produces the franchises *God of War*, *MLB The Show*, and *Spider-Man*. Microsoft denies the remaining allegations contained in Paragraph 49.

50.   Microsoft admits that *Halo Infinite* was in production for ██ years and cost approximately ████ million to produce.  Microsoft denies the remaining allegations contained in Paragraph 50.

51.   Microsoft admits that it wants a variety of content available on Xbox and Game Pass.  To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents.  Microsoft

PUBLIC

denies the remaining allegations contained in Paragraph 51.

52.     Microsoft admits that it is valuable to have a variety of content available on Xbox and Game Pass.  To the extent the Complaint is quoting or characterizing testimony from an investigational hearing of a Microsoft witness, Microsoft respectfully refers the Court to the full testimony for an accurate and complete statement of its contents.  To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents.  Microsoft denies the remaining allegations contained in Paragraph 52.

53.     Microsoft admits that gaming companies may make some titles exclusive to some platforms.  To the extent the Complaint is referencing documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents.  Microsoft denies the remaining allegations contained in Paragraph 53.

54.     Microsoft admits that it is valuable to have a variety of content available on Xbox and Game Pass; and that the size of a platform's player base may be one of many factors used in negotiations with publishers and developers.  To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents.  Microsoft denies the remaining allegations contained in Paragraph 54.

55.     To the extent the Complaint is quoting from a document, Microsoft respectfully refers the Court to the document for an accurate and complete statement of its contents.  Microsoft denies the remaining allegations contained in Paragraph 55.

56.     Microsoft admits that it anticipates that ███████████████████████ ████████████████████████████████  To the extent the Complaint is quoting

from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the remaining allegations contained in Paragraph 56.

57.     To the extent the Complaint is quoting or characterizing testimony from an investigational hearing of an Activision witness, Microsoft respectfully refers the Court to the full testimony for an accurate and complete statement of its contents. Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning testimony from an Activision witness. To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the remaining allegations contained in Paragraph 57.

58.     Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of Activision's purported current or future numbers of monthly active users; or as to the truth of Activision's ███████████████████████. To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the remaining allegations contained in Paragraph 58.

59.     Microsoft admits that *Call of Duty* was first released in 2003. To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the sales of different iterations of *Call of Duty* and the sales of *Top Gun: Maverick*. Microsoft denies the remaining allegations contained in Paragraph 59.

## V.   RELEVANT MARKETS

60.    Paragraph 60 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.   Microsoft admits the proposed acquisition will result in a combined firm. Microsoft denies the remaining allegations contained in Paragraph 60.

61.    Paragraph 61 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.  Microsoft denies the remaining allegations contained in Paragraph 61.

62.    Paragraph 62 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.  Microsoft denies the remaining allegations contained in Paragraph 62.

63.    Paragraph 63 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.  Microsoft denies the remaining allegations contained in Paragraph 63.

64.    Paragraph 64 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.  Microsoft denies the remaining allegations contained in Paragraph 64.

65.    Paragraph 65 purports to state conclusions of law to which no response is required. To the extent a response is required to these conclusions, Microsoft denies those allegations.  Microsoft denies the remaining allegations contained in Paragraph 65.

66.    Microsoft admits that Xbox, Sony, and Nintendo all currently offer competing gaming consoles; that different consoles offer different types of performance, including varied graphical processing capabilities; that the Xbox Series X|S and PlayStation 5 consoles are plug-

in devices that connect to an external display like a television, whereas the Nintendo Switch console is a portable battery-operated device with a built-in display screen and detachable controllers that can be connected to an external display; that the Xbox Series X and PlayStation 5 consoles are both priced higher than the Xbox Series S and Nintendo Switch consoles; that console competitors offer overlapping gaming content; that Nintendo offers third-party content on the Switch console; that Xbox and Sony released their most recent consoles (the Xbox Series X|S and the PlayStation 5, respectively) in 2020; and that Nintendo released its most recent console (the Nintendo Switch) in 2017.  To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents.  Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning competitors' business strategies and the precise technical specifications of competitor devices.   Microsoft denies the remaining allegations contained in Paragraph 66.

