Joseph M. Alioto (State Bar No 42680)
Tatiana V. Wallace (SBN 233939)
**ALIOTO LAW FIRM**
One Sansome Street, 35th Floor
San Francisco, CA  94104
Telephone:    (415) 434-8900
Facsimile:    (415) 434-9200
Email:      jmalioto@aliotolaw.com

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Cadio Zirpoli (State Bar No. 179108)
Elissa Buchanan (State Bar No. 249996)
David H. Seidel (State Bar No. 307135)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone:    (415) 500-6800
Facsimile:    (415) 395-9940
Email:      jsaveri@saverilawfirm.com
          swilliams@saverilawfirm.com
          czirpoli@saverilawfirm.com
          eabuchanan@saverilawfirm.com
          dseidel@saverilawfirm.com

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANTE DEMARTINI, et al., | Case No. 3:22-cv-08991-JSC |
| Plaintiffs, | **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO STAY CASE** |
| v. | |
| MICROSOFT CORPORATION, a Washington corporation, | Date:   January 19, 2023<br>Time:  10:00 am |
| Defendant. | |

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................1

II.     SUMMARY OF ARGUMENT................................................................................4

III.    FACTUAL BACKGROUND ..................................................................................6

IV.     ARGUMENT .........................................................................................................7

       A.      The Supreme Court Has Already Ruled that Plaintiffs' Suit Under Section 16 May Proceed Simultaneously with the FTC Action ............................... 7

       B.      Microsoft's Request Should be Denied Since it Effectively Seeks Abstention, and Microsoft has Failed to Show the Special Circumstances for a Federal Court to Defer a Case over which it has Jurisdiction. ........... 8

       C.      Even Under the General *Landis* Stay Framework, Microsoft Cannot Meet Its High Burden for a Stay .......................................................................10

             1.      Granting a Stay Will Substantially Prejudice Plaintiffs for the Same Reasons They Sought a Preliminary Injunction in the First Place .......................................................................................12

             2.      Microsoft's Burden in Defending this Lawsuit Provides No Basis for a Stay, and is Greatly Exaggerated .........................................16

             3.      Staying This Case Until All Regulatory Proceedings Concludes Will Not Promote the "Orderly Course of Justice" .......................18

V.      CONCLUSION....................................................................................................19

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Am. Honda Motor Co. v. Coast Distribution Sys., Inc.*, 2007 WL 672521 (N.D. Cal.
Feb. 26, 2007) ................................................................................................................. 16

*AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549 (N.D. Cal. Oct. 26, 2011) ...................... 12, 18

*Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724 (D.C. Cir. 2012) ............................................ 11

*In re California Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021
WL 1176645 (N.D. Cal. Mar. 29, 2021) ........................................................................... 5, 9, 10

*California v. Am. Stores Co.*, 495 U.S. 271 (1990) ........................................................................ 4, 7

*Colorado River Water Conservation Dist. V. United States*, 424 U.S. 800 (1976) ................... 5, 9, 10

*In re ConAgra Foods, Inc.*, No. CV 11-005379-MMM, 2014 WL 12580052 (C.D.
Cal., Dec. 29, 2014) ...................................................................................................................... 17

*FormFactor Inc. v. Micronics Japan Co.*, 2008 WL 361128 (N.D. Cal. Feb. 11, 2008) .................. 16

*Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237 (3d Cir. 2010) ........................ 8

*Karseal Corp. v. Richfield Oil Corp.*, 221 F.2d 358 (9th Cir. 1955) ..................................................... 7

*Landis v. North American Co.*, 299 U.S. 248 (1936), 668 F.3d ............................................ *passim*

*Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322 (1955) ................................................................... 8

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ............................................................ *passim*

*Mach-Tronics Inc. v. Zirpoli*, 316 F.2d 820 (9th Cir. 1963) ........................................................ 4, 8, 9

*McElrath v. Uber Techs., Inc.*, No. 16-CV-07241-JSC, 2017 WL 1175591 (N.D. Cal.
Mar. 30, 2017) ............................................................................................................................... 12

*Morse v. Republican Party of Va.*, 517 U.S. 186 (1996) ..................................................................... 8

*Noble v. JP Morgan Chase Bank, Nat'l Ass'n*, 2022 WL 4229311 (N.D. Cal. Sept.
13, 2022) ........................................................................................................................................ 11

*Radovich v. Nat'l Football League*, 352 U.S. 445 (1957) ................................................................... 7

*S. Austin Coal. Cmty. Council v. SBC Commc'ns Inc.*, 191 F.3d 842 (7th Cir. 1999) ...................... 12

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iii

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO
STAY CASE – CASE NO. 3:22-cv-08991-JSC

*United States v. Borden Co.*, 347 U.S. 514 (1954) ..................................................*passim*

*Vance v. Google LLC*, 2021 WL 534363 (N.D. Cal. Feb. 12, 2021) ...............................11

*Zurich Am. Ins. Co. v. Omnicell, Inc.*, 2019 WL 570760 (N.D. Cal. Feb 12, 2019)..........................11

**Statutes**

15 U.S.C. § 18 (Clayton Act Section 7) ...............................................................*passim*

15 U.S.C. § 26 (Clayton Act Section 16) .............................................................*passim*

15 U.S.C. § 18a (Hart-Scott-Rodino Act) .....................................................................17

**Regulations**

16 C.F.R. § 803.20 ................................................................................................17

**Other Authorities**

Tim Wu, *The Curse of Bigness: Antitrust In The New Gilded Age* (2018) ...................................4, 18

Timothy Muris, Prepared Remarks, June 10, 2022, available at
    https://www.ftc.gov/news-events/news/speeches/prepared-remarks-0 ............................17

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO
STAY CASE – CASE NO. 3:22-cv-08991-JSC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Microsoft's motion to stay Plaintiffs' action pending all foreign and domestic regulatory proceedings is unprecedented. The extreme relief Microsoft seeks is not supported by Supreme Court and Ninth Circuit case law. And it would substantially prejudice Plaintiffs' claims. Microsoft's motion should be denied.

