Valarie C. Williams (Bar No. 335347)
Tania Rice (Bar No. 294387)
Tyler Blake (Bar No. 316623)
Alston & Bird LLP
560 Mission Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
valarie.williams@alston.com
tania.rice@alston.com
tyler.blake@alston.com

B. Parker Miller (*pro hac vice to be filed*)
Alston & Bird LLP
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7000
parker.miller@alston.com

Rakesh N. Kilaru (*pro hac vice*)
Anastasia M. Pastan (*pro hac vice*)
Jenna Pavelec (*pro hac vice*)
Wilkinson Stekloff LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
rkilaru@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com
jpavelec@wilkinsonstekloff.com

*Counsel for Defendant Microsoft Corporation*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANTE DEMARTINI, *et al.*,<br><br>           Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>           Defendant. | Case No. 3:22-cv-08991-JSC<br><br>**DEFENDANT MICROSOFT CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hon. Jacqueline Scott Corley<br><br>Date: March 9, 2023<br>Time: 10:00 a.m.<br>Courtroom: 8 – 19th Floor |

i

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on March 9, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard by the Court, located in Courtroom 8 – 19th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, Defendant Microsoft Corporation will and hereby does move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss this action for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

Microsoft moves to dismiss the action on the ground that the Court lacks subject matter jurisdiction, because Plaintiffs' claims are unripe and they lack standing. Microsoft also moves to dismiss Plaintiffs' Complaint on the ground that it does not allege sufficient facts to state a plausible claim of anticompetitive harm or harm to Plaintiffs.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all pleadings and papers on file in this action, and upon such other matters that the Court may rely on or as may be presented to the Court at the time of the hearing.


Dated: January 31, 2023                    Respectfully submitted,


                                           By:   /s/ Valarie C. Williams

                                           Valarie C. Williams
                                           B. Parker Miller
                                           Tania Rice
                                           Tyler Blake
                                           Alston & Bird LLP

                                           Rakesh N. Kilaru
                                           Anastasia M. Pastan
                                           Jenna Pavelec
                                           Wilkinson Stekloff LLP

                                           *Counsel for Defendant Microsoft Corporation*

1

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     ISSUES TO BE DECIDED .................................................................................. 1

III.    FACTUAL BACKGROUND ................................................................................ 2

        A.      Plaintiffs' Claims ..................................................................................... 2

        B.      Posture of the Underlying Transaction .................................................... 3

IV.     LEGAL STANDARD ........................................................................................... 4

V.      ARGUMENT ........................................................................................................ 4

        A.      Plaintiffs Have Not Plausibly Alleged an Appreciable Danger of
                Anticompetitive Effects ........................................................................... 4

                1.      *Plaintiffs Have Not Alleged Facts Showing that the Proposed
                        Acquisition May Substantially Lessen Competition (Horizontal Theory)*
                        .................................................................................................. 5

                2.      *Plaintiffs Have Not Alleged Facts Showing that Microsoft Is Likely to
                        Exclude Competitors' Platforms (Vertical Theory)* .......................... 9

                3.      *Plaintiffs Have Not Alleged Facts Showing a Viable Claim Based on
                        Lessened Competition in the Labor Market (Labor Market Theory)* ............ 11

        B.      Plaintiffs' Claim Is Not Ripe .................................................................. 11

        C.      Plaintiffs Lack Standing to Bring Their Claim ...................................... 15

                1.      *Plaintiffs Lack Standing Because the Transaction Has Not Been
                        Approved* ................................................................................... 15

                2.      *Plaintiffs Lack Standing to Assert a Claim Based on Competition for
                        Labor* ......................................................................................... 16

        D.      Plaintiffs Are Not Entitled to Injunctive Relief ................................... 16

VI.     CONCLUSION ..................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Addington v. US Airline Pilots Ass'n*,
    606 F.3d 1174 (9th Cir. 2010) .......................................................................12, 13

*Alberta Gas Chems., Ltd. v. E. I. Du Pont de Nemours & Co.*,
    826 F.2d 1235 (3d Cir. 1987)..............................................................................10

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................................4, 10

*AT&T Mobility LLC v. Bernardi*,
    No. C 11-03992 CRB, 2011 U.S. Dist. LEXIS 124084 (N.D. Cal. Oct. 26, 2011)...........12, 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................4, 5, 6, 14

*Bradt v. T-Mobile US, Inc.*,
    No. 19-cv-07752-BLF, 2020 U.S. Dist. LEXIS 44141 (N.D. Cal. Mar. 13, 2020).................13

*California v. Am. Stores Co.*,
    495 U.S. 271 (1990).............................................................................................16

*Camaisa v. Pharm. Rsch. Assocs.*,
    No. 21-cv-00775, 2022 U.S. Dist. LEXIS 50803 (D. Del. Mar. 22, 2022) .............................8

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..............................................................................................15

*Crouse-Hinds Co. v. Internorth, Inc.*,
    518 F. Supp. 416 (N.D.N.Y. 1980) .......................................................................11

*DeHoog v. Anheuser-Busch InBev SA/NV*,
    899 F.3d 758 (9th Cir. 2018) ....................................................................4, 5, 10, 13

*EuroTec Vertical Flight Sols., LLC. v. Safran Helicopter Engines S.A.S.*,
    No. 3:15-cv-3454, 2019 U.S. Dist. LEXIS 129084 (N.D. Tex. Aug. 1, 2019) .......................8

*FTC v. Facebook, Inc.*,
    560 F. Supp. 3d 1 (D.D.C. 2021) ............................................................................7

*Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*,
    No 3:09-cv-03854-MMC, U.S. Dist. LEXIS 133999 (N.D. Cal. Oct. 22, 2009) ...................16

*Korea Kumho Petrochemical v. Flexsys Am. LP*,
    No. C07-01057, 2008 U.S. Dist. LEXIS 68559 (N.D. Cal. Mar. 11, 2008)............................7

*Kowalski v. Tesmer*,
  543 U.S. 125 (2004) ..................................................................................................16

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
  634 F.2d 1197 (9th Cir. 1980) ...................................................................................16

*Malaney v. UAL Corp.*,
  No. 3:10-CV-02858, 2010 U.S. Dist. LEXIS 106049 (N.D. Cal. Sept. 27, 2010),
  *aff'd*, 434 F. App'x 620 (9th Cir. 2011) ......................................................................6

