Joseph M. Alioto (State Bar No 42680)
Tatiana V. Wallace (State Bar No. 233939)
**ALIOTO LAW FIRM**
One Sansome Street, 35th Floor
San Francisco, CA  94104
Telephone:      (415) 434-8900
Facsimile:      (415) 434-9200
Email:           jmalioto@aliotolaw.com
                 twallace@aliotolaw.com

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Cadio Zirpoli (State Bar No. 179108)
Elissa Buchanan (State Bar No. 249996)
David H. Seidel (State Bar No. 307135)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone:      (415) 500-6800
Facsimile:      (415) 395-9940
Email:           jsaveri@saverilawfirm.com
                 swilliams@saverilawfirm.com
                 czirpoli@saverilawfirm.com
                 eabuchanan@saverilawfirm.com
                 dseidel@saverilawfirm.com
                 kmcmahon@saverilawfirm.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANTE DEMARTINI, et al.,<br><br>                    Movants,<br><br>        v.<br><br>ACTIVISION BLIZZARD, INC,<br><br>                    Respondent. | Case No. 3:22-cv-08991-JSC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL DEPOSITIONS OF (1) ROBERT A. KOTICK AND (2) ACTIVISION**<br><br>Date: June 1, 2023<br>Time: 10:00 a.m.<br>Judge: Hon. Jacqueline Scott Corley<br>Location: Courtroom 8—19th Floor |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on June 1, 2023, or on a sooner date to be ordered by the Court, Plaintiffs will and hereby do move for an order compelling (1) the deposition of  Robert A. Kotick and (2) the deposition of Activision pursuant to Federal Rule of Civil Procedure 30(b)(6). The motion will be made based on this Notice of Motion and Motion, the Declaration of Steven N. Williams in support of this Motion and the exhibits attached thereto, any evidence received on this Motion, and the file in this matter.

**REQUESTED RELIEF**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Movants request that this Court issue an Order requiring Activision to provide (1) the deposition of Robert A. Kotick and (2) the deposition of Activision pursuant to Federal Rule of Civil Procedure 30(b)(6)

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs challenge the $69 billion dollar acquisition of Activision by Microsoft. Plaintiffs seek limited deposition testimony from Activision in support of their claims: (1) the deposition of Robert A. Kotick and (2) the deposition of Activision pursuant to Federal Rule of Civil Procedure 30(b)(6). The parties fully briefed this issue pursuant to the Local Rules for the United States District Court for the Central District of California, even though Activision agreed from the outset that this Court would hear any dispute between it and Plaintiffs. The brief filed in the Central District, and subsequently transferred here, is attached to the Declaration of Steven N. Williams filed herewith as Exhibit 2. That brief sets forth the parties' arguments about the depositions on pp. 13-24 (Activision's argument) and pp. 30-34 (Plaintiff's response). Plaintiffs respectfully refer the Court to those sections for the parties' discussion of those issues. For the Court's convenience, those sections are reproduced after the signature block below, labeled **APPENDIX A**.

Activision seeks to further delay resolution of these simple issues by insisting on further briefing over a period of a few weeks. Plaintiffs respectfully submit that the present schedule in this case does not permit further delay without causing prejudice to Plaintiffs, and further submit that Activision's suggestion of further briefing is not in accordance with Federal Rule of Civil Procedure 1.

1    Dated:  April 21, 2023                    By:      /s/ Steven N. Williams
2                                                       Steven N. Williams

3                                              Joseph R. Saveri (State Bar No. 130064)
                                               Steven N. Williams (State Bar No. 175489)
4                                              Cadio Zirpoli (State Bar No. 179108)
                                               Elissa Buchanan (State Bar No. 249996)
5                                              David H. Seidel (State Bar No. 307135)
                                               Kathleen J. McMahon (State Bar No. 340007)
6                                              **JOSEPH SAVERI LAW FIRM, LLP**
7                                              601 California Street, Suite 1000
                                               San Francisco, CA 94108
8                                              Telephone: (415) 500-6800
                                               Facsimile: (415) 395-9940
9                                              Email:  jsaveri@saverilawfirm.com
10                                                      swilliams@saverilawfirm.com
                                                        czirpoli@saverilawfirm.com
11                                                      eabuchanan@saverilawfirm.com
                                                        dseidel@saverilawfirm.com
12                                                      kmcmahon@saverilawfirm.com

13                                             Joseph M. Alioto (State Bar No. 42680)
                                               Tatiana V. Wallace (State Bar No. 233939)
14                                             **ALIOTO LAW FIRM**
15                                             One Sansome Street, 35th Floor
                                               San Francisco, CA 94104
16                                             Telephone: (415) 434-8900
                                               Facsimile: (415) 434-9200
17                                             Email: jmalioto@aliotolaw.com
                                                      twallace@aliotolaw.com
18

19                                             Joseph M. Alioto Jr. (State Bar No. 215544)
                                               **ALIOTO LEGAL**
20                                             100 Pine Street, Suite 1250
                                               San Francisco, CA 94111
21                                             Tel: (415) 398-3800
                                               Email: joseph@aliotolegal.com
22

23                                             *Plaintiffs' Counsel*

24

25

26

27

28

# APPENDIX A

# ACTIVISION'S ARGUMENT

narrowed and targeted document discovery. Despite their best efforts, Plaintiffs were unable to reach agreement with Activision.

