# EXHIBIT 5

Caroline Van Ness (SBN 281675)
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: caroline.vanness@skadden.com

Steven C. Sunshine (*pro hac vice* pending)
Julia K. York (*pro hac vice* pending)
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: steven.sunshine@skadden.com
Email: julia.york@skadden.com

*Attorneys for Activision Blizzard, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ACTIVISION BLIZZARD, INC., | **Misc. Case No. 2:23-mc-00031** |
| Moving Party, | Underlying action in United States District Court for the Northern District of California, No. 3:22-cv-08991-JSC |
| v. | |
| DANTE DEMARTINI, CURTIS BURNS JR., NICHOLAS ELDEN, JESSIE GALVAN, CHRISTOPHER JOSEPH GIDDINGS-LAFAYE, STEVE HERRERA, HUNTER JOSEPH JAKUPKO, DANIEL DERMOT ALFRED LOFTUS, BEOWULF EDWARD OWEN, and IVAN CALVO-PEREZ, | **ACTIVISION BLIZZARD, INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS MOTION TO QUASH**<br><br>Fact Discovery Cutoff: TBD<br>Expert Discovery Cutoff: TBD<br>Pretrial Conference and Trial Date: TBD<br>Hearing Date: TBD |
| Responding Parties. | |

**ACTIVISION BLIZZARD, INC.'S SUPPLEMENTAL MEMORANDUM**

Activision Blizzard, Inc. ("Activision") respectfully submits this Supplemental Memorandum in Support of its Motion to Quash pursuant to Central District of California Civil Local Rule 37-2.3.

## INTRODUCTION

Activision's Motion to Quash is further supported by the three meet-and-confers that occurred after Activision provided Respondents with its portion of the Joint Stipulation.[1] During those meet-and-confers, Plaintiffs conceded that they do not require all of the sensitive commercial information they seek from Activision, and that production of much of the information could be deferred until after the preliminary injunction hearing in the underlying action. And while Plaintiffs represent that they proposed a "narrowed scope of discovery" to Activision, *see* Dkt. No. 1-1 at 4, Plaintiffs refused to memorialize their proposal in writing, and abruptly cut off negotiations after Activision had agreed to the key parts of what Activision understood Plaintiffs' proposal to be. Plaintiffs' portion of the Joint Stipulation filed on February 24, 2023 omits the details of these meet-and-confers, which further undermine Plaintiffs' opposition to Activision's Motion to Quash. By Plaintiffs' own admissions, the subpoenas are overbroad and unduly burdensome, Plaintiffs lack a substantial need for the confidential commercial information they seek from Activision, and the Motion to Quash should be granted.

---

[1] Activision originally sent Plaintiffs its portion of the Joint Stipulation on February 10, 2023. (*See* Supplemental Declaration of Julia K. York ("York Suppl. Decl.") (filed herewith) ¶ 3 & Ex. 1.) Thereafter, as described herein, the parties continued to meet and confer. When Plaintiffs returned their portion after those efforts were exhausted on February 22, 2023, it included a misleading description of the subsequent meet-and-confers. To clarify the issues in dispute and present an accurate recitation of the parties' negotiations, on February, 23, 2023, Activision added to its portion of the Joint Stipulation three paragraphs of procedural history detailing these meet-and-confers, and sent Plaintiffs the revised version with the changes highlighted. (*See id.* ¶¶ 7–8 & Ex. 1.) Plaintiffs vehemently objected, and suggested that they would not consent to the filing of any Joint Stipulation that included these additional facts that occurred after Activision sent its portion of the Joint Stipulation to Plaintiffs. (*Id.* ¶ 8 & Ex. 1.) When Activision queried whether Plaintiffs would withhold their consent to file the Joint Stipulation such that Activision would have to file its Motion to Quash separately pursuant to Central District of California Local Rule 37-2.4, Plaintiffs threatened to construe Activision's Motion as withdrawn and to seek sanctions for Activision's purported failure to follow the local rules. (*Id.*)

# BACKGROUND AND ARGUMENT

On February 14, 2023, four days after Activision sent Plaintiffs its portion of the Joint Stipulation regarding its Motion to Quash, Plaintiffs requested an additional meet-and-confer. (*See* York Suppl. Decl. ¶ 4 & Ex. 1.) In an effort to avoid burdening the Court with this dispute, and despite the fact that Activision had already gone to the burden and expense of briefing the dispute based on the unreasonable positions Plaintiffs had taken during the parties' first two meet-and-confers, Activision agreed to participate in a further meet-and-confer with Plaintiffs, which occurred on February 15, 2023. (*Id.*) During this meet-and-confer, counsel for Plaintiffs (notably not the attorney who had led the prior meet-and-confers) stated that Plaintiffs hoped to "reset" their discussion with Activision over the subpoenas and retreated from their initial positions with a vague offer to narrow the subpoenas. (*Id.* ¶ 4.) Plaintiffs did not provide a concrete proposal for how the subpoenas could be narrowed, but instead broadly suggested that there may be some categories of requests that Plaintiffs would consider removing or narrowing if they were to withdraw the subpoenas and issue new subpoenas with places of compliance in the Northern District of California. (*Id.*) Plaintiffs furthermore conceded that an immediate deposition of Activision's CEO was not necessary, that they did not need both a 30(b)(1) deposition of Activision's CEO and a 30(b)(6) deposition, and that they could wait until after the preliminary injunction hearing in the underlying action, set for April 12, 2023, to take any depositions.[2] (*Id.*)

