# EXHIBIT 9

# EXHIBIT B

## SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

1440 NEW YORK AVENUE, N.W.

WASHINGTON, D.C. 20005-2111

---

TEL: (202) 371-7000
FAX: (202) 393-5760
www.skadden.com

FIRM/AFFILIATE OFFICES
-----
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WILMINGTON
-----
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
202-371-7146
DIRECT FAX
202-661-9126
EMAIL ADDRESS
Julia.York@SKADDEN.COM

February 8, 2023

VIA EMAIL

Joseph M. Alioto
Alioto Law Firm
One Sansome Street, 35th Floor
San Francisco, CA 94104
jmalioto@aliotolaw.com

Cadio Zirpoli
Joseph Saveri Law Firm
601 California Street, Suite 1000
San Francisco, CA 94108
czirpoli@saverilawfirm.com

RE: *DeMartini, et al. v. Microsoft Corp.*, No. 3:22-cv-08991-JSC (N.D. Cal.)

Dear Joe and Cadio:

On behalf of non-party Activision Blizzard, Inc. ("Activision"), we write to memorialize our meet and confer of February 3, 2023 in connection with Plaintiffs' third-party subpoenas to Activision in the above-captioned action, and to request a further meet and confer pursuant to Central District of California Local Rules 37-1 and 45-1. In short, as we previewed for you on our call last week, (1) no depositions of Activision Blizzard's personnel should proceed while depositions of party witnesses are stayed in the above-captioned action, and (2) Plaintiffs' request for the entirety of Activision's submissions to the Federal Trade Commission ("FTC") is unwarranted. Activision will not make its CEO or a corporate representative available for the noticed deposition dates or produce documents from its submissions to the FTC and intends to seek to quash both subpoenas.

February 8, 2022
Page 2

### I.  *Background.*

On January 30, 2023, Plaintiffs served non-party Activision with two subpoenas pursuant to Federal Rule of Civil Procedure 45.  *First*, Plaintiffs served counsel for Activision with a deposition subpoena for Activision's CEO, Robert A. Kotick, that purports to require Mr. Kotick to appear for a deposition on February 27, 2023.  Counsel for Activision voluntarily accepted service of that subpoena, reserving all objections and the right to move to quash under Rule 45.  *Second*, Plaintiffs served Activision's registered agent, CSC Lawyers Incorporating Service, with a subpoena return dated February 14, 2023, encompassing: (1) a demand for a Federal Rule of Civil Procedure 30(b)(6) corporate deposition; and (2) a series of facially overbroad document requests.

We participated in a meet and confer with you on February 3, 2023, regarding both the deposition and document requests.  You began the meet and confer by suggesting that "all" Plaintiffs seek from Activision is Mr. Kotick's deposition and the documents that Activision has produced to the Federal Trade Commission (the "FTC") in connection with Microsoft Corp.'s ("Microsoft") proposed acquisition of Activision (the "Proposed Transaction").  Notwithstanding the subpoena return dates of February 14 for the requested corporate deposition and February 27 for the requested deposition of Mr. Kotick, you suggested that Plaintiffs would seek to take the corporate deposition only if they were to need additional testimony *after* deposing Mr. Kotick.

We explained to you Activision's position that any depositions concerning Activision, a non-party, should at a minimum be deferred until after the preliminary injunction hearing in the above-captioned action.[1]  Such an approach would be consistent with the stay that Judge Corley put in place for first-party depositions.  We explained that Activision does not intend to produce its CEO on February 27, nor does Activision intend to produce a corporate witness on February 14, particularly in light of Plaintiffs' representation that they may not even need a corporate deposition.  As for Plaintiffs' document requests, we explained that the request that Activision produce any and all documents it has produced to the FTC is unwarranted, given that Plaintiffs will be receiving over nine million pages of documents from defendant Microsoft (the acquiring party), that Microsoft filed a meritorious motion to dismiss this action in its entirety that will be argued on March 16, and that a protective order was not yet in place.  *See* Fed. R. Civ. P. 45(d)(3)(B)(i) (recognizing disclosure of "a trade secret or other confidential research, development, or commercial information"

---

[1] For the avoidance of doubt, Activision reserves its right to resist the taking of depositions of its personnel even if the deposition dates are merely stayed until after a decision on Plaintiffs' preliminary injunction motion.

February 8, 2022
Page 3

as a basis for quashing or limiting a subpoena). Nevertheless, we emphasized that Activision would be willing to consider a more reasonable, narrowed proposal from Plaintiffs.

