Caroline Van Ness (SBN 281675)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: caroline.vanness@skadden.com

Steven C. Sunshine (*pro hac vice*)
Julia K. York (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: steven.sunshine@skadden.com
Email: julia.york@skadden.com

*Attorneys for Non-Party Activision Blizzard, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANTE DEMARTINI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MICROSOFT CORPORATION, a Washington corporation, <br><br> Defendant. | Case No. 3:22-cv-08991-JSC <br><br> **NON-PARTY ACTIVISION BLIZZARD, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DEPOSITIONS OF (1) ROBERT A. KOTICK AND (2) ACTIVISION** <br><br> Date: June 1, 2023 <br> Time: 10:00 a.m. <br> Location: Courtroom 8—19th Floor <br> Judge: Hon. Jacqueline Scott Corley |

Activision Blizzard, Inc. ("Activision") respectfully submits this opposition to Plaintiffs' Motion to Compel Depositions of (1) Robert A. Kotick and (2) Activision (ECF No. 126) (the "Motion" or "Motion to Compel").

## INTRODUCTION

Plaintiffs do not need the depositions of Activision CEO Bobby Kotick or Activision that they seek to compel in light of the millions of pages of documents they have received from Activision, which include two transcripts of testimony from Mr. Kotick. Indeed, Plaintiffs do not even try to explain how they are entitled to depose Mr. Kotick under the apex deposition doctrine or to articulate a need for the information they seek—let alone the requisite "substantial need" for this highly confidential commercial information. Rather, Plaintiffs merely attach briefing that Activision and Plaintiffs submitted *before* Activision's voluminous production to Plaintiffs of the material that Activision produced to the FTC in connection with its investigation into the transaction that Plaintiffs seek to enjoin (the "Proposed Transaction"). Plaintiffs' Motion should thus be denied both under the apex deposition doctrine and for lack of a substantial need under Fed. R. Civ. P. 45.

The depositions Plaintiffs seek are also premature. As this Court has recognized, there is no reason for Plaintiffs now to proceed with depositions, given that the upcoming hearing on Plaintiffs' preliminary injunction motion will concern only the issues of irreparable harm and bond. Nor is there a pressing reason for depositions to proceed in light of Defendant Microsoft Corp.'s ("Microsoft") fully briefed and meritorious motion to dismiss. After all, a second dismissal would mean that Plaintiffs are not entitled to any discovery at all. And as this Court has also recognized, a recent decision by the U.K. Competition and Markets Authority (the "CMA") has created further uncertainty regarding the timing of the Proposed Transaction and about discovery here. (*See* Apr. 27, 2023 Hearing Tr. 5:6–5:8.) This Court should accordingly deny Plaintiffs' Motion.[1]

---

[1] Activision submits this opposition brief as a supplement to the numerous arguments raised in its February 24, 2023 motion to quash, which Plaintiffs have included in connection with the instant Motion. (*See* Decl. of Steven N. Williams in Support of Plaintiffs' Motion to Compel (ECF No. 126-1) ("Williams Decl."), Ex. 2.)

-1-

ACTIVISION BLIZZARD INC.'S OPPOSITION TO PLAINTIFFS' MOT. TO COMPEL     CASE NO. 3:22-cv-08991-JSC

# BACKGROUND

Since Activision first filed its motion to quash in February, several significant events have occurred that further highlight why Plaintiffs are not entitled to the depositions they seek to compel. ***First***, Activision has produced to Plaintiffs over one million documents that Activision previously produced to the FTC in connection with the FTC's investigation into the Proposed Transaction. (Declaration of Julia K. York in Support of Non-Party Activision Blizzard, Inc.'s Opposition to Plaintiffs' Motion to Compel (filed herewith) ("York Decl.") ¶¶ 5–6.)  Specifically, on April 14, 2023, Activision produced the 11 transcripts and all accompanying exhibits from the investigational hearings and depositions that the FTC conducted of Activision's executives, including two transcripts of Mr. Kotick's testimony.  (*Id.* ¶ 5.)  And on April 18, 2023, Activision produced the millions of pages of documents it previously produced to the FTC.  (*Id.* ¶ 6.)  These documents include some of the most commercially sensitive information Activision maintains, including about the Proposed Transaction; Activision's most significant agreements and negotiations; Activision's analyses of the competitive landscape and the industry more broadly; and Activision's forward-looking strategies and plans.  (*Id.*)  Plaintiffs have not once articulated what additional information they could possibly need from Activision.

