Valarie C. Williams (Bar No. 335347)
Tania Rice (Bar No. 294387)
Alston & Bird LLP
560 Mission Street, Suite 2100
San Francisco, CA 94105
Telephone: (415) 243-1000
valarie.williams@alston.com
tania.rice@alston.com

B. Parker Miller (*pro hac vice*)
Alston & Bird LLP
1201 West Peachtree Street, Suite 4900
Atlanta, GA 30309
Telephone: (404) 881-7000
parker.miller@alston.com

Beth A. Wilkinson (*pro hac vice*)
Rakesh N. Kilaru (*pro hac vice*)
Kieran Gostin (*pro hac vice*)
Anastasia M. Pastan (*pro hac vice*)
Jenna Pavelec (*pro hac vice*)
Wilkinson Stekloff LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
bwilkinson@wilkinsonstekloff.com
rkilaru@wilkinsonstekloff.com
kgostin@wilkinsonstekloff.com
apastan@wilkinsonstekloff.com
jpavelec@wilkinsonstekloff.com

*Counsel for Defendant Microsoft Corporation*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANTE DEMARTINI, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | Case No. 3:22-cv-08991-JSC<br><br>**DECLARATION OF TIM STUART IN SUPPORT OF MICROSOFT CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br><br>Hon. Jacqueline Scott Corley<br>Date: May 12, 2023<br>Time: 10:00 a.m.<br>Courtroom: 8 – 19th Floor |

I, Tim Stuart, declare as follows:

1.      I am a Corporate Vice President at Microsoft Corporation ("Microsoft") and the Chief Financial Officer ("CFO") of Microsoft Gaming, or Xbox.

2.      I submit this declaration in support of Microsoft's response in opposition to Plaintiffs' motion for a preliminary injunction.

3.      I have worked at Microsoft since 2002, and I became CFO of Xbox in 2015.  I report to Bill Duff, Corporate Vice President and CFO of Experiences & Devices at Microsoft, who, in turn, reports to Amy Hood, Executive Vice President and the CFO of Microsoft.

4.      As Xbox CFO, among other things, I am responsible for leading the worldwide financial management and operations of the global Xbox business. My responsibilities also include overseeing the financial valuations of potential mergers, acquisitions, partnerships, and other deals.

5.      On January 18, 2022, Microsoft entered into an Agreement and Plan of Merger with Anchorage Merger Sub Inc. and Activision Blizzard, Inc. ("Activision Blizzard") (the "Merger Agreement") for Microsoft to acquire Activision Blizzard (the "Transaction").  I was part of team responsible for negotiating the Merger Agreement.

6.      Exhibit A is a true and correct copy of an excerpt of the Merger Agreement.

7.      As part of Microsoft's internal board-approval process for the Transaction, Microsoft created an acquisition model to forecast the value to Microsoft of the Transaction (the "Acquisition Model"). The primary purpose of the Acquisition Model was to determine whether the Transaction is likely to be accretive to Microsoft at the proposed purchase price. I was responsible for the Acquisition Model and presented the valuation to the Microsoft Board of Directors.

8.      Exhibit B is a true and correct copy of an excerpt of the presentation, referred to as ██████████████████████████████████████████████ ██████████████████████████████████.

9.      Based on representations from counsel and my own knowledge of the Merger Agreement, I understand that:

    a.      Pursuant to Section 8.1(c) of the Merger Agreement, if the Transaction does not close by the "Outside Date," Activision Blizzard and Microsoft each have the unilateral right to terminate the Merger Agreement, subject to certain terms and conditions set forth in the Merger Agreement. The Outside Date is July 18, 2023.

    b.      Plaintiffs are seeking a preliminary injunction to enjoin the Transaction.

    c.      If Plaintiffs' requested relief were granted, such relief could interfere with the Transaction closing in a timely manner, allowing Activision Blizzard to terminate the Merger Agreement.

10.    The termination of the Merger Agreement would result in significant and substantial costs and damages to Microsoft, as detailed below.

**A.    <u>The Breakup Fee</u>**

11.    If Activision Blizzard terminates the Merger Agreement pursuant to Section 8.1(c), Section 8.3(c) requires, in relevant part, and in certain situations, that Microsoft promptly pay Activision Blizzard a $3 billion breakup fee (the "Breakup Fee").

12.    As a result, if Plaintiffs' proposed relief were granted and the Merger Agreement is terminated, Microsoft would suffer an immediate loss of **$3 billion**.

13.    In addition, Section 6.15 of the Merger Agreement requires Activision Blizzard to take the actions set forth in Section 6.15 of the Company Disclosure Letter delivered by Activision Blizzard to Microsoft and Anchorage Merger Sub Inc. on the day of the Merger Agreement.

14.    <u>Exhibit C</u> is a true and correct copy of an excerpt of the Company Disclosure Letter.

15.    █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

2

16. ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████

**B.**    **The Transaction Value**

17. ████████████████████████████████████
████████████████████████████

18. ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

19. ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████

20. ████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████

**D.**    **Total Lost Value**

21. Based on the foregoing, the approximate potential total lost value to Microsoft of granting Plaintiffs' request to preliminarily enjoin the Transaction would be $██████████—which is the sum of: (a) the difference between the Transaction Value and Purchase Price (█████████ minus $68.7 billion) and (b) █████████████████████████

3

1   █████████████

2        I declare under penalty of perjury that the foregoing is true and correct. Executed on

3   May 4, 2023.

4

5

6

7   By: _____

8        Tim Stuart

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

DECL. OF TIM STUART IN SUPPORT OF
MICROSOFT'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
Case No. 3:22-cv-08991-JSC