CLEARY GOTTLIEB STEEN & HAMILTON LLP
C. Lawrence Malm (admitted *pro hac vice*)
lmalm@cgsh.com
2112 Pennsylvania Ave, N.W.
Washington, DC 20037
Telephone: 202-974-1959

Zachary G. Tschida (Bar No. 344994)
Ye Eun Chun (Bar No. 331459)
ztschida@cgsh.com
chchun@cgsh.com
1841 Page Mill Road, Suite 250
Palo Alto, CA 94304
Telephone: 650-815-4100

*Counsel for Non-Party Sony Interactive Entertainment LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DANTE DEMARTINI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION, a Washington Corporation,<br><br>Defendant. | Case No. 3:22-cv-08991-JSC<br><br>**NON-PARTY SONY INTERACTIVE ENTERTAINMENT LLC'S STATEMENT IN SUPPORT OF SEALING CERTAIN CONFIDENTIAL BUSINESS MATERIAL FILED WITHIN PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND ORDER TO SHOW CAUSE** |

## I.  INTRODUCTION

Non-Party Sony Interactive Entertainment LLC ("SIE") produced certain confidential business material in response to subpoenas served by Plaintiffs Dante DeMartini, Curtis Burns Jr., Nicholas Elden, Jessie Galvan, Christopher Giddings-Lafaye, Steve Herrera, Hunter Jakupko, Daniel Loftus, Beowulf Owen, and Ivan Calvo-Perez ("Plaintiffs").  Plaintiffs described this material in their Motion for Preliminary Injunction and Order to Show Cause (ECF No. 135) and filed a corresponding Administrative Motion to Consider Whether Another Party's Material Should Be Sealed (ECF No. 134).  Per Civil Local Rule 79-5(f)(3), Non-Party SIE requests that this Court seal its confidential information identified below.[1]

SIE seeks to maintain under seal a certain subset of material that was implicated in Plaintiffs' Motion for Preliminary Injunction and Order to Show Cause that references highly confidential information created by Non-Party SIE for internal use only.  While not all of the SIE information cited in the filing is competitively sensitive, SIE after careful review of the filing has determined that the exhibits and excerpts described below quote or refer to information produced in discovery in this litigation pursuant to a third-party subpoena, which SIE designated "Outside Counsel Only" after insisting that the parties update the Protective Order in this case.  The parties stipulated to amend the Protective Order (ECF No. 70) to include an "Outside Counsel Only" designation, and this Court ordered the amendment of the Protective Order to include such designation (ECF No. 71).  SIE requested the additional protection because it is particularly important that Microsoft – a direct competitor – not have access to this material.

---

[1] SIE has received relief from the timing requirements of the Rule.  *See* ECF No. 177.

| Portion of Document Sought to be Sealed (Pages: Lines or Exhibit) | Description of Document | Reasons for Sealing |
|---|---|---|
| MPI 15:10-12 | Economic analysis regarding the anticompetitive effects of the proposed Microsoft-Activision merger | This section of Plaintiffs' MPI contains non-public economic analysis about Microsoft's foreclosure incentives relating to Activision content, relying on internal non-public SIE data, which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |
| MPI 16:23-26 | Economic analysis regarding foreclosure incentives | This section of Plaintiffs' MPI contains non-public economic analysis about Microsoft's foreclosure incentives relating to Activision content, relying on internal non-public SIE data, which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |
| MPI 18:1-3 | SIE business analysis of competitor behavior | This section of Plaintiffs' MPI contains SIE's President and CEO's non-public thinking of a competitor's behavior and credibility, which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |
| MPI 19:23-25 | SIE commercial analysis of upstream competitive inputs to SIE's business | This section of Plaintiffs' MPI contains non-public economic and commercial analysis of SIE competitive inputs, which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |

| | | |
|---|---|---|
| MPI 20:1-4 | Economic analysis concerning SIE consumer behavior and preferences; SIE explanations for previous product performance; and SIE commercial analysis of upstream competitive inputs to SIE's business | This section of Plaintiffs' MPI contains economic and commercial analysis of non-public SIE data concerning SIE platform users' behavior, which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |
| MPI 20:12-15 | SIE commercial analysis of upstream competitive inputs to SIE's business | This section of Plaintiffs' MPI contains SIE's non-public commercial analysis of SIE competitive business inputs and their value to SIE's platform, which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |
| MPI 20:25-21:6 | Revenue data; consumer spend, engagement, and gameplay data | This section of Plaintiffs' MPI contains both SIE's sensitive non-public financial information about SIE's revenues generated by *Call of Duty* and analysis of SIE's internal, non-public user data (specifically, gameplay and spend data), all of which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |
| MPI 21:9-13 | Consumer spend, engagement, and gameplay data | This section of Plaintiffs' MPI contains non-public economic analysis of SIE internal, non-public user data (specifically, gameplay and spend data), which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |

