United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANTE DEMARTINI, et al., | Case No.  22-cv-08991-JSC |
| Plaintiffs, | |
| v. | **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |
| MICROSOFT CORPORATION, | Re: Dkt. No. 135 |
| Defendant. | |

Plaintiff recreational video game players seek to block the proposed merger between Microsoft Corporation and Activision Blizzard, Inc.  Plaintiffs allege "Microsoft will seek to make [Activision]'s gaming content exclusive or partially exclusive to Microsoft's own platforms and foreclose [Activision]'s gaming content from rival video game platforms."  (Dkt. No. 84 ¶ 12.)[1] They sue under Sections 7 and 16 of the Clayton Act.  Now pending before the Court is Plaintiffs' motion to preliminarily enjoin the merger pending a final decision on the merits.  (Dkt. No. 135.) At the Court's direction, Microsoft's opposition to the motion addresses only the issues of irreparable harm and the bond.  After carefully considering the parties' submissions and having had the benefit of oral argument on May 12, 2023, the Court DENIES Plaintiffs' motion. Assuming without deciding Plaintiffs have established a likelihood of success on the merits, they fail to demonstrate they will be personally irreparably harmed if the merger occurs before a merits decision.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**BACKGROUND**

Plaintiffs live in various cities throughout the United States and purchase both video games and video game platforms.  (Dkt. No. 84 at 24-26; Dkt. No. 140 ¶¶ 2-3, 6; Dkt. No. 145 ¶¶ 2-3, 5; Dkt. No. 146 ¶¶ 2-4, 7; Dkt. No. 147 ¶¶ 2-4, 7; Dkt. No. 148 ¶¶ 2, 4, 7; Dkt. No. 149 ¶ 2-3, 7.) They primarily play *Call of Duty*.  (*See* Dkt. No. 140 ¶ 11; Dkt. No. 145 ¶ 4; Dkt. No. 146 ¶ 11; Dkt. No. 147 ¶¶ 6, 18; Dkt. No. 148 ¶ 12; Dkt. No. 149 ¶ 10.)  Activision is the developer and publisher of *Call of Duty*.  In January 2022, Microsoft, the maker of the Xbox, announced its proposed acquisition of Activision for $68.7 billion dollars.  (Dkt. No. 84 ¶¶ 7, 10-11.)

Plaintiffs are concerned that after the merger Microsoft will make *Call of Duty* exclusive to Microsoft platforms and subscription services and that the merger will lead to inflated prices for future *Call of Duty* titles.  Plaintiffs all declare that games within the *Call of Duty* franchise are important to them because they communicate with friends or family regularly via the game.  (Dkt. No. 140 ¶¶ 5, 9; Dkt. No. 145 ¶¶ 6-7; Dkt. No. 146 ¶¶ 6, 14; Dkt. No. 147 ¶¶ 5-6; Dkt. No. 148 ¶¶ 5-6, 10; Dkt. No. 149 ¶¶ 6, 10.)  Most of them attest the availability of *Call of Duty* and other Activision games influences which platform or platforms they buy; they currently play on a variety of platforms, including the PlayStation, Xbox, and Windows PC.  (Dkt. No. 140 ¶¶ 4, 6-8, 10; Dkt. No. 146 ¶¶ 3, 7-9, 11; Dkt. No. 147 ¶¶ 4, 7-9; Dkt. No. 148 ¶¶ 3, 8-9, 11-12; Dkt. No. 149 ¶¶ 4, 7-8, 11.)  Each testifies he has played video games for many years, sometimes for hours a day, or describes himself as an "avid gamer."  (Dkt. No. 140 ¶ 3; Dkt. No. 145 ¶ 3; Dkt. No. 146 ¶ 4; Dkt. No. 147 ¶ 3; Dkt. No. 148 ¶ 4; Dkt. No. 149 ¶ 3.)  According to Plaintiffs, playing *Call of Duty* with friends enhances their quality of life and as such, they will likely purchase the platform on which they can play the game with their friends.  (Dkt. No. 140 ¶¶ 11, 13; Dkt. No. 145 ¶¶ 7, 9; Dkt. No. 146 ¶¶ 5-7; Dkt. No. 147 ¶¶ 5-6; Dkt. No. 148 ¶¶ 5-7; Dkt. No. 149 ¶¶ 6-7; Dkt. No. 169 ¶ 10; Dkt. No. 170 ¶ 10.)

