UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANTE DEMARTINI, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>    Defendant. | Case No. 22-cv-08991-JSC<br><br>**ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 120 |

Plaintiff recreational video game players seek to block Microsoft's acquisition of Activision—the publisher and developer of *Call of Duty* and *Candy Crush*, among other video games. After the Court dismissed Plaintiffs' complaint with leave to amend, Plaintiffs filed a First Amended Complaint (FAC). (*See* Dkt. No. 88-3.)[1] The FAC alleges the acquisition will substantially lessen competition in five markets: (1) Triple-A video games, (2) High-Performance Consoles, (3) Multi-Game Content Library Subscription Services, (4) Cloud-Gaming Subscription Services, and (5) computer operating systems. (Dkt. No. 88-3 ¶ 2.) Microsoft again moves to dismiss. After carefully considering the parties' written submissions, and having had the benefit of oral argument on May 12, 2023, the Court DENIES the motion in part and GRANTS it in part. Plaintiffs have alleged facts sufficient to support a finding of Article III standing and that the merger will result in ongoing harm sufficient to support an injunction. They have also adequately alleged a Clayton Act Section 7 claim arising from the vertical merger. But they have not plausibly alleged a horizontal merger Section 7 claim.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**DISCUSSION**

Plaintiffs bring a single claim under Section 7 of the Clayton Act. "Section 7 of the Clayton Act generally prohibits business acquisitions whose effect 'may be substantially to lessen competition, or tend to create a monopoly' in a relevant market." *DeHoog v. Anheuser-Busch Inbev SA/NV*, 899 F.3d 758, 762 (9th Cir. 2018) (quoting 15 U.S.C. § 18). Section 16 of the Clayton Act permits a private plaintiff to obtain injunctive relief for a Section 7 violation upon showing "threatened loss or damage." 15 U.S.C. § 26. The threatened loss or damage must be personal to the private plaintiff. *California v. Am. Stores Co.*, 495 U.S. 271, 296 (1990); *United States v. Borden Co.*¸ 347 U.S. 514, 518 (1954).

Microsoft moves to dismiss for (1) lack of Article III standing, (2) lack of irreparable harm, and (3) failure to state a claim.

**A.    Article III Standing**

Plaintiffs bear the burden of alleging their Article III standing to pursue their claim. *See Smelt v. Cnty. of Orange*, 447 F.3d 673, 682 (9th Cir. 2006).

> To demonstrate standing, a plaintiff must plausibly plead facts to establish the following "three elements": (1) that he "suffered an injury in fact," (2) that there is "a causal connection between the injury and the conduct complained of," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The pleaded injury-in-fact must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan*, 504 U.S. at 560) (cleaned up). "To be particularized, the injury must affect the plaintiff in a personal and individual way. To be concrete the injury must actually exist,—that is, it must be real and not abstract or purely procedural—but it need not be tangible." *Id.* (cleaned up).

Microsoft contends Plaintiffs have not plausibly alleged facts supporting inferences of a concrete injury and a personalized, imminent harm. Specifically, it urges that because Plaintiffs do not plausibly allege when and if they will purchase any future Activision games, their future

injuries are too speculative to support Article III standing. Agreed. The FAC merely alleges each Plaintiff plays *Call of Duty* and then generally alleges that *Call of Duty* enables some (unidentified) Plaintiffs "to stay connected with family and friends in different locations," (Dkt. No. 88-3 ¶¶ 112-23), that many Plaintiffs (again, unidentified) would purchase Microsoft platforms if *Call of Duty* or other unidentified titles were exclusive to Microsoft platforms (Dkt. No. 88-3 ¶ 124), and that Plaintiffs are likely to purchase Activision games in the future, (Dkt. No. 88-3 ¶ 125). These allegations are too conclusory to support an inference Plaintiffs (or at least some Plaintiffs), would in fact purchase an Xbox or pay a higher price for a new version of *Call of Duty* rather than continue to play the game version they currently enjoy.

