Joseph M. Alioto (State Bar No. 42680)
Tatiana V. Wallace (State Bar No. 233939)
**ALIOTO LAW FIRM**
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
Email: jmalioto@aliotolaw.com
twallace@aliotolaw.com

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Cadio Zirpoli (State Bar No. 179108)
Elissa Buchanan (State Bar No. 249996)
David H. Seidel (State Bar No. 307135)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
swilliams@saverilawfirm.com
czirpoli@saverilawfirm.com
eabuchanan@saverilawfirm.com
dseidel@saverilawfirm.com
kmcmahon@saverilawfirm.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| DANTE DEMARTINI, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION, a Washington corporation,<br><br>Defendant. | Case No. 3:22-cv-08991-JSC<br><br>**MOTION TO HOLD SEPARATE**<br><br>Hon: Jacqueline Scott Corley<br><br>Date: November 16, 2023<br>Time: 10:00 a.m.<br>Courtroom: 8 - 19th Floor<br><br>**REDACTED** |

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. RELEVANT BACKGROUND ...................................................................................... 1

III. ARGUMENT .................................................................................................................. 2

IV. CONCLUSION ............................................................................................................... 5

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on November 16, 2023, or as soon as the Court finds it reasonable and practical, Plaintiffs will and hereby do move the Court to issue an order requiring that Microsoft maintain Activision as a separate subsidiary until resolution of Plaintiffs' claims on the merits. The motion will be made based on this Notice of Motion and Motion.

**REQUESTED RELIEF**

Plaintiffs request that the Court order that Microsoft shall maintain Activision as a separate subsidiary and preclude Microsoft from merging or eliminating any of Activision's business units or gaming studios with Microsoft until resolution of Plaintiffs' claims on the merits.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

On May 19, 2023, the Court denied Plaintiffs' motion for a preliminary injunction, clearing the way for Microsoft to acquire Activision Blizzard without ever addressing the merits of whether the acquisition may substantially lessen competition or tend to create a monopoly. In denying Plaintiffs' motion for a preliminary injunction, the Court relied on Microsoft's assertions that Activision Blizzard would remain a separate wholly owned subsidiary entity after the merger. The Court held that Plaintiffs could not be irreparably harmed because they could seek divestiture of the merger after it is consummated. Indeed, one of the central holdings of the Court's denial of Plaintiffs' motion for a preliminary injunction was the idea that divestiture is one of the "most important of antitrust remedies," and that it "is simple, relatively easy to administer, and sure." This was based in no small part on Microsoft's assurances to the Court that the Plaintiffs could easily seek divestiture after the consummation of the merger, because Activision would remain a separate subsidiary of Microsoft.

Plaintiffs ask the Court to hold Microsoft to its assertion and ensure that Plaintiffs receive the benefit of the Court's prior ruling until a showing that this merger may substantially lessen competition can be made. Microsoft and Activision should be ordered to remain separate entities, such that divestiture can be accomplished simply, easily, and surely. Thus, Plaintiffs ask that the Court issue an order requiring Microsoft to maintain Activision as a separate subsidiary without merging or eliminating any of the business units or gaming studios of Activision, so that Activision can be easily divested from Microsoft—and the merger unwound—if, as the Court assumed, Plaintiffs prevail on the merits.

## II.  RELEVANT BACKGROUND

On December 20, 2022, Plaintiffs sued to enjoin the unlawful merger of two gaming giants, Microsoft and Activision Blizzard. ECF No. 1. Plaintiffs simultaneously moved for a preliminary injunction to ensure that Plaintiffs had the opportunity to be heard on the merits before the merger consummated. ECF No. 4. On January 11, 2023, Microsoft filed a motion to stay the case, but that motion was denied. ECF Nos. 26, 30, 33. On January 31, Microsoft filed a

motion to dismiss. ECF No. 42. Plaintiffs opposed. ECF No. 61. The Court granted the motion with leave to amend on March 20. ECF No. 74. Plaintiffs filed their amended complaint on April 10, 2023. Microsoft filed another motion to dismiss, ECF No. 120, but Microsoft's motion was denied. ECF No. 228.

