October 18, 2023

**Via ECF**
The Honorable Jacqueline Scott Corley
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

      RE:    *Demartini, et al v. Microsoft Corporation*
                Case No: 3:22-cv-08991-JSC

Dear Judge Corley,

      Plaintiffs, Non-Party Ubisoft, and Microsoft submit this letter brief addressing whether Microsoft should produce in full the Microsoft-Activision-Ubisoft Agreement (the "Agreement") over Ubisoft's objection. The Agreement licenses the cloud-gaming rights of Activision's gaming content to Ubisoft. Ubisoft has objected to the production of portions of the Agreement and has insisted that Microsoft redact those portions from its production of the Agreement. Plaintiffs ask that the Court overrule Ubisoft's objections and compel Microsoft to produce the full Agreement unredacted.

      This letter brief concerns two of the four agreements that make up the Agreement. The two agreements are attached as **Exhibits A and B**.

## PLAINTIFFS' STATEMENT:

      The Microsoft-Activision-Ubisoft Agreement is highly relevant. Indeed, there is no doubt Microsoft intends to use the agreement as a defense in this action. Ubisoft, however, objects to the production of the agreement in full. Despite the protective order in this case, Ubisoft has asserted that it fears accidental disclosure. Ubisoft has pointed to Microsoft's failure to protect its own highly confidential documents in the related FTC case, as a basis to preclude production.[1] Microsoft and Ubisoft also assert that the substantial portions of the agreement that are redacted are not relevant. Microsoft also failed to abide by the protective order, significantly delaying production of the agreement.

      On April 26, 2023, the Competitions and Market Authority of the UK ("CMA") held that the Microsoft-Activision merger would substantially lessen competition in the cloud-gaming market. Microsoft appealed that decision, and subsequently entered into a licensing agreement

---

[1] During meet and confers, Ubisoft's counsel pointed out that in the related FTC matter, Microsoft's own highly confidential documents were accidentally leaked when Microsoft itself accidentally transmitted its own documents to Court staff to be published publicly. Ubisoft argues that Microsoft's failure to protect its own confidential material demonstrates a risk of accidental disclosure.

Hon. Jacqueline Scott Corley
October 18, 2023
Page 2 of 6

with Ubisoft, whereby Activision would license to Ubisoft the cloud-gaming rights to Activision's gaming content. That Agreement was signed by the parties on August 21, 2023.

Microsoft has asserted that the new cloud-gaming licensing agreement with Ubisoft resolves any possible lessening of competition in the cloud-gaming market. Just as Microsoft did with the other agreements Microsoft entered into with its gaming competitors, Microsoft will surely rely on the Ubisoft Agreement as a defense to this action.  There is thus no dispute that the Ubisoft Agreement is highly relevant.

During meet and confers with counsel for Ubisoft, Ubisoft took contradictory positions on relevance, but ultimately asserted that the redacted portions are not relevant to Plaintiffs' claims. Microsoft also asserts that the portions of the agreement that have been redacted are not relevant. Microsoft and Ubisoft's argument that the redacted portions of the agreement are irrelevant is without merit.

Microsoft makes the argument that the agreement "entirely bars Plaintiffs' theory" related to the cloud-gaming market. Yet Microsoft now takes the absurd position that Microsoft may rely on the agreement to attempt to "entirely bar" Plaintiffs claims without the Court or the Plaintiffs ever seeing the entire agreement. Ubisoft and Microsoft purport to inform the Court what the redacted sections relate to without ever disclosing what they are. In other words, according to Microsoft, Plaintiffs and the Court must take Ubisoft and Microsoft's word that the redacted portions are completely irrelevant to understanding an agreement that Microsoft will try to use to bar Plaintiffs' claims. Moreover, even taking Microsoft and Ubisoft's word on what the redacted portions relate to, show that those portions are highly relevant, as they relate to the consideration for the Agreement and in the words of Ubisoft themselves, the "economics of the deal." *See* Exhibit C at ¶ 10. The economics of the deal are highly relevant. And as can be seen in Exhibits A and B, entire portions of the agreement are redacted.

Further, Ubisoft's request that the Court look at the unredacted material *in camera* is an invitation to error. Ubisoft and Microsoft essentially ask the Court to look at and consider portions of the Agreement without Plaintiffs ever being able to see it and respond to it. Such a request seeks to circumvent the bedrock adversarial process of judicial proceedings.

