October 27, 2023

**Via ECF**
The Honorable Jacqueline Scott Corley
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

      RE:    *Demartini, et al v. Microsoft Corporation*
               Case No: 3:22-cv-08991-JSC

Dear Judge Corley,

Plaintiffs request that Plaintiffs be allowed up to the default limit of seven hours for their deposition of Mr. Phil Spencer on November 15, 2023. In addition, Plaintiffs also request that the Court issue a reciprocal 3-hour limit for the Plaintiff depositions.

**PLAINTIFFS' STATEMENT:**

Depositions are by default limited to seven hours. Fed. R. Civ. P. 30(d)(1). And the "court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent." *Id.* The purpose of the rule is to set a time limit that is considered presumptively reasonable. *See, e.g.*, *Manchester v. Sivantos GmbH*, No. CV175309ODWJEMX, 2019 WL 988676, at *8 (C.D. Cal. Feb. 8, 2019). Thus, it is the burden of "the party seeking a court order to extend the examination, or otherwise alter the limitations . . . to show good cause to justify such an order." *Drake v. Morgan Stanley & Co.*, No. CV 09-6467-ODW(RCX), 2010 WL 11596565, at *1 (C.D. Cal. July 2, 2010) (quoting the Rule 30(d) Advisory Committee Note to the 2000 Amendment).

On August 31, 2023, the Court held a further case management conference. During the case management conference, the Court limited the depositions of all Microsoft personnel to three hours. *See* Ex. A [Aug. 31 Hr'g Tr.] at 3:10-4:24. Plaintiffs objected, but the Court tentatively overruled Plaintiffs' objection. *Id.* at 10:11–10:16. The Court held, however, that Plaintiffs could request additional time if needed. *Id.* at 10:19–11:17. Microsoft never moved for an order shortening the presumptive seven hours established by the federal rules. Nor did Microsoft make any showing of good cause to limit them. The sole basis for the Court's order was because the deponents had already been deposed by the Federal Trade Commission in a different but related case, and some had prior FTC "investigational interviews" as well.

But Plaintiffs' case and the FTC's case are not the same case. The FTC's case operates under different controlling law (the FTC self-imposes the merger guidelines); they operate under different theories (the FTC and Plaintiffs have unique theories of competitive harm); and they are being litigated by different parties and different counsel, making different strategic decisions. Thus, for all these reasons and the reasons described below, Plaintiffs seek the following relief.

**Plaintiffs Ask the Court to Permit Up to Seven Hours of Deposition Time For Mr. Phil Spencer**.

Hon. Jacqueline Scott Corley
October 27, 2023
Page 2 of 6

Plaintiffs ask that they be entitled to their presumptive seven hours for the deposition of Mr. Phil Spencer. Mr. Spencer is the head of Microsoft gaming. He is knowledgeable on all aspects of Microsoft's gaming business and has relevant knowledge as to the numerous issues at the heart of this case, including all of the new contracts, game releases, and integration of Activision post-merger that is now ongoing. Mr. Nadella, Microsoft's CEO, testified for example that Mr. Spencer "makes the calls about content exclusivity," and that Mr. Nadella "deferred" to Mr. Spencer for negotiations with competitors regarding Activision's *Call of Duty*.

There are numerous issues that Mr. Spencer has direct relevant knowledge about, including, but not limited to: (1) content exclusivity; (2) the importance of Triple-A content (3) pricing decisions of games, services and platforms; (4) Microsoft's prior gaming acquisitions; (5) Microsoft's gaming competitors; (6) Microsoft's and other platforms' relationship with Activision pre-merger; (7) Microsoft's plans for Activision and Activision content post-merger; (8) Microsoft's strategy in acquiring numerous game studios; (9) Microsoft's contracts with its competitors regarding *Call of Duty*, such as with Nintendo, Nvidia, Sony; (10) Microsoft's cloud-gaming contract with Ubisoft; and (11) numerous other subjects highly relevant to whether this merger might substantially lessen competition. Indeed, now that the merger has consummated, Microsoft is currently integrating Activision into Microsoft and actively making strategic decision on how to deploy resources and use Activision's gaming content, game development, game publishing, and game distribution capabilities. All these issues were either never covered by the FTC or require significant follow up and new lines of questions. And Ms. Hood directed Plaintiffs to ask Mr. Spencer about any integration work and future plans for Activision content. Moreover, Plaintiffs have identified documents that require Mr. Spencer's testimony that he has never been questioned on. Given Mr. Spencer's central role in all of the relevant issues, three hours is not sufficient for his deposition. *See* Ex B [Declaration of David Seidel]. Under Rule 30(d)(1), "[t]he court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent."