67.     To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and compete statement of their content. Microsoft denies the remaining allegations contained in Paragraph 67.

68.     Microsoft denies the allegations contained in Paragraph 68.

69.     To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the purported industry source estimates.   Microsoft denies the remaining allegations contained in Paragraph 69.

70.     Paragraph 70 purports to state conclusions of law to which no response is

22

required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.  Microsoft denies the remaining allegations contained in Paragraph 70.

71.    Paragraph 71 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.  To the extent the Complaint is characterizing witness testimony from a trial in another matter, Microsoft respectfully refers the Court to the full testimony for an accurate and complete statement of its contents.  Microsoft denies the remaining allegations contained in Paragraph 71.

72.    Paragraph 72 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.  Microsoft denies the remaining allegations contained in Paragraph 72.

73.    Paragraph 73 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 73.

74.    Paragraph 74 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 74.

75.    Microsoft admits that it has a multigame subscription service known as Xbox Game Pass, which has three offerings and gives gamers access to a catalog of hundreds of games; that Game Pass Ultimate provides access to Xbox Cloud Gaming, along with other features; and that these combined Game Pass offerings currently have approximately 25 million subscribers.  Microsoft denies the remaining allegations contained in Paragraph 75.

76.    Microsoft admits that gaming companies compete to improve their platforms,

including by offering multigame subscription services; that Xbox is working to develop Game Pass into a better multigame subscription service; and that Microsoft attempts to provide its users with a varied and rotating catalog of games.  Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the other allegations concerning unidentified industry participants and their business practices.  Microsoft denies the remaining allegations contained in Paragraph 76.

77.     Microsoft admits that multigame subscription services are a different way to pay for games than the traditional buy-to-play model; and that for some customers the multigame subscription model may be cheaper than the buy-to-play model in some circumstances. Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified industry participants and their business practices. Microsoft denies the remaining allegations contained in Paragraph 77.

78.     Microsoft admits that it considers a variety of factors in pricing its products and services, including the pricing strategies of its competitors.  Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified subscription services other than its own.  To the extent the Complaint is quoting from and characterizing documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents.  Microsoft denies the remaining allegations contained in Paragraph 78.

79.     Paragraph 79 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.  Microsoft admits that some multigame subscription services provide users with access to hundreds of games for fixed periods of time; and that multigame subscription services

can allow gamers to discover new content they may otherwise have missed or not purchased. To the extent the Complaint is relying on documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the remaining allegations contained in Paragraph 79.

80.     Paragraph 80 purports to state conclusions of law to which no response is required. To the extent a response is required to these conclusions, Microsoft denies those allegations. Microsoft admits that Xbox Live Gold and PlayStation Plus Essential offer fewer game choices to subscribers than some other subscription offerings. Microsoft denies the remaining allegations contained in Paragraph 80.

81.     Paragraph 81 purports to state conclusions of law to which no response is required. To the extent a response is required to these conclusions, Microsoft denies those allegations. Microsoft admits that in some circumstances mobile-native games can have different levels of complexity and game quality than console- and PC-native games. Microsoft denies the remaining allegations contained in Paragraph 81.

82.     Paragraph 82 purports to state conclusions of law to which no response is required. To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 82.

83.     Paragraph 83 purports to state conclusions of law to which no response is required. To the extent that a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 83.

84.     Paragraph 84 purports to state conclusions of law to which no response is required. To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 84.

85.    Paragraph 85 purports to state conclusions of law to which no response is required.   To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 85.

86.    Microsoft admits that cloud gaming may, provided certain conditions (such as the availability of sufficient Internet access) are met, allow customers to stream some games from the cloud rather than downloading them to play locally on their devices, including on consoles, PCs, and mobile devices.   Microsoft denies the remaining allegations contained in Paragraph 86.