First, the Supreme Court has already addressed this exact issue. In *United States v. Borden*, the Supreme Court held that private actions for injunctive relief under Section 16 of the Clayton Act, and governmental actions seeking identical injunctive relief, "may proceed simultaneously or in disregard of each other." 347 U.S. 514, 519 (1954). That holding makes sense. Through passage, and then amendment, of the Clayton Act, Congress codified an antitrust enforcement scheme that includes *both* private and public enforcement mechanisms. It did not give precedence or priority to either one. "These private and public actions were designed" so as to not be "mutually exclusive." *Id.* Microsoft's motion should be denied under the holding of *Borden* and the statutory framework of the Clayton Act alone.

Second, while Microsoft's motion may be styled as a motion for a stay, it effectively seeks the Court's abstention. Abstention is a narrowly proscribed and exceedingly rare exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them. Microsoft cannot meet the high burden to invoke the Court's power to abstain from hearing this case, properly before it.

Third, even if Microsoft's motion were not to be rejected under *Borden,* and did not implicate any abstention issues, Microsoft's request for a stay under the Court's inherent power is misplaced and fails to meet the heavy burden required. Microsoft argues in its motion that stays are commonplace and that courts "routinely" grant stays anytime there are "overlapping issues of fact or law raised in another pending case." ECF No. 26 at 5. That statement is wildly incompatible with Supreme Court and Ninth Circuit case law. In fact, the power of a federal court to stay proceedings in favor of a case in another jurisdiction is highly circumscribed, and

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO
STAY CASE – CASE NO. 3:22-cv-08991-JSC

1   only appropriate under exceptional circumstances not present here. Indeed, the two cases

2   Microsoft relies on to establish the power to grant a stay—*Lockyer* and *Landis*—both *reversed* a

3   lower court's order granting a stay finding the stays outside the Court's discretion. Under

4   controlling authority in the Ninth Circuit, a stay is only appropriate under "rare" and exceptional

5   circumstances. The standard imposes a particularly high burden that Microsoft must meet.

6   Microsoft does not and cannot do so.

7          Granting a stay would severely prejudice Plaintiffs. If Plaintiffs cannot pursue their

8   claims and seek injunctive relief before Microsoft consummates the merger, Plaintiffs will be

9   irreparably harmed. That is precisely why Plaintiffs are seeking preliminary injunctive relief and

10  an accelerated trial to occur before Microsoft's July 18, 2023 deadline to consummate the

11  merger. If the Court were to stay Plaintiffs' action, and therefore foreclose their ability to seek a

12  preliminary injunction, there is substantial likelihood that Microsoft will merge before Plaintiffs'

13  claims are heard. Moreover, without the ability to seek discovery now, Plaintiffs will be

14  significantly harmed in their ability to prepare their case during the short window Plaintiffs have

15  before the merger is consummated. In this case, as shown in Plaintiffs' Motion for Preliminary

16  Injunction, ECF No. 4, time is of the essence. Delay is not just detrimental, but potentially

17  disastrous to Plaintiffs' claims since Plaintiffs will be irreparably harmed if the merger proceeds,

18  and Plaintiffs will be substantially prejudiced if they cannot pursue their case before Microsoft

19  merges.

20         Nor is there any cognizable harm to Microsoft in denying a stay. The Ninth Circuit is

21  clear that so long as there is even a fair possibility of harm to Plaintiffs, the Defendant must

22  make out a clear case of hardship or inequity. Importantly, defending the suit at issue is not a

23  cognizable hardship or inequity. That includes discovery burdens. Yet that is all Microsoft asserts

24  here. Moreover, Microsoft greatly exaggerates the discovery burdens at issue in this case. In any

25  event, discovery issues can be resolved efficiently through the parties, consistent with sound

26  principles of case management, under the supervision of the Court. That Microsoft does not wish

27

28

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO
STAY CASE – CASE NO. 3:22-cv-08991-JSC

to engage in discovery planning or discovery is no basis for the extreme and highly prejudicial relief Microsoft seeks.

Nor would a stay promote any efficiencies for the Court. The FTC administrative action involves different plaintiffs. The agency also operates under a different legal standard. The FTC's regulatory proceeding has no bearing on Plaintiffs' claims. Indeed, not only do private and governmental actions embody different policy consideration, they also currently proceed on different legal standards. Through the Merger Guidelines, the Executive branch has self-imposed stricter standards than Congress enacted under the Clayton Act. Thus, despite overlapping issues, no claim or issue preclusion would apply. And Microsoft's motion asks the Court to stay Plaintiffs' claims until *all* regulatory proceedings, foreign and domestic, are concluded. Microsoft does not even attempt to argue that foreign regulatory proceedings will affect this case. Nor would it matter if they might, since the regulatory proceedings could be dropped at any time, and Microsoft would then be able to merge immediately, irreparably harming Plaintiffs.

Moreover, staying Plaintiffs' case poses the significant risk of transforming this case into a vastly more complicated and vastly more expansive case. If Microsoft were to merge before Plaintiffs can be heard on their Section 7 claims, Plaintiffs' case will transform from seeking prospective injunctive relief, to a claim for dissolution of an already formed merger, plus damages for the loss of competition that would ensue. Such a proceeding would be vastly more complicated and lengthy, with significantly more discovery and difficult issues for the Court to address, including how to require Microsoft and Activision to divest from the merger. Any effort to unscramble the egg at that juncture would be highly complicated, difficult, and impractical. A stay therefore only risks significantly harming the orderly and efficient progress of this case.

At bottom, Microsoft asks the Court to abdicate its jurisdiction in favor of other regulatory proceeding, no matter where and no matter the nature of those proceedings.