*Med. Vets, Inc. v. VIP Petcare Holdings, Inc.*,
  811 F. App'x 422 (9th Cir. 2020) ...............................................................................7

*Med Vets, Inc. v. Vip Petcare Holdings, Inc.*,
  No. 18-cv-02054-MMC, 2019 U.S. Dist. LEXIS 68099 (N.D. Cal. Apr. 22, 2019),
  *aff'd*, 811 F. App'x 422 (9th Cir. 2020) .....................................................................9

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
  No. 1:21-cv-00540-AWI-EPG, 2022 U.S. Dist. LEXIS 126239 (E.D. Cal. July 15,
  2022) .................................................................................................................5, 6, 9

*New York v. Deutsche Telekom AG*,
  439 F. Supp. 3d 179 (S.D.N.Y. 2020) .......................................................................13

*Norbert v. City & County of San Francisco*,
  10 F.4th 918 (9th Cir. 2021) ......................................................................................16

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*,
  No. 5:16-cv-06370-EJD, 2017 U.S. Dist. LEXIS 160238 (N.D. Cal. Sept. 28,
  2017) ...........................................................................................................................9

*Physician Specialty Pharm., LLC v. Prime Therapeutics, LLC*,
  No. 18-cv-1044, 2019 U.S. Dist. LEXIS 159853 (D. Minn. Aug. 8, 2019) ...........10

*Reazin v. Blue Cross & Blue Shield, Inc.*,
  663 F. Supp. 1360 (D. Kan. 1987) ............................................................................10

*Rebel Oil Co. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ......................................................................................9

*S. Austin Coal. Cmty. Council v. SBC Commc'ns, Inc.*,
  No. 98 C 3014, 1999 U.S. Dist. LEXIS 949 (N.D. Ill. Jan. 26, 1999), *aff'd*, 191
  F.3d 842 (7th Cir. 1999) ...........................................................................................14

*Safe Air For Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ....................................................................................4

*Sherwin-Williams Co. v. Dynamic Auto Images, Inc.*,
  No. SACV 16-1792, 2017 U.S. Dist. LEXIS 174303 (C.D. Cal. Mar. 10, 2017) ....8

v

*South Austin Coalition Community Council v. SBC Communications, Inc.*,
  191 F.3d 842 (7th Cir. 1999) ............................................................12, 14

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)..........................................................................15

*SureShot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*,
  No. H-17-127, 2017 U.S. Dist LEXIS 135796 (S.D. Tex. Aug. 24, 2017), *aff'd in
  part & modified in part by* 754 F. App'x 235 (5th Cir. 2017).................15

*Taleff v. Sw. Airlines Co.*,
  828 F. Supp. 2d 1118 (N.D. Cal. 2011), *aff'd* 554 F. App'x 598 (9th Cir. 2014) ..................16

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)......................................................................15

*Trump v. New York*,
  141 S. Ct. 530 (2021)........................................................................11

*United States v. AT&T Inc.*,
  310 F. Supp. 3d 161 (D.D.C. 2018), *aff'd*, 916 F.3d 1029 ....................10

*United States v. AT&T, Inc.*,
  916 F.3d 1029 (D.C. Cir. 2019)........................................................9, 10

*United States v. Syufy Enters.*,
  903 F.2d 659 (9th Cir. 1990) .............................................................8, 9

**Statutes**

Clayton Antitrust Act............................................................... *passim*

**Other Authorities**

Rule 12(b)(1)..................................................................................3, 4

Rule 12(b)(6)..................................................................................3, 4

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

## I.   INTRODUCTION

Microsoft, the third largest manufacturer of gaming consoles and only one of a multitude of companies producing video game content for various platforms, is attempting to acquire Activision Blizzard, a producer of popular video games.  Ten individual gamers have brought this case to try to stop that prospective transaction—a transaction they readily admit is under antitrust review around the world and accordingly is subject to change before it closes.  Rather than wait for the results of investigations by the Federal Trade Commission, the European Commission, the U.K.'s Competition & Markets Authority, and other worldwide regulators, they contend that they are entitled to access a federal court now, to seek relief for ambiguous, speculative, and theoretical harms.  The gamers also seek to leverage their inadequate claims to justify extensive discovery, including immediate depositions of top executives at Microsoft, Activision Blizzard, and other third parties.  Finally, they contend that this Court should hold a trial and *permanently* enjoin Microsoft from acquiring Activision Blizzard, under the current deal terms, as soon as possible, without waiting for world regulators to finish their work.

As discussed below, this Complaint should be dismissed because Plaintiffs have failed to state any facts that would support a claim for a violation of antitrust law.  Their Complaint is devoid of facts except for a single unsupported "market share" figure that is untethered to any of Plaintiffs' alleged product markets.  Additionally, Plaintiffs' claim is unripe and Plaintiffs lack constitutional standing to assert it.  Finally, Plaintiffs are not legally entitled to seek the equitable remedy of an injunction when, as here, monetary damages would provide an adequate remedy.

## II.   ISSUES TO BE DECIDED

Whether Plaintiffs' claim alleging violation of Section 7 of the Clayton Antitrust Act (15 U.S.C. § 18), seeking to prohibit Microsoft's acquisition of Activision Blizzard, should be dismissed because: (1) Plaintiffs have failed to allege a plausible claim of harm to competition, (2) it is unripe, (3) Plaintiffs lack constitutional standing, and/or (4) Plaintiffs are not legally entitled to injunctive relief when monetary remedies are available.

## III.    FACTUAL BACKGROUND

### A.    Plaintiffs' Claims

Plaintiffs seek to stop a prospective transaction in which Microsoft would acquire Activision Blizzard.  (Compl. ¶ 1.)  Plaintiffs allege that both Microsoft and Activision Blizzard develop, publish, and distribute competing video games.  (*Id.* ¶¶ 5, 124-129.)  Microsoft and Activision Blizzard are two of many companies that develop, publish, and/or distribute video games (Plaintiffs do not allege specifically how many competitors there are).  (*Id.* ¶¶ 76, 124-129.)  Video games can generally be played on a variety of different platforms, including game consoles, personal computers ("PCs"), mobile devices, and cloud-based systems.  (*Id.* ¶¶ 78-122, 286.)  Microsoft owns and sells one of the three major game consoles (Xbox) and one of the primary operating systems for PCs (Windows).  (*Id.* ¶¶ 7, 87.)