## III.   ARGUMENT

### A.   Activision's Argument

This Court should quash both of Plaintiffs' subpoenas for numerous reasons. ***First***, the Court should quash both of Plaintiffs' subpoenas because, as Microsoft persuasively argues in its Motion to Dismiss, the issuing court lacks subject-matter jurisdiction over the underlying action.   At a minimum, the Court should defer Plaintiffs' discovery requests until after the issuing court resolves the question of its jurisdiction.[5]   ***Second***, the Court should quash, or at a minimum defer, Plaintiffs' deposition requests because: (1) the issuing court has already deferred all first-party depositions until after the preliminary injunction hearing in the underlying action; (2) Plaintiffs lack a substantial need for the confidential commercial information they will seek to elicit from the depositions; and (3) Plaintiffs' subpoena to depose Mr. Kotick plainly runs afoul of the apex deposition doctrine.   ***Third***, the Court should quash each of Plaintiffs' document requests because Plaintiffs lack a substantial need for the confidential commercial information they seek and because they are facially overbroad and would impose an undue burden on Activision.

#### 1.   Legal Standard

"[T]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts."  *E.g.*, *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) (citing *United States v. C.B.S.*, 666 F.2d 364, 371–72 (9th Cir. 1982)).   In accordance with that general principle, where, as here, a third-party subpoena seeks confidential "commercial information" from a non-party, discovery is permissible only if the requesting party "shows a substantial need for" such information "that cannot be otherwise met without

---

[5] For the avoidance of doubt, Activision reserves its right to move to quash Plaintiffs' discovery requests, including any deposition subpoenas pertaining to its personnel, even if Activision's discovery obligations are only deferred at this juncture.

undue hardship." Fed. R. Civ. P. 45(d)(3)(B)–(C). To make that showing, a party seeking discovery must demonstrate that the discovery is not only relevant but also "essential to a judicial determination of its case." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 685 (N.D. Cal. 2006). For the protection of third parties, this is necessarily a high bar; a party seeking third-party confidential commercial information must establish that the claims or defenses in the underlying case "virtually rise[] or fall[] with the admission or exclusion" of that information. *See Edwards v. Cal. Dairies, Inc.*, 2014 WL 2465934, at *5 (E.D. Cal. June 2, 2014) (citation omitted).[6]

Rule 45 further provides that a court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). An evaluation of "undue burden" under Rule 45 requires a court to consider, *inter alia*, factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described[,] and the burden imposed." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citation omitted); *see also Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003) (affirming a district court's decision to quash as unduly burdensome a subpoena that was "abusively drawn," not tailored to the needs of the case, and served for the improper "purpose of annoying and harassment" (citations and quotation marks omitted)). In a similar vein, "[t]he limitations set forth in Rule 26(b)(2)(C) apply to discovery served on non-parties" under Rule 45. *Briggs v. Cnty. of Maricopa*, 2021 WL 1192819, at *3 (D. Ariz. Mar. 30, 2021) (citation omitted); *see also Exxon Shipping Co. v. U.S. Dep't of Interior,* 34 F.3d 774, 779 (9th Cir. 1994) (explaining that non-parties may avail themselves of both Rule 26 and the

---

[6] Notably, "[t]he fact that a protective order is in place in the underlying action does not resolve the issue of whether the non-party is required to produce information that is claimed to be confidential commercial information." *Edwards*, 2014 WL 2465934, at *5. On the contrary, "Rule 45 does not require [a] court to permit the disclosure of competitively sensitive information even under such a protective order." *In re eBay Seller Antitrust Litig.*, 2009 WL 10677051, at *4 (W.D. Wash. Aug. 17, 2009); *see also, e.g.*, *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990) ("The protective order is not a substitute for establishing relevance or need.").

1   "special protection[]" of Rule 45 "against the time and expense of complying with

2   subpoenas").  Consequently, "[o]verbroad subpoenas seeking irrelevant information

3   may be quashed or modified." *Gonzales*, 234 F.R.D. at 680.

4                   2.    **This Court Should Quash Both of Plaintiffs' Subpoenas**
                          **Because the Issuing Court Lacks Subject-Matter Jurisdiction**
5                         **Over the Underlying Action.**

6          At the start, as Microsoft persuasively advances in its meritorious Motion to

7   Dismiss, the issuing court lacks subject-matter jurisdiction over this action, thus

8   rendering Plaintiffs' subpoenas void and any compliance with those subpoenas both

9   improper and an undue burden.  As the Supreme Court has explained, "the subpoena

10  power of a court cannot be more extensive than its jurisdiction." *U.S. Cath. Conf. v.*

11  *Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 76 (1988).  For this reason, while Rule

12  45 "grants [district courts] the power to issue subpoenas" to third parties, "if a district

13  court does not have subject-matter jurisdiction over the underlying action, and the

14  process was not issued in aid of determining that jurisdiction, then the process is void."