On February 16, 2023, Activision participated in a further meet-and-confer with Plaintiffs to try to understand the contours of Plaintiffs' compromise proposal. (*Id.* ¶ 5 & Ex. 1.) During this meet-and-confer, Plaintiffs conceded that they likely did not need the full production that Activision made to the FTC during the FTC's investigation of the proposed transaction at the center of the underlying action and

---

[2] Notably, on February 13, 2023, Plaintiffs continued the 30(b)(6) deposition indefinitely, and on February 24, 2023, Plaintiffs continued the deposition of Activision's CEO indefinitely. York Suppl. Decl. ¶ 9 & Exs. 2–3.

brainstormed about potential ways to narrow their subpoenas' document requests and 30(b)(6) topics. (*Id.* ¶ 5.) Again, Plaintiffs did not commit to any modifications to the scope of their subpoenas and failed to provide Activision with a concrete proposal. (*Id.*) Activision asked Plaintiffs whether they would defer their discovery of Activision until after the preliminary injunction hearing if it agreed to produce transcripts of Activision's investigative hearings ("IH") taken by the FTC during the FTC's investigation into the proposed transaction, and Plaintiffs suggested they would consider that request. (*Id.*)

On February 17, 2023, Activision participated in yet another meet-and-confer with Plaintiffs. (*Id.* ¶ 6 & Ex. 1.) Plaintiffs finally provided a complete offer to Activision, which Activision understood to consist of the following: (1) Plaintiffs would agree to withdraw the instant subpoenas and issue new, narrowed subpoenas with the Northern District of California as the place of compliance, with dates of compliance set for after the preliminary injunction hearing, if (2) Activision would agree to accept service of the new subpoenas in the Northern District of California (reserving any and all objections) and to produce its FTC IH transcripts. (*Id.*) Plaintiffs also suggested they would ultimately be amenable to seeking specific documents from Activision's FTC production rather than the full FTC file. (*Id.* ¶ 6.)

After having extended the deadline by 5 days for Plaintiffs to respond with their portion of the Joint Stipulation, and following a holiday weekend, on February 21, 2023, Activision sent Plaintiffs an email agreeing to what it understood to be Plaintiffs' proposal, though proposing a March 28, 2023 production date for the IH transcripts. (*Id.* ¶¶ 6–7 & Ex. 1.) Activision also asked Plaintiffs if they would like to discuss the compromise proposal further. (*Id.* ¶ 7 & Ex. 1.) Plaintiffs responded by disputing Activision's understanding of Plaintiffs' offer—without defining their "actual" proposal—and insisting on proceeding with briefing. (*Id.*) When Activision asked Plaintiffs to reduce their proposal to writing and again noted its willingness to discuss, Plaintiffs refused and later provided their portion of the Joint Statement. (*Id.*) Notably,

-3-

**ACTIVISION BLIZZARD, INC.'S SUPPLEMENTAL MEMORANDUM**

Plaintiffs' portion of the Joint Stipulation does not outline any concrete proposal offered to Activision during any meet-and-confer, and instead provides only vague generalities. Indeed, contrary to Plaintiffs' representation that Activision "appeared to be unable to respond to [their] proposal," Dkt. No. 1-1 at 4, Activision engaged repeatedly and in good faith with Plaintiffs to understand what Plaintiffs were seeking and to resolve this dispute without court involvement.[3]

Plaintiffs' concessions during the meet and confer process themselves demonstrate that Plaintiffs lack a substantial need for the confidential commercial information they seek from Activision—i.e., that Plaintiffs' case "virtually rises or falls with the admission or exclusion of" that information, *see Edwards v. Cal. Dairies, Inc.*, 2014 WL 2465934, at *5 (E.D. Cal. June 2, 2014) (citation omitted)—and that Plaintiffs' subpoenas are overbroad and unduly burdensome. Indeed, Plaintiffs have effectively admitted that they: (1) do not need an immediate deposition of Activision's CEO; (2) do not need both a 30(b)(1) deposition of Activision's CEO and a 30(b)(6) deposition; (3) could wait to take any depositions of Activision until after the preliminary injunction hearing in the underlying action, and (4) do not need the millions of pages of documents in Activision's productions to the FTC.

For these reasons, and the reasons stated in Activision's portion of the Joint Stipulation regarding Activision's Motion to Quash, this Court should grant Activision's Motion to Quash.

---

[3] Plaintiffs also take issue with Activision's decision to file and brief its Motion to Quash in the Central District of California. Dkt. No. 1-1 at 4. But Federal Rule of Civil Procedure 45 requires Activision to file its Motion to Quash in "the court for the district *where compliance is required*," Fed. R. Civ. P. 45(d)(3)(A) (emphasis added), which, in this instance, is this Court. That Activision adhered to the requirements of Rule 45 and proceeded to brief this dispute in the interest of efficiency—such that resolution of the dispute would be ripe even after a potential transfer—provides no basis for denying its Motion to Quash.

| | |
|---|---|
| DATED: February 28, 2023 | By: /s/ *Caroline Van Ness* |
| | Caroline Van Ness (SBN 281675)<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>525 University Avenue<br>Palo Alto, California 94301<br>Telephone: (650) 470-4500<br>Facsimile: (650) 470-4570<br>Email: caroline.vanness@skadden.com |
| | Steven C. Sunshine (*pro hac vice* pending)<br>Julia K. York (*pro hac vice* pending)<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>1440 New York Avenue, N.W.<br>Washington, DC 20005-2111<br>Telephone: (202) 371-7000<br>Facsimile: (202) 393-5760<br>Email: steven.sunshine@skadden.com<br>Email: julia.york@skadden.com |
| | *Attorneys for Activision Blizzard, Inc.* |