You offered no such proposal. Instead, you responded that the "state of affairs" on the discovery Plaintiffs seek is reflected in the subpoenas they served and that Plaintiffs' request for "just the FTC file" *was* your reasonable proposal. Contradicting your earlier position that Plaintiffs do not need a corporate deposition, you then noted that if Activision does not intend to produce Mr. Kotick as a deponent on February 27, Plaintiffs would intend to proceed with a corporate deposition on February 14. We responded that we would be back in touch to confirm Activision's position on Plaintiffs' various discovery requests.

## II. *Plaintiffs' Subpoenas Should be Quashed.*

In short, (1) both of the subpoenas should be quashed because the issuing court lacks subject matter jurisdiction in this action, as Microsoft persuasively argues in its Motion to Dismiss; (2) neither of the depositions that Plaintiffs seek is warranted, and while it is Activision's position that both deposition subpoenas should promptly be withdrawn, at a bare minimum the deposition subpoena return dates should be deferred until after the preliminary injunction hearing in this action; and (3) the document requests that Plaintiffs have issued are vastly overbroad and should be quashed.

### a. Subject Matter Jurisdiction

At the start, both of the subpoenas that Plaintiffs served upon Activision are void because the issuing court lacks subject matter jurisdiction over this action, rendering any compliance with those subpoenas both improper and an undue burden. As Microsoft persuasively advances in its motion to dismiss, the issuing court lacks subject matter jurisdiction over this action because Plaintiffs' claims are unripe and because Plaintiffs lack Article III standing. Plaintiffs' subpoenas are thus void and must be withdrawn. *U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 76 (1988) ("[I]f a district court does not have subject-matter jurisdiction over the underlying action, and the process [in question] was not issued in aid of determining that jurisdiction, then the process is void . . . ."); *see also, e.g.*, *In re Perez by Allen*, 2020 WL 7056024, at *3 (N.D. Cal. Dec. 2, 2020) ("[I]f a litigant lacks standing, a federal court lacks authority to adjudicate the case, including issuing deposition subpoenas or other process.") At a bare minimum, Plaintiffs' third-party discovery of Activision should be deferred until the question of the issuing court's jurisdiction is resolved. *In re Verifone, Inc.*, 2018 WL 3532761, at *6 (N.D. Cal. July 23, 2018)

February 8, 2022
Page 4

(staying non-party's compliance with a deposition subpoena "pending a decision on the question of subject-matter jurisdiction in the underlying action").

### b. **Deposition Subpoenas**

Plaintiffs' deposition subpoenas should be quashed for at least four additional, independent reasons.

*First*, Judge Corley has already deferred all first-party depositions in this action until after the preliminary injunction hearing. It necessarily follows that all non-party depositions should be deferred as well. Non-parties like Activision should not be subject to a higher burden than the parties themselves. *See, e.g.*, *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) ("[T]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." (citing *United States v. C.B.S.*, 666 F.2d 364, 371–72 (9th Cir.1982)). What is more, under Rule 45, Plaintiffs must secure whatever discovery they need from Microsoft first—before pressing non-parties like Activision for additional, potentially duplicative discovery and, accordingly, subjecting them to undue burden. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014) ("Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party."). Consequently, Plaintiffs' deposition requests are premature, at best, under Rule 45.

*Second*, the depositions that Plaintiffs seek are improper under Rule 45 because Plaintiffs have not demonstrated a substantial need for the confidential commercial information they clearly seek to elicit (given the sensitivity of the confidential commercial information in Activision's productions to the FTC). Where, as here, a subpoena seeks confidential "commercial information" from a nonparty, discovery is permissible only if the requesting party "show[s] a substantial need for" such information "that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(d)(3)(B)–(C). To make that showing, Plaintiffs must demonstrate that the discovery is not only relevant but also "essential to a judicial determination of its case." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 685 (N.D. Cal. 2006). Yet Plaintiffs have wholly failed to explain how their claims will "virtually rise[] or fall[] with the admission or exclusion" of the confidential commercial information they seek in connection with the two Activision depositions. *See Edwards v. Cal. Dairies, Inc.*, 2014 WL 2465934, at *5 (E.D. Cal. June 2, 2014). Nor could they, given the voluminous discovery they will obtain from Microsoft.

*Third*, Plaintiffs' request to depose Mr. Kotick—the CEO of Activision—is particularly improper, as it plainly runs afoul of the apex deposition doctrine. Under

February 8, 2022
Page 5

that doctrine, Plaintiffs must establish that: (1) "other less intrusive means of discovery . . . have been exhausted without success"; and (2) the executive they seek to depose "has unique, non-repetitive, firsthand knowledge of the facts at issue in the case." *Affinity Labs of Texas v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011). Yet Plaintiffs have not exhausted narrower means of discovery, and they have not even attempted to establish in these discussions that Mr. Kotick has unique, *non-repetitive* knowledge of the facts at issue in the case. Plaintiffs' hurried approach to starting discovery with the deposition of Activision's CEO signifies Plaintiffs' intention to harass and unduly burden Activision and its employees.