***Second***, several relevant milestones have occurred in this case.  On April 10, 2023, after the Court dismissed Plaintiffs' original complaint for failure to state a claim, Plaintiffs filed a similarly deficient amended complaint (ECF No. 84), which Microsoft has again moved to dismiss (ECF No. 120).  In addition, Plaintiffs filed their preliminary injunction motion (ECF No. 135), and the Court has limited the May 12, 2023, oral argument on that motion—as well as Microsoft's opposition to that motion—to the issues of irreparable harm and bond (ECF No. 97).[2]  Plaintiffs have also noticed the first depositions of Microsoft's employees for late May, *after* the preliminary injunction hearing. (York Decl. ¶ 10.)  Relatedly, in the most recent status conference on April 27, 2023, the Court

---

[2] In doing so, the Court expressed skepticism about Plaintiffs' ability to prove these elements. *See, e.g.*, Apr. 12, 2023 Hearing Tr. (ECF No. 118) 5:5–5:8 ("[F]rankly, I'm not aware of actually any consumer case in which [a] preliminary injunction has been granted, but let alone where no [bond] has been required. And it's kind of a big merger."); *id.* at 21:18–22:1 ("I'm skeptical giv[en] what's out there, giv[en] the case law, giv[en] that a consumer and particularly these are people who play video games, that they're going to be able to show an immediate irreparable harm if the merger [goes forward].").

explained that it would not order depositions to proceed at this juncture, given the focus of the preliminary injunction hearing on irreparable harm and bond.  (*See* Apr. 27, 2023 Hearing Tr. 4:25–5:8 ("[T]here's no way I'm going order any depositions right now . . . ."); *id.* at 7:2–7:3 ("I'm not going to do it.  I'm not going to order depositions in the interim.").)[3]

*Third*, beyond this litigation, on April 26, 2023, the CMA prohibited the Proposed Transaction in the U.K.

*Last*, Plaintiffs and Activision have participated in further meet-and-confers about Plaintiffs' deposition subpoena to Mr. Kotick in which Plaintiffs took positions that undercut the arguments they raise in their Motion.  (York Decl. ¶¶ 7–8.)  Specifically, during these meet-and-confers, Plaintiffs focused only on their subpoena to depose Mr. Kotick, though they refused to explain what testimony they needed that would not merely duplicate Mr. Kotick's prior testimony or the prior testimony of the other Activision executives.  (*Id.*)  Plaintiffs also stated that they were only seeking one deposition, and did not once mention a corporate deposition of Activision.  (*Id.*)  Plaintiffs nevertheless persisted in filing the instant Motion seeking both Mr. Kotick's deposition and a corporate deposition.

## ARGUMENT

This Court should deny Plaintiffs' Motion to Compel for at least three reasons.  First, Plaintiffs' subpoena to depose Mr. Kotick violates the apex deposition doctrine.  Second, Plaintiffs lack a substantial need for the confidential commercial information they seek from either of the depositions.  And third, the depositions Plaintiffs seek are entirely premature in light of numerous developments in the instant case and the CMA's decision.

---

[3] In light of these statements, and to avoid burdening the Court with further briefing concerning depositions in this case, on May 2, 2023, Activision asked Plaintiffs whether they would agree to defer litigation of their Motion to Compel at least until after the Court has resolved Plaintiffs' preliminary injunction motion. (York Decl. ¶¶ 9, 11, Ex. A.)  Specifically, Activision provided the following proposal: Activision would permit Plaintiffs to withdraw their Motion to Compel without prejudice if Plaintiffs would agree not to re-file their Motion to Compel until the sooner of (1) the day after the Court resolves Plaintiffs' preliminary injunction motion or (2) June 5, 2023.  (*Id.*)  Plaintiffs rejected this proposal without explanation.  (*Id.*)