| | | |
|---|---|---|
| MPI 21:17-19 | Consumer engagement and gameplay data | This section of Plaintiffs' MPI contains non-public economic analysis of SIE internal, non-public user data (specifically, engagement and gameplay data), which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |
| MPI 22:6-8 | Data analysis concerning console switch rates | This section of Plaintiffs' MPI contains non-public economic analysis concerning estimates of PlayStation user switch rates in light of *Call of Duty* becoming exclusive to Xbox, based on non-public SIE data, which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |
| MPI 23:14 | SIE declaration regarding the anticompetitive impact from Microsoft-Activision merger | Although SIE does not have access to the specific text, based on the citation to the SIE declaration, SIE believes this section of Plaintiffs' MPI reveals SIE's internal non-public competitive analysis, which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |
| MPI 27:27-28:3 | SIE declaration regarding the anticompetitive impact from Microsoft-Activision merger | This section of Plaintiffs' MPI contains SIE commercial analysis as to the anticompetitive effects of the proposed Microsoft-Activision transaction, which are based on non-public SIE data that SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |

| Seidel Declaration – Ex. A | Plaintiffs' Expert Report | This document contains economic analysis of non-public SIE data regarding user spend, engagement, and gameplay; PlayStation console sales; SIE's perspective on the competitive landscape of cloud gaming, multi-game subscription services, and high performance consoles; and SIE's perspective on the strategic importance of certain franchises; all of which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |
| --- | --- | --- |
| Seidel Declaration – Ex. B | Economic analysis regarding the anticompetitive effects of the proposed Microsoft-Activision merger | This document contains economic analysis based on non-public SIE data regarding *Call of Duty* on PlayStation; SIE spend, engagement, and gameplay data; SIE consumer surveys; and data concerning PlayStation console ownership; all of which SIE uses when developing and executing its competitive, marketing, and business strategies. Moreover, this analysis outlines business strategies that a competitor or partner could use to gain a competitive advantage over SIE. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |
| Seidel Declaration – Ex. C | Economic analysis regarding the anticompetitive effects of the proposed Microsoft-Activision merger | This document contains economic analysis based on non-public SIE data regarding SIE's research and development strategies; SIE console performance; SIE consumer surveys; SIE competition strategies; SIE financial data (specifically revenue and profits from *Call of Duty*); estimates of console switch rates; associations between PlayStation's content library and user gameplay and engagement; franchise comparisons; third-party partnerships; cloud gaming; and multigame subscription services; all of which SIE uses when developing and executing its competitive, marketing, and business strategies. Moreover, this analysis outlines business strategies that a competitor or partner could use to gain a competitive or commercial advantage over SIE. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |

| | | |
|---|---|---|
| Seidel Declaration – Ex. D | Consumer engagement and gameplay data | This document contains SIE's non-public data and analysis about SIE platform users' behavior regarding certain franchises available on SIE platforms (specifically engagement and gameplay data), which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |
| Seidel Declaration – Ex. E | Economic analysis regarding foreclosure incentives | This document contains non-public economic analysis about Microsoft's foreclosure incentives relating to *Call of Duty*, relying on internal non-public SIE data, which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |
| Seidel Declaration – Ex. F | SIE declaration regarding the anticompetitive impact of the proposed Microsoft-Activision merger | This document contains non-public SIE business strategies, commercial perspectives towards other entertainment companies, and data regarding user gameplay, engagement, spend, and other metrics; SIE consumer surveys; franchise production costs; comparison between franchises on SIE's platform, particularly between *Call of Duty* and other games; details on development partnerships with third-party publishers; SIE's business perspective on franchise exclusivity; estimates of console switch rates; information on SIE's research and development business model; and SIE's perspectives of other publishers; all of which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |

| | | |
|---|---|---|
| Seidel Declaration – Ex. G | SIE Observations on the Importance of Call of Duty | This document contains non-public SIE data and economic analysis regarding SIE user engagement, gameplay, and spend data; SIE's third-party franchise popularity, including that of *Call of Duty*; comparisons between AAA franchises; cloud gaming on SIE's platform; SIE customer surveys; connections between franchise availability and console sales and subscriptions to cloud gaming and multi-game subscription services; and cross-platform play; all of which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |
| Seidel Declaration – Ex. L | Slide deck on the importance of Activision content to SIE's platform | This document contains non-public SIE data regarding SIE *Call of Duty* revenues; user engagement, gameplay, and spend; SIE consumer surveys; SIE strategic outlook on exclusivity of certain franchises; and competitive incentives concerning developers; all of which SIE uses when developing and executing its competitive, marketing, and business strategies. Legitimate confidentiality and competitive interests warrant the sealing of this highly confidential information, the disclosure of which would cause injury to SIE that could not be avoided through any less restrictive alternative to sealing. |

## II.   THERE ARE COMPELLING REASONS TO SEAL SIE'S CONFIDENTIAL BUSINESS INFORMATION

Although the public enjoys a general right to inspect and copy public records, including judicial records, "access to judicial records is not absolute." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). The presumption in favor of access to judicial records may be overcome by "compelling reasons" that justify sealing them, such as the need to prevent court filings from serving as "sources of business information that might harm a litigant's competitive standing." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)). Courts have broad discretion to prevent disclosure of "many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). Specifically, if revealing