Plaintiffs would be affected by the anticipated exclusivity of *Call of Duty* in different ways.  Mr. Loftus and Mr. Galvan do not own Microsoft's console, the Xbox, and instead play *Call of Duty* on their Sony console, the PlayStation.  (Dkt. No. 140 ¶¶ 4, 14; Dkt. No. 147 ¶¶ 4, 14.)  They testify that if *Call of Duty* became exclusive to the Xbox they would not be able to play

future versions of the game on the PlayStation and thus would likely purchase the Microsoft platform to play *Call of Duty*.  (Dkt. No. 140 ¶¶ 13, 15; Dkt. No. 147 ¶¶ 13, 15.)  Mr. Burns prefers to play games on PlayStation and would likely switch consoles to continue playing *Call of Duty*.  (Dkt. No. 145 ¶¶ 8-9.)  Mr. Jakupko plays games on PlayStation but states he would likely purchase Microsoft platforms in the future for access to *Call of Duty*.  (*See* Dkt. No. 148 ¶¶ 3, 18.)  Mr. Owen prefers to play games on Linux over Windows PC.  (Dkt. No. 149 ¶ 8.)  But if *Call of Duty* was made exclusive to any platform, he would likely buy the platform with *Call of Duty*.  (*Id.* ¶ 11.)  Several Plaintiffs also attest they would likely subscribe to Microsoft's subscription services to play *Call of Duty* if it was exclusively added to the service and they expect to use or already use cloud gaming services.  (*See* Dkt. No. 140 ¶¶ 4, 16; Dkt. No. 145 ¶ 5; Dkt. No. 146 ¶¶ 3; Dkt. No. 147 ¶¶ 4, 16; Dkt. No. 148 ¶¶ 17; Dkt. No. 149 ¶ 12.)  Mr. Owen and Mr. DeMartini submitted supplemental declarations stating they have purchased most *Call of Duty* titles for the past several years and will be purchasing the next *Call of Duty* title that is released.  (Dkt. No. 169 ¶¶ 3, 5, 7; Dkt. No. 170 ¶¶ 3, 5, 7.)

The Federal Trade Commission ("FTC") is also concerned about the merger's anticompetitive effects and has authorized an administrative complaint against the proposed merger.  *See* Complaint, *Microsoft Corp. & Activision Blizzard, Inc*., FTC Docket No. 9412 (Dec. 8, 2022).  In early December 2022, the FTC alleged the vertical merger violates Section 7 of the Clayton Act because Microsoft has shown past practices of acquiring gaming content and then proceeding to withhold that content from rival platforms.  *Id.* ¶¶ 1, 12, 124.  According to the administrative action's scheduling order, the parties are proceeding toward a trial date of August 2, 2023.  *See* Scheduling Order, *Microsoft Corp. & Activision Blizzard, Inc*., FTC Docket No. 9412 (Jan. 4, 2023).

A few weeks after the FTC filed its administrative action, Plaintiffs filed their initial complaint against Microsoft, alleging the vertical and horizontal merger violated Section 7 of the Clayton Act.  (Dkt. No. 1.)  This Court granted Microsoft's motion to dismiss Plaintiffs' complaint with leave to amend on the grounds the complaint did not "plausibly allege the merger creates a reasonable probability of anticompetitive effects in any relevant market."  (Dkt. No. 74 at 1.)  In

1    April 2023, Plaintiffs filed their first amended complaint and moved for preliminary injunctive

2    relief, seeking an order blocking the merger until a final merits decision.  (Dkt. Nos. 84, 135.)