However, in connection with their preliminary injunction motion, Plaintiffs have submitted declarations that plausibly support an inference they will purchase new versions of *Call of Duty* and even a new platform if necessary. (*See* Dkt. Nos. 140, 145-149.) For example, Galvan attests playing video games is important to his life and his "primary method of keeping in regular contact with many of [his] loved ones and is part of [his] daily routine." (Dkt. No. 147 ¶ 5.) He primarily plays *Call of Duty*, as do most of his friends. (*Id.* ¶ 6.) He presently plays *Call of Duty* on the Sony PlayStation and he also subscribes to Sony's multi-game library subscription service, PlayStation Plus. (*Id.* ¶¶ 4, 6, 12-13.) In light of this testimony, his further testimony that he would purchase an Xbox if needed to play future versions of *Call of Duty*, or subscribe to Microsoft's subscription service if needed for access to *Call of Duty*, is not implausible. (*See id.* ¶¶ 15-17.) On a 12(b)(1) motion, the Court may consider these declarations. *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) ("[W]hen considering a motion to dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction."); *see also Gordon v. United States*, 739 F. App'x 408, 411 (9th Cir. 2018) (finding district court properly considered declaration in ruling on 12(b)(1) motion). Microsoft's citation to *Lanovaz v. Twinings N. Am. Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018), does not persuade the Court otherwise. There the plaintiff merely alleged she would "consider buying" the product again, after testifying at her deposition that she would not. *Id.* Here, in

United States District Court
Northern District of California

1    contrast, Plaintiffs' declarations support an inference they will continue to buy games from the
2    *Call of Duty* franchise as they have done for many years as it is an important part of their social
3    life. *See Vargas, v. Facebook Inc.,* No. 21-16499, 2023 WL 4145434, at *1 (9th Cir. June 23,
4    2023) ("Under Federal Rule of Civil Procedure 12, the bar to allege standing is not high.").

Next, Microsoft argues Plaintiffs do not have standing to claim they will be harmed because Microsoft will make *Call of Duty* exclusive, or partially exclusive, to Microsoft because Microsoft will not do so. Indeed, Microsoft contends Plaintiffs will have greater access to Activision games post-merger. But this argument asks the Court to draw inferences from some of the FAC's allegations in Microsoft's favor and ignore other FAC allegations. For example, Microsoft urges the Court to find *Call of Duty* will not be made exclusive in the near term because of existing Activision contracts. To so find, however, the Court would have to ignore Plaintiffs' allegations about Microsoft's willingness to make content exclusive despite its own statements to the contrary in the video game market. (*See* Dkt. No. 88-3 ¶¶ 282-300.) And since to so find would require the Court to resolve the merits of Plaintiff's challenge to the vertical aspects of the proposed merger, the Court cannot do so at this stage in the litigation. *See Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1040 (9th Cir. 2004) ("The district court erred in characterizing its dismissal of Safe Air's complaint under Rule 12(b)(1) because the jurisdictional issue and substantive issues in this case are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits.").

**B.    Irreparable Injury**

Although Congress gave private plaintiffs the right to file suit to enjoin a merger, 15 U.S.C. § 26, Microsoft argues that as a matter of law, Plaintiffs cannot obtain an injunction because any injuries Plaintiffs suffer in the future can be remedied with money damages. Microsoft's cramped view of the availability of injunctive relief is not persuasive. Plaintiffs allege there is an appreciable danger Microsoft will make *Call of Duty* exclusive to Microsoft platforms and services, and that the exclusivity will lead to higher prices and less innovation, as well as require those Plaintiffs who use Sony's platform and services to purchase Microsoft's. According to Plaintiffs' allegations, the higher prices, reduced innovation, and required purchases of

Microsoft's less desirable platforms in order to play *Call of Duty* will be ongoing. Under Microsoft's interpretation of the law, consumers are powerless to obtain an injunction to stop the harm from occurring in the first place, and instead must file a lawsuit for money damages each and every time they suffer an injury from the merger's alleged ongoing anticompetitive effects. Its motion does not cite any precedential caselaw to support that proposition. (*See* Dkt. No. 155 at 13-15.) To the contrary, more than 50 years ago the Supreme Court held:

> Section 16 of the Clayton Act, 15 U.S.C. § 26, which was enacted by the Congress to make available equitable remedies previously denied private parties, invokes traditional principles of equity and authorizes injunctive relief upon the demonstration of "threatened" injury. That remedy is characteristically available even though the plaintiff has not yet suffered actual injury; he need only demonstrate a significant threat of injury from an impending violation of the antitrust laws *or from a contemporary violation likely to continue or recur.*

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130 (1969) (emphasis added) (cleaned up).