On April 24, 2023, Plaintiffs filed a renewed motion for preliminary injunction. ECF No. 135. The Court held a hearing on May 12, 2023, and denied Plaintiffs' motion. The Court held that even assuming the merger was unlawful and would lessen competition, Plaintiffs were not entitled to a preliminary injunction because Plaintiffs could not show that the merger would cause any immediate irreparable harm. ECF No. 189. The Court based its decision in part on the fact that "plaintiff's injury could be immediate only if the merger, or particular aspects of the merger, could not be undone," and that "Plaintiffs have not demonstrated that fact, especially given that *following the merger Activision will continue to exist as a subsidiary of Microsoft*." ECF No. 189 at 8 (emphasis added). Based on that factual premise, the Court concluded that even assuming the merger was unlawful, Plaintiffs could simply and easily seek divestiture of the merger after its consummation, and therefore no preliminary injunction was warranted. *Id.*

## III.     ARGUMENT

This motion seeks an order requiring Microsoft to maintain Activision Blizzard as a separate subsidiary of Microsoft and to preclude Microsoft from (a) merging any of Activision's business units with Microsoft; or (b) taking action that would irreparably harm Activision's ability to compete as an independent company—such as eliminating any of Activision's business units or gaming studios—until Plaintiffs can be heard on the merits. The Court has ample power to do so. *See, e.g., F.T.C. v. Whole Foods Market, Inc.,* 548 F.3d 1028 (D.C. Cir. 2008); *F.T.C. v. Exxon Corp.,* 636 F.2d 1336, 1344 (D.C. Cir. 1980) ("In many cases, such a 'hold separate' order is a fully effective means of ensuring that divestiture, if ordered, will be a viable remedy; at the same time, in permitting the transaction to go forward, a hold separate order is 'less drastic' than a preliminary injunction").

As the Supreme Court has held, "[t]he District Courts, in the framing of equitable decrees, are clothed 'with large discretion to model their judgments to fit the exigencies of the

Case No. 3:22-cv-08991-JSC                    2
MOTION TO HOLD SEPARATE

particular case.'" *United States v. E. I. du Pont de Nemours & Co.*, 353 U.S. 586, 607–08 (1957) (quoting *International Salt Co. v. United States*, 332 U.S. 392, 400–401 (1947)); *see also F.T.C. v. Weyerhaeuser Co.,* 665 F.2d 1072, 1084 (D.C. Cir. 1981). Such an order is particularly appropriate here until resolution of the challenged merger on the merits.

In *F.T.C. v. Whole Foods Market* for example, the D.C. Court of Appeals held that despite Whole Foods having already consummated its acquisition of Wild Oats, the district court retained "large discretion" to create remedies "effective to redress [antitrust] violations." 548 F.3d at 1033. That power includes, for example, the power to issue a "hold separate" order or other similar effective relief. *Id.* A hold separate order is often critical because "the difficulty of 'unscramble[ing] merged assets' often precludes 'an effective order of divestiture.'" *Id.* at 1034 (quoting *FTC v. Dean Foods Co.*, 384 U.S. 597, 607 n.5 (1966)).

The only equitable way to proceed is to issue such an order. After the merger consummates, Microsoft will have the power to do whatever it wants with Activision, including merging ("scrambling") the assets, corporate divisions, intellectual property, or employees within and among Microsoft's own gaming divisions and studios, or even eliminating portions of Activision's gaming business such that Activision would no longer be able to be a viable competitor if—as the Court assumed would be required—divestiture is ultimately ordered. Thus, failing to issue such an order, and allowing Microsoft to merge Activision's gaming and business activities with Microsoft's or to eliminate portions of Activision thereby harming Activision's ability to function as an independent competitor should divestiture be required, would directly cut against the Court's order denying Plaintiffs' motion for preliminary injunction.

In opposing Plaintiffs' motion for a preliminary injunction, Microsoft argued that the preliminary injunction should be denied because Plaintiffs had "not proven that the merger would scramble eggs that could not be unscrambled." Def's Opp. to Mot. for Prelim. Inj., ECF No. 162-2, at 11 & n.11. Microsoft then asserted that "to the contrary, Microsoft and Activision will remain separate entities post-merger, in a parent-subsidiary relationship," citing to the declaration of Tim Stuart. *Id.* Microsoft further asserted that even the "studios that make *Call of Duty* and other [Activision] games are a further step removed, as they too are separate entities." *Id.*