Ubisoft has failed to put forward any legitimate basis to keep portions of the Agreement hidden from Plaintiffs. During meet and confers with Ubisoft's counsel, Plaintiffs informed Ubisoft that the Microsoft-Ubisoft Agreement would be governed by the protective order in this action, which has already been used by numerous non-parties such as Sony, Nvidia and Nintendo. Indeed, Plaintiffs have been provided with all the Microsoft-Competitor agreements over *Call of Duty*, including the agreements with Nvidia, Nintendo and Sony. Ubisoft is aware that they may designate the Microsoft-Ubisoft Agreement highly confidential under the Protective Order. But Ubisoft has asserted that it fears that despite the protective order in this case, the Agreement could become public by accidental disclosure. Ubisoft's counsel referenced Microsoft's accidental submission of its own highly confidential documents to Court staff to be published to the public website in the FTC matter as a basis for objecting to production. Microsoft and Ubisoft did not, however, object to Microsoft's production of this agreement to the

Hon. Jacqueline Scott Corley
October 18, 2023
Page 3 of 6

FTC in full, which Microsoft has apparently already done. Ubisoft's assertion that the Court should issue a protective order to prohibit the redacted portions from being disclosed to Plaintiffs is without merit and should be overruled.

Counsel for Ubisoft further asserts that in the alternative, the Court should order that Plaintiffs be allowed only to *view* the full agreement, without ever obtaining a copy with which to use in depositions or file under seal as needed. Doing so would be highly prejudicial and onerous. The Agreement must be produced in full, just as the other third-party agreements have been. Without access to the Ubisoft agreement in full, Plaintiffs are prejudiced.

### THIRD-PARTY UBISOFT'S POSITION:

Ubisoft has consented to Microsoft producing the four agreements that comprise the Activision-Ubisoft Agreement. Two of these agreements were produced without redactions. Ubisoft requested light redactions to the other two agreements (the "Redacted Agreements") for the reasons set out below and in the attached Declaration of Chris Early.

The fact that the Activision-Ubisoft Agreement *itself* is relevant does not mean that every word within it is. Ubisoft consented to Microsoft's production of the large majority of the Activision-Ubisoft Agreement, and redacted a very small percentage of the overall text, in a good faith effort to permit disclosure of as much of the Agreement as possible, while still protecting Ubisoft's legitimate interest in keeping certain portions of the Redacted Agreements confidential and free from the risk of inadvertent disclosure.

The text that is redacted relates to the consideration, including a revenue share, that Ubisoft will be paying Activision and Microsoft (the "Consideration") for the Cloud Game Streaming Rights (the "Rights"). Ubisoft explains in the attached Declaration of Chris Early, Ubisoft's Vice President, Strategic Partnerships & Business Development, why the public disclosure of the terms that relate to the Consideration would be extremely harmful to Ubisoft. In summary here, such disclosure would prevent Ubisoft from realizing the most competitive economic terms from licensing the Rights to third parties, which in turn would largely destroy the value of those Rights to Ubisoft.

Moreover, a competitive bidding process among potential licensees who do not know the amount of Consideration that Ubisoft paid for the Rights would lead to more vigorous competition among the potential licensees and Ubisoft. On the other hand, potential licensees would be much more likely to collude to make lower, similar, non-market offers if they knew the amount of Consideration that Ubisoft paid for the Rights they were bidding on.

Ubisoft recognizes and appreciates that there is already a robust Protective Order in place, which allows a non-party to designate documents "Highly Confidential – Outside Counsel Only." In a perfect world, that would seem to protect Ubisoft from any risk of public disclosure of the currently-redacted terms of the Redacted Agreements.

But this is not a perfect world. In the related FTC action, counsel for Microsoft mistakenly filed documents that were not properly redacted or sealed. And in *Garavanian v. Jet Blue*, 1:23-cv-10678 (U.S. Dist. Mass.), a lawyer representing the plaintiffs in that case (who is not counsel in this case) made an "inadvertent disclosure of confidential information," by filing documents with computer-generated redactions, which the press was nonetheless able to view "by copying the blacked-out redactions from the PDF document, opening a word processing application, and pasting the redactions into the newly opened application." (Docket # 217 at pp. 1, 5-6; Docket # 220 at pp. 1-2).

Ubisoft is not accusing any counsel of having disclosed confidential terms intentionally. But Ubisoft is concerned about such a mistake occurring with respect to *its* Highly Confidential information, especially as more and more people access and make use of such information. Mistakes happen, and Ubisoft as a non-party does not believe it should be subject to the risk of such a mistake unless it is first determined that *each and every part* of the redacted material is truly relevant and needed by a party in this case. Therefore, before any currently-redacted term is unredacted, Ubisoft would ask that the Court review the two documents *in camera* to decide what, if anything, is truly necessary to unredact.