Mr. Spencer's deposition has been noticed and agreed with opposing counsel to occur in Seattle on November 15, 2023. Microsoft's counsel has confirmed that Mr. Spencer is available for the regular seven hours on November 15 if the Court grants Plaintiffs' request. David Seidel, counsel for the Plaintiffs, will take the deposition of Mr. Spencer. Mr. Seidel has reviewed the prior FTC deposition transcript and Mr. Spencer's testimony in the FTC trial and has identified numerous questions and topics that were never asked or addressed. *See* Ex. B [declaration of David Seidel]. Mr. Seidel has no intention of wasting the deponent's time with duplicative questions. *Id.* When Plaintiffs took the deposition of Ms. Amy Hood, Tim Stuart, and Matt Booty, Plaintiffs used less than the allotted three hours. That demonstrates that Plaintiffs are not wasting time and are not seeking to extend any deposition beyond what Plaintiffs need with each witness. Plaintiffs will do the same with Mr. Spencer and be as efficient as possible. However, the sheer volume of relevant information needed from Mr. Spencer favors at least the presumptive limit of seven hours for Mr. Spencer. *See* Ex. A [Aug. 31 Hr'g Tr.] at 10:19-11:2. Indeed, during Ms. Hood's deposition, Ms. Hood directed Plaintiffs to ask gaming-specific questions to Mr. Spencer, who is deeply knowledgeable on all things gaming at Microsoft.

Microsoft's assertions that the "vast majority" of Plaintiffs' deposition time with Amy Hood, Tim Stuart, and Matt Booty "focused on events that occurred before the FTC hearing and subjects addressed at great length by the FTC" is not true. Microsoft is doing everything it can to limit Plaintiffs' deposition time because of the damaging new testimony that Plaintiffs have been

able to elicit already. As but one example, Plaintiffs elicited brand new testimony through the use of new documents showing that Microsoft recognizes that game studios and publishers capable of producing triple-A content have become "scarce," and therefore Microsoft has been buying up some of the few remaining triple-A content producers in part to eliminate the competitive threat of the triple-A publishers combining with other rival gaming companies. As another example, Plaintiffs elicited testimony from Mr. Stuart, stating that Microsoft's gaming competitors cannot maintain a business at all without adequate access to gaming content. It is no wonder Microsoft is trying to limit Plaintiffs' ability to adequately depose the person central to Microsoft's gaming business: Phil Spencer.

**Plaintiffs Request a Reciprocal Order Limiting the Deposition Time of the Plaintiffs**

Plaintiffs ask that if the Court denies Plaintiffs' request for their presumptive 7-hour limit with Phil Spencer, then the Court issue a reciprocal order limiting the depositions of the Plaintiffs to the same 3-hour limit as was set for the Microsoft depositions. The testimony of the Microsoft executives is vastly more relevant and significant to the question of whether this merger might substantially lessen competition than the Plaintiffs. Indeed, Plaintiffs' testimony about their gaming habits and their desire to preserve competition and keep the gaming industry from consolidating further is of little relevance, if any, to whether this merger is in violation of the Clayton Act.

Counsel for Microsoft has asserted during meet and confers that they need up to the full seven hours of deposition time with each Plaintiff, even if they don't use all of the time. But Microsoft has never identified any specific categories of questions or reason why they need the full seven hours with each Plaintiff. And now that Microsoft has taken the deposition of Dante DeMartini, it has become clear that Microsoft intends to use the Plaintiffs' 7-hour depositions largely to harass and annoy with irrelevant questions. During Mr. DeMartini's deposition, Defendant's counsel spent significant time asking him harassing and irrelevant questions such as, for example, (1) questions about whether Mr. DeMartini is a football fan and who his favorite team is; (2) questions about what Mr. DeMartini discussed on a podcast he hosts about Football(3) whether he recalls discussing former Plaintiff Curtis Burns' favorite pizza and burrito restaurants on the podcast; (4) what video game franchise he would bring with him on a desert island; (5) whether his friend knew his favorite number was 13; and (6) questions about video games Mr. DeMartini played before he was 13 years old.