87.    Microsoft admits that cloud gaming allows customers to stream games from the cloud that may have been developed for other devices or operating systems; and that this may allow some consumers who are unable to afford more expensive devices to stream those games. To the extent the Complaint is relying on documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents.   Microsoft denies the remaining allegations contained in Paragraph 87.

88.    Microsoft admits that cloud gaming may allow some consumers who are unable to afford more expensive devices to stream games they would not have been able to without cloud gaming.  To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the remaining allegations contained in Paragraph 88.

89.    To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the remaining allegations contained in Paragraph 89.

90.    Microsoft admits that Xbox made a significant investment in Xbox Cloud

Gaming; and that Xbox Cloud Gaming is operated by using custom-built servers in Microsoft data centers to remotely run Xbox console games via Xbox's specialized console hardware. Microsoft denies the remaining allegations contained in Paragraph 90.

91.    Paragraph 91 purports to state conclusions of law to which no response is required.   To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 91.

92.    Paragraph 92 purports to state conclusions of law to which no response is required.   To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 92.

93.    Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning unidentified industry participants.   To the extent the Complaint is quoting from and characterizing documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents.   Microsoft denies the remaining allegations contained in Paragraph 93.

94.    Microsoft admits that as of the first quarter of 2022, Xbox had 25 million Game Pass subscribers, including a substantial number in the United States; and that Game Pass prices vary in some locations.   Microsoft denies the remaining allegations contained in Paragraph 94.

95.    Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning other industry participants.   Microsoft admits that cloud gaming requires advanced technology and sufficient Internet services. Microsoft denies the remaining allegations contained in Paragraph 95.

PUBLIC

## VI.    ANTICOMPETITIVE EFFECTS

96.     Paragraph 96 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.  Microsoft denies the remaining allegations contained in Paragraph 96.

97.     Paragraph 97 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.  Microsoft admits that it is valuable to have a variety of content available on Xbox and Game Pass.  Microsoft denies the remaining allegations contained in Paragraph 97.

98.     Paragraph 98 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.  Microsoft denies the remaining allegations contained in Paragraph 98.

99.     Microsoft admits that it is valuable to have a variety of content available on Xbox and Game Pass.  Microsoft denies the remaining allegations contained in Paragraph 99.

100.    To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the remaining allegations contained in Paragraph 100.

101.    To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the remaining allegations contained in Paragraph 101.

102.    Microsoft admits that in its current revenue-sharing agreement with Activision,

PUBLIC

████████████████████   To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents.  Microsoft denies the remaining allegations contained in Paragraph 102.

103.    Microsoft admits it seeks to acquire Activision and its content.  Microsoft denies the remaining allegations contained in Paragraph 103.

104.    Microsoft denies the allegations contained in Paragraph 104.

105.    Microsoft denies the allegations contained in Paragraph 105.

106.    Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Activision's collaboration with other gaming hardware manufacturers and the goals of that collaboration.  Microsoft denies the remaining allegations contained in Paragraph 106.

107.    Microsoft avers that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning ███████████████████████████ ██████████.  Microsoft admits that a GPU (or Graphics Processing Unit) is a hardware component that renders graphics for video games.  Microsoft denies the remaining allegations contained in Paragraph 107.

108.  Microsoft admits that gaming is a growing market with significant revenues. Microsoft denies the remaining allegations contained in Paragraph 108.

109.  Paragraph 109 purports to state conclusions of law to which no response is required.  To the extent a response is required to these conclusions, Microsoft denies those allegations.  Microsoft avers that it lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning Activision's intentions pre-acquisition.  Microsoft denies the remaining allegations contained in Paragraph 109.

110.    Microsoft denies the allegations contained in Paragraph 110.

111.    Microsoft avers that it lacks knowledge or information sufficient to form a belief about the truth of the allegations about Activision's alleged presentation to ███████.  To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the allegations contained in Paragraph 111.

112.    Microsoft denies the allegations contained in Paragraph 112.

113.    To the extent the Complaint is relying on unidentified statements or sources, Microsoft respectfully refers the Court to those sources for an accurate and complete statement of their contents.  Microsoft denies the remaining allegations contained in Paragraph 113.