This is in part why Plaintiffs' claims are so critical. During an era of unprecedented consolidation across numerous industries, the executive branch continues to shirk the antitrust policy laid out by Congress under the Clayton Act. Indeed, as one antitrust scholar has noted,

3

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO STAY CASE – CASE NO. 3:22-cv-08991-JSC

1    "[federal agencies'] [m]erger control has wandered so far from Congress's expressed intent in

2    1950 as to make a mockery of the democratic process." Tim Wu, *The Curse of Bigness: Antitrust*

3    *In The New Gilded Age* 128 (2018). While the FTC may choose to continue to be so

4    constrained—refusing to enforce the Clayton Act as Congress intended—there is another coequal

5    mechanism for enforcement: the private action. See 15 U.S.C. § 26. A stay would derail and

6    substantially prejudice Plaintiffs' coequal rights.

7    **II.      SUMMARY OF ARGUMENT**

8           Plaintiffs' Opposition to Microsoft's Motion to Stay is based primarily on the following

9    fundamental points:

10          1.      The Supreme Court has already held that private and government actions under

11   the Clayton Act "may proceed simultaneously or in disregard of each other." *United States v.*

12   *Borden Co.*, 347 U.S. 514, 519 (1954).

13          2.      The Clayton Act provides for coequal private and government enforcement

14   actions. *California v. Am. Stores Co.*, 495 U.S. 271, 275 (1990) ("Private enforcement of the

15   [Clayton] Act was in no sense an afterthought; it was an integral part of the congressional plan

16   for protecting competition.").

17          3.      Although Microsoft styles its request as a stay under *Landis v. North American*

18   *Co.*, 299 U.S. 248, 255 (1936), it effectively seeks abstention in favor of all foreign and domestic

19   regulatory proceedings.

20          4.      Abstention is highly disfavored and improper except under highly unique

21   circumstances not present here. In *Mach-Tronics Inc. v. Zirpoli*, 316 F.2d 820, 824 (9th Cir.

22   1963), for example, the Ninth Circuit reversed a district court's grant of a stay pending the

23   resolution of overlapping claims in state court. The Court held that "when a federal court is

24   presented with a case of which it has [jurisdiction,] it may not turn the matter over for

25   adjudication to [a court of another jurisdiction]." *Id*. Thus, "the pendency of an action in [another

26   jurisdiction] is no bar to the proceedings concerning the same matter in the federal court."

27

28

4

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO
STAY CASE – CASE NO. 3:22-cv-08991-JSC

5.     A Court's power to abstain from its jurisdiction is a narrowly proscribed exception from the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. V. United States*, 424 U.S. 800, 817 (1976).

6.     "Where the court finds that a stay is not warranted under *Colorado River*, *Landis* does not provide an alternative basis for a stay." *In re California Gasoline Spot Mkt. Antitrust Litig.*, No. 20-CV-03131-JSC, 2021 WL 1176645, at *13 (N.D. Cal. Mar. 29, 2021).

7.     Importantly, abstention under *Colorado River* is not appropriate where there are any "substantial doubts" as to whether the action being stayed will be resolved by the parallel proceeding. *Id.*

8.     More than even "substantial doubts," here, Plaintiffs' federal action will not be resolved by the FTC's administrative proceedings because they are different cases, including:

a.     The FTC could decide to approve the merger at any time;

b.     The FTC action does not stop Microsoft from merging, and Microsoft could merge at any time despite the FTC proceeding;

c.     The FTC administrative proceeding will be resolved under different law than Plaintiffs' case; and

d.     Plaintiffs' case is broader. For example, the FTC does not allege that the trend in consolidation in the industry factors into the merger's unlawfulness under Section 7, as the Supreme Court has held.

9.     Even under the properly articulated standard for a *Landis* stay, Microsoft fails to meet its high burden.

10.    Plaintiffs' will be substantially prejudiced by a stay because delay is disastrous here. Microsoft intends to merge as soon as they are able and Plaintiffs must be able to adequately present their claims before the merger. Although Microsoft's contract allows the merger to consummate by no later than July 18, 2023, Microsoft could consummate the merge at any time.

11.     Defendants cannot meet their burden of showing a clear case of hardship because "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005).

## III.     FACTUAL BACKGROUND

The pending acquisition between Microsoft and Activision Blizzard would be one of the largest tech mergers in history. ECF No. 1, ¶ 3. Video games, once considered a niche industry, are now one of the single largest entertainment markets in the world and have grown in size and revenue, with around half of the world's population playing games on track to generate $285 billion in revenue by 2027. *Id*. ¶¶ 57–59. Despite the predominance of video games in the market, the market for developing, publishing, and distributing those games has only decreased as consolidation has become the trend in the industry. *Id*. ¶ 219. Indeed, Microsoft and Activision Blizzard themselves have become giants in the industry in part through multiple mergers. *Id*. ¶¶219–222.

The merger between Microsoft and Activision Blizzard has the probability of decreasing competition. On January 18, 2022, Microsoft announced plans to acquire Activision Blizzard. Microsoft agreed to pay $68.7 billion ($68,700,000,000) in an all-cash transaction that would result in Microsoft wholly owning Activision Blizzard. *Id.* ¶¶ 1, 65. This would include Microsoft obtaining Activision Blizzards' full catalogue of immensely popular games, and would merge two large firms that directly compete. *Id*., ¶¶ 288-290. This suit is brought by ten consumers, who seek to protect their rights under the Clayton Act and to prevent the merger and maintain competition in the market for the benefit of all.

Plaintiffs filed the underlying action along with a motion for preliminary injunction on December 20, 2022. ECF Nos. 1, 4. Subsequently, Plaintiffs negotiated with Microsoft and agreed to a stipulation to extend all deadlines by two weeks. *See* Stipulation, ECF No. 16. The stipulation required Microsoft to respond to the motion for preliminary injunction and Answer the Complaint on January 20 and 26, respectively. *Id.* The Court entered the order adopting the stipulation on December 30, 2022. On January 11, 2023, Microsoft moved to stay the action

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO STAY CASE – CASE NO. 3:22-cv-08991-JSC

1   "pending the completion of any regulatory proceedings that would prevent Microsoft and

2   Activision Blizzard King from closing their proposed transaction." ECF No. 26 at 1. Microsoft

3   further moved for an expedited briefing schedule for their motion to stay the case. ECF No. 27.