Plaintiffs are ten individuals who play video games and have purchased Activision Blizzard titles, which they play on a variety of platforms—Xbox, PlayStation, and Nintendo Switch consoles, PCs, and/or mobile devices.  (*Id.* ¶¶ 23-33.)  Eight of the ten Plaintiffs play Activision Blizzard games on more than one platform—usually both a console and their PC.  (*Id.*)  Plaintiffs assert a claim under Section 7 of the Clayton Antitrust Act, which concerns mergers and acquisitions whose effect "may be substantially to lessen competition, or to tend to create a monopoly."  15 U.S.C. § 18.  They allege three theories of relief:

(1)    "Horizontal Theory":  Plaintiffs allege that Microsoft and Activision Blizzard are horizontal competitors in developing, publishing, and selling video games and that the proposed acquisition may lessen competition in the video game market.  (*Id.* ¶¶ 252-275.)  Plaintiffs have alleged ten scattershot product markets that they assert are relevant to their Complaint, but only five in which they allege that Microsoft and Activision Blizzard both compete: video games; console gaming; PC gaming; mobile gaming; and "Triple-A" games.  (*Id.* ¶¶ 130-179.)  Plaintiffs have not alleged how many competitors develop, publish, and/or distribute video games in each of these supposed "markets."  They allege only a single, unsupported (and vastly incorrect) market share statistic, related to one component of one of the product markets (video games): alleging that Microsoft has an approximate 23.9% market share of some undefined market for game *publishing* and Activision

2

Blizzard has an approximate 10% market share of game *publishing*.  (*Id.* ¶¶ 269-270.)

(2)    "Vertical Theory":  Plaintiffs allege that Microsoft's control of one of the popular video game consoles and computer operating systems and its proposed purchase of Activision Blizzard could allow it to make Activision Blizzard's games exclusive or partially exclusive to Microsoft platforms. Plaintiffs' other five product "markets" could only relate to this theory since Activision Blizzard is not a competitor in these markets: video game subscription services; video game console systems; high-performance video game console systems; computer operating systems; and cloud-based gaming services.  (*Id.* ¶¶ 171-203.)  Plaintiffs allege that Microsoft (Xbox) and Sony (PlayStation) "compete vigorously with one another" in the console space.  (*Id.* ¶ 292.)  But they allege that the prospective acquisition could give Microsoft "the ability to foreclose important inputs to rivals of console gaming by making some or all of Activision Blizzard's important catalog of games, including *Call of Duty*, exclusive . . . or partially exclusive" to Microsoft platforms.  (*Id.* ¶ 290.)  Plaintiffs admit, however, that Microsoft has made public promises that it will continue to keep Activision Blizzard's games available on other platforms.  (*Id.* ¶ 306.)

(3)    "Labor Market Theory":  Plaintiffs allege that the proposed acquisition could lessen competition for labor between video game developers, publishers, and distributors.  (*Id.* ¶¶ 276-279.) However, Plaintiffs do not allege a legally proper market, they do not allege that they work in this industry, and they do not allege how they would be harmed by any change in the labor market.

**B.    Posture of the Underlying Transaction**

While Plaintiffs' allegations are taken as true for purposes of Microsoft's motion to dismiss under Rule 12(b)(6), the Court may consider an important additional fact with respect to Microsoft's motion under Rule 12(b)(1): the prospective acquisition has not yet closed and is under review by multiple domestic and foreign regulators.  Microsoft is currently working cooperatively with multiple regulators around the world, including the European Commission ("EC") and the United Kingdom's Competition and Markets Authority ("CMA"), to obtain approvals to close the transaction.  (*See* Dkt. 26-1 through 26-8.)  The FTC has filed a complaint against Microsoft and Activision Blizzard, in which it is has a deadline of April 7 to complete discovery and has a hearing set for August of 2023. (Dkt. 26-6.)  The EC and CMA's reviews are currently scheduled to continue through April.  (Dkt.

26-7, 26-8.)  Microsoft has stated that it is engaging with the regulators, which could lead to remedies that may alter the transaction, such as a provision requiring Microsoft to continue making Activision Blizzard games available on competitors' consoles (which directly relates to Plaintiffs' Vertical Theory).  (*See* Dkt. 26 at 5, 7.)

## IV.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must dismiss the plaintiff's complaint if it fails to state a claim for relief.  To survive a motion to dismiss, the plaintiff must have alleged facts establishing a plausible claim for relief that exceeds a speculative level.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[L]abels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" do not constitute well-pleaded facts that are entitled to the presumption of truth. *Id.*

Pursuant to Rule 12(b)(1), a court must dismiss an action for lack of subject matter jurisdiction under Article III of the Constitution if the plaintiff's claim is unripe or the plaintiff lacks standing.  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment," and the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*

## V.     ARGUMENT

### A.     Plaintiffs Have Not Plausibly Alleged an Appreciable Danger of Anticompetitive Effects

Section 7 of the Clayton Antitrust Act concerns mergers and acquisitions whose effect "may be substantially to lessen competition, or to tend to create a monopoly."  15 U.S.C. § 18.  Under the Ninth Circuit's burden-shifting framework for claims under Section 7 of the Clayton Act, Plaintiffs "must first establish a prima facie case that a merger is anticompetitive."  *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 763 (9th Cir. 2018) (quoting *St. Alphonsus Med. Ctr. - Nampa, Inc. v. St. Luke's Health Sys.*, 778 F.3d 775, 783 (9th Cir. 2015)).  To survive a motion to dismiss, Plaintiffs must also meet the standard of *Twombly* and *Iqbal*: alleging sufficient factual matter to state a plausible

claim for relief that exceeds a speculative level and does not rely on naked assertions or conclusions. *Id.* "In practical terms, this means adequately alleging facts that an acquisition creates 'an appreciable danger' or 'a reasonable probability' of anticompetitive effects in the relevant market." *Id.*

"[P]roceeding to antitrust discovery can be expensive" and carry "unusually high" costs; the plausibility requirement is important, "lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557-58 (2007). Microsoft and third parties, who are otherwise fully engaged with antitrust regulators around the world, should not be forced to concurrently litigate a parallel case based on the speculative and conclusory allegations in this Complaint. Plaintiffs have not alleged facts establishing the plausibility of an "appreciable danger" or "reasonable probability" of anticompetitive effects. Each of their three theories (Horizonal Theory, Vertical Theory, and Labor Market Theory) fails.