15  *Id.*  Where a "litigant lacks standing," for example, "a federal court lacks authority to

16  adjudicate the case, including issuing deposition subpoenas or other process." *In re*

17  *Perez by Allen*, 2020 WL 7056024, at *3 (N.D. Cal. Dec. 2, 2020).  Microsoft has put

18  forth two persuasive arguments as to why the issuing court lacks subject-matter

19  jurisdiction over Plaintiffs' claim—that Plaintiffs' claim is unripe and that Plaintiffs

20  lack Article III standing.  Plaintiffs' subpoenas are thus void and must be quashed.

21         ***First***, as Microsoft argues, Plaintiffs' claim is not ripe.  For a court to exercise

22  subject-matter jurisdiction over a case, the "case must be 'ripe'—not dependent on

23  'contingent future events that may not occur as anticipated, or indeed may not occur

24  at all.'" *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Texas v. United*

25  *States*, 523 U.S. 296, 300 (1998)).  Courts consider two factors when determining

26  whether a case is ripe: (1) "the fitness of the issues for judicial decision"; and (2) "the

27  hardship to the parties of withholding court consideration." *Addington v. US Airline*

28  *Pilots Ass'n¸* 606 F.3d 1174, 1179 (9th Cir. 2010) (citation omitted).  Courts have

1  dismissed cases as premature where, as here, regulatory reviews were ongoing, and
2  the potential terms of the transaction were subject to change.  *See S. Austin Coal. Cmty.*
3  *Council v. SBC Commc'ns Inc.*, 191 F.3d 842, 844 (7th Cir. 1999) ("Courts often wait
4  for agencies, even when the agencies' views are not legally conclusive—not only
5  because the agencies may have something helpful to say, but also because what the
6  agencies *do* may shape the litigation."); *AT&T Mobility LLC v. Bernardi*, 2011 WL
7  5079549, at *12 (N.D. Cal. Oct. 26, 2011) (holding that arbitration proceedings to
8  challenge a merger were premature and reasoning that such challenges are unripe
9  "until all required state and federal approvals have been obtained," given that "the
10 agencies might insist on changes that would substantially alter the merger's
11 competitive effects" (citation omitted)).

12         Here, Plaintiffs' claim is wholly premature, speculative, and unfit for judicial
13 decision.  Plaintiffs seek to enjoin a proposed transaction that is undergoing multiple
14 regulatory reviews, which may impact the final terms of the transaction and, thus, the
15 ultimate disposition of this case, particularly given Microsoft's acknowledgement that
16 it cannot close the Proposed Transaction while these reviews remain ongoing.  *See,*
17 *e.g.*, *Dehoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 760 (9th Cir. 2018)
18 (affirming dismissal of a Section 7 claim because the DOJ conditioned approval of the
19 merger on one defendant "divest[ing] entirely its domestic beer business," so the
20 plaintiffs "could not plausibly allege" the merger "would substantially lessen
21 competition in that market").  Proposed remedies stemming from these regulatory
22 reviews may completely moot Plaintiffs' theories of harm, and Microsoft has publicly
23 stated that it remains open to such remedies, which may include terms to continue to
24 make Activision games available on other platforms.  (*See* York Decl. Ex. 8, Mot. to
25 Dismiss 12–13.)  In these circumstances, it would be premature for the issuing court
26 to evaluate the Proposed Transaction because it will be unable to determine the
27 potential anticompetitive effects of the Proposed Transaction.  In addition, Plaintiffs
28 will not face hardship and will have their day in court (if it remains appropriate and

1  necessary).  *See Bernardi*, 2011 WL 5079549, at *12 (explaining that the "delay[ed]
2  pursuit of claims that are likely not ripe cannot cause any hardship").

3       ***Second***, as Microsoft further argues, Plaintiffs lack Article III standing to pursue
4  their claim, likewise because the merger is pending regulatory approvals.  Article III
5  standing requires an injury in fact that is (1) "concrete and particularized" and (2)
6  "actual or imminent, not conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, 578 U.S.
7  330, 339 (2016) (citation omitted).  To meet Article III standing requirements, private
8  plaintiffs pursuing claims under Section 7 of the Clayton Antitrust Act, like any
9  plaintiffs asserting claims of future injury, must show that the threat of injury is
10 "certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

11      Here, Plaintiffs cannot demonstrate that the threat of injury is "certainly
12 impending" given that regulatory reviews remain ongoing by competition authorities
13 around the world, which Microsoft has acknowledged must be completed for the
14 transaction to close, and that "aspects of the acquisition may change as a result of the
15 [those] reviews."  *See Cassan Enters., Inc. v. Avis Budget Grp., Inc.*, No. 10-cv-01934-
16 JCC, W.D. Wash. (Mar. 11, 2011), Dkt. 39, at *5 (dismissing Section 7 claim for lack
17 of Article III standing where injuries described in the complaint were "far from
18 certain" in light of ongoing review by the FTC).  On the contrary, Plaintiffs' claim of
19 threatened injury here is both highly speculative and hypothetical, as it relies on a
20 chain of speculative inferences, including conjecture about the transaction's final
21 terms and about Microsoft's behavior afterward.  Such hypothetical "perceived"
22 threats are insufficient to confer Article III standing.  *See SureShot Golf Ventures, Inc.*
23 *v. Topgolf Int'l, Inc.*, 2017 WL 3658948, at *4 (S.D. Tex. Aug. 24, 2017).