*Fourth*, Plaintiffs' request for a corporate deposition is likewise improper. Plaintiffs represented in our meet and confer that a corporate deposition may not even be necessary, so Plaintiffs cannot establish that they have a "substantial need" for the confidential commercial information they seek in connection with that deposition. Plaintiffs' Rule 30(b)(6) topics bear out that lack of necessity, particularly insofar as they encompass irrelevant information, information that could be procured from defendant Microsoft, duplicative information, and information that goes beyond the scope of what would be reasonable for a Rule 30(b)(6) deposition. For example, Plaintiffs' Rule 30(b)(6) topics indicate that they would like to ask Activision about, among other things, the identities of Activision "employees or agents who communicated with Microsoft [] regarding the" Proposed Transaction, including "the scope of the communications and who the communications were with." But such information is plainly discoverable from first-party Microsoft.

### c. Document Subpoena

Plaintiffs' six document requests should be withdrawn (or quashed) because they are facially overbroad, impose an undue burden, and go well beyond the scope of reasonable discovery for a non-party in this action. In addition, Plaintiffs cannot show a substantial need for the confidential commercial information they have requested.

**RFP No. 1** seeks "[a]ll documents [Activision] produced or submitted to the United States Federal Trade Commission, the Department of Justice, or any other United States regulatory agency related to [Activision's] proposed merger with Microsoft Corporation." Microsoft, a party to this action and the acquiring entity in the underlying proposed transaction, has agreed to produce nine to ten million pages of documents to Plaintiffs. This material will more than suffice at this stage of the litigation, and Plaintiffs have put forth no argument why Activision's voluminous production to the FTC is "essential to a judicial determination of [their] case," *Gonzales*, 234 F.R.D. at 685, or how their case "virtually rises or falls with the admission or exclusion" of this information. *Edwards*, 2014 WL 2465934, at *5.

February 8, 2022
Page 6

Plaintiffs thus do not have a substantial need for the material sought in this Request, as required to compel a third party to produce the types of business secrets included in Activision's productions to the FTC. Moreover, a document subpoena is overbroad and would impose an undue burden where, as here, "only some of the information contained in a file is relevant to the action." *Briggs v. Cnty. Of Maricopa*, 2021 WL 1192819, at *4 (D. Ariz. Mar. 30, 2021); *see also Beltran v. Baker*, 2022 WL 16963921, at *3 (E.D. Cal. Nov. 16, 2022) (holding that a "catchall request" seeking all potentially relevant materials was "unquestionably overbroad").[2]

**RFP No. 2** seeks Activision's "profit and loss statements, including for [its] gaming division(s), and i[ts] gaming studios." As with RFP No. 1, Plaintiffs lack a substantial need for Activision's profit and loss statements because such statements are confidential commercial information and are not essential for prosecution of Plaintiffs' claims. Moreover, this request is overbroad and would impose an undue burden on Activision, particularly to the extent that it purports to require Activision to produce all "profit and loss statements" without providing any date limitations or any other limitations (*e.g.*, by game). *See, e.g.*, *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (concluding that requests seeking "any and all documents over a ten year or greater period" were "overbroad on their face and exceed[ed] the bounds of fair discovery" (internal quotation marks and alterations omitted)).

**RFP No. 3** seeks "[t]ranscripts of all depositions and interviews of [Activision] and [Activision] employees or agents by the FTC related to [Activision's] merger with Microsoft Corporation." Activision's FTC transcripts reflect confidential commercial information, for which Plaintiffs cannot articulate a substantial need, let alone explain why all of these deposition and interview transcripts are "essential to a judicial determination of [their] case," *Gonzales*, 234 F.R.D. at 685, or how their case "virtually rises or falls with the admission or exclusion" of this information. *Edwards*, 2014 WL 2465934, at *5. Moreover, as with RFP No. 1, Plaintiffs' request for Activision's FTC transcripts are overbroad to the extent that the transcripts encompass information that may be irrelevant to Plaintiffs' claims. And the request will impose an undue burden on Activision to the extent that the transcripts encompass information that is reflected in the voluminous party production that Microsoft has already agreed to provide (which include investigational hearing transcripts of Microsoft personnel).

**RFP No. 4** seeks "[a]ll [c]ommunications between or among [Activision's] Board of Directors and negotiators of the merger agreement regarding [Activision's]

---

[2] For these reasons, Activision objects to RFP Nos. 2, 3, 4, 5, and 6 to the extent that they would encompass any documents that are duplicative of the documents Plaintiffs seek in connection with Request for Production No. 1.

merger with Microsoft Corporation." Because "documents created by or provided to [company] executives . . . definitely count[] as 'confidential research, development, or commercial information'" under Rule 45, Plaintiffs must establish a substantial need for these communications. *In re Apple iPhone Antitrust Litig.*, 2020 WL 5993223, at *9 (N.D. Cal. Oct. 9, 2020). But they cannot. Plaintiffs' case concerns *Microsoft's* rationale for the transaction and *Microsoft's* post-acquisition plans—not Activision's.