-3-
ACTIVISION BLIZZARD INC.'S OPPOSITION TO PLAINTIFFS' MOT. TO COMPEL        CASE NO. 3:22-cv-08991-JSC

### I. Plaintiffs' Deposition Subpoena to Activision's CEO Violates the Apex Deposition Doctrine

Plaintiffs' subpoena seeking to depose Mr. Kotick, Activision's CEO, violates the apex deposition doctrine. "Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007). Accordingly, "parties seeking to depose a high ranking corporate officer must first establish" two key requirements. *Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011). First, the party must establish "that other less intrusive means of discovery . . . have been exhausted without success." *Id.* And second, the party must establish that the executive "has unique, non-repetitive, firsthand knowledge of the facts at issue in the case" about which they seek information. *Id.*

Plaintiffs fail to meet either of the requirements to depose Mr. Kotick, particularly given recent developments in the case. ***First***, Plaintiffs have not exhausted other, less intrusive means of discovery "to learn any of th[e] facts" they purport to need before pursuing Mr. Kotick's deposition. *Id.* at *10. Specifically, Plaintiffs do not explain whether any necessary facts—and if so, which ones—are missing from the over one million documents and eleven transcripts of testimony from Activision executives (including two from Mr. Kotick himself) that Activision has already produced. Indeed, Plaintiffs nowhere contend that they reviewed any of these documents or transcripts to learn these facts in the seven days they had between receiving the first set of documents and filing the instant Motion. This failure is dispositive and requires that Plaintiffs' Motion to Compel Mr. Kotick's deposition be denied. *See Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2014 WL 1340674, at *2–3 (N.D. Cal. Apr. 3, 2014) (Corley, J.) (granting a protective order on apex grounds where the party opposing the deposition had "produced over 2,000 pages of documents" and where the party seeking the deposition could obtain the information it sought from "far less burdensome discovery methods").

***Second***, Plaintiffs cannot establish that Mr. Kotick has *unique*, *non-repetitive* knowledge of the information they seek. While Plaintiffs insist that they seek Mr. Kotick's deposition merely

1 because they think it would be "important" to talk to the person who is selling his business (*see*
2 Williams Decl. Ex. 3 ¶ 8.), this is not the appropriate standard. *See Affinity Labs*, 2011 WL 1753982,
3 at *15 (requiring that a party seeking an apex deposition establish that the deponent "has *unique,*
4 *non-repetitive*, firsthand knowledge of the facts" (emphasis added)). Plaintiffs have not shown any
5 unique facts held by Mr. Kotick that are not already in the ample Activision discovery now in their
6 possession. *See Klungvedt v. Unum Grp.*, 2013 WL 551473, at *3 (D. Ariz. Feb. 13, 2013)
7 (precluding an apex deposition in part because the party seeking the deposition had "not filed any
8 supplement to suggest that some evidence [had] been discovered to support his argument that [the
9 executive had] unique knowledge related to the issues at hand"); *Symantec Corp. v. Acronis, Inc.*,
10 2013 WL 12184286, at *1 (N.D. Cal. Oct. 10, 2013) (Corley, J.) (denying a motion to compel apex
11 depositions where the party seeking the depositions "ha[d] not demonstrated that [the executives]
12 possess[ed] unique knowledge relevant to th[e] case"). Mr. Kotick's participation in events leading
13 to the sale of Activision is not enough to support Plaintiffs' showing. *See Celerity*, 2007 WL 205067,
14 at *4–5 (refusing to permit a deposition to go forward based on the plaintiffs' claims that executives
15 "participated" in relevant events, where knowledge was not unique to those executives). Moreover,
16 Plaintiffs have not suggested that Mr. Kotick has *any* knowledge of whether Plaintiffs will suffer
17 irreparable harm absent an injunction—the dispositive issue at the forefront of Plaintiffs' preliminary
18 injunction hearing. (*See* Apr. 27, 2023 Hearing Tr. 5:9–7:3 ("I didn't see anything in [the motion
19 for a preliminary injunction] that suggests . . . that [Plaintiffs need] those depositions . . . to show . . .
20 irreparable harm.").)