"confidential business material, marketing strategies, [and] product development plans could result in improper use by business competitors seeking to replicate [the company's] business practices and circumvent the time and resources necessary in developing their own practices and strategies," a court may seal the materials in question. *Roley v. Google LLC*, No. 18-cv-07537-BLF, 2020 WL 13517498, at *1 (N.D. Cal. Apr. 28, 2020) (quoting *Algarin v. Maybelline, LLC*, No. 12CV3000 AJB DHB, 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014)). Non-parties receive special deference when issues of confidentiality are considered. *See United States v. Bazaarvoice, Inc.*, No. 13-cv-00133-WHO, 2014 WL 11297188, at *1 (N.D. Cal. Jan. 21, 2014) (granting motion to seal third-party trial exhibits, noting that disclosure would "chill investigations in the future where third party documents are essential"); *see also Ctr. for Auto Safety*, 809 F.3d at 1097.

Here, Non-Party SIE seeks to seal limited non-public information containing SIE's highly confidential competitive analyses and business strategy information for its consoles, subscription services, and cloud gaming businesses, which are based on its internal non-public data. *See* Ex. 1 (Decl. of C. Svensson). In particular, the information that SIE seeks to protect contains: SIE's secret and internal-only financial information; SIE users' engagement, spending, and gameplay data; SIE's customer survey results; SIE's presentations displaying highly sensitive business information; an Expert Report containing SIE's highly sensitive business information; and economic analyses conducted using SIE's internal, non-public data. SIE uses this information to maintain its current business model and shape its future strategy. If these business secrets were made available to the public, it would greatly increase the risk that SIE's market competitors could take advantage of SIE in negotiations or circumvent the time and resources SIE expended in developing its practices and strategies. Public disclosure of this highly confidential information would undermine SIE's business model and give competitors an unfair advantage in the marketplace. *See* Ex. 1 (Decl. of C. Svensson); *Synchronoss Techs., Inc. v. Dropbox Inc.*, No. 16-cv-00119-HSG, 2018 WL 6002319, at *1 (N.D. Cal. Nov. 15, 2018) (noting that courts have sealed confidential business information when it "prevent[ed] competitors from gaining insight into the parties' business model and strategy") (citing *In re Qualcomm Litig.*, No. 3:17-cv-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017)); *Bauer Bros. LLC v. Nike, Inc.*,

No. 09cv500-WQH-BGS, 2012 WL 1899838, at *2 (S.D. Cal. May 24, 2012) (concluding that "public disclosure of Nike's confidential business materials . . . could result in improper use by business competitors seeking to replicate Nike's business practices and circumvent the considerable time and resources necessary in product and marketing development"). Given the nature of Plaintiffs' case, the information they have received from SIE is current and therefore of substantial competitive value.

SIE only disclosed this information to Plaintiffs in response to their subpoenas, and only after the protective order was amended specifically to provide for "Outside Counsel Only" treatment. The SIE information in the Motion for Preliminary Injunction and Order to Show Cause derives from documents that had been designated Outside Counsel Only.

### III. THE COMPELLING REASONS TO SEAL OUTWEIGH ANY PUBLIC INTEREST IN THE REDACTED MATERIAL

SIE's request to seal portions of Plaintiffs' Motion for Preliminary Injunction and Order to Show Cause is the result of its good faith effort to seek the sealing only of information that is confidential, commercially or competitively-sensitive, and cannot be protected from public disclosure through less restrictive means. Any public interest in disclosing the redacted information in Plaintiffs' Motion for Preliminary Injunction and Order to Show Cause is outweighed by the prejudice that will result to SIE, a non-party that "did not voluntarily put [its information] at issue in this litigation," if no protection is granted. *Bazaarvoice, Inc.*, 2014 WL 11297188, at *1 (noting importance of protecting third parties); *see also Ctr. for Auto Safety*, 809 F.3d at 1097.

### IV. CONCLUSION

For the foregoing reasons, SIE respectfully requests that the Court grant Plaintiffs' Administrative Motion to Consider Whether Another Party's Material Should Be Sealed (ECF No. 134) and maintain under seal SIE's confidential information listed in the chart above.

Dated: May 11, 2023

        Respectfully submitted,

        Cleary Gottlieb Steen & Hamilton LLP

        <u>/s/ C. Lawrence Malm</u>

        C. Lawrence Malm (admitted *pro hac vice*)
        lmalm@cgsh.com
        2112 Pennsylvania Avenue, N.W.
        Washington, D.C. 20037
        T: 202-974-1959

        Zachary G. Tschida (Bar No. 344994)
        Ye Eun Chun (Bar No. 331459)
        ztschida@cgsh.com
        chchun@cgsh.com
        1841 Page Mill Road, Suite 250
        Palo Alto, CA 94304
        Telephone: 650-815-4100

        *Counsel for Non-Party Sony Interactive Entertainment LLC*