3                                                **DISCUSSION**

4            Section 16 of the Clayton Act entitles any person "to sue for and have injunctive relief . . .

5    against threatened loss or damage by a violation of the antitrust laws . . . when and under the same

6    conditions and principles as injunctive relief against threatened conduct that will cause loss or

7    damage is granted by courts of equity."  15 U.S.C. § 26; *see also DeHoog v. Anheuser-Busch*

8    *InBev SA/NV*, 899 F.3d 758, 762 (9th Cir. 2018) (under Section 16, any person may sue for

9    injunctive relief against threatened loss or damage by a violation of Section 7 of the Clayton Act).

10           **A.       Preliminary Injunction Standard**

11           A plaintiff seeking a preliminary injunction must establish (1) likelihood to succeed on the

12   merits; (2) likelihood to suffer irreparable harm absent the preliminary relief; (3) the balance of

13   equities tips in their favor; and (4) the injunction is in the public interest.  *See Where Do We Go*

14   *Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022); *Winter v. Nat. Res. Def.*

15   *Council*, 555 U.S. 7, 20 (2008).  Alternatively, where there is a "serious question" as to the merits

16   and a balance of hardships that tips sharply toward the plaintiff, a preliminary injunction may

17   issue if the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the

18   public interest.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

19           Section 16 also addresses when a private party may obtain a preliminary injunction to

20   enjoin a threatened violation of the antitrust laws: "upon the execution of a proper bond against

21   damages for an injunction improvidently granted and a showing that the danger of irreparable loss

22   or damage is immediate."  15 U.S.C. § 26.  Thus, to obtain a preliminary injunction under Section

23   16, "[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing;

24   a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary

25   injunctive relief."  *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016)

26   (emphasis in original) (cleaned up).  Further, the threatened loss or damage must be personal to the

27   private plaintiff.  *See California v. Am. Stores Co.*, 495 U.S. 271, 296 (1990) ("A private

28   litigant . . . must prove 'threatened loss or damage' to his own interests in order to obtain relief.");

United States District Court
Northern District of California

1    *see also Malaney v. UAL Corp.*, No. 3:10-CV-02858-RS, 2010 WL 3790296, at *13 (N.D. Cal.

2    Sept. 27, 2020) (in deciding whether plaintiffs have shown irreparable harm for purposes of a

3    Section 16 preliminary injunction, the court can only consider those injuries the plaintiffs advance

4    that are personal to them were the merger to occur), *aff'd on other grounds*, 434 F. Appx. 620 (9th

5    Cir. 2011).

6          **B**.     **Plaintiffs Have Not Met Their Irreparable Harm Burden**

7          For purposes of this Order, the Court will assume Plaintiffs have met their burden of

8    showing a likelihood of success on the merits.  The question is whether they have also met their

9    burden of demonstrating *immediate* irreparable harm.  They have not.

10         Plaintiffs' declarations support an inference they will personally be injured if Microsoft

11   makes Activision's games, specifically *Call of Duty*, exclusive to Microsoft's platforms and

12   subscription services.  They plausibly attest to their loyalty to the *Call of Duty* franchise and thus

13   that each will purchase a different console or subscription service, or pay an inflated price, if

14   needed to continue to play *Call of Duty*, especially if needed to play with their friends.

15         Assuming without deciding that such injury is irreparable, Plaintiffs have not, however,

16   demonstrated they likely face an *immediate* threat of irreparable harm if the merger is not blocked

17   before a decision on the merits can be rendered.  *See Am. Passage Media Corp. v. Cass*

18   *Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (holding plaintiffs must establish irreparable

19   harm is *likely*, not just possible, to obtain a preliminary injunction); *Boardman*, 822 F.3d at 1022

20   (holding plaintiffs must establish *immediate* irreparable harm).