Microsoft's reliance on *Taleff v. Sw. Airlines Co.*, 828 F. Supp. 2d 1118, 1123 & n.7 (N.D. Cal. 2011), does not persuade the Court otherwise. Despite the long existence of Section 16 giving private plaintiffs a cause of action to enjoin a merger, no appellate court, let alone the Supreme Court, has held that a consumer cannot obtain an injunction to prevent a merger's anticompetitive effects from occurring, and instead must *repeatedly* sue for monetary damages from the merger's *ongoing* anticompetitive effects. The Court is similarly unpersuaded by Microsoft's citation to *Malaney v. UAL Corp.*, No. 3:10-cv-02858-RS, 2010 WL 3790296 (N.D. Cal. Sept. 27, 2010), *aff'd*, 434 F. App'x 620 (9th Cir. 2011), to support its argument that Plaintiffs' allegations of potential future harm are too speculative to constitute irreparable harm. The Court has addressed that argument in the context of Article III standing, and will address it further in the context of whether Plaintiffs state a claim.

In sum, Microsoft has not shown that drawing all reasonable inferences from the FAC in Plaintiffs' favor, Plaintiffs cannot obtain injunctive relief.

### C. Failure to State a Claim

Next, Microsoft insists Plaintiffs again fail to state a Section 7 claim. "Section 7 of the Clayton Act requires [c]onsumers to 'first establish a prima facie case that a merger is anticompetitive.'" *DeHoog*, 899 F.3d at 763 (quoting *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 783 (9th Cir. 2015)). "In practical terms, this means adequately alleging facts that an acquisition creates 'an appreciable danger' or 'a reasonable probability' of anticompetitive effects in the relevant market." *Id.* "Determination of the relevant product and geographic markets is a necessary predicate to deciding whether a merger contravenes the Clayton Act." *Saint Alphonsus Med. Ctr.-Nampa Inc.*, 778 F.3d at 783 (quoting *United States v. Marine Bancorporation, Inc.*, 418 U.S. 602, 618 (1974)) (cleaned up); *Fount-Wip, Inc. v. Reddi-Wip, Inc.*, 568 F.2d 1296, 1301 (9th Cir. 1978) (in Section 7 case, holding plaintiffs failed to meet their burden because "of their failure adequately to define and to prove the relevant market, which is 'a necessary predicate' for evaluating claims under these provisions of the antitrust laws"). Once the relevant product and geographic market is alleged, "a prima facie case is established if the plaintiff proves that the merger will probably lead to anticompetitive effects in that market." *Saint Alphonsus Med. Ctr.-Nampa Inc.*, 778 F.3d at 785. "Section 7 does not require proof that a merger or other acquisition [will] cause[] higher prices in the affected market. All that is necessary is that the merger create an appreciable danger of such consequences in the future." *See id.* at 788 (cleaned up).

Plaintiffs allege the proposed merger creates an appreciable danger of anticompetitive effects in five United States product markets: (1) Triple-A video games, (2) High-Performance Consoles, (3) Multi-Game Content Library Subscription Services, (4) Cloud-Gaming Subscription Services, and (5) computer operating systems. Microsoft contends Plaintiffs fail to state a Section 7 claim for any of the alleged markets.

### 1. Horizontal Merger Claim

Plaintiffs allege Activision and Microsoft are competitors in the Triple-A video game market. They define the Triple-A video game market as "games published by the major Triple-A publishers, who have the budgets and experience to bring the most technologically advanced

games with the highest production values to market." (Dkt. No. 88-3 ¶ 166.)  They allege the proposed merger will have unlawful anticompetitive effects because Activision and Microsoft together "would control approximately 30% or more of the Triple-A game market." (*Id.* ¶ 249); *see Saint Alphonsus Med. Ctr.-Nampa Inc.*, 778 F.3d at 785 (stating a Section 7 claim "prima facie case can be established simply by showing high market share").

But Plaintiffs have not plausibly alleged the potential 30% market share.  They get to that number by limiting the Triple-A video game market to four publishers, in addition to Microsoft and Sony.  But no facts are alleged to plausibly show that is the outer boundary of the market.  For example, Plaintiffs' market share figure excludes Epic's blockbuster video game *Fortnite* merely because the game is free to play.  (Dkt. No. 88-3 ¶ 250.)  No allegations are made as to why that is a reasonable exclusion from the market definition.  And no allegations are made as to why Plaintiffs chose to limit the market to six publishers.