|   |   |
|---|---|
| 1 | The Court credited Microsoft's assertion and based its decision in part on the fact that Microsoft and Activision would be maintained as wholly separate entities that could be easily divested. *See* ECF No. 189 at 8. This was critical to the Court's holding that Plaintiffs could not show irreparable harm, since the Court assumed that Plaintiffs would prevail on the merits after the acquisition is consummated, and divesture would therefore be required. *Id.* The Court held that "the plaintiff's injury could be immediate only if the merger, or particular aspects of the merger, could not be undone." *Id.* The Court held that "Plaintiffs have not demonstrated that fact, especially given that following the merger Activision will continue to exist as a subsidiary of Microsoft." *Id.* Thus, in denying Plaintiffs' motion for preliminary injunction, the Court relied on Microsoft's assertions that it would hold Activision separate as an independent subsidiary. This reliance was critical, because it was critical to the Court's holding that divestiture—which the Court assumed would be required—would therefore be readily available. *Id.* (quoting *American Stores*, 495 U.S. at 281). Indeed, failing to issue a hold separate order would allow Microsoft to rearrange Activision in such a manner as to preclude effective divestiture, and preclude Activision from remaining the most important and successful Triple-A gaming publishing competitor in the market should divestiture be required. Thus, it would be highly inequitable to deny Plaintiffs' motion for a preliminary injunction on the ground that divestiture—which the Court assumed would be necessary—can be easily achieved to bring the relevant markets back to the status quo, yet simultaneously allow Microsoft to alter the factual premise on which the Court relied. |
|  | The equities tip sharply in Plaintiffs favor for the additional reason that Microsoft has now testified that such an order would not prejudice or harm Microsoft. During the deposition of Amy Hood, Microsoft's CFO, Ms. Hood testified that the acquisition was not based on any cost-savings that could be accomplished by eliminating any portions of Activision that are redundant to Microsoft. *See* Ex. A [Hood Deposition] at 115:8-20 ("███████████████████ ███████████████████████████████████████████████████████████ ███████████████"); *id.* at 112:15–19 ("███████████████████ ███████████████████████████████████████████████████████████ |

1 ▮▮▮▮▮."). As Amy Hood made clear, Microsoft's purchase of Activision was not based on eliminating any redundancies, and that the rational for the deal was based on keeping Activision intact to continue creating, publishing, and selling games in the ways it has always done, as a separate subsidiary of Microsoft. Thus, issuing an order requiring Microsoft to maintain Activision as a separate subsidiary of Microsoft, and not to eliminate or scramble any of Activision's gaming studios or essential corporate units with Microsoft would not prejudice Microsoft: indeed, it would simply require Microsoft to act consistently with its assertions to this Court.

Failing to issue such an order would allow Microsoft to do what it already assured the Court it would not do. *See* Def's Opp. to Mot. for Prelim. Inj., ECF No. 162-2, at 11 & n.11. ("To the contrary, Microsoft and Activision will remain separate entities post-merger, in a parent-subsidiary relationship."). Indeed, given that the Court denied Plaintiffs' motion for a preliminary injunction precisely because "following the merger Activision will continue to exist as a subsidiary of Microsoft," and thus divestiture would be "simple, relatively easy to administer, and sure," ECF No. 189 at 8, it would be unjust and highly prejudicial not to require Microsoft to do so.

## IV. CONCLUSION

For the foregoing reasons the Court should grant Plaintiffs' motion and order that Microsoft shall maintain Activision as a separate subsidiary and preclude Microsoft from merging or eliminating any of Activision's business units or gaming studios until resolution of Plaintiffs' claims on the merits.

| | |
|---|---|
| Dated: October 9, 2023 | By:     */s/ Joseph R. Saveri*<br>        Joseph R. Saveri |

Joseph R. Saveri (State Bar No. 130064)
Steven N. Williams (State Bar No. 175489)
Cadio Zirpoli (State Bar No. 179108)
Elissa Buchanan (State Bar No. 249996)
David H. Seidel (State Bar No. 307135)
Kathleen J. McMahon (State Bar No. 340007)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, California 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: jsaveri@saverilawfirm.com
       swilliams@saverilawfirm.com
       czirpoli@saverilawfirm.com
       eabuchanan@saverilawfirm.com
       dseidel@saverilawfirm.com
       kmcmahon@saverilawfirm.com

Joseph M. Alioto (SBN 42680)
Tatiana V. Wallace (SBN 233939)
**ALIOTO LAW FIRM**
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
Email: jmalioto@aliotolaw.com

Joseph M. Alioto Jr. (SBN 215544)
**ALIOTO LEGAL**
100 Pine Street, Suite 1250
San Francisco, California 94111
Tel: (415) 398-3800
Email: joseph@aliotolegal.com
       twallace@aliotolaw.com

*Plaintiffs' Counsel*