As Ubisoft understands it, the Activision-Ubisoft Agreement is potentially relevant to Plaintiffs' claim that Microsoft's acquisition of Activision would substantially lessen competition in an alleged cloud gaming market. Ubisoft believes that the Redacted Agreements as produced are sufficient to allow Plaintiffs to determine whether Microsoft will or will not effectively acquire the cloud streaming rights to Activision content. But the Court could quickly and easily determine via an *in camera* review which redacted terms, if any, are relevant to this issue and should be produced unredacted.

Then, assuming some currently-redacted term is truly relevant and necessary, Ubisoft requests that alternative methods of disclosure be considered. For example, if currently-redacted text must be unredacted and produced to Plaintiffs' outside counsel, then Ubisoft would request that Plaintiffs' outside counsel be allowed to inspect the unredacted documents only ***visually*** (and be allowed to take notes), but without obtaining any actual copy of the unredacted documents.

If, after such an inspection, the Court determines that Plaintiffs need an unredacted copy of the currently-redacted terms to make their arguments, then there could be an order from the Court to the effect that only hard copies, and no digital copies, can be made, and no copies can be transmitted electronically, as that is almost always the way that non-intentional disclosures happen.

Or, alternatively, there could be an order from the Court to the effect that when and if any reference is made to any term of the Activision-Ubisoft Agreement in a document filed with the Court, or when any portion of the Agreement must be filed with the Court as an exhibit, then ***no public version*** of such Court filing would be filed, so that the only version filed with the Court

would be the version that is under seal, which only the Court would have access to. The only publicly-available information would be the docket entry showing the fact of the filing.[2]

In short, if it is determined that some of the redacted information must be unredacted and produced to plaintiffs' outside counsel, then Ubisoft would ask that such alternative methods of access and use of the information be considered so as to minimize the risk of any inadvertent disclosure.

**MICROSOFT'S POSITION**:

Microsoft adds this statement to clarify that the relevant part of *the Activision-Ubisoft Agreement* has already been produced, and that it believes the redacted portions have no relevance to this case. Further, the only portion to which Microsoft is a party has been produced in full. Plaintiffs repeatedly misrepresent Microsoft's position. While Microsoft does not believe that the redacted portions of the Agreement are relevant to Plaintiffs' claims, Microsoft does not object to the production of the full Agreement.

In the unredacted portions of the Agreement, Activision agreed to transfer, at the closing of the separate Microsoft-Activision deal, the cloud streaming rights for all current and new Activision PC and console games released over the next 15 years to Ubisoft, subject only to narrow limitations designed to allow Microsoft to adhere to its existing commitments to third parties and regulators.[3] The rights will be in perpetuity. Accordingly, there are no such cloud streaming rights for Microsoft to acquire when the deal closes. The pricing details that Ubisoft seeks to redact do not matter. Microsoft's inability to acquire the cloud streaming rights entirely bars Plaintiffs' theory that the Microsoft-Activision merger will allow Microsoft to foreclose competition in a cloud streaming market.

---

[2] Ubisoft notes that this joint letter is being copied to "all counsel of record via ECF." There are more than 30 counsel listed in Pacer on this case. Some of those counsel represent other non-parties. So, we must file this joint letter under seal (because plaintiff wishes to attach the Redacted Agreements as Exhibits A and B, which have been designated Highly Confidential – Outside Counsel Only), along with a redacted public version, redacting Exhibits A and B entirely. If the Court orders that any currently-redacted terms be unredacted, we would ask that any future filing that would reveal any term of the Activision-Ubisoft Agreement be filed under seal **with no public version filed at all**.

[3] Microsoft's obligations to provide cloud streaming rights in the European Economic Area remain in place. The agreement with Ubisoft has been structured so that Microsoft will still acquire the rights needed to honor fully its legal obligations under its commitments to the European Commission, as well as its existing contractual obligations to other cloud game streaming providers, including Nvidia, Boosteroid, Ubitus, and Nware.

Hon. Jacqueline Scott Corley
October 18, 2023
Page 6 of 6

                    Respectfully Submitted,

                    /s/ *David H. Seidel*

                    *Counsel for Plaintiffs*

                    /s/ *Stephen Smith*

                    *Counsel for Third-Party Ubisoft*

                    /s/ *Tania Rice*

                    *Counsel for Microsoft*

cc: All counsel of record via ECF (***redacting Exhibits A and B***)

## **ATTESTATION OF FILER**

Pursuant to Civil L.R. 5-1(h)(3), regarding signatures, I, David H. Seidel, attest that concurrence in the filing of this document has been obtained.

Dated: October 18, 2023                                       /s/ *David H. Seidel*
                                                                               David H. Seidel