**MICROSOFT'S POSITION**:

Plaintiffs' request to reverse the Court's earlier order on depositions is baseless and their appeal to "reciprocity" is illogical. The Court limited the depositions of Microsoft's executives to three hours each as a measure for avoiding duplicative discovery, because those same executives have already testified multiple times on the same subjects. (Dkt. 256, Pretrial Order No. 1; Ex. A, 8/31/23 Tr. at 3:8-20, 7:2-12.) Plaintiffs are now seeking to reverse the Court's order, without showing that anything has changed, nor making any showing of what documents or questions they need to ask that are non-duplicative and will take seven hours. Meanwhile, Plaintiffs assert that Microsoft must identify "specific categories of questions" to justify having the default seven-hour limit to depose Plaintiffs. Essentially, Plaintiffs argue that Microsoft *always* has the burden.

Microsoft has already met its burden to limit Phil Spencer's deposition to three hours. It has consistently asserted that Microsoft's executives have already testified multiple times and that their depositions should not occur at all, but at least should be limited. (*See, e.g.*, Dkt. 250 at 3:2-11.) The Court's order was not made in a vacuum. It was made in response to Plaintiffs' motion to permit the depositions (*see* Dkt. 246, 248), the parties' arguments in their status conference statement (*see* Dkt. 250), and the parties' oral arguments (*see* 8/31/32 Tr.). Plaintiffs have not made a showing here to justify the Court's reconsideration of that order.

Plaintiffs have the burden to limit the depositions of Plaintiffs to something less than that allowed by the federal rules. They have made no such showing nor even specified a legal objection—instead simply seeking "reciprocity." Moreover, the same concerns about duplicative questioning do not apply to Plaintiffs' depositions.

**The Court Should Not Reconsider Its Order and Expand Phil Spencer's Deposition to Seven Hours**

No witness has offered more testimony produced in this case than Phil Spencer. He has already testified three times, for a total of approximately 24.5 hours of testimony, in an investigational hearing (spanning two days), an additional full-day deposition, and the evidentiary hearing in the FTC action. Only one of Plaintiffs' list of subjects (the Ubisoft contract) is new and not extensively covered in prior testimony.[1] And none of those substantive issues are different under the FTC's theories and Plaintiffs' theories (with certain exceptions such as a difference with the FTC's burden). And contrary to Plaintiffs' repeated assertions in the case, the Merger Guidelines are not governing law and are "not binding on the Courts," but have equally been used as a reference in both government and private actions. *See, e.g.*, *Saint Alphonsus Med. Ctr. - Nampa, Inc. v. Saint Luke's Health Sys.*, 778 F.3d 775, 784 n.9 (9th Cir. 2015).[2]

Contrary to Plaintiffs' argument, the Court's order limiting Mr. Spencer's deposition to three hours was not tentative. (*See* Dkt. 256.) The Court did indicate that it would look at evidence if Plaintiffs "can't get [the first depositions] done in three hours" and "didn't duplicate time." (Ex. A, 8/31/23 Tr. at 10:19-11:2.) It noted that in Plaintiffs' submissions on the matter, they "gave [the Court] nothing" but vague assertions that they would not be repetitive. (*Id.* at 10:15-17.) In the current submission, Plaintiffs have still given the Court nothing but empty assertions that they need seven hours and will not ask duplicative questions. They do not discuss what topics or documents they need to cover.

The depositions that Plaintiffs have taken so far—of Amy Hood (Microsoft's CFO), Tim Stuart (CFO of Xbox), and Matt Booty (Head of Xbox Game Studios)—support the Court's

---

[1] Plaintiffs may also reasonably have some limited questions related to Microsoft's agreement with Sony to make *Call of Duty* available on Sony PlayStation for ten years. However, Mr. Spencer and other Microsoft employees have testified extensively regarding Microsoft's similar agreements with Nintendo, Nvidia, and others, its proposed agreement to Sony, and its now consummated intentions to keep *Call of Duty* available on Sony and other platforms.