114.  To the extent the Complaint is referencing documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft admits that it acquired ZeniMax, the parent company of a game developer; that following its acquisition of ZeniMax, all released ZeniMax titles have been available on PlayStation, including two ZeniMax titles that were exclusive to PlayStation upon release as well as new updates of *Elder Scrolls Online*; and that some future ZeniMax games may be exclusive to Xbox and PC when they are initially released.  Microsoft denies the remaining allegations contained in Paragraph 114.

115.    Microsoft denies the allegations contained in Paragraph 115.

116.    To the extent the Complaint is quoting from documents, Microsoft respectfully refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the remaining allegations contained in Paragraph 116.

117.  To the extent the Complaint is referencing documents, Microsoft respectfully

PUBLIC

refers the Court to the documents for an accurate and complete statement of their contents. Microsoft denies the remaining allegations contained in Paragraph 117.

118.    Paragraph 118 purports to state conclusions of law to which no response is required.   To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 118.

119.  Paragraph 119 purports to state conclusions of law to which no response is required.   To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 119.

## VII.    ABSENCE OF COUNTERVAILING FACTORS

120.    Paragraph 120 purports to state conclusions of law to which no response is required.   To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 120.

121.    Paragraph 121 purports to state conclusions of law to which no response is required.   To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 121.

## VIII.    VIOLATION

122.    Microsoft incorporates its responses to each of the allegations contained in Paragraphs 1 through 121 as if they were stated in this Paragraph.

123.    Paragraph 123 purports to state conclusions of law to which no response is required.   To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 123.

124.    Paragraph 124 purports to state conclusions of law to which no response is

required.   To the extent a response is required to these conclusions, Microsoft denies the allegations contained in Paragraph 124.

## AFFIRMATIVE AND OTHER DEFENSES

Microsoft asserts the following defenses with respect to the causes of action alleged in the Complaint, without assuming the burden of proof or persuasion where such burden rests on the Commission.  Microsoft has not knowingly or intentionally waived any applicable defenses, and it reserves the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of the action.   Microsoft reserves the right to supplement its defenses as discovery progresses.

1.      The Complaint fails to state a claim upon which relief can be granted.

2.      The Complaint fails to allege a plausible relevant product market or markets.

3.      The Complaint fails to allege a plausible relevant geographic market.

4.      The Complaint fails to allege undue share in any plausibly defined relevant market.

5.      The Complaint fails to allege any harm to competition.

6.      The Complaint fails to allege any harm to consumers or consumer welfare.

7.      The combination of Microsoft's gaming business with Activision's business will be procompetitive.  The transaction will result in substantial acquisition-specific efficiencies, synergies, and other procompetitive effects that will directly benefit consumers.   These benefits will greatly outweigh any and all proffered anticompetitive effects.

8.      There will be no harm to competition, consumers, or consumer welfare because

there is, and will continue to be, entry and expansion by competitors, which is timely, likely, and sufficient.

9. The alleged harm to potential competition is not actionable.

10. The Commission cannot provide clear proof that the combination of Microsoft's gaming business and Activision's business would restrain trade in the alleged markets for "multi-game content library subscription services" or "cloud gaming subscription services" because but-for the proposed transaction, Activision's games would not be available on any such service.

11. The Commission fails to allege a time frame for the alleged anticompetitive effects.

12. The Commission is not entitled to relief because none of Microsoft's conduct identified in the Complaint is actionable—independently or in the aggregate—under the antitrust laws.

13. Microsoft's offers of binding contractual commitments to continue to offer certain titles like *Call of Duty* to other gaming companies, including Nintendo and Sony, for at least ten years address all of the alleged anticompetitive effects in the alleged markets and ensure that there will be no harm to competition or consumers.

14. The Commission's claims are too speculative to support any claim on which relief can be granted.

15. Neither the filing of this administrative action nor the contemplated relief is in the public interest, pursuant to 15 U.S.C. § 45.