4   The Court granted the motion for the expedited briefing, and set a response date of January 17,

5   2023 with a hearing on January 19, 2023. ECF No. 28.

6   **IV.   ARGUMENT**

7      Microsoft's motion to stay should be denied for the following reasons.

8      **A.   The Supreme Court Has Already Ruled that Plaintiffs' Suit Under Section 16
            May Proceed Simultaneously with the FTC Action**

9

10      Microsoft's motion is flatly inconsistent with the antitrust enforcement regime established

11  by Congress. In *United States v. Borden Co.*, 347 U.S. 514, 519 (1954), the Supreme Court

12  addressed this very issue. The Supreme Court held that private suits and regulatory proceedings

13  under the Clayton Act "may proceed simultaneously or in disregard of each other." *United States*

14  *v. Borden Co.,* 347 U.S. 514, 519 (1954). Pursuant to *Borden*, Defendant's motion must be

15  denied because the statutory framework explicitly contemplates simultaneous private suits and

16  regulatory proceedings.

17      The decision in *Borden* is based on fundamental precepts of antitrust enforcement in the

18  United States. Private antitrust enforcement, along with federal enforcement, are each integral to

19  that regime. Congress could have enshrined the federal regulatory interest as preeminent,

20  occupying the field, or so dominant that it leaves no room for private enforcement. It did not do

21  so. To the contrary, in passing Section 16, Congress ensured that private enforcement is an

22  integral coequal part of the United States' antitrust enforcement scheme. *See California v. Am.*

23  *Stores Co.,* 495 U.S. 271, 275 (1990) ("Private enforcement of the [Clayton] Act was in no sense

24  an afterthought; it was an integral part of the congressional plan for protecting competition.");

25  *Karseal Corp. v. Richfield Oil Corp.*, 221 F.2d 358, 365 (9th Cir. 1955) (private antitrust actions

26  "intended not merely to redress injury to an individual through the prohibited practices, but to aid

27  in achieving the broad social object of the statute . . . ."); *see also Radovich v. Nat'l Football*

28  *League*, 352 U.S. 445, 453 (1957) ("Congress has, by legislative fiat, determined that such

1   prohibited activities are injurious to the public and has provided sanctions allowing private

2   enforcement of the antitrust laws by an aggrieved party."). There is no statutory rule or mandate

3   for private cases to be stayed pending regulatory action. *See* 15 U.S.C. §26. This was no

4   oversight.

5          The law frequently permits the coequal private and public enforcement of federal law,

6   especially in the antitrust context. *See, e.g.*, *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322,

7   329 (1955) ("Congress created the Sherman Act's private cause of action not solely to

8   compensate individuals, but to promote the public interest in vigilant enforcement of the antitrust

9   laws."); *see also Morse v. Republican Party of Va.*, 517 U.S. 186, 230-35 (1996) (finding implied

10  right of private action in section 10 of the Voting Rights Act). Private antitrust litigation

11  concurrent with federal regulatory proceedings is authorized, not forbidden. It is encouraged, not

12  discouraged.

13         Microsoft's assumption that the FTC action controls Plaintiffs' case is mistaken. Private

14  suits and governmental suits—even where both seek injunctive relief under the Clayton Act—are

15  governed by "[d]ifferent policy considerations." *Borden*, 347 U.S. at 519. The cases Defendant

16  cites agree. In the Third Circuit case cited by Defendant in its motion, it was held that "the

17  injunctive relief afforded private litigants 'supplements government enforcement of the antitrust

18  laws'" and that "private and public antitrust injunctions" are "not mutually exclusive." *See*

19  *Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 249 (3d Cir. 2010) (quoting

20  *Borden*, 347 U.S. at 519).

21         **B.    Microsoft's Request Should be Denied Because it Effectively Seeks**
               **Abstention, and Microsoft has Failed to Show the Special Circumstances for**
22             **a Federal Court to Defer a Case over which it has Jurisdiction.**

23         Microsoft's request for a stay flies in the face of Ninth Circuit precedent holding that

24  Federal Courts may not pass responsibility for adjudicating claims to another jurisdiction, except

25  in exceptional circumstances. In *Mach-Tronics Inc. v. Zirpoli*, 316 F.2d 820, 824 (9th Cir. 1963),

26  the Ninth Circuit reversed a district court's grant of a stay pending the resolution of overlapping

27  claims in state court. The Court held that "when a federal court is presented with a case of which

28

it has [jurisdiction,] it may not turn the matter over for adjudication to [a court of another jurisdiction]." *Id.* Thus, "the pendency of an action in [another jurisdiction] is no bar to the proceedings concerning the same matter in the federal court." *Id.* The Ninth Circuit went on to hold that "[w]hen a district court decides to abstain" from hearing a case in deference to another jurisdiction, whether the court dismisses the suit or grants a stay, the effect on "the litigant, entitled to be heard . . . is the same, and just as disastrous to his [or her] rights." *Id*. at 834. Here, Microsoft does not even rely on any pending federal or state court proceeding to enjoin the merger. Instead, Microsoft asks the Court to abstain in favor of "any regulatory proceeding" around the world that might "prevent Microsoft and Activision from closing their proposed transaction." ECF No. 26 at 3. There is no compelling justification for such relief.

Similarly, in *In re California Gasoline Spot Market Antitrust Litigation*, No. 20-CV-03131-JSC, 2021 WL 1176645 (N.D. Cal. Mar. 29, 2021), the Court declined to grant a *Landis* stay against private federal antitrust plaintiffs even though the Attorney General of California had already filed largely the same claims in state court. The Court held that the *Colorado River* abstention doctrine[1] represents a "narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," and that cases warranting such relief are "rare," "limited," and "exceptional," with "only the clearest of justifications" supporting abstention. *Id.* at *11. Noting the highly circumscribed and "exceptional" power to abstain in favor of another case, the Court held that where a "stay is not warranted under *Colorado River*, *Landis* does not provide an alternative basis for a stay." *Id.* at *13. Although Microsoft couches its requested relief under *Landis*, it effectively seeks the same relief as *Colorado River* abstention. Microsoft asks the court to effectively abstain from hearing the Plaintiffs claims in deference to an administrative proceeding. This is no exceptional case. Microsoft has failed to show, and lacks, the "clearest of justifications." *Colo. River*, 424 U.S. at 819.