### 1. Plaintiffs Have Not Alleged Facts Showing that the Proposed Acquisition May Substantially Lessen Competition (Horizontal Theory)

To plead their Horizontal Theory, Plaintiffs must plausibly allege facts showing that Microsoft's post-acquisition market power—its singular ability to raise prices and restrict output in the market—may *substantially* lessen competition. *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, No. 1:21-cv-00540-AWI-EPG, 2022 U.S. Dist. LEXIS 126239, at *15-16 (E.D. Cal. July 15, 2022). "[A]llegations of market power must be sufficiently detailed 'to raise a right to relief above the speculative level.'" *Id.* at *16 (quoting *Rick-Mik Enters., Inc. v. Equilon Enters. LLC*, 532 F.3d 963, 973 (9th Cir. 2008)). Plaintiffs may meet this hurdle by alleging direct evidence of actual injury (such as restricted output or supracompetitive prices) or circumstantial evidence of market share and barriers to market entry. *Id.* at *15. Here, Plaintiffs do not (and cannot) allege direct evidence because the transaction has not yet occurred. To plead circumstantial evidence, Plaintiffs are required to (1) define the relevant market, (2) plead factual allegations showing that "the defendant owns a dominant share of that market," and (3) plead factual allegations showing that "there are significant barriers to entry *and* that existing competitors lack the capacity to increase their output in the short run." *Id.* at *15 (emphasis added) (citing *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 484 (9th Cir.

2021)).  Plaintiffs have not done so.  To the extent Plaintiffs attempt to rely, as they do in their motion for preliminary injunction, on decades-old cases for the proposition that removing a significant competitor from the relevant market is sufficient to state a Section 7 claim, courts have already rejected those arguments made by these same counsel in other cases.  *See Malaney v. UAL Corp.*, No. 3:10-CV-02858, 2010 U.S. Dist. LEXIS 106049, at *25 (N.D. Cal. Sept. 27, 2010) ("[P]laintiffs' proposed approach that any non-trivial acquisition of a significant rival is per se violative of the Clayton Act is wrong."), *aff'd*, 434 F. App'x 620 (9th Cir. 2011).

Plaintiffs do not allege facts establishing market share in any of the Complaint's identified relevant markets.  Indeed, Plaintiffs' background allegations describe an overall video game market in which there is dispersed competition at multiple levels: there are numerous game developers (Plaintiffs do not specify how many) that create and develop games (Compl. ¶¶ 76, 124-127); there are "several" publishers (Plaintiffs do not allege how many) who produce the games for distribution (*Id.* ¶ 128); there are various distributors who sell the games (again, Plaintiffs do not allege how many) through digital stores and elsewhere (*Id.* ¶ 129); and there are several ways that consumers can access the games, including through three competitors' console systems, consumers' own computers, and cloud and mobile outlets (*Id.* ¶¶ 78-122).

Plaintiffs' allegations are insufficient to plausibly show that the acquisition would give Microsoft a "dominant share" in any relevant market that would allow it to decrease the quality, innovation, diversity, and output of video games or increase video game prices (as asserted in paragraph 331 of the Complaint).  *See Netafim Irrigation*, 2022 U.S. Dist. LEXIS 126239, at *15.  Notably, Plaintiffs do not include any factual allegations of the combined market share of Microsoft and Activision Blizzard, the number of competitors remaining post-merger, or any other specific facts to support an ability to increase prices or decrease output in any of the alleged horizontal markets.  Rather, Plaintiffs' Complaint is rife with conclusory allegations that Microsoft and Activision Blizzard are two of the "most important" competitors in the video game market with some of the "most iconic and popular" games.  (Compl. ¶¶ 255-256, 282).   Plaintiffs also summarily allege that "the proposed acquisition may substantially lessen competition" in each of the ten relevant markets, but they provide no factual support.  (*Id.* ¶ 223).  Such unsupported allegations should be disregarded.  *See Twombly*,

6

550 U.S. at 564-65 (failure to plead facts showing an antitrust agreement, beyond descriptions of parallel conduct and conclusions of an agreement, warranted dismissal); *Korea Kumho Petrochemical v. Flexsys Am. LP*, No. C07-01057, 2008 U.S. Dist. LEXIS 68559, at *28-29 (N.D. Cal. Mar. 11, 2008) (dismissing complaint alleging that because of the defendant's market dominance there was a dangerous probability of it achieving monopoly power with its actions, for failure to plead concrete factual allegations).

Two of the very few facts alleged by Plaintiffs are that Microsoft has an approximate 23.9% market share of game *publishing* and Activision Blizzard has an approximate 10% market share of game *publishing*.  (Compl. ¶¶ 269-270.)  These unsupported (and incorrect) figures are not tied to Plaintiffs' defined product markets: video games as a whole or submarkets of certain types of video games.  They speak, at best, to only one component of video game output.  Plaintiffs allege no facts showing how this share of publishing activity would give Microsoft market dominance over either the entire video game market or any of the various alleged submarkets.  Nor is it plausible that the development and distribution components would not be significant drivers of market output and pricing.  In *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 17 (D.D.C. 2021), the court cautioned that evaluating market power requires looking at the "market definition" and "market share" allegations together.  The sufficiency of a plaintiff's market share allegations depends on "'how tenuously[]' the market has been defined."  *Id.*  There, the court dismissed the FTC's claim of monopoly power, finding that the FTC fell "short of its pleading burden" by "merely alleg[ing] that a defendant firm has somewhere over 60%" of a market share but failing to flesh out the contours of the related market or "exactly what [that] figure is even referring to."  *Id.* at 18, 20; *see also Med. Vets, Inc. v. VIP Petcare Holdings, Inc.*, 811 F. App'x 422, 423 (9th Cir. 2020) (affirming dismissal where the alleged market share figures did "not show power in the *relevant* market").  This Complaint's claim of market power is much more ill-defined than the complaint in *Facebook*.  Not only do Plaintiffs fail to flesh out how their market share allegations relate to dominant market power in any of their defined markets, but the market share allegations are facially disconnected from the defined product markets.