24      Because Plaintiffs' claim is unripe and Plaintiffs lack Article III standing, the
25 issuing court lacks subject-matter jurisdiction, and the subpoenas it issued are void and
26 must be quashed.  *See USA Techs., Inc. v. Doe*, 713 F. Supp. 2d 901, 908 (N.D. Cal.
27 2010) (quashing a third-party subpoena given the "apparent deficiency of [a] claim,
28 which [was] the sole basis for federal jurisdiction," even though "the ultimate question

-17-

1   of federal jurisdiction" was to be decided by the issuing court).  At a bare minimum,

2   Plaintiffs' discovery should be deferred until the question of the issuing court's

3   jurisdiction is resolved.  *In re Verifone*, *Inc*., 2018 WL 3532761, at \*6 (N.D. Cal. July

4   23, 2018) (staying non-party's compliance with a deposition subpoena "pending a

5   decision on the question of subject matter jurisdiction in the underlying action").

6           **3.     This Court Should Quash Plaintiffs' Deposition Requests on
                       the Merits.**
7

8           With respect to Plaintiffs' deposition requests, the Court should quash, or at a

9   minimum defer, them for at least three independent reasons: (1) the issuing court has

10  already deferred all first-party depositions until after the preliminary injunction

11  hearing in the underlying action; (2) Plaintiffs lack a substantial need for the

12  confidential commercial information they seek from the depositions; and (3) Plaintiffs'

13  subpoena to depose Mr. Kotick runs afoul of the apex deposition doctrine.

14                  **(a)    This Court Should at a Minimum Defer Plaintiffs'
                             Deposition Requests Because the Issuing Court has
15                           Deferred First-Party Depositions.**

16          The Court should at a minimum defer Plaintiffs' deposition requests because

17  the issuing court has already deferred all first-party depositions until after resolution

18  of Plaintiffs' Motion for a Preliminary Injunction in the underlying action.   As

19  highlighted above, non-parties like Activision should not be subject to a higher burden

20  than any first parties to an underlying litigation.  *See, e.g.*, *High Tech Med.*

21  *Instrumentation*, 161 F.R.D. at 88.   Under Rule 45, a party typically must secure

22  discovery from another party to the litigation before pressing a non-party like

23  Activision for additional, potentially duplicative discovery and accordingly subjecting

24  them to undue burden.  *See AECOM Tech. Servs., Inc. v. Zachry Constr. Corp.*, 2020

25  WL 1934973, at \*4 (C.D. Cal. Feb. 3, 2020) ("[A] non-party[] should not have to

26  provide discovery that can be produced by a party.").  Indeed, "[c]ourts are particularly

27  reluctant to require a non-party to provide discovery that can be produced by a party."

28

1    *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410
2    (C.D. Cal. 2014).

3            Here, Plaintiffs seek two depositions of non-party Activision's employees
4    despite the fact that the issuing court has halted all depositions of *defendant*
5    Microsoft's employees until after resolution of Plaintiffs' Motion for a Preliminary
6    Injunction.  This is backwards.  Non-parties should not be subject to greater discovery
7    burdens than first parties—particularly given the possibility that the disposition of
8    Plaintiffs' Motion for a Preliminary Injunction or Microsoft's Motion to Dismiss may
9    obviate the need for depositions at all.  *See Thomas Land & Dev., LLC v. Vratsinas*
10   *Constr. Co.*, 2019 WL 126859, at *2 (S.D. Cal. Jan. 8, 2019) (holding that was "an
11   undue burden to force a non-party to comply with a voluminous discovery request"
12   where there was not yet an "opportunity to pursue party discovery").

13           Plaintiffs must secure whatever discovery they need from Microsoft first—
14   before pressing a non-party like Activision for additional, duplicative discovery and,
15   accordingly, subjecting Activision to undue burden.  *See id.* ("[T]here is a preference
16   for parties to obtain discovery from one another before burdening non-parties with
17   discovery requests." (citation omitted)).  As just one example of Plaintiffs' duplicative
18   discovery requests, Plaintiffs seek to depose Activision's corporate witness about the
19   identities of Activision "employees or agents who communicated with Microsoft []
20   regarding the" Proposed Transaction.  (York Decl. Ex. 2.)  Such information is plainly
21   discoverable from Microsoft itself.   Plaintiffs should be able to evaluate what (if any)
22   testimony they truly need from non-party Activision, and thus to avoid any potentially
23   duplicative discovery, after they have had the opportunity to review Microsoft's
24   voluminous document productions and deposed Microsoft's employees.  *See Amini*
25   *Innovation*, 300 F.R.D. at 412 & n.6 (C.D. Cal. 2014) (quashing a Rule 45 subpoena
26   where the requesting party "ha[d] not shown that it could not have obtained the
27   requested information from party witnesses").  Consequently, the Court should at a
28

minimum defer Plaintiffs' deposition requests until after the issuing court has resolved Plaintiffs' Motion for a Preliminary Injunction in the underlying action.