**RFP No. 5** seeks "[a]ll [c]ommunications between [Activision] and Sony Corporation or any of its subsidiaries or affiliated entities or agents, concerning any of Activision Blizzard's video games or its video game content generally from January 1, 2022 to the present." Communications reflecting Activision's negotiations with Sony constitute sensitive confidential commercial information, which may be subject to non-disclosure obligations and the disclosure of which would do considerable harm to Activision's negotiations with other platform providers. Plaintiffs cannot establish a substantial need under Rule 45 for this information, as Plaintiffs cannot establish that their claim "virtually rises or falls with [its] admission or exclusion." *Edwards*, 2014 WL 2465934, at *5. In addition, this request is vastly overbroad and, as written, would encompass virtually every communication between any Activision employee and any Sony employee, including communications that are wholly irrelevant to Plaintiffs' claims.

**RFP No. 6** seeks "[a]ll [c]ommunications between [Activision] and Nintendo Co., Ltd. or any of its subsidiaries or affiliated entities or agents, concerning any of Activision Blizzard's video games or its video game content generally from January 1, 2022 to the present." Similar to RFP No. 5, communications reflecting Activision's negotiations with Nintendo are confidential commercial information, which may be subject to non-disclosure obligations and the disclosure of which would do considerable harm to Activision's negotiations with other platform providers. Plaintiffs cannot establish a substantial need for this information under Rule 45, again given that they cannot establish that their claim "virtually rises or falls with the admission or exclusion" of this information. *Edwards*, 2014 WL 2465934, at *5. Likewise, this request is vastly overbroad to the extent that it would encompass virtually every communication between any Activision employee and any Nintendo employee, including communications that are wholly irrelevant to Plaintiffs' claims.

Activision will timely serve its Responses and Objections to Plaintiffs' document requests on February 10, 2023.[3]

---

[3] As a final matter, Activision notes that the Court entered a Protective Order in this action on February 7, 2023 that includes protections for non-parties. *Demartini et al v. Microsoft Corp.*, No. 3:22-cv-8991-JSC (N.D. Cal.), Dkt. No. 60. Activision reserves its right under Federal Rule of Civil Procedure 26 to

February 8, 2022
Page 8

* * *

  For these reasons, neither of the depositions Plaintiffs seek are warranted, and Plaintiffs should promptly withdraw both deposition subpoenas, or at minimum postpone their return date until after the preliminary injunction hearing in this action, at which point the parties can further evaluate their positions. Activision does not intend to produce its witnesses on either February 14 or February 27. Similarly, Plaintiffs' document requests are patently overbroad, would impose an undue burden on Activision, and do not meet the "substantial need" standard under Rule 45 and thus should be quashed.

  Pursuant to Central District of California Local Rule 37-1 and 45-1, please let us know when Plaintiffs are available for a meet and confer to discuss the above on either (1) tomorrow, February 9 at a time between 2:30 pm ET and 6:00 pm ET or (2) Friday, February 10 at a time between 2:00 pm ET and 4:30 pm ET. We would appreciate Plaintiffs' prompt response to this letter so that, to the extent necessary, we may present any dispute arising from Plaintiffs' deposition subpoenas to the Court in a timely fashion.

                Sincerely,

                /s/ *Julia K. York*

                Julia K. York

Cc: Tatiana V. Wallace (twallace@aliotolaw.com)
   Joseph R. Saveri (jsaveri@saverilawfirm.com)
   Elissa Amlin Buchanan (eabuchanan@saverilawfirm.com)
   Steven Noel Williams (swilliams@saverilawfirm.com)
   David H. Seidel (dseidel@saverilawfirm.com)
   Joseph Michelangelo Alioto, Jr. (joseph@aliotolegal.com)
   Lingel Hart Winters (sawmill2@aol.com)
   Lawrence Genaro Papale (lgpapale@papalelaw.com)

---

seek a modification of that Protective Order to ensure the adequate protection of its confidential information. *See Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 2019 WL 3069009, at *6 (C.D. Cal. Apr. 29, 2019) (granting non-party's motion to modify a protective order to "preclude disclosure of [non-party's] documents to in-house attorneys of any market competitor"). Activision further reserves its right under Federal Rule of Civil Procedure 45 to seek further protections for its confidential commercial information—*i.e.*, to request that productions to be made only "under specified conditions." Fed. R. Civ. P. 45(d)(3)(C).