21 Because Plaintiffs cannot satisfy either requirement of the apex doctrine, this Court should
22 deny Plaintiffs' Motion. Plaintiffs' strategy of seeking to depose a company's most senior employee
23 without laying any foundation for doing so should not be rewarded.[4]

---

[4] Notably, Plaintiffs have also employed this strategy with at least one other third party, Nintendo, which has likewise moved to quash a subpoena seeking deposition testimony from a high-ranking executive. *See Nintendo of Am. Inc. v. DeMartini*, 2:23-mc-00036-TL (W.D. Wash.).

## II. Plaintiffs Do Not Have a Substantial Need for the Confidential Commercial Information They Seek

Recent developments highlight the absence of any substantial need for the confidential commercial information Plaintiffs seek from the Activision depositions. When a third-party subpoena seeks confidential "commercial information" from a non-party, discovery is permissible only if the requesting party "shows a substantial need for" such information "that cannot be otherwise met without undue hardship." Fed. R. Civ. P. 45(d)(3)(B)–(C). To make that showing, the requesting party must demonstrate that the discovery is "essential to a judicial determination of its case." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 685 (N.D. Cal. 2006). For the protection of third parties, this is necessarily a high bar; a party seeking third-party confidential commercial information must establish that the claims or defenses in the underlying case "virtually rise[] or fall[] with the admission or exclusion" of that information. *Edwards v. Cal. Dairies, Inc.*, 2014 WL 2465934, at *5 (E.D. Cal. June 2, 2014) (citation omitted). "[T]he fact that a protective order is in place . . . does not resolve the issue of whether [a] non-party is required to produce information that is claimed to be confidential commercial information," *id.* at *4, because a "protective order is not a substitute for establishing relevance or need." *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990); *accord In re eBay Seller Antitrust Litig.*, 2009 WL 10677051, at *4 (W.D. Wash. Aug. 17, 2009).

As an initial matter, there is no dispute that the testimony Plaintiffs seek qualifies as confidential "commercial information" entitled to the protections of Rule 45. (*See* Williams Decl. Ex. 2 at 20–21.) According to Plaintiffs, they intend to elicit testimony concerning Activision's most sensitive agreements, Activision's negotiations with industry partners like Sony and Nintendo, and Activision's distribution and development strategies. (*See* Williams Decl. Ex. 2 at 20–21, Ex. 3 ¶ 8.) This is "plainly the sort of information [Activision] would not disclose to competitors," and is thus entitled to the enhanced protections of Fed. R. Civ. P. 45. *In re Apple iPhone Antitrust Litig.*, 2020 WL 5993223, at *4, 9 (N.D. Cal. Oct. 9, 2020) (citation omitted); *see also, e.g.*, *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 629225, at *5 (N.D. Cal. Feb. 27, 2012) (holding

that requests to non-parties that sought licensing agreements called for "highly confidential commercial information" for which the plaintiffs failed to establish a substantial need).

The Federal Rules prohibit Plaintiffs from obtaining this confidential information from Activision because none of it is "essential to a judicial determination of [their] case." *Gonzales*, 234 F.R.D. at 685.  Plaintiffs never even bother to contend that it is essential because, from the outset of this litigation, Plaintiffs could obtain information essential to their case from the defendant, Microsoft: For example, the information Plaintiffs seek regarding Activision's communications and negotiations with Microsoft and regarding the availability of Activision's content post-merger on other platforms is more appropriately sought from *Microsoft's* witnesses.  *See* Fed. R. Civ. P. 45(d)(3)(C)(i) (requiring a party to demonstrate "a substantial need for [] testimony . . . that *cannot be otherwise met without undue hardship*" (emphasis added)); (*see also* Williams Decl. Ex. 2 at 21). Plaintiffs have no need (or entitlement) to take depositions of Activision's employees at all before taking any depositions of *Microsoft's* employees.  *See Thomas Land & Dev., LLC v. Vratsinas Constr. Co.*, 2019 WL 126859, at *2 (S.D. Cal. Jan. 8, 2019) (holding it was "an undue burden to force a non-party to comply with a [] discovery request[]" before "pursu[ing] party discovery").  Yet those witnesses have still not been deposed and their depositions have not been noticed until late May, at the earliest. (York Decl. ¶ 10.)  Nor is any information from Activision essential to determine whether Plaintiffs will face irreparable harm if the Proposed Transaction closes, which is likely to be dispositive of Plaintiffs' claim for injunctive relief.  (*See* Apr. 12, 2023 Hearing Tr. 21:18–22:1 ("I'm skeptical giv[en] what's out there, giv[en] the case law, giv[e]n that a consumer and particularly these are people who play video games, that they're going to be able to show an immediate irreparable harm if the merger [goes forward]."); Apr. 27, 2023 Hearing Tr. 5:9–7:3 ("I didn't see anything in [the motion for a preliminary injunction] that suggests . . . that [Plaintiffs need] those depositions . . . to show . . . irreparable harm.").)