21         First, Plaintiffs currently plays *Call of Duty* on Xbox, on Windows PC, or on PlayStation.

22   There is nothing in the record that suggests upon the merger Microsoft can do anything to make

23   these *Call of Duty* versions currently owned by Plaintiffs somehow stop working, let alone that it

24   would do so.  Thus, the day after the merger they can play exactly the same way they played with

25   their friends before the merger.

26         Second, the record establishes it is not likely Microsoft will make any new version of *Call*

27   *of Duty* that becomes available before a decision on the merits exclusive to Microsoft.  (Dkt. No.

28   134-9 at 17; Dkt. No. 162-3 at 12; Dkt. No. 161-4 at 17; Dkt. No. 162-5.)  Plaintiffs' speculation

United States District Court
Northern District of California

that Microsoft could violate its written agreements is insufficient to meet their burden of showing a likelihood of immediate irreparable harm.  Further, if Microsoft were to suddenly announce it is going to make *Call of Duty* exclusive, notwithstanding its written agreements to the contrary, a preliminary injunction could be entered at that time.  In *Saint Alphonsus Medical Center-Nampa, Inc. v. St. Luke's Health System, Ltd.*, for example, a hospital chain challenged the merger of a competitor with a large medical group and sought a preliminary injunction enjoining the merger until trial on the merits.  The trial court found that any irreparable injury would likely not occur before trial because an existing contract minimized consumer harms, any anticompetitive effects would gradually take place over time, and the merger's terms and structure showed the transaction could be unwound.  No. 1:12–CV–560–BLW, 2012 WL 6651167, at *2-4 (D. Idaho, Dec. 20, 2012).  The court also held that if certain anticompetitive effects manifested prior to trial— namely, reduced patient referrals to the plaintiff which would jeopardize the hospital's existence— the plaintiff could seek a preliminary injunction at that time.  *Id.* at *3.

As the preliminary injunction hearing established, Plaintiffs' argument, at bottom, is if they have shown a likelihood the merger will have anticompetitive effects, and thus a likelihood of success on the merits, they have shown the irreparable harm required for issuance of a preliminary injunction.  But that is not the law.  *See Winter*, 555 U.S. at 32 (holding an injunction "does not follow from success on the merits as a matter of course"); *see also California v. Valero Energy Corp.*, No. C 17-03786, 2017 WL 4122830, at *3, 5 (N.D. Cal. Aug. 23, 2017) (on a motion for preliminary injunction in a Clayton Act action challenging a merger, finding at least serious questions as to whether merger would result in anticompetitive effects, but denying preliminary injunction because the plaintiffs had not established any irreparable harm before a trial on the merits).

Plaintiffs' reliance on *Boardman v. Pacific Seafood Group*, 822 F.3d 1011 (9th Cir. 2016) and *California v. American Stores Co.*, 495 U.S. 271 (1990) to support their proposition is misplaced.  In *Boardman*, fishermen sought to preliminarily enjoin a merger between two seafood processors on the grounds the merger would create a monopsony in the "West Coast input markets" for certain fish.  822 F.3d at 1022-23.  The defendants argued the plaintiffs had not

1   shown an immediate danger of irreparable harm because they had terminated their proposed

2   merger, and stipulated they would not revive the transaction without giving the Oregon Attorney

3   General and the district court 60-days' notice.  *Id.* at 1023.  The Ninth Circuit held the record

4   supported the district court's finding the fishermen were likely to suffer irreparable harm before a

5   decision on the merits could be issued because, in effect, the 60-days' notice was insufficient

6   given the defendants' history of negotiating in secret.  *Id.*  The Ninth Circuit did not hold that a

7   threat of irreparable harm, even if not immediate, is sufficient for issuance of a preliminary

8   injunction.