Further, their 30% market figure includes all games published by these six publishers, not just Triple-A video games; the amended complaint's chart says it reflects market share by "[g]ame [c]opies [s]old," and not Triple-A game copies sold.  (Dkt. No. 88-3 ¶¶ 167, 249.)  Thus, even apart from the lack of support for the 30% figure, the figure is not tethered to market power in the alleged relevant market.  *See Med Vets, Inc. v. VIP Petcare Holdings, Inc.*, 811 F. App'x 422, 423 (9th Cir. 2020).

Plaintiffs' reliance on *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1044 (9th Cir. 2008), to support the adequacy of their allegations is unpersuasive.  *Newcal* merely held the relevant market need not be pled with specificity; it did not hold the consumers did not need to allege facts to *plausibly* support the alleged market.  *See id.* at 1045.  Indeed, *Newcal* was decided before *Iqbal* and shortly after *Twombly* and it did not cite *Twombly*.  The plausibility pleading standard applies.  *Demartini v. Microsoft Corp.*, No. 22-cv-08991-JSC, 2023 WL 2588173, at *5 (N.D. Cal. Mar. 20, 2023).  Plaintiffs' horizontal merger theory does not satisfy that standard.

### 2. Vertical Merger Claim

The gravamen of Plaintiffs' vertical merger theory is that Microsoft will make *Call of Duty* exclusive to its platforms and subscription service, causing Plaintiffs to have less choice and pay

higher prices.  Microsoft first argues Plaintiffs' theory fails because they have not alleged facts that plausibly support an inference Microsoft could and would make *Call of Duty* exclusive to its platforms and subscription service.  Indeed, Microsoft argues the allegations show it "believes that it is incentivized to expand access." (Dkt. No. 120 at 23.)  But to accept Microsoft's argument would require the Court to ignore Plaintiffs' allegations and draw reasonable inferences in Microsoft's favor rather than Plaintiffs' favor.  (*See* Dkt. No. 88-3 ¶¶ 282-300.)  For example, Plaintiffs allege how Microsoft has acquired other video game developers in the past and made the content exclusive to Microsoft's gaming platforms, as well as why it did so.  (*See id.* ¶¶ 287-88.)  Plaintiffs also allege that Microsoft has not abided by its promises to antitrust regulators in the past and thus they plausibly allege that it might not do so with regard to the Activision acquisition.  (*See id.* ¶¶ 290-96.)  Drawing reasonable inferences from the FAC's allegations in Plaintiffs' favor, the Court cannot conclude that Plaintiffs' allegations are implausible.

Microsoft's insistence that Plaintiffs have not plausibly alleged that *Call of Duty* is a critical input to the Multi-Game Content Library Subscription Services and Cloud-Gaming Subscription Services markets because it is not currently available in those markets also fails.  Plaintiffs' allegations plausibly support an inference that if *Call of Duty* was available on Microsoft's incipient cloud-gaming subscription service but not on, for example, Sony's competing service, regular *Call of Duty* players like Plaintiffs would subscribe to Microsoft's service rather than Sony's.  (*See* Dkt. No. 88-3 ¶¶ 363-77.)  And, indeed, Plaintiffs' declarations filed in support of preliminary injunction also support that inference.  (*See* Dkt. No. 140 ¶¶ 4, 13; Dkt. No. 146 ¶¶ 3, 12-13; Dkt. No. 147 ¶¶ 4, 13, 18.)  Microsoft's argument that making *Call of Duty* exclusive to Xbox would force Sony to compete harder for "consumers' gaming dollars" and therefore the merger's impact would actually be procompetitive (Dkt. No. 120 at 24), draws inferences in Microsoft's favor and is thus untethered from the 12(b)(6) standard.  Plaintiffs' FAC allegations do not support an equally plausible inference that making *Call of Duty* exclusive to Microsoft platforms and services would lead to, for example, lower prices.  Plaintiffs' vertical merger Section 7 claim survives Rule 12(b)(6) scrutiny.


# CONCLUSION

Plaintiffs allege facts sufficient to support a finding of Article III standing and irreparable harm. They also allege facts that plausibly support a Section 7 vertical merger claim. But their allegations do not support a plausible inference of anticompetitive harm in the horizontal market for Triple-A video games. Accordingly, Microsoft's motion to dismiss is GRANTED in part and DENIED in part. An amended complaint, if any, must be filed within 20 days of this Order.

**IT IS SO ORDERED.**

Dated: June 27, 2023

JACQUELINE SCOTT CORLEY
United States District Judge