[2] Regardless, the FTC withdrew its support for the Vertical Merger Guidelines, the only guidelines potentially applicable to this case, in 2021. *See* https://www.ftc.gov/news-events/news/press-releases/2021/09/federal-trade-commission-withdraws-vertical-merger-guidelines-commentary.

decision that three hours was more than sufficient. All of the depositions were completed in about 2.5 hours. The vast majority of the deposition time focused on events that occurred before the FTC hearing and subjects addressed at great length by the FTC. Specifically, Plaintiffs posed *no questions* to Mr. Booty or Mr. Stuart about the Ubisoft contract, the integration of Activision, or any other matters that have occurred since the FTC hearing. Instead, both depositions consisted of repetitive questioning about lines and phrases cherry-picked from emails that were extensively covered in the past. As just one example, Plaintiffs used a virtually identical set of exhibits in Mr. Booty's deposition that they used the previous day with Mr. Stuart, even though one of the exhibits was an email that did not involve Mr. Booty in any way. Similarly, the only two exhibits used in Ms. Hood's deposition were her declaration in the FTC action and a December 2019 email used in the FTC evidentiary hearing and in FTC depositions. And Plaintiffs spent substantial time covering Ms. Hood's background and other issues that were extensively covered by the FTC in discovery.

Plaintiffs' suggestion that they have obtained "damaging new" testimony is false. The testimony they refer to involves a couple duplicative documents that were produced to the FTC on themes that the FTC explored extensively in its depositions and presented at trial. And the idea that gaming companies need access to games is hardly revolutionary, and was admitted in Microsoft Answer to the Amended Complaint.

Federal Rule of Civil Procedure 30(d)(1) does not support that the Court should reconsider its prior order. Rather, the Court "must" limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. Proc. 26(b)(2)(C)(i). The Court appropriately did so, given Mr. Spencer's prior 24.5 hours of testimony. Plaintiffs cannot show that anything has changed.

**<u>Plaintiffs' Depositions Should Not Be Limited from the Federal Rules</u>**

Plaintiffs cite no legal objection to regular seven-hour depositions of the Plaintiffs under the federal rules. A false demand for "reciprocity" is not a basis for the Court to limit the depositions of the Plaintiffs who brought this case. *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 312 (C.D. Cal. 2020) ("discovery is not conducted on a 'tit-for-tat' basis"). Plaintiffs allude to a relevance objection, but the depositions of Plaintiffs are highly relevant to, for example, Plaintiffs' alleged irreparable harm, the balance of the equities, and their standing in this case. Plaintiffs appear to be again relying on erroneous, rejected, and outdated legal standards that the only question is harm to competition in the market *generally*. (*See* Dkt. 189 at 6:14-23.)

Plaintiffs then seek to shift the burden to Microsoft to list all the subject areas it plans to ask about at the depositions. But Microsoft has no such burden. Plaintiffs have not met their high burden of showing why the depositions—of fact witnesses who have never been deposed before, and who brought this action—should not proceed under the regular federal rules. *See Desilva v. Allergan United States*, No. 8:19-cv-01606-JLS (JDEx), 2020 U.S. Dist. LEXIS 188478, at *4 (C.D. Cal. Aug. 11, 2020) ("Generally, the party seeking a protective order [to limit a deposition] has a 'heavy burden' of showing why discovery should be limited," although it is appropriate to set limitations on the depositions of apex witnesses). However, as one example of why Microsoft *may* need up to seven hours for these depositions (depending on each Plaintiffs' testimony), Plaintiffs have not responded to certain of Microsoft's discovery requests, such as requests for their video game platform purchases and communications and online posts about the merger. Plaintiffs

Hon. Jacqueline Scott Corley
October 27, 2023
Page 6 of 6

have consistently pointed to their depositions as the vehicle for Microsoft to get answers to questions for which they have not produced written discovery.

      Microsoft questioned Mr. DeMartini for a total of approximately four hours on topics relevant to Mr. DeMartini's standing, alleged harms from the merger, and participation in gaming. These are all topics put at issue by Mr. DeMartini's Declaration in support of the Motion for Preliminary Injunction and relevant to his claims. Plaintiffs gravely misrepresent the questions asked—most of which related to his deep social ties to the other Plaintiffs through his football podcast and other activities, in contravention of his sworn Declaration that "Gaming is one of the principal ways I keep in touch and stay connected with my friends."[3]

Respectfully Submitted,

    */s/ David H. Seidel*

Counsel for Plaintiffs

    */s/ Tania Rice*

Counsel for Microsoft

cc: All counsel of record via ECF

## SIGNATURE ATTESTATION

Pursuant to Local Rule 5-1(h)(3), I attest under penalty of perjury that concurrence in the filing of this document has been obtained from any other signatory to this document.

Dated: October 27, 2023        By:    *David H. Seidel*
                                              David H. Seidel

---

[3] Microsoft would be happy to supply the full transcript of Mr. DeMartini's deposition if the court would like to review the questions, answers, and conduct of Plaintiffs' counsel.