16. The Complaint reflects improper selective enforcement of the antitrust laws.

17.    The Commission's charges under Section 5 of the Federal Trade Commission Act are unlawful to the extent the Commission purports to apply Section 5 beyond the metes and bounds of the Sherman and Clayton Acts.

PUBLIC

WHEREFORE, Microsoft respectfully requests that the Administrative Law Judge enter an order:

1.     Denying the Commission's contemplated relief;

2.     Dismissing the Complaint in its entirety with prejudice;

3.     Awarding Microsoft its costs of suit; and

4.     Awarding such other and further relief as the Administrative Law Judge may deem proper.

Dated: January 3, 2023                          Respectfully submitted,

By:   */s/ Beth Wilkinson*
Beth Wilkinson
Rakesh N. Kilaru
Kieran Gostin
Grace L. Hill
Anastasia M. Pastan
Sarah E. Neuman
Wilkinson Stekloff LLP
2001 M Street NW, 10th Floor
Washington, DC  20036
Telephone: (202) 847-4000
Fax: (202) 847-4005
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
kgostin@wilkinsonstekloff.com
ghill@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com
sneuman@wilkinsonstekloff.com

Michael Moiseyev
Megan A. Granger
Weil Gotshal & Manges LLP
2001 M Street NW
Suite 600
Washington, DC 20036
Telephone: (202) 682-7026
michael.moiseyev@weil.com
megan.granger@weil.com

*Counsel for Microsoft Corp.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 4, 2023, I caused a true and correct copy of the

foregoing to be filed electronically using the FTC's E-Filing System and served the

following via email:

>April Tabor
>Secretary
>Federal Trade Commission
>600 Pennsylvania Ave., NW, Rm H-113
>Washington, DC 20580
>ElectronicFilings@ftc.gov
>
>The Honorable D. Michael Chappell
>Administrative Law Judge
>Federal Trade Commission
>600 Pennsylvania Ave., NW, Rm H-110
>Washington, DC 20580

I also certify that I caused the forgoing document to be served via email to:

>James H. Weingarten (jweingarten@ftc.gov)
>James Abell (jabell@ftc.gov)
>Cem Akleman (cakleman@ftc.gov)
>Taylor Alexander (talexander@ftc.gov)
>Peggy Bayer Femenella (pbayerfemenella@ftc.gov)
>Michael T. Blevins (mblevins@ftc.gov)
>Amanda L. Butler (abutler2@ftc.gov)
>Nicole Callan (ncallan@ftc.gov)
>Maria Cirincione (mcirincione@ftc.gov)
>Kassandra DiPietro (kdipietro@ftc.gov)
>Jennifer Fleury (jfleury@ftc.gov)
>Michael A. Franchak (mfranchak@ftc.gov)
>James Gossmann (jgossmann@ftc.gov)
>Ethan Gurwitz (egurwitz@ftc.gov)
>Meredith Levert (mlevert@ftc.gov)
>Merrick Pastore (mpastore@ftc.gov)
>Stephen Santulli (ssantulli@ftc.gov)
>Edmund Saw (esaw@ftc.gov)
>U.S. Federal Trade Commission
>600 Pennsylvania Ave., N.W.
>Washington, DC  20580
>Telephone: (202) 326-3570

*Counsel Supporting the Complaint*

**PUBLIC**

Steven C. Sunshine (steve.sunshine@skadden.com)
Julia K. York (julia.york@skadden.com)
Jessica R. Watters (jessica.watters@skadden.com)
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 271-7860

Maria A. Raptis (maria.raptis@skadden.com)
Michael J. Sheerin (michael.sheerin@skadden.com)
Matthew M. Martino (matthew.martino@skadden.com)
Evan R. Kreiner (evan.kreiner@skadden.com
Andrew D. Kabbes (andrew.kabbes@skadden.com)
Bradley J. Pierson (bradley.pierson@skadden.com)
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-2425

*Counsel for Activision Blizzard, Inc.*

*/s/ Beth Wilkinson*

Beth Wilkinson
*Counsel for Microsoft Corp.*