---

[1] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" (*quoting McClellan v. Carland*, 217 U.S. 268, 282 (1910)).

Moreover, Microsoft cannot meet the standard for a *Colorado River* stay because there are "substantial doubts" that the parallel action will resolve the instant lawsuit. *See California Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 1176645, at *12 (N.D. Cal. Mar. 29, 2021). ("The Ninth Circuit has cautioned that the existence of a substantial doubt as to whether the state proceedings will resolve the federal action generally precludes the granting of a *Colorado River* stay."). Far beyond "substantial doubts," the FTC administrative proceeding will not resolve Plaintiffs' claims because they are different cases. For starters, the FTC action is governed by different law.[2] The FTC action is also narrower in various respects. It does not allege that the trend in consolidation in the industry factors into the merger's unlawfulness under Section 7, as the Supreme Court has held. The FTC proceeding also does not prevent Microsoft from merging during the pendency of that action. Plaintiffs are not parties to the FTC action. And the FTC could decide to approve the merger or withdraw the challenge at any time for any number of reasons that do not protect Plaintiffs' interests. Thus, because Microsoft cannot meet the clearest of justifications for a *Colorado River* stay, "*Landis* does not provide an alternative basis for a stay." *Id.* at *13

## C.   Even Under the General *Landis* Stay Framework, Microsoft Cannot Meet Its High Burden for a Stay

Ignoring *Borden's* clear mandate that private and public enforcement actions may proceed simultaneously, Microsoft instead relies on the Court's general, but highly circumscribed power, to stay cases outlined in *Landis v. North American Co.*, 299 U.S. 248, 255 (1936). *Landis* involved actions pending in two different federal district courts challenging the constitutionality of a federal statute. While holding that a district court may in certain circumstances exercise its power to stay a pending case due to the pendency of other cases, the Supreme Court warned that

---

[2] *See infra* Section IV.C.2 (discussing why the FTC administrative proceeding is governed by the internal policies set forth in the Merger Guidelines, which do not carry the force of law and do not bind this Court.).

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO STAY CASE – CASE NO. 3:22-cv-08991-JSC

1   the power should be exercised only in very limited circumstances.[3] In fact, the Supreme Court

2   found the that lower court had exceeded its discretion and reversed the lower court's stay order

3   on the grounds the stay was indeterminant and had been issued without the requisite showing of

4   strong need.[4]

5        Microsoft fails to properly articulate the general *Landis* standard, and downplays the high

6   burden imposed on it. In *Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005), the Ninth

7   Circuit construed *Landis*. *Lockyer* reiterated that the party seeking a stay has a high burden.

8   Importantly, *Lockyer* held that, so long as there is "even a fair possibility" of harm to the other

9   party, the party seeking a stay "must make out a clear case of hardship or inequity in being

10   required to go forward." 398 F.3d at 1109. Microsoft's showing amounts to little more than a

11   showing that it would have to defend this lawsuit. But that is expressly insufficient. *Lockyer*, 398

12   F.3d at 1112 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case

13   of hardship or inequity.'"). Just as the Supreme Court did in *Landis*, the Ninth Circuit in *Lockyer*

14   reversed the district court's stay order. 398 F.3d at 1113.

15        Microsoft relies on inapposite authority. Several of Microsoft's cited cases involved the

16   identical party suing the same defendant in multiple jurisdictions. *See Vance v. Google LLC*,

17   2021 WL 534363 (N.D. Cal. Feb. 12, 2021); *Noble v. JP Morgan Chase Bank, Nat'l Ass'n*, 2022

18   WL 4229311, at *9 (N.D. Cal. Sept. 13, 2022). Here, the instant case is the only case by the

19   Plaintiffs against Microsoft and, indeed, the only pending case over Microsoft's merger in any

20   court, federal or state, anywhere in the United States. Many of Microsoft's cited cases also dealt

21   with specific situations posing unique concerns not present here. *See, e.g.*, *Zurich Am. Ins. Co. v.*

22

23   _____

[3] As Justice Cardozo wrote, "the suppliant for a stay must make out a clear case of hardship or

24   inequity in being required to go forward, if there is even a fair possibility that the stay for which
   he prays will work damage to someone else. Only in rare circumstances will a litigant in one

25   cause be compelled to stand aside while a litigant in another settles the rule of law that will
   define the rights of both." 299 U.S. at 255.

26   [4] *Landis*, 299 U.S. at 256; *see also Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731-32

27   (D.C. Cir. 2012) ("In *Landis*, the Supreme Court instructed that a court abuses its discretion in
   ordering a stay 'of indefinite duration in the absence of a pressing need.'" (quoting 299 U.S. at

28   255)).

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO
STAY CASE – CASE NO. 3:22-cv-08991-JSC

*Omnicell, Inc.*, 2019 WL 570760 (N.D. Cal. Feb 12, 2019) (suit by insurance company seeking declaration that it was not required to defend its insured in underlying action was stayed pending the resolution of the underlying action because the insured should not be required to defend against its own insurer during pendency of the claim on which insurer was defending, which would bear on the resolution of the duty to defend); *McElrath v. Uber Techs., Inc.*, No. 16-CV-07241-JSC, 2017 WL 1175591, at *5 (N.D. Cal. Mar. 30, 2017) (proposed class action suit brought by Uber employees pursuant to Ninth Circuit decision holding that class-action waiver was unenforceable, would be stayed pending that decision's appeal to the Supreme Court).