Plaintiffs' Complaint is silent regarding market shares for their defined product markets: video games as a whole, console games, PC games, mobile games, and "Triple-A" games.  That fundamental

7

failure warrants dismissal of Plaintiffs' claim.  *See, e.g., Camaisa v. Pharm. Rsch. Assocs.*, No. 21-cv-00775, 2022 U.S. Dist. LEXIS 50803, at *24-25 (D. Del. Mar. 22, 2022) (dismissing Section 7 claim because plaintiff "has not provided any information about alterations in the market share following the merger, increased concentration of firms in the relevant market, elimination of competitors, or increased barriers to entry following the merger"); *EuroTec Vertical Flight Sols., LLC. v. Safran Helicopter Engines S.A.S.*, No. 3:15-cv-3454, 2019 U.S. Dist. LEXIS 129084, at *7 (N.D. Tex. Aug. 1, 2019) (bare allegation of "market share of over 50 percent" was "conclusory"); *Sherwin-Williams Co. v. Dynamic Auto Images, Inc.*, No. SACV 16-1792, 2017 U.S. Dist. LEXIS 174303, at *16-17 (C.D. Cal. Mar. 10, 2017) (finding a failure to allege market power where allegations that firm "owns over 30% of the market" and maintains "a stranglehold" in the industry were too conclusory).

Separately, Plaintiffs must sufficiently allege barriers to market entry and expansion in each of their product markets.  *See United States v. Syufy Enters.*, 903 F.2d 659, 664 (9th Cir. 1990) ("A high market share, though it may ordinarily raise an inference of monopoly power, will not do so in a market with low entry barriers *or* other evidence of a defendant's inability to control prices or exclude competitors." (emphasis added and citation omitted)).  Plaintiffs have not done so.  They make conclusory allegations regarding "the largest platforms attract[ing] the most quality content" and consumers being attracted to already-popular gaming ecosystems.  (Compl. ¶¶ 231-251.)  But these conclusions are belied by the factual allegations.  It is implausible that there are few market entrants in the overall video game industry when there were allegedly 1,159 mergers of video game companies in 2021.  (*Id.* ¶ 62.)  Additionally, Plaintiffs allege no facts establishing barriers to entry in each of their submarkets of console games, PC games, mobile games, and "Triple-A" games.  They do not allege how many competitors are in each submarket and why new competitors cannot make games for each market.  Further, any assertion of barriers to entry would be illogical because Plaintiffs allege that the video games are available on multiple consoles, users' own PCs, and other platforms.  (*See, e.g., Id.* ¶¶ 110, 121.)  Indeed, eight of the ten Plaintiffs already play video games on more than one of these platforms.  (*Id.* ¶¶ 23-22.)  There is no special barrier to making a "console game" or a "PC game" or a "mobile game"—the same games are played on various devices.  The "Triple-A" submarket—alleged to be the highest quality and most "anticipated" games—has vaguely-defined

parameters and is legally deficient.  Plaintiffs' factually devoid Complaint should be dismissed.  *See Med Vets, Inc. v. Vip Petcare Holdings, Inc.*, No. 18-cv-02054-MMC, 2019 U.S. Dist. LEXIS 68099 (N.D. Cal. Apr. 22, 2019) (dismissing claim where the product market description was too vague to determine which products would be included and the allegations of barriers to entry—the requirement of licensing and relationships with manufacturers and retailers—were too conclusory without factual elaboration), *aff'd*, 811 F. App'x 422 (9th Cir. 2020); *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-cv-06370-EJD, 2017 U.S. Dist. LEXIS 160238, at *25 (N.D. Cal. Sept. 28, 2017) ("Without a better description of the purported entry barriers, the allegations are too conclusory to be entitled to an assumption of truth.").

Finally, Plaintiffs have failed to plead that other competitors in the relevant product markets could not check the alleged anticompetitive consequences (*e.g.*, increased prices or decreased quality) after the merger.  This independently warrants dismissal.  *See Netafim Irrigation, Inc.*, 2022 U.S. Dist. LEXIS 126239, at *25 (dismissing Section 7 claim because complaint failed to allege "sufficient circumstantial evidence that Defendants possessed market power" because other competitors could increase output in response to a price increase by defendants).  For instance, at least four other competitors operate in the identified product markets for video games generally, console games, PC games, and Triple-A games.  (*See* Compl. ¶ 76 (identifying Electronic Arts, Take-Two, Ubisoft, and Sony).)  The existence of these competitors in the relevant markets means that Microsoft could not "control prices or exclude competitors," and the Complaint contains no facts to suggest otherwise. *Syufy Enters.*, 903 F.2d at 664; *see also Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1441 (9th Cir. 1995) ("Market power cannot be inferred solely from the existence of entry barriers and a dominant market share.").  Accordingly, Plaintiffs have failed in several ways to adequately allege facts showing market power necessary to support their Section 7 claim.

### 2.   *Plaintiffs Have Not Alleged Facts Showing that Microsoft Is Likely to Exclude Competitors' Platforms (Vertical Theory)*

In challenges to vertical mergers, plaintiffs cannot rely on market share statistics as "a short cut" to show anticompetitive harm "because vertical mergers produce no immediate change in the relevant market share."  *United States v. AT&T, Inc.*, 916 F.3d 1029, 1032 (D.C. Cir. 2019).  This type

of challenge is rare, difficult, and more complex.  *See United States v. AT&T Inc.*, 310 F. Supp. 3d 161, 193-194 (D.D.C. 2018), *aff'd*, 916 F.3d 1029; *Physician Specialty Pharm., LLC v. Prime Therapeutics, LLC*, No. 18-cv-1044, 2019 U.S. Dist. LEXIS 159853, at *31 (D. Minn. Aug. 8, 2019). Vertical mergers are often a "means of creating efficiency," not reduction in competition.  *Alberta Gas Chems., Ltd. v. E. I. Du Pont de Nemours & Co.*, 826 F.2d 1235, 1244 (3d Cir. 1987) (citations omitted).  Plaintiffs must make a fact-specific showing that "the merger will result in a foreclosure of access to sources of supply, a significant increase in concentration in a relevant market, or heightened barriers to entry in either market."  *Reazin v. Blue Cross & Blue Shield, Inc.*, 663 F. Supp. 1360, 1489 (D. Kan. 1987); *see also AT&T*, 916 F.3d at 1032.