> **(b)** **This Court Should Quash Plaintiffs' Deposition Requests Because Plaintiffs Have Failed to Articulate a Substantial Need for the Confidential Commercial Information they Seek to Elicit.**

The Court should quash Plaintiffs' deposition requests for the independent reason that Plaintiffs have not articulated a substantial need for the confidential commercial information they seek. As an initial matter, the information Plaintiffs seek qualifies as confidential "commercial information" that is entitled to the heightened protections of the "substantial need" standard. Activision's internal information underlying the reasons for its sale and concerning its negotiations and agreements with Nintendo, Sony, and Microsoft is "plainly the sort of information [Activision] would not disclose to competitors." *In re Apple iPhone Antitrust Litig.*, 2020 WL 5993223, at *9 (N.D. Cal. Oct. 9, 2020) (citation omitted); *see also In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 629225, at *5 (N.D. Cal. Feb. 27, 2012) (holding that requests to non-parties that sought licensing agreements called for "highly confidential commercial information" for which the plaintiffs failed to establish a substantial need); *cf. Monterey Bay Mil. Hous., LLC v. Pinnacle Monterey LLC*, 2015 WL 2229229, at *3 (N.D. Cal. May 12, 2015) (concluding that the "terms and pricing" of a non-party's insurance program constituted "confidential commercial information" where it was "based on numerous factors and extensive negotiations"). So, too, is Activision's internal information regarding its profits and losses. *See Edwards*, 2014 WL 2465934, at *4 (noting that "sales and revenue information qualif[ies] as confidential commercial information"); *cf. Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*, 2021 WL 1821376, at *3 (S.D. Cal. Mar. 15, 2021) (holding that a party's "information regarding [its] profits, expenditures, and losses" was confidential commercial information for purposes of a sealing motion because its

-20-

1  disclosure "might allow competitors to use that information to their advantage in their

2  own contract negotiations, resulting in harm to" that party).

3      Plaintiffs have not established a substantial need for this information, as they

4  cannot show that it is "essential to a judicial determination of [their] case." *Gonzales*,

5  234 F.R.D. at 685. Far from essential, Plaintiffs represented in their meet and confers

6  with Activision that a corporate deposition may not even be necessary. (York Decl. ¶

7  7.) Moreover, information concerning Activision's communications and negotiations

8  with Microsoft is likely duplicative of information within defendant Microsoft's

9  voluminous productions and—to the extent it is not—it would be more appropriately

10  sought from defendant Microsoft's deponents. *See* Fed. R. Civ. P. 45(d)(3)(C)(i)

11  (requiring a party to demonstrate a substantial need for testimony "*that cannot be*

12  *otherwise met* without undue hardship" (emphasis added)). Similarly, information

13  concerning whether Activision has communicated with Sony or Nintendo about the

14  availability of Activision game content after Activision's merger with Microsoft is

15  unnecessary given that it is Microsoft that will determine its own plans for Activision's

16  content in a post-merger world in the first instance. *Cf. New York v. Deutsche Telekom*

17  *AG*, 439 F. Supp. 3d 179, 245 (S.D.N.Y. 2020) (concluding that an acquiring company

18  was unlikely to increase prices or lower service quality in part based on testimony by

19  the acquiring company). Moreover, Plaintiffs have not even attempted to articulate

20  why Activision's profit and loss information is "essential" to their case as opposed to

21  any information they may obtain from Microsoft's productions. (*See* York Decl. ¶¶

22  6–8.) The Court should accordingly quash Plaintiffs' deposition requests.

23          **(c)**     **This Court Should Quash Plaintiffs' Request to Depose**

24                   **Activision's CEO Because that Request Runs Afoul of**

25                   **the Apex Deposition Doctrine.**

26      This Court should quash Plaintiffs' request to depose Mr. Kotick—the CEO of

27  Activision—as particularly improper because it plainly runs afoul of the apex

28  deposition doctrine. "Virtually every court that has addressed deposition notices

-21-

1    directed at an official at the highest level or 'apex' of corporate management has
2    observed that such discovery creates a tremendous potential for abuse or harassment."
3    *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25,
4    2007). Thus, "[w]hen a party seeks the deposition of a high-level executive (a so-
5    called 'apex' deposition), the court may exercise its discretion under the federal rules
6    to limit discovery." *Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *15
7    (N.D. Cal. May 9, 2011). Under the apex deposition doctrine, "parties seeking to
8    depose a high ranking corporate officer must first establish" two key requirements. *Id.*
9    First, the party must establish "that other less intrusive means of discovery . . . have
10   been exhausted without success." *Id.* And second, the party must establish that the
11   executive "has unique, non-repetitive, firsthand knowledge of the facts at issue in the
12   case." *Id.* Plaintiffs fail to meet either of these requirements here.