Plaintiffs have even less need for deposition testimony now than they did when Activision first moved to quash their subpoenas in February.  The over one million documents that Activision recently produced to Plaintiffs squarely address the testimony that Plaintiffs purport to need, as they include documents reflecting: Activision's agreements and negotiations with Microsoft regarding

-7-

the Proposed Transaction; Activision's agreements and negotiations with Sony, Nintendo, and other industry actors; Activision's profits, losses, and revenues; Activision's past, present, and future strategies; and much else.  What is more, regarding a corporate deposition, Plaintiffs initially represented in February that a corporate deposition may not even be necessary (Williams Decl. Ex. 3 ¶¶ 6–7) and since then have continued to totally neglect their request for a corporate deposition, not once mentioning that request in recent meet-and-confers and instead stating that they wanted to take only one deposition when discussing their request to depose Mr. Kotick.  (York Decl. ¶¶ 7–8.)  All of this simply reinforces that Plaintiffs have no need for either deposition.  This Court should deny Plaintiffs' Motion to Compel for Plaintiffs' failure to establish that they have a substantial need for the testimony they seek.

### III.   The Depositions Plaintiffs Seek Are Premature

The two Activision depositions Plaintiffs seek are also wholly premature, given the numerous developments described above, upcoming events in this case, and Plaintiffs' abject lack of need. This Court has already advised that "[t]here's no way" it would "order any depositions right now." (Apr. 27, 2023 Hearing Tr. 4:25–5:2.)  In light of this admonition, non-party Activision proposed deferring litigation of the instant Motion.  (York Decl. ¶¶ 9, 11, Ex. A.)  But Plaintiffs refused Activision's proposal without explanation.  (*Id.*)

As this Court recognized, Plaintiffs have no need for depositions of Activision's employees while the Court is focused on resolving the issues of irreparable harm and bond—about which Activision's employees have nothing to say.  (*See* Apr. 27, 2023 Hearing Tr. 4:25–7:3.)  Nor do Plaintiffs have a need to take depositions of Activision's employees while Microsoft's meritorious motion to dismiss Plaintiffs' amended complaint—which could wholly obviate Plaintiffs' discovery requests—remains pending.  Beyond these pending motions, as noted above, Plaintiffs have no need to take depositions of Activision's employees before taking any depositions of *Microsoft's* employees.  And as this Court has also recognized, the CMA's decision to prohibit the Proposed Transaction in the U.K. has created further uncertainty regarding the timing of the Proposed Transaction and discovery in the instant case.  (*See* Apr. 27, 2023 Hearing Tr. 5:6–5:8.)  This Court

1  should thus reject Plaintiffs' unnecessary attempts to put the cart before the horse, and deny
2  Plaintiffs' Motion to Compel.

### CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motion to Compel.

DATED: May 5, 2023                By: /s/ *Caroline Van Ness*

Caroline Van Ness (SBN 281675)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570
Email: caroline.vanness@skadden.com

Steven C. Sunshine (*pro hac vice*)
Julia K. York (*pro hac vice*)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005-2111
Telephone: (202) 371-7000
Facsimile: (202) 393-5760
Email: steven.sunshine@skadden.com
Email: julia.york@skadden.com

*Attorneys for Non-Party Activision Blizzard, Inc.*

-9-
**ACTIVISION BLIZZARD INC.'S OPPOSITION TO PLAINTIFFS' MOT. TO COMPEL**           **CASE NO. 3:22-cv-08991-JSC**