9        *California v. American Stores Co.*, 495 U.S. 271 (1990), also does not support Plaintiffs'

10  insistence that once they show a likelihood of success on the merits they are entitled to a

11  preliminary injunction.  *American Stores* involved a merger of the fourth largest supermarket

12  chain in California with the largest California supermarket chain.  495 U.S. at 275.  After the

13  merger, but before the chains integrated their businesses, the California Attorney General, on

14  behalf of California consumers, sought to preliminarily enjoin the merger's consummation. The

15  trial court found that the plaintiffs established that without a preliminary injunction, the defendant

16  would "rapidly restructure the newly-acquired company and its assets and disable the acquired

17  chain from operating independently of the parent" and that it would be "extremely difficult" to

18  unwind the merger.  *California v. Am. Stores Co.*, 697 F. Supp. 1125, 1134 (C.D. Cal. Sept. 29,

19  1988).  Allowing the chains to combine would reduce competition and have an immediate effect

20  on California consumers.  The Ninth Circuit affirmed the trial court's likelihood of success and

21  irreparable harm findings, but concluded the injunction was essentially divestiture which was not

22  an available remedy.  *California v. Am. Stores Co*., 872 F.2d 837 (9th Cir. 1989).  The Supreme

23  Court reversed the Ninth Circuit and held divestiture is an available remedy to private plaintiffs

24  challenging a merger.  *American Stores*, 495 U.S. at 284-85.  The immediate irreparable harm to

25  consumers from fewer grocery store choices upon chain store consolidation is unlike the distant

26  harm proffered here.  So, the *American Stores* opinions cannot reasonably be read as holding a

27  showing of a likelihood of success in a merger case means personal and immediate irreparable

28  harm has been established.

Plaintiffs also assert that immediately upon the merger Microsoft will have the incentive not to invest in video game development for platforms outside Microsoft and thus their injury starts immediately upon the merger, even if they will not personally experience those effects for some time. But even assuming a plaintiff could demonstrate irreparable harm under that theory, the plaintiff's injury could be immediate only if the merger, or particular aspects of the merger, could not be undone. Plaintiffs have not demonstrated that fact, especially given that following the merger Activision will continue to exist as a subsidiary of Microsoft. *See Reilly v. Medianews Group, Inc.*, No. C 06-04332, 2006 WL 2419100, at *6 (N.D. Cal. July 28, 2006) (in denying application for temporary restraining order seeking to stop newspaper merger, holding should the plaintiff "ultimately prove successful in this action divestiture of the newspapers at issue remains an option"); *see also Saint Alphonsus Med. Ctr.-Nampa, Inc.*, 2012 WL 6651167, at *2-4 (trial court finding that irreparable injury would likely not occur before trial because an existing contract minimized consumer harms and the terms of the merger and the structure of the merger showed the transaction could be unwound); *American Stores*, 495 U.S. at 281 ("Divestiture has been called the most important of antitrust remedies. It is simple, relatively easy to administer, and sure. It should always be in the forefront of a court's mind when a violation of [Section] 7 has been found." (internal quotation marks and citation omitted)).

In sum, Plaintiffs have not demonstrated a likelihood of personal irreparable harm before a decision on the merits can be rendered. After the merger (if it happens), they can play *Call of Duty* exactly as they played just before the merger. And, to the extent they fear they will be unable to play newer versions on the console or subscription service of their choice, or will have to pay inflated prices for future versions, such harm (assuming, without deciding, it constitutes irreparable harm) will not occur between now and a trial on the merits. A preliminary injunction is thus unwarranted.

## CONCLUSION

Microsoft has produced (and continues to produce) to Plaintiffs the discovery produced in the FTC action. It is also providing Plaintiffs with transcripts from the depositions in that matter. Should the merger survive European review and the FTC administrative action, or at least survive

in a form Plaintiffs believe still poses a risk of anticompetitive harm to them, the Court will be able to hold a trial on the merits and finally decide the issue before Plaintiffs suffer any irreparable harm.  So, Plaintiffs' motion for preliminary injunction is DENIED because they have not met their burden to demonstrate an immediate threat of personal irreparable harm.

**IT IS SO ORDERED.**

Dated: May 19, 2023

JACQUELINE SCOTT CORLEY
United States District Judge