The only case that Microsoft cites that is even arguably on point is a decision from outside the Ninth Circuit. *See S. Austin Coal. Cmty. Council v. SBC Comm'ns Inc.*, 191 F.3d 842, 844 (7th Cir. 1999). That case did not rely on *Lockyer* or *Borden*. Moreover, *South Austin* is further distinguishable as it dealt with ripeness of adjudication and the dismissal of the underlying action, not whether to stay. Indeed, it does not appear that any other case has ever relied on *South Austin* to grant a stay. *See AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549, at * 12 (N.D. Cal. Oct. 26, 2011) ("[N]o court appears to have followed *South Austin*[.]").

Under the framework set forth by the Supreme Court in *Landis* and by the Ninth Circuit in *Lockyer*, Microsoft cannot sustain its high burden.[5]

### 1. Granting a Stay Will Substantially Prejudice Plaintiffs for the Same Reasons They Sought a Preliminary Injunction in the First Place

Plaintiffs will be significantly prejudiced by a stay. As shown in Plaintiffs' Motion for Preliminary Injunction, Plaintiffs will suffer irreparable harm if the merger is consummated before Plaintiffs' claims can be adjudicated. *See* ECF No. 4 at 23 ("[L]essening of competition 'is precisely the kind of irreparable injury that injunctive relief under Section 16 of the Clayton Act was intended to prevent.'"); ECF No. 4 at 24 ("[C]ivil litigation seeking divestiture and damages

---

[5] In addition to the reasons articulated, the proposed order Microsoft submits is also indeterminant, including as to its temporal scope. It is at least as broad as the orders found to exceed the courts' discretion in *Landis* or *Lockyer*.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO STAY CASE – CASE NO. 3:22-cv-08991-JSC

from a consummated merger can take years to resolve, which makes efforts to 'unscramble' the 'eggs' impractical.").

Microsoft does not dispute—and essentially concedes—that if Microsoft were allowed to merge before Plaintiffs' claims are heard, and Plaintiffs' prevail on their claims, Plaintiffs would sustain irreparable injury. *See* ECF No. 26 at 5–7. Instead, Microsoft claims only that "there is no immediate risk of the transaction closing." *Id*. at 6. That assertion is unsupported and unreliable. Nor is it relevant to the substantial prejudice Plaintiffs will face from a stay. Were Plaintiffs' claims stayed, there is substantial risk that Microsoft's merger will consummate before Plaintiffs can adjudicate their claims. In such event, Plaintiffs will be irreparably harmed. *See* ECF No. 4.

Significantly, Microsoft does not and cannot assert that the FTC proceeding prevents Microsoft from merging. *See id.* at 6. The FTC action does not prohibit Microsoft from consummating the merger during the pendency of the FTC action. Moreover, the FTC action is inexplicably scheduled for trial in August, 2023, after the July 18, 2023 deadline to consummate the merger. *See id.* at 3. Thus, if Plaintiffs' claims are stayed through the FTC action, Plaintiffs will be prevented from pursuing their claims, and Microsoft can merge before the FTC has even had its trial. There is nothing in the FTC action that would stop Microsoft from merging while Plaintiffs claims would be stayed.

Moreover, even if the FTC were to at some point file for a motion for preliminary injunction, and even if the FTC were granted a preliminary injunction, that would still not support a stay. Even then, Plaintiffs would still be significantly prejudiced by a stay because, as soon as the FTC chooses to approve the merger or drop its challenge, Microsoft could then merge, and Plaintiffs would be irreparably harmed. With Microsoft's pending merger looming, time is of the essence. Any delay is highly prejudicial to Plaintiffs' claims, and leaves Plaintiffs without any ability to protect themselves.

Remarkably, Microsoft relies on the pendency of foreign proceedings to assure the court that there is no likely harm. This argument is unprecedented. The competition regimes throughout the world are autonomous. Yet Microsoft asks the Court to stay Plaintiffs claims during the

pendency of "any regulatory proceedings" that "would prevent Microsoft" from closing the merger. ECF No. 26 at 3. The scope and duration of Microsoft's request is unclear. But according to Microsoft, it appears to include every single foreign regulatory proceeding worldwide.

Moreover, even if it were germane, there is no evidence before the Court of the nature, scope or extent of the foreign proceedings. Microsoft simply asserts that Microsoft will not consummate the merger "until [it has] regulatory approval from foreign regulators . . . ." *Id.* at 6. Microsoft provides no support for this bald assertion. *Id.* And even if Microsoft's unsubstantiated statement were credited, the foreign regulatory actions could be concluded at any time, without notice to Plaintiffs. Plaintiffs here are not parties to any regulatory proceeding.

If foreign regulatory actions conclude, Microsoft could close the merger immediately (assuming they cannot do so already). Microsoft attempts to assure the Court that the foreign approval process "will take at least several more months," stating that the deadlines to complete the two foreign approval processes are April 11 and April 26, 2023. *Id.* at 6. This is far from ironclad. Even Microsoft's own Exhibits F and G contradict its assurance. As stated in Exhibit G, the CMA "aims to complete [its] inquiry as soon as possible and in advance of [April 26, 2023]." *See* ECF No. 26-8. And as stated in Exhibit F, the European Commission's April 11 date is merely a "provisional deadline." *See* ECF No. 26-7. Microsoft provides no basis to conclude that the European Commission will not complete its review far earlier than April 11.

Next, even if Microsoft were required to await foreign regulatory approval, and even if that regulatory approval does not come until April 2023, Plaintiffs will still be substantially prejudiced by a stay. If, for example, upon the conclusion of the foreign regulatory process, the stay is lifted, Plaintiffs will then have to begin the discovery process and prepare their entire case at that time in extremely short order. That would be highly prejudicial to Plaintiffs' claims, even assuming Microsoft did not consummate the merger immediately. If a stay is granted, Plaintiffs would be precluded from preparing their case during the short and rapidly closing window of time they presently have.