Plaintiffs have not adequately pled facts to make a plausible showing that the merger would result in a foreclosure of access, significant increase in concentration, or heightened barriers to entry. They offer a highly speculative theory that Microsoft could change the status quo by making Activision Blizzard games exclusive to Microsoft's operating platforms.  However, Plaintiffs admit that the games are currently available "across multiple platforms," including competitors' platforms. (Compl. ¶ 286.)  Plaintiffs also admit that Microsoft has promised to keep game content available on competitors' platforms.  (*Id.* ¶ 306.)   Plaintiffs have alleged no facts beyond conclusory and speculative assertions that Microsoft could disrupt current market practices—and go back on its word—to stop games from being available across multiple platforms.  This speculation should be disregarded under *Iqbal*, 556 U.S. at 678-79.   An allegation that a company *might* foreclose competitors' access to a product is insufficient to plausibly state a claim; if it were, almost any pleading would survive the pleading stage and proceed to expensive discovery.

In *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018), the Ninth Circuit dismissed a Section 7 claim based on a speculative theory of post-transaction business practices.  There, the plaintiffs alleged that, post-transaction, the new subsidiary would adopt the distribution practices of ABI and follow its lead in dealings with distributors.  *Id.*  The court called this a "classic speculative conclusion," even if it were bolstered with allegations regarding past acquisitions.  *Id.*  Similarly, here, Plaintiffs offer only speculation regarding a post-transaction change

10

1   in business practices.  Their allegations are controverted by more specific facts regarding the continued

2   availability of the games across platforms.  Such classic speculation warrants dismissal.

3       Additionally, Plaintiffs have failed to allege facts establishing how, even if Microsoft intended

4   to foreclose competitors' access, it would cause competitive harm in the alleged product markets.

5   Plaintiffs contend that Activision Blizzard games are some of the top games with "no meaningful

6   substitute."  (*See* Compl. ¶¶ 284-287.)  But Plaintiffs fail to allege any facts to show that these games

7   constitute an essential input for any relevant market.  As noted above, the only market shares alleged

8   are in game publishing and are wholly unsupported.  Moreover, the Complaint does not allege facts

9   showing that other game developers cannot create meaningful substitutes.  Even in its self-serving and

10  ill-defined "Triple-A" product market, Plaintiffs concede that there are other competitors.  (*See id.* ¶

11  168.)  Accordingly, Plaintiffs have not alleged facts plausibly tying their speculative theory about

12  Microsoft's future behavior to their allegation of antitrust injury.  *See Crouse-Hinds Co. v. Internorth,*

13  *Inc.*, 518 F. Supp. 416, 431 (N.D.N.Y. 1980) ("a plaintiff must make a greater showing than simply

14  that a vertical merger will result in a significant percentage of market foreclosure" and must

15  demonstrate "some probable anticompetitive effect or impact").

16          ### 3.       *Plaintiffs Have Not Alleged Facts Showing a Viable Claim Based on*
17          *Lessened Competition in the Labor Market (Labor Market Theory)*

18      Finally, Plaintiffs append a claim that, because Microsoft and Activision Blizzard both recruit

19  labor, the proposed acquisition would lessen competition in the putative video game labor market.

20  They make only a few brief, conclusory statements in support of this theory.  (Compl. ¶¶ 276-279.)

21  They do not allege any factual detail, such as figures or data related to the relevant labor market or the

22  effects that the prospective acquisition would have on it.  This conclusory and speculative claim should

23  also be dismissed.

24      ### B.       Plaintiffs' Claim Is Not Ripe

25      Plaintiffs ask this court to enjoin Microsoft and Activision Blizzard from consummating a

26  transaction that currently is subject to multiple regulatory reviews and therefore has multiple

27  contingencies—there is no dispute about that.  A "case must be ripe—not dependent on contingent

28  future events that may not occur as anticipated, or indeed may not occur at all."  *Trump v. New York*,

11

141 S. Ct. 530, 535 (2021) (quoting *Texas v. U.S.*, 523 U.S. 296, 300 (1998)).  Otherwise, the Court lacks jurisdiction and the case must be dismissed.  *See Addington v. US Airline Pilots Ass'n*, 606 F.3d 1174, 1179 (9th Cir. 2010).  This Complaint, which concerns a prospective future transaction that is under review by multiple government regulators (a process during which the transaction might be modified in a way that directly impacts Plaintiffs' claims), is not ripe.

Courts have dismissed similar antitrust claims seeking to enjoin prospective mergers on ripeness grounds.   For example, in *South Austin Coalition Community Council v. SBC Communications, Inc.*, 191 F.3d 842 (7th Cir. 1999), the Seventh Circuit upheld the dismissal of an antitrust lawsuit that sought to enjoin a merger that had not yet closed and was still subject to review by the Federal Communications Commission.  The court noted that "[c]ourts often wait for agencies, even when the agencies' views are not legally conclusive—not only because the agencies may have something helpful to say, but also because what the agencies *do* may shape the litigation." *Id.* at 844. "Regulatory agencies can raise or lower" the barriers to competition, such as by conditioning their approval on changes that facilitate competitors' entry into the market. *Id.* at 845.  Accordingly, it "is impossible to analyze a potential-competition claim" prior to the completion of that approval process and prior to knowing the final terms of the transaction. *Id.*  Litigation at that premature stage would be an "expensive challenge to a moving target" and "a waste of everyone's time." *Id.*; *see also AT&T Mobility LLC v. Bernardi*, No. C 11-03992 CRB, 2011 U.S. Dist. LEXIS 124084, at *35 (N.D. Cal. Oct. 26, 2011) (enjoining arbitration proceedings to challenge a merger as premature, and adopting the Seventh Circuit's reasoning that such challenges are unripe "until all required state and federal approvals have been obtained—for the agencies might insist on changes that would substantially alter the merger's competitive effects").