13        ***First***, Plaintiffs have failed to establish that they have exhausted other less
14   intrusive means of discovery without success before pursuing Mr. Kotick's deposition.
15   For one thing, Plaintiffs had yet to engage in first-party discovery with Microsoft
16   before seeking Mr. Kotick's deposition. At the time Plaintiffs served Mr. Kotick's
17   deposition subpoena Plaintiffs, had not even *received* the nine to ten million pages of
18   documents Microsoft has represented it is prepared to provide (York Decl. Ex. 9, Feb.
19   2, 2023 Tr. 8:18–9:22). *See Affinity Labs*, 2011 WL 1753982, at *15 (denying motion
20   to compel deposition where the plaintiffs "attempt to learn any of [the] facts [at issue]
21   through written discovery" before seeking an apex deposition, "*as the rule requires*"
22   (emphasis added)). For another, even if Microsoft's nine to ten million pages of
23   documents were not sufficient, Plaintiffs have yet to exhaust less intrusive methods of
24   discovery of Activision. Indeed, Plaintiffs served Activision with their facially
25   overbroad document requests a mere day before they served Activision with their
26   deposition subpoena to Mr. Kotick. (*See* York Decl. ¶¶ 3–5.) Plaintiffs' demand
27   instead to *start* with discovery from Mr. Kotick is misguided, and Plaintiffs' deposition
28   subpoena to Mr. Kotick can be quashed on this basis alone. *See Celerity*, 2007 WL

1    205067, at *5 (holding that the defendant could pursue an apex deposition only "after

2    either interrogatories or the depositions of lower-level employees ha[d] failed to

3    provide the discovery" it sought).

4        ***Second***, Plaintiffs also have made no attempt to establish that Mr. Kotick has

5    *unique, non-repetitive* knowledge of the information they seek. *See Klungvedt v.*

6    *Unum Grp.*, 2013 WL 551473, at *3 (D. Ariz. Feb. 13, 2013) (precluding an apex

7    deposition in part because the party seeking the deposition had "not filed any

8    supplement to suggest that some evidence [had] been discovered to support his

9    argument that [the executive had] unique knowledge related to the issues at hand").

10   As previously stated, Plaintiffs apparently seek to depose Mr. Kotick because they

11   believe it would be "important to talk to the person who is selling his business" and

12   because they seek information regarding what agreements Activision has with

13   Microsoft, whether and why Activision may have any revenue sharing agreements

14   with Microsoft, and how Activision determined the transaction price it would accept

15   from Microsoft. (*See* York Decl. ¶ 8.)  Yet high-level information about Activision's

16   rationale for the sale and transaction price—even assuming that Plaintiffs needed that

17   information for purposes of resolving their claim, which itself is questionable—is

18   information that may be available from other employees or from documentary sources

19   and that would not be unique to Mr. Kotick.  *See Cabrera v. Serv. Emps. Int'l Union*,

20   2019 WL 6251451, at *2 (D. Nev. Nov. 22, 2019).  ("Knowledge is unique if it is

21   unavailable from less intrusive discovery."); *Celerity*, 2007 WL 205067, at *4–5

22   (refusing to permit a deposition to go forward based on the plaintiffs' claims that

23   executives "participated" in relevant events, where knowledge was not unique to those

24   executives).

25       Because Plaintiffs cannot satisfy either requirement of the apex deposition

26   doctrine at this early juncture, this Court should quash its deposition subpoena to Mr.

27   Kotick.  Plaintiffs' approach to starting discovery with the deposition of Activision's

28

CEO signifies Plaintiffs' true intention to harass and unduly burden Activision and its employees.

### 4. This Court Should Quash Plaintiffs' Document Requests.

This Court should also quash each of Plaintiffs' document requests because Plaintiffs cannot show a substantial need for the confidential commercial information reflected in the documents they seek. In addition, Plaintiffs' six document requests are facially overbroad, would impose an undue burden on Activision, and go well beyond the scope of reasonable discovery for a non-party in this action.

### (a) Request for Production No. 1

Request for Production No. 1 seeks "[a]ll documents [Activision] produced or submitted to the United States Federal Trade Commission, the Department of Justice, or any other United States regulatory agency related to [Activision's] proposed merger with Microsoft Corporation."