Further, Microsoft's claim that Plaintiffs' interests are "fully represented by the FTC" ring hollow. ECF No. 26 at 6. First, that assertion is at odds with Microsoft's assertion that it is the pendency of the foreign regulatory proceedings, not those of the FTC, which are preventing the consummation of the merger. As Microsoft itself sets forth, the FTC has essentially outsourced regulatory oversight of the proposed merger to other non-US regulators. It has not filed a federal court action to preliminarily enjoin the merger during the pendency of the FTC administrative action. Regardless of the reasons for the FTC's lack of vigor, the FTC does not represent the interests of Plaintiffs.

The FTC is under no obligation to protect Plaintiffs' interests. The FTC proceedings are regulatory adjudicatory proceedings governed by different rules and subject to many different policy, political, resource, and other considerations. *See Borden*, 347 U.S. at 519 (agency proceedings governed by "[d]ifferent policy considerations."). They are not open proceedings, and Plaintiffs are not parties to them. Plaintiffs have no opportunity to participate to be heard, and have no insight into the FTC's proceedings, strategy, or goals. Much of the FTC proceeding is operating under confidentiality rules that blind Plaintiffs from those proceedings. For example, Microsoft has cited limited portions of heavily redacted records. *See* ECF Nos. 26-2 and 26-3 [Microsoft's Exhibits A, B].[6] The fact that these materials are only shared in heavily redacted form further demonstrate the disconnect and lack of identify between plaintiffs' claims and the FTC.

Indeed, the FTC may choose to abandon its claims and approve the merger; the FTC may lose at trial under the higher burden self-imposed by the Merger Guidelines;[7] or the FTC may choose to approve the merger with some concessions by Microsoft that do not protect Plaintiffs'

---

[6] Microsoft relies on heavily redacted materials from the FTC proceedings. Microsoft did not file a motion to seal and did not provide the Court or Plaintiffs with the un-redacted documents. The fact that Microsoft has asked the Court to stay Plaintiffs case on less than complete records is suspect and insufficient, particularly given the extraordinary relief Microsoft seeks.

[7] Available at
https://www.ftc.gov/system/files/documents/public_statements/804291/100819hmg.pdf.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO STAY CASE – CASE NO. 3:22-cv-08991-JSC

interest. Under any of these, Microsoft would then be able to consummate the merger and Plaintiffs will be irreparably harmed.

The only way for Microsoft to assure the Court and Plaintiffs that Plaintiffs will not be substantially prejudiced by a stay, is to provide Plaintiffs with all necessary discovery now, and consent to Plaintiffs' motion for preliminary injunction. If Microsoft's statements about its inability to close the merger until regulatory approval is concluded are true, Microsoft should have no objection to consenting to Plaintiffs' preliminary injunction. But without being able to pursue discovery and prepare their case now, and without a preliminary injunction to ensure the merger does not close before Plaintiffs can establish the merger's illegality under Section 7 of the Clayton Act, Plaintiffs will be irreparably harmed. A stay would preclude Plaintiffs from both and would substantially prejudice Plaintiffs' ability to pursue their claims. Granting a stay would thus preclude the preservation of the status quo.

### 2. Microsoft's Burden in Defending this Lawsuit Provides No Basis for a Stay, and is Greatly Exaggerated

Microsoft does not and cannot show a "a clear case of hardship or inequity" to justify a stay. *Lockyer*, 398 F.3d at 109. Microsoft's motion alleges "hardship" only in the form of having to defend two suits at once, with the potential for "duplicative discovery" and "inconsistent rulings." ECF No. 26 at 7–8. But *Lockyer* makes clear that having to defend two suits at once is insufficient for a stay. *Lockyer*, 398 F.3d, at 1112 ("[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."); *see also FormFactor Inc. v. Micronics Japan Co.*, 2008 WL 361128, at *2 (N.D. Cal. Feb. 11, 2008) ("The hardship related to defending a lawsuit is irrelevant when considering whether to grant a stay.").

First, with respect to Microsoft's argument that it will suffer hardship through duplicative discovery, that argument is groundless, as discovery is simply part of defending a suit, and "does not constitute a clear case of hardship or inequity." *See Lockyer*, 398 F.3d at 1112; *Am. Honda Motor Co. v. Coast Distribution Sys., Inc.*, 2007 WL 672521, at *2 (N.D. Cal. Feb. 26, 2007) (holding that "duplicative discovery . . . is irrelevant when considering whether to grant a stay"

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO STAY CASE – CASE NO. 3:22-cv-08991-JSC

as it is merely "the hardship attendant with being forced to defend a lawsuit"); *In re ConAgra Foods, Inc.*, No. CV 11-005379-MMM (AGRx), 2014 WL 12580052, at *8 (C.D. Cal., Dec. 29, 2014) (same).

Moreover, even if it were relevant, Microsoft's attempt to demonstrate special hardships through duplicative discovery is meager. Plaintiffs anticipate the discovery burden in this case will be constrained and can be efficiently managed in a straightforward manner. For example, Plaintiffs have expressed to Microsoft that Plaintiffs intend to seek the materials Microsoft has already provided to the FTC, in particular those materials Microsoft was obligated to provide to the government in connection with the merger under the Hart-Scott-Rodino Act investigation. *See* 15 U.S.C. § 18a; 16 C.F.R. § 803.20. Plaintiffs also do not intend to take voluminous depositions. Plaintiffs have attempted to meet and confer with Defendants over discovery under Rule 26(f), but Defendants have thus far either refused or avoided meeting and conferring with Plaintiffs over discovery. Any discovery issues can be worked out by the parties with Court intervention as needed.

Second, Microsoft claims that it will be subject to inconsistent rulings. This fails as well. Unlike *Landis* and other cases, Microsoft is not even subject to claims by identical parties. There are no other private lawsuits pending in the United States. Indeed, there are no other lawsuits in any courts at all. There is no risk of inconsistent rulings because there are no duplicate proceedings.