This action is even more premature.  The transaction at issue on appeal in *South Austin* was subject to only one remaining approval.  Microsoft is currently working cooperatively with numerous regulators around the world to obtain approvals to close the transaction.  (*See* Dkt. 26-1 through 26-8; *see also* Compl. ¶ 275 (acknowledging that Plaintiffs' claims are contingent upon "[i]f Microsoft's acquisition of Activision Blizzard were to be completed").)  Microsoft has said publicly that it remains open to remedies by the regulators.  (Dkt. 26 at 5, 7.)  Specifically, this may include terms requiring

12

Microsoft to continue to make Activision Blizzard games available on competitors' platforms, which directly impacts Plaintiffs' Vertical Theory in this case. For instance, Microsoft has already agreed with Nintendo to offer Call of Duty on Nintendo Switch for ten years. *See* Vlad Savov, *Microsoft Agrees to 10-Year Call of Duty Deal with Nintendo*, Bloomberg, Dec. 6, 2022, https://www.bloomberg.com/news/articles/2022-12-07/microsoft-agrees-10-year-call-of-duty-deal-with-nintendo?leadSource=uverify%20wall; *see also* Reuters, *Microsoft to Bring Call of Duty to Nintendo, Sony on the Spot*, Dec. 7, 2022, https://www.reuters.com/technology/microsoft-makes-10-year-commitment-bring-call-duty-nintendo-tweet-2022-12-07/. Plaintiffs' entire vertical merger theory may be mooted if such terms are required by a regulator or voluntarily incorporated. It is impossible to analyze Plaintiffs' claims at this stage, when the regulatory reviews may change the shape of—or even the necessity for—this litigation.[1] Accordingly, this Court lacks subject matter jurisdiction to decide the dispute and should dismiss it.[2]

Generally, courts evaluate ripeness based on (1) "the fitness of the issues for judicial decision" and (2) "the hardship to the parties of withholding court consideration." *Addington*, 606 F.3d at 1179.

---

[1] In numerous past mergers, regulatory reviews have resulted in modifications to the transaction that resolved any antitrust concerns. *See, e.g.*, *Bradt v. T-Mobile US, Inc.*, No. 19-cv-07752-BLF, 2020 U.S. Dist. LEXIS 44141, at *6–7 (N.D. Cal. Mar. 13, 2020) (denying plaintiffs' motion to enjoin a merger because the DOJ and FCC "investigated the merger and negotiated divestitures to Dish Network Corporation . . . that will enable DISH to become a major competitor in the nationwide mobile wireless services market and thus preserve the competitive structure of the industry"); *New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 233 (S.D.N.Y. 2020) ("[T]he FCC and DOJ remedies, and particularly those designed to ensure that DISH becomes an aggressive fourth national [competitor], significantly reduce the concerns and persuasive force of Plaintiff States' market share statistics."); *Dehoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 760 (9th Cir. 2018) (affirming dismissal of Section 7 claim because the DOJ conditioned approval of the merger on one defendant "divest[ing] entirely its domestic beer business," so the plaintiffs "could not plausibly allege" the merger "would substantially lessen competition in that market").

[2] Microsoft appreciates the Court's prior order, in conjunction with Microsoft's earlier motion to stay and a scheduling discussion, that would postpone the schedule for Plaintiffs' preliminary injunction motion based on Microsoft's stipulation that the acquisition will not close before a future date certain. Microsoft has now informed Plaintiffs that it will stipulate that the transaction will not close any earlier than May 1, 2023. While Microsoft agrees that any preliminary injunction motion should not be heard until closer to the transaction's closing, the prior order does not resolve this motion to dismiss, which concerns the Court's constitutional authority to exercise jurisdiction over this complaint as pled. Accordingly, the complaint should be dismissed, irrespective of the parties' attempts to find commonsense scheduling solutions.

These principles warrant dismissal.  The issues are not currently fit for judicial decision because it is premature for the Court to evaluate the transaction as pled when it is subject to change and any potential anticompetitive effects cannot yet be determined.  Plaintiffs will not face hardship and will have their day in court (if it remains appropriate and necessary).  *See S. Austin Coal. Cmty. Council v. SBC Commc'ns, Inc.*, No. 98 C 3014, 1999 U.S. Dist. LEXIS 949, at *4 (N.D. Ill. Jan. 26, 1999) ("[P]laintiffs can always reinstate their action *after* the appropriate agencies have had the opportunity to review the competitive effects of the merger."), *aff'd*, 191 F.3d 842 (7th Cir. 1999); *see also Bernardi*, 2011 U.S. Dist. LEXIS 124084, at *35–36 (delay of challenge to unconsummated merger "cannot cause any hardship" to the consumers).

Allowing the Plaintiffs to proceed with their premature Complaint has real consequences.  Plaintiffs have already indicated that they plan to aggressively seek burdensome discovery.  *See S. Austin*, 191 F.3d at 845 ("Antitrust litigation can be very costly; an expensive challenge to a moving target is worse than pointless."); *Twombly*, 550 U.S. at 558 (emphasizing that "antitrust discovery can be expensive").  They have told the Court that they intend to take the depositions of executives at the highest levels of Microsoft and Activision Blizzard in February, without waiting for the results of regulatory approvals from abroad or the FTC depositions (which are scheduled to be completed before the deadline of April 7).  If the terms of the merger change after the regulatory reviews are complete, Plaintiffs likely will assert the need to re-take depositions to cover the effect of the new terms.  Plaintiffs have requested document discovery beyond the 9 million pages provided to the FTC.  And they are attempting to set a trial for this case on April 3.  Because of the contingencies inherent in the regulatory approval process, no one—including Microsoft—can definitively say by what date the parameters of this transaction will be finalized.  These practical issues demonstrate why courts do not exercise jurisdiction over cases that are not ripe for adjudication.  Once the final terms of this transaction are known, the Court can give Plaintiffs an opportunity to refile and be heard on a preliminary injunction motion and, if they prevail on that motion, take relevant discovery and litigate the merits at a later trial.