***Substantial Need.*** Activision has produced to the FTC hundreds of thousands of records and millions of pages from the files of dozens of document custodians and predecessors, as well as multiple (and substantial) volumes of highly detailed data. (York Decl. ¶ 12.) Among those records are scores of documents and data that constitute confidential commercial information, for which Plaintiffs must establish a substantial need under Rule 45—including, but not limited to, "customer lists" and "sales and revenue information," *Edwards*, 2014 WL 2465934, at *4, competitive analyses that strike at "the heart of [Activision's] confidential strategic thinking," *In re eBay*, 2009 WL 10677051, at *6, and "marketing plans," *In Re Apple iPhone*, 2020 WL 5993223, at *9. Moreover, Activision's productions to the FTC contain information that is subject to non-disclosure agreements with third parties. Despite all this, Plaintiffs have put forth no argument as to why the entirety of Activision's voluminous production to the FTC is "essential to a judicial determination of [their] case," *Gonzales*, 234 F.R.D. at 685, or how their case "virtually rises or falls with the admission or exclusion" of the full scope of this information. *Edwards*, 2014 WL

# PLAINTIFF'S RESPONSE

***Overbreadth and Undue Burden.*** These requests are also vastly overbroad and, as written, would encompass virtually every communication between any Activision employee and any Sony employee and between any Activision employee and any Nintendo employee, including communications that are wholly irrelevant to Plaintiffs' claims. While Plaintiffs purport to limit their requests for these communications to communications related to Activision's "video games or its video game content," such a "limitation" is no limitation at all, given the obvious fact noted above that Activision is a *video game* publisher. "By requesting all [] communications" between these entities, "regardless of their content or subject matter, Plaintiff[s] ignore[] [their] responsibility to 'avoid imposing undue burden or expense on a person subject to the subpoena.'" *Hosseinzadeh v. Bellevue Park Homeowners Ass'n*, 2020 WL 3271769, at *3 (W.D. Wash. June 17, 2020) (quoting Fed. R. Civ. P. 45(d)(1)) (denying motion to compel responses to a document request seeking "all written communications"); *see also, e.g.*, *L.S. v. Oliver*, 2019 WL 4857990, at *2–6 (S.D. Cal. Oct. 1, 2019) (denying motion to compel responses to various discovery requests "seeking 'all communications' regardless of subject matter"). The Court should accordingly quash these requests.

## B.    *DeMartini* **Plaintiffs' Argument**

Activision appears to misapprehend its role in a two-party merger, or at least it would have this Court do so. In reality, none of the cases cited by Activision support its arguments because none of the cases arose in the context of a two-party merger in which the merging parties had already gathered and produced millions of pages to various government agencies around the world, all of whom required those documents as a condition of determining whether the proposed acquisition might lessen competition. Activision further appears to misapprehend the standing that Congress granted to Plaintiffs under the Clayton Act to bring this action, and as a result, variously cites incorrect law on standing and disparages Plaintiffs and their counsel. However, Activision is quite wrong. Congress intended for actions like this to be

1 brought, and gave special powers to Plaintiffs to bring actions like this and to recover

2 attorneys' fees and costs if they are successful. "Private enforcement of the [Clayton]

3 Act was in no sense an afterthought; it was an integral part of the congressional plan

4 for protecting competition." *California v. Am. Stores Co.*, 495 U.S. 271, 275 (1990).

5     Activision asserts that it is a non-party and therefore entitled to heightened

6 protection. However, none of the cases cited by Activision in support of this position

7 involved a challenge to a corporate acquisition under Section 7 of the Clayton Act.

8 They are therefore of limited applicability here. In a section 7 merger case, the claim

9 is that the merger is unlawful in that it might lessen competition. Discovery into the

10 merging parties is therefore critical, constituting the two halves of the merger,

11 regardless of whether one or both are named as Defendants. Activision also argues

12 that Plaintiffs should be able to satisfy all of their discovery needs through discovery

13 of Defendant Microsoft. That is incorrect.

14         **1.**     **Legal Standard**

15     Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, Plaintiffs are

16 permitted to "obtain discovery regarding any nonprivileged matter that is relevant to

17 any party's claim or defense and proportional to the needs of the case." The scope of

18 Rule 26 is broad, allowing discovery not only "for use at the trial," but also allowing

19 "inquiry into matters in themselves inadmissible as evidence but which will lead to the

20 discovery of such evidence." Advisory Committee Notes, Fed. R. Civ. P. 26. "The

21 purpose of discovery is to allow a broad search for facts, the names of witnesses, or

22 any other matters which may aid a party in the preparation or presentation of his case."

23 *Id.*

24     Discovery includes non-parties who possess relevant information and

25 documents. While under Rule 45, a court must quash a subpoena when it "subjects a

26 person to undue burden," Fed. R. Civ. P. 45(d)(3)(A)(iv), "[w]hat constitutes an

27 'undue burden' is the same when a nonparty is subpoenaed under Rule 45 as when a

28 party receives a request for production under Rule 34." *St. Jude Med. S.C., Inc. v.*

-31-

JOINT STIPULATION REGARDING ACTIVISION BLIZZARD, INC.'S MOTION TO QUASH

1   *Janssen-Counotte*, 305 F.R.D. 630, 637 (D. Or. 2015). *See also, Mount Hope Church*

2   *v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012) ("[W]e will not read 'undue burden'

3   differently just because a non-party was subpoenaed.").