Further, the FTC action is governed by a different legal standard than Plaintiffs' private Section 16 action. The FTC, like the DOJ, is constrained by the self-imposed Merger Guidelines.[8] In this private case, the merger guidelines carry no force of law.[9] They are internal

---

[8] *See* Horizontal Merger Guidelines at 1, available at https://www.ftc.gov/system/files/documents/public_statements/804291/100819hmg.pdf ("These Guidelines outline the . . . enforcement policy of the Department of Justice and the Federal Trade Commission.").

[9] *See, e.g.*, Timothy Muris, Prepared Remarks, June 10, 2022, available at https://www.ftc.gov/news-events/news/speeches/prepared-remarks-0 ("The Guidelines lack the force of law. They formally bind no one - not the courts, not other countries, not even the Department of Justice.").

policy guidelines not binding on any courts. *Id.* They have never been codified by statute or regulation. Indeed, part of why Plaintiffs' suit is so important, is precisely because the executive branch has largely strayed from enforcing Congress's antitrust policy under the Clayton Act.[10] Because the FTC and other agencies choose to abide by the Merger Guidelines, the administrative proceeding before the Commission will follow the legal framework outlined in the Merger Guidelines, rather than follow Congress's chosen merger policy as interpreted by the Supreme Court cases that control Plaintiffs' action. *See* Pls' Mot. for Prelim. Inj., ECF No. 4 at 7–22. If the FTC proceeds to adjudicate the claims on the merits, the two actions will be subject to different legal standards.

The statutory framework established by Congress explicitly contemplates differences—and therefore inconsistencies—between private cases and federal regulatory proceedings. *See Borden*, 347 U.S. at 519 (holding private enforcement and regulatory enforcement "may proceed simultaneously or in disregard of each other"). That is the nature of the Clayton Act, in which simultaneous private and regulatory action are governed by "[d]ifferent policy considerations." *Id.*; *see also AT&T Mobility LLC v. Bernardi*, 2011 WL 5079549, at * 12 (N.D. Cal. Oct. 26, 2011) (granting preliminary injunction despite ongoing DOJ action as "[T]he status of the DOJ case is not dispositive because the DOJ stands in different shoes from individual private Plaintiffs").

Defendants have therefore failed to establish a "clear case of hardship or inequity" to justify a stay.

### 3.   Staying This Case Until All Regulatory Proceedings Concludes Will Not Promote the "Orderly Course of Justice"

Microsoft further argues that a stay would promote the "orderly course of justice," solely because "there is considerable overlap between the legal and factual issues presented" between the two cases. ECF No. 26 at 9. In fact, a stay is likely to harm the orderly course of justice.

---

[10] As one notable antitrust scholar has observed: "[federal agencies'] [m]erger control has wandered so far from Congress's expressed intent in 1950 as to make a mockery of the democratic process." Tim Wu, *The Curse of Bigness: Antitrust In The New Gilded Age* 128 (2018).

—

As discussed above, if Plaintiffs' case is stayed, there is a high likelihood that Microsoft will consummate the merger before Plaintiffs can prove their claims. That result would not only irreparably harm Plaintiffs but would also drastically complicate this proceeding and immeasurably expand its scope. In that event, Plaintiffs' claims would change from an accelerated case solely on the issue of whether the merger is unlawful under Section 7, into a drawn-out complex proceeding seeking divestiture and damages. There would be no way to restore the current status quo, *ex ante*. As has been stated, such an action would likely take years to resolve, making efforts to "unscramble" the "egg" impractical. *See* ECF No. 4 at 24. Discovery would also balloon substantially, as the Plaintiffs would then need to prove damages and devise a remedy for divestiture. In short, the Court would need to adjudicate a much more complicated and expanded case than the one Plaintiffs pursue now. That is precisely what Plaintiffs aim to prevent through their motion for preliminary injunction and accelerated trial.

Moreover, the FTC case and the Plaintiffs' case are not identical. They pursue different theories of harm and operate under different legal standards. And because the Plaintiffs in both cases are different, and the legal standards not identical, neither claim nor issue preclusion would apply. Thus, even if the FTC case does address similar issues to Plaintiffs, they will not have preclusive effect against Plaintiffs in this case.

## V.     CONCLUSION

For all the above reasons, the Court should deny Microsoft's motion to stay Plaintiffs' case pending all regulatory proceedings.

Dated: January 17, 2023                  By:    /s/ Joseph M. Alioto
                                                  Joseph M. Alioto


                                          Joseph M. Alioto (SBN 42680)
                                          Tatiana V. Wallace (SBN 233939)
                                          **ALIOTO LAW FIRM**
                                          One Sansome Street, 35th Floor
                                          San Francisco, CA  94104
                                          Telephone:      (415) 434-8900
                                          Facsimile:      (415) 434-9200
                                          Email:          jmalioto@aliotolaw.com


Dated:  January 17, 2023                  By:    /s/ Joseph R. Saveri
                                                  Joseph R. Saveri


                                          Joseph R. Saveri (State Bar No. 130064)
                                          Steven N. Williams (State Bar No. 175489)
                                          Cadio Zirpoli (State Bar No. 179108)
                                          Elissa Buchanan (State Bar No. 249996)
                                          David H. Seidel (State Bar No. 307135)
                                          **JOSEPH SAVERI LAW FIRM, LLP**
                                          601 California Street, Suite 1000
                                          San Francisco, California 94108
                                          Telephone:      (415) 500-6800
                                          Facsimile:      (415) 395-9940
                                          Email:          jsaveri@saverilawfirm.com
                                                          swilliams@saverilawfirm.com
                                                          czirpoli@saverilawfirm.com
                                                          eabuchanan@saverilawfirm.com
                                                          dseidel@saverilawfirm.com

                                          Joseph M. Alioto Jr. (SBN 215544)
                                          **ALIOTO LEGAL**
                                          100 Pine Street, Suite 1250
                                          San Francisco, California 94111
                                          Tel: (415) 398-3800
                                          Email:          joseph@aliotolegal.com



                                          Plaintiffs' Counsel

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO
STAY CASE – CASE NO. 3:22-cv-08991-JSC