1    **C.    Plaintiffs Lack Standing to Bring Their Claim**

2        The threat of injury to Plaintiffs is hypothetical at this stage and thus they lack Article III

3    standing.  Plaintiffs bear the burden of proving, at every stage of this litigation, that they meet standing

4    requirements.  *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207 (2021); *Spokeo, Inc. v. Robins*,

5    578 U.S. 330, 338 (2016) ("[A]t the pleading stage, the plaintiff must 'clearly . . . allege facts

6    demonstrating' each element.").    Constitutional standing requires an injury-in-fact that is both

7    "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Spokeo, Inc.*,

8    578 U.S. at 339 (citation omitted).  Private plaintiffs under the Clayton Antitrust Act must show a

9    threat of injury that is "certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

10        *1.    Plaintiffs Lack Standing Because the Transaction Has Not Been Approved*

11        Courts have dismissed antitrust challenges to prospective mergers on standing grounds where,

12    as here, the merger has not closed and is pending regulatory approval.  For example, in *Cassan*

13    *Enterprises, Inc. v. Avis Budget Group, Inc.*, the plaintiff challenged an acquisition in which the

14    companies announced the proposed transaction and their intent to seek regulatory approval, but the

15    approval process had not yet been completed.  No. 10-cv-01934-JCC, (W.D. Wash. Mar. 11, 2011),

16    Dkt. 39, at *2-3, 5.  The court found that Plaintiffs could not clear the necessary hurdle of alleging an

17    injury that was "certainly impending," because the FTC was "still reviewing the proposed acquisition"

18    and "aspects of the acquisition may change as a result of the Commission's review."  *Id.* at *5.  The

19    court dismissed the plaintiff's conjectural claims.  *Id.* at *5-6.; *see also SureShot Golf Ventures, Inc.*

20    *v. Topgolf Int'l, Inc.*, No. H-17-127, 2017 U.S. Dist LEXIS 135796, at *10 (S.D. Tex. Aug. 24, 2017)

21    (the plaintiff's "perceived threats of monopolistic behavior are speculative and do not confer

22    standing."), *aff'd in part & modified in part by* 754 F. App'x 235 (5th Cir. 2017).

23        Here, no one can say with certainty what the final transaction will look like.  Plaintiffs rely on

24    a chain of speculative inferences to allege that they will be injured, including conjecture about the

25    transaction's final terms and further conjecture about Microsoft's behavior afterward (such as a

26    baseless allegation that Microsoft will foreclose competitors' access to Activision Blizzard video

27    games).  Plaintiffs cannot show that their alleged harm is "certainly impending," and their claims must

28    be dismissed.

### 2. Plaintiffs Lack Standing to Assert a Claim Based on Competition for Labor

Plaintiffs also allege that the acquisition would threaten to "substantially reduce competition in the labor market for video game labor talent." (Compl. ¶ 224.)  But none of the Plaintiffs have alleged how reduced competition for employees in the video game industry would constitute a concrete, particularized, and imminent harm to themselves.  *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (a party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").  None of the Plaintiffs allege that they work in the video game industry or even plan to seek employment in the video game industry.

### D. Plaintiffs Are Not Entitled to Injunctive Relief

Plaintiffs have an adequate remedy at law—monetary damages—and therefore, their claim for injunctive relief must be dismissed.  An injunction is "an extraordinary remedy" that "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  *Norbert v. City & County of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021).  A plaintiff must adequately allege four elements before it can proceed with a claim for injunctive relief: (1) that it has suffered (or will imminently suffer) an irreparable harm; (2) that there is no adequate remedy at law; (3) that the balance of the hardships favors the plaintiff; and (4) that an injunction is in the public interest.  *See Taleff v. Sw. Airlines Co.*, 828 F. Supp. 2d 1118, 1122 (N.D. Cal. 2011), *aff'd* 554 F. App'x 598 (9th Cir. 2014).  These equitable principles apply to Clayton Act claims.  *Id.* at 1122; *California v. Am. Stores Co.*, 495 U.S. 271, 281 (1990) ("[T]he statutory language [of Section 16] indicates Congress' intention that traditional principles of equity govern the grant of injunctive relief." (citation omitted)).  Plaintiffs have not pled facts sufficient to allege any harm that cannot be remedied by monetary damages.  Therefore, their claim should be dismissed.

Plaintiffs' claims are centered on allegations that Microsoft would be able to increase prices post-acquisition, and that is clearly compensable by monetary damages.  *See Taleff*, 828 F. Supp. 2d at 1123 n.7; *Golden Gate Pharmacy Servs., Inc. v. Pfizer, Inc.*, No 3:09-cv-03854-MMC, U.S. Dist. LEXIS 133999, at *3 (N.D. Cal. Oct. 22, 2009) (holding that "injuries resulting from higher prices would appear to be injuries fully compensable by an award of monetary damages."); *Los Angeles Mem'l  Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1201-02 (9th Cir. 1980) (holding

16

that "monetary injury is not normally considered irreparable" in Section 16 cases).  At best, Plaintiffs could allege, without any supporting facts and contrary to all public information, that Microsoft would restrict access of popular games to certain platforms or subscriptions.  Even in this Plaintiff-concocted world, Plaintiffs' harm could be remedied through monetary damages designed to repay any costs associated with accessing exclusive content.

Plaintiffs vague and unsupported claims that "video game quality, innovation, and diversity may decrease" if the transaction closes are speculative and not supported by any facts in the Complaint. (Compl. ¶ 331(e).)  And it is implausible that Microsoft is investing almost $70 billion in a video game developer with the intent or incentive to "degrade video game quality, innovation and diversity." Microsoft would have every incentive to maintain and improve the quality and diversity of Activision Blizzard's games even if, as Plaintiffs speculate, they made some of the games exclusive to Microsoft platforms.  In sum, Plaintiffs have not alleged any plausible scenario in which their alleged harm from this transaction would not be compensable by monetary damages.  Therefore, their claim for injunctive relief should be dismissed.

## VI.   CONCLUSION

Microsoft requests that the Court dismiss Plaintiffs' action in its entirety.

Dated: January 31, 2023                                    Respectfully submitted,


                                                          By:   _/s/ Valarie C. Williams_

                                                          Valarie C. Williams
                                                          B. Parker Miller
                                                          Tania Rice
                                                          Tyler Blake
                                                          Alston & Bird LLP

                                                          Rakesh N. Kilaru
                                                          Anastasia M. Pastan
                                                          Jenna Pavelec
                                                          Wilkinson Stekloff LLP

                                                          *Counsel for Defendant Microsoft Corporation*

17