4        Moreover, as the party resisting discovery, Activision Blizzard has the burden

5   to demonstrate that the requested discovery is unduly burdensome. "[T]he party who

6   moves to quash a subpoena has the 'burden of persuasion' under Rule 45(c)(3)." *Moon*

7   *v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). The moving party "must

8   show that disclosure will cause it a clearly defined and serious injury. This burden is

9   particularly heavy to support a motion to quash as contrasted to some more limited

10   protection such as a protective order." *In re Domestic Drywall Antitrust Litig.*, 300

11   F.R.D. 234, 239 (E.D. Pa. 2014) (citations and quotations omitted).

12        Although the complaint only names Microsoft as a defendant, both Microsoft

13   and Activision, as the two merging entities, are equally important to the claims and

14   defenses. Microsoft only has its own documents, concerning competition and the

15   merger's likely effects from Microsoft's side of the merger. Activision Blizzard has

16   the other half. They are not duplicative and they are equally important. Both

17   Microsoft's and Activision's relevant documents are necessary here.

18       **2.**     **Activision's Argument That the Issuing Court Lacks Subject-**

19              **Matter Jurisdiction Over the Underlying Action Borders on**

20              **Frivolous.**

21        Plaintiffs are allowed to bring their claims on behalf of private citizens under

22   Section 16 of the Clayton Act, which provides a private right of action against mergers

23   before they occur. 15 U.S.C. § 26. "Private enforcement of the [Clayton] Act was in

24   no sense an afterthought; it was an integral part of the congressional plan for protecting

25   competition." *California v. Am. Stores Co.*, 495 U.S. 271, 275 (1990). Under Section

26   7, a plaintiff need only show that there is a reasonable probability that the proposed

27   merger will substantially lessen competition in any line of commerce in the country.

28

JOINT STIPULATION REGARDING ACTIVISION BLIZZARD, INC.'S MOTION TO QUASH

*See Brown Shoe*, 370 U.S. at 325 ("[I]f there is a reasonable probability that the merger will substantially lessen competition . . . the merger is proscribed.").

Judge Corley will decide this issue, and it is not an excuse for Activision to evade legitimate discovery. One might assume that if this argument truly had merit, Judge Corley would not have ordered, and Microsoft would have objected more strenuously, to the opening of discovery. But instead, fulsome discovery is proceeding as to Microsoft, one party to the merger, and it should proceed as to Activision, the other party to the merger.

    **3.**    **The Court Should Not Quash Plaintiffs' Deposition Requests on the Merits.**

        **(a)**    **This Court Should Not Defer Plaintiffs' Deposition Requests Because the Court Where the Action is Pending Has Thus Far Declined to Do So.**

The argument that Activision's and Mr. Kotick's depositions should be delayed because depositions of Microsoft will be delayed is a non-sequitur. Judge Corley heard argument with respect to Microsoft depositions and made what was the right call at that time. Plaintiffs would get immediate production of all FTC documents and interview and deposition transcripts from Microsoft. That has happened and discovery is proceeding.

Activision is situated differently. Weeks have passed since the last hearing before Judge Corley. Plaintiffs are prepared to take these depositions now. There is no need to wait. In an effort to resolve this dispute, Plaintiffs had proposed awaiting scheduling the depositions until after the Preliminary Injunction hearing but agreement could not be reached. Absent that agreement, these depositions should proceed.

        **(b)**    **The Court Should Not Quash Plaintiffs' Deposition Requests Because Plaintiffs Seek a Limited Amount of Testimony – Two Depositions – Directly Related to the**

**Issues in Dispute Arising from Microsoft's Acquisition of Activision**

Activision's argument fails because Activision pretends it is a non-party. However, it is a party—one of only two—to the challenged merger. And that makes it subject to reasonable discovery, like that proposed by Plaintiffs. All of Activision's authorities in support of its argument involved true non-parties, not parties to the challenged merger. And none of those cases involved "non-parties" who had already reviewed and produced millions of relevant pages to various governments around the world involving the same challenged transaction. Activision has further failed to show how any legitimate privacy interest that it has would not be protected by the protective order which is in place in the Action. Indeed, Activision has already produced the majority of documents to various governments around the world.

        (c)    **The Court Should Not Quash Plaintiffs' Request to Depose Activision's CEO Because the Apex Doctrine does Not Apply and Mr. Kotick is Directly Involved in the Challenged Transaction**

The Apex Doctrine does not apply here because Plaintiffs only seek two depositions. They have no need to work their way up the corporate ladder. Nor, given the time constraints at issue in this case, do Plaintiffs have time. Mr. Kotick was and is directly involved in the negotiation of the transaction at issue here. There is no one at Activision who is more responsible for this proposed transaction and he is thus an appropriate deponent. Indeed, Mr. Kotick has spoken out publicly in favor of the merger on numerous occasions, providing his analysis on why he believes the merger is good for competition.[10] Plaintiffs have already identified numerous documents demonstrating Mr. Kotick's critical role in the challenged transaction.

---

[10] *See, e.g.*, Kotaku, "Bobby Kotick Is Stoking Chinese Fear To Champion The Microsoft Acquisition," Feb. 8, 2023, available at https://kotaku.com/bobby-kotick-activision-blizzard-microsoft-china-1850089106; *see also*