November 10, 2023

**Via ECF**
The Honorable Jacqueline Scott Corley
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

      RE:    *Demartini, et al v. Microsoft Corporation*
              Case No: 3:22-cv-08991-JSC

Dear Judge Corley,

      Plaintiffs move to compel complete responses to Plaintiffs' Requests for Production ("RFPs") and Interrogatories ("Rogs").

## PLAINTIFFS' POSITION:

      Microsoft has amassed its enormous market share in gaming largely through a history of acquisitions of gaming studios and publishers. Microsoft acquired one of the "big 5" Triple-A gaming publishers as recently as 2020 when it purchased ZeniMax and Bethesda. Microsoft claimed during regulatory review of that merger that it had no incentive to make Bethesda's games exclusive. Yet Microsoft has now proven its statements to regulators were meaningless and false. Microsoft has recently released and announced new Triple-A Bethesda titles exclusive to Microsoft, such as Redfall (May 2023), Starfield (September 2023) and Elder Scrolls VI (upcoming). Now, Microsoft has subsumed yet another independent Triple-A publisher, this time the world's most successful and important Triple-A gaming publisher, Activision Blizzard.

      In discovery, Microsoft has refused to produce anything other than what was already produced to the FTC, except for the data that Microsoft already maintains on each of the Plaintiffs through its Xbox and gaming data collection.[1] But Microsoft's production to the FTC does not fulfill Plaintiffs' more targeted discovery requests, and Microsoft's production to the FTC is now critically stale. For example, Microsoft's production of its executives' relevant communications to the FTC stops in February 2023. This is well before Microsoft entered into new agreements over Activision's important gaming content. Indeed, now that the merger is consummated and divestiture may be required, discovery into communications up to the present are now even more essential. But Microsoft has wholly refused to produce any of the relevant executives' communications after February 2023. Plaintiffs seek to compel Microsoft to produce the RFPs and Rogs that are not covered by Microsoft's production to the FTC.

**1.**     **The Court Should Compel Production of Documents Responsive to Plaintiffs' Requests for Production:**

---

[1] Defendant withheld its collected data on the Plaintiffs until producing it after hours on Friday, October 20, just one business day before the first Plaintiff deposition (Tuesday October 24).

Hon. Jacqueline Scott Corley
November 10, 2023
Page 2 of 8

- **RFP 15:** Communications of six Microsoft executives related to the Merger.
- **RFP 16:** Communications of six Microsoft executives about exclusivity decisions
- **RFP 17:** The online posts of six Microsoft executives in the past two years related to video games.
- **RFP 28:** Agreements between Microsoft and its cloud-gaming competitors.
- **RFP 20:** Documents and Communications related to the Plaintiffs.

All of these RFPs are relevant to whether this merger might substantially lessen competition in one of the relevant markets alleged by Plaintiffs.

RFP 15 seeks communications discussing the merger of six executives. RFP 16 seeks those same six executives' communications about exclusivity of gaming content. And RFP 17 seeks the online posts related to video games in the past two years by the same six executives. There is little dispute that Microsoft's executives' communications about the merger, exclusivity, or public posts about video games are highly relevant. Each of the six Microsoft executives were all heavily involved in the decision to purchase Activision and in Microsoft's gaming business. For example, Plaintiffs need to know whether Microsoft executives took contrary positions when discussing the merger with respect to enforceability, price, and effects on the industry. The same is true with respect to communications about exclusivity. Microsoft has refused to produce any communications of its executives other than what it already produced to the FTC, which only goes through February 2023. And Microsoft has refused to produce their online posts about video games. Microsoft's assertions about what it has already produced are misleading and inaccurate. The Court should order production of the material; Microsoft does not need to reproduce anything it has already produced.

Plaintiffs' request is not limited to communications made solely on official work devices or official media channels. If the merger was discussed on private devices, those messages are discoverable because they are highly relevant. Similarly, if public posts about video games were disseminated through private channels, such posts are discoverable and relevant. Case law supports discovery of these executives' private emails, texts, and messages in addition to their official work devices discussing the merger.[2]

Microsoft asserts that they have provided the six executives' usernames for "any accounts they could have used to post about the merger or Microsoft's video game business." But that is simply not true. Microsoft does not deny that these executives have personal social media accounts that have never been produced. And Microsoft concedes that they have never reviewed

---

[2] *See Ultravision Techs., LLC v. Govision, LLC*, No. 218CV00100JRGRSP, 2020 WL 10692709, at *2 (E.D. Tex. Aug. 28, 2020) (ordering production of emails from private email account where CEO conducted business from multiple private email accounts). *See also Paisley Park Enterprises, Inc. v. Boxill*, 330 F.R.D. 226, 235 (D. Minn. 2019) ("The Court will not permit the RMA Defendants to claim that it was reasonable to assume data on their personal cell phones would not be subject to discovery when the record clearly shows that they used their phones for work purposes.").

Hon. Jacqueline Scott Corley
November 10, 2023
Page 3 of 8

those accounts to determine if they have posted about the merger or video games on those accounts.

The six executives' communications about the merger and exclusivity are highly relevant to numerous issues in this case. Indeed, now that the merger is consummated, Microsoft is no doubt having discussions and making decisions about Activision's content and on what platforms Activision's content will be available. Yet Microsoft refuses to produce anything after February 2023. Indeed, Microsoft has recently released huge titles from Bethesda that are exclusive to Microsoft, such as Redfall (May 2023), Starfield (September 2023), and Elder Scrolls IV (upcoming).

RFP 22 seeks Microsoft's agreements with its cloud-gaming competitors. Although Microsoft has chosen to produce and rely on certain agreements with cloud-gaming providers over *Call of Duty* and other Activision content that it asserts precludes any competitive harm, those agreements can only be assessed by reviewing Microsoft's relationship with its cloud-gaming competitors, including other agreements. For example, if Microsoft is able to leverage its monopoly power over its Windows operating system or its cloud services (Azure) in order to control its cloud-gaming competitors, that information would be highly relevant and would undercut Microsoft's assertions. Microsoft has informed Plaintiffs that Microsoft has numerous agreements with its cloud-gaming competitors that have never been disclosed, but Microsoft refuses to produce the agreements.

RFP 20: Plaintiffs ask the Court to compel Microsoft to produce all data and communications about the Plaintiffs. One business day before Mr. DeMartini's deposition, Microsoft produced to Plaintiffs its gaming data on each of the Plaintiffs that Microsoft tracks. The details of the data was substantial, including all game-playing history and all in-game communications, among other data. However, the data that Microsoft produced appears to be incomplete, as it does not appear to include all the data that Microsoft collects on Plaintiffs' gaming activities, including from when Plaintiffs were minors. Moreover, Microsoft has refused to produce any of Microsoft's (non-privileged) communications about the Plaintiffs.

With respect to data, Microsoft asserts, without any declaration in support, that it has produced all data it possess on Plaintiffs. But making such an argument without verification is inadequate, particularly where the production appears on its face to be insufficient. For example, in the data that Microsoft produced detailing all of Plaintiffs' game playing history, there are numerous entries that appear to have no date, or the date information was masked. The Court should order Microsoft to collect and produce the full and complete data they possess on the Plaintiffs. Microsoft does not need to re-produce anything they've already produced.

2.     <u>**The Court Should Compel Responses to Plaintiffs' Interrogatory Number 4:**</u>

Rog 4 seeks "all social media handles" of the six key Microsoft executives: Satya Nadella, Brad Smith, Phil Spencer, Amy Hood, Matt Booty, and Tim Stuart. This request includes *all* social media handles, not simply their official Twitter and FaceBook Threads accounts. Defendant refuses to produce the social media handles of key Microsoft executive

Hon. Jacqueline Scott Corley
November 10, 2023
Page 4 of 8

based on relevancy, proportionality, and disclosure of private information. But if the social medial handle was used to post about video games or the Merger, they are relevant, and there is no burden in producing the handle.

3. **The Court Should Compel Microsoft's Response to Request for Admission 6 & 7**.

Request for Admission number 6 asks Microsoft to "[a]dmit that [Microsoft] and Activision Blizzard compete in the development, publishing, and sale of video games." Microsoft has objected and refuses to respond. Request for Admission number 7 is essentially the same but seeks an admission that Microsoft and Activision compete in the sale of "Triple-A ('AAA') video games." Microsoft refuses to respond to this too.

**MICROSOFT'S POSITION**

Microsoft has produced millions of pages of documents and responded to other written discovery requests (including compiling extensive data on game titles). That the bulk of the documents were also produced to the FTC speaks to the breadth of the FTC production, not to any lack of discovery available to Plaintiffs. Another scorched-earth production of every post-February 2023 document related to the merger and business decisions about video games is unwarranted and infeasible on this case schedule. Indeed, Plaintiffs have not treated that information as important to the issues in this case: their depositions of Microsoft executives have focused on rehashing issues covered in the FTC action rather than more recent events and they waited until nearly the close of discovery to pursue these discovery requests. But contrary to Plaintiffs' assertion that Microsoft refused to produce any post-February 2023 communications, Microsoft has agreed to additional, tailored productions of documents related to the more recent agreements that impact the Microsoft-Activision deal. Those productions are complete or underway.

**RFP 15: Communications Related to the Merger**

The merger agreement was executed in January 2022. Microsoft made a broad production of communications related to the merger through February 2023. That production would have fully addressed the issues that Plaintiffs argue are relevant: the decision to make the purchase, analysis about whether (and why) to agree to the acquisition, and discussions about the effect of the acquisition. Consistent with what Plaintiffs demand, Microsoft conducted a reasonable search that included any devices or platforms on which the custodians conducted business.

Additionally, Microsoft has made productions of post-February 2023 documents and communications related to recent matters that impact the deal, including the Sony offer, the Nintendo contract, and the cloud streaming deals. Microsoft has also agreed to conduct an additional search and production of documents and communications related to the Ubisoft agreement (under which Microsoft will not acquire cloud streaming rights to Activision games, with limited exceptions to fulfill commitments to third parties and regulators) and the Sony agreement (obligating Microsoft to make *Call of Duty* available on PlayStation for ten years).

This is consistent with an order in the FTC adjudicative proceeding, in which the FTC sought only limited discovery on the Ubisoft and Sony Agreements—the two relevant developments since discovery closed in that proceeding.  *In the Matter of Microsoft/Activision Blizzard*, FTC No. 9412, Oct. 26, 2023 Order.[3]

But Plaintiffs' broad demand for all of the executives' post-February 2023 communications related to the merger is disproportional to the needs of this case.  *See* Fed. R. Civ. Proc. 26(b)(1).  During that time, Microsoft was well into the regulatory process internationally and the litigation process domestically.  It was no longer evaluating and modeling the merger.  Accordingly, the broad search requested is not important to resolving the issues in this case.  Conversely, that search would carry a large burden.  The bulk of the post-February communications are privileged.  A search and production would involve reviewing an estimated 600,000-plus documents, while conducting a painstaking privilege review and withholding most documents.  That burden is unwarranted.  *See Am. Claims Mgmt. v. Allied World Surplus Lines Ins. Co.*, No. 18-cv-925-JLS(MSB), 2018 U.S. Dist. LEXIS 245777, at *8 (S.D. Cal. Dec. 31, 2018) (a costly search of voluminous documents, most of which would likely be privileged and which speculative relevance, was disproportionate); *Neal v. City of Bainbridge Island*, No. 3:20-cv-06025-DGE, 2023 U.S. Dist. LEXIS 31203, at *12 (W.D. Wash. Feb. 24, 2023) (request for all communications between relevant persons was disproportionate to the needs of the case where it would result in a "significant amount of material not relevant to Plaintiff's claims").

Plaintiffs have not identified any post-February 2023 documents or information they need.  Although they are deposing the executives from whom they seek production, in their first three depositions, they have not asked any questions related to post-February 2023 communications or activity, other than a handful of high-level questions about whether Activision will remain a subsidiary or become integrated.  In earlier correspondence and a prior letter brief regarding Microsoft's discovery responses (Dkt. 268), Plaintiffs did not pursue this request.  They raised it only after Microsoft sought to compel production of *Plaintiffs'* communications regarding the merger.

**RFP 16: Communications Related to Making Any Video Game Exclusive**

Microsoft has already produced a chart of every video game it has published in the past ten years with release dates for every platform on which the games were released.  It also produced communications and documents related to exclusivity decisions up through February 2023.  Exclusivity decisions about *Redfall* and *Starfield* were made prior to February 2023, so Plaintiffs already have the documents they seek.  Moreover, as the Court found in the FTC action, "[n]either *Starfield* nor *Redfall* are remotely similar to *Call of Duty*," (Case No. 3:23-cv-02880-JSC, Dkt. 327, at 44:15-16), and the future *Elder Scrolls VI* is also a roleplaying game unlike *Call of Duty*, so further documents related to those games have no bearing on this case—particularly where contracts ensure that Activision games will not be exclusive.

---

[3] Available at https://www.ftc.gov/system/files/ftc_gov/pdf/608827.10.26.2023_order_on_ccs_motion_to_allow_discovery_regarding_respondents_agreements_with_ubisof.pdf.

Plaintiffs did not pursue this request over the course of several meet and confers and their first draft of this letter brief, adding it into a later draft on November 3. Regardless, it would be disproportionate to require Microsoft to conduct additional searches through a huge volume of documents related to other games, when Plaintiffs already have the pertinent information concerning exclusivity.

**RFP 17: Executives' Online Posts Regarding Video Games**

Microsoft has provided Plaintiffs with the requested executives' social media usernames, for any accounts that they used to post about work-related topics—*i.e.*, any accounts they could have used to post about the merger or Microsoft's video game business, and accordingly any accounts that could have any possible relevancy. It also pointed Plaintiffs to where those executives' online posts related to the merger were already produced within the voluminous prior document productions (fully updated through to February 2023). However, for the same reasons described above, a further search and production of online posts is disproportional to the needs of the case. That public information is available online to Plaintiffs, if they would like to review the social media accounts that Microsoft has identified. Plaintiffs' online review would be much less burdensome than the burden required for Microsoft to review and process the posts into a producible format.

Plaintiffs' demand does not appear to arise from a legitimate need for this information. After Microsoft served a request on Plaintiffs for their online posts regarding video games, Plaintiffs served a nearly identical request for the posts of Microsoft executives. Plaintiffs did not actively pursue this request until Microsoft sought to compel Plaintiffs' production, at which time Plaintiffs asserted that they would not produce their own posts unless Microsoft produces its executives' online posts in this "reciprocal" request. But Microsoft's executives' posts about video gaming have no bearing on any claim or defense in this case (with the possible exception of public promises to make Activision games available on other platforms). Whereas Plaintiffs' posts are relevant to the element of irreparable harm, the balancing of the equities, and their sworn statements that gaming is their principal method of socializing. And Plaintiffs' posts are less likely to be publicly accessible. "[D]iscovery is not conducted on a 'tit-for-tat' basis." *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 312 (C.D. Cal. 2020).

**RFP 20: Documents Related to Plaintiffs**

Microsoft has already produced its complete gaming data related to Plaintiffs.[4] There is no discovery dispute at issue. Although, ironically, when Microsoft has sought discovery from

---

[4] Plaintiffs are incorrect that Microsoft produced Plaintiffs' gaming data "one business day" before Mr. DeMartini's deposition. Microsoft sent a request to Plaintiffs on April 25 asking for their Gamertags, and repeatedly explained to Plaintiffs that those were necessary to locate Plaintiffs' gaming data. Plaintiffs objected to providing their Gamertags on "privacy" grounds and continued to resist during meet and confer efforts. Plaintiffs finally provided their Gamertags on September 19. Microsoft then searched for and produced Plaintiffs' gaming data

Plaintiffs about their gaming history, they have argued that it is irrelevant to this case. (*See, e.g.*, Dkt. 287 at p. 3.)

Upon a reasonable inquiry, Microsoft has no other communications about Plaintiffs that are not privileged. Plaintiffs were only discussed in the context of defending this lawsuit. It would be disproportionate to require Microsoft to conduct any more thorough searching, such as looking for whether any employee mentioned the lawsuit in a non-privileged setting, as that burdensome search would not yield any information relevant to the claims or defenses in this case.

**RFP 28: All Contracts with Cloud Gaming Services**

Microsoft has produced its relevant agreements with cloud gaming companies: those relating to Activision gaming content. These include the Ubisoft agreement that demolishes Plaintiffs' theory that Microsoft will make Activision content exclusive to its cloud gaming service. However, Plaintiffs are fishing for irrelevant agreements related to other subjects, such as agreements for the companies' use of other Microsoft products like Windows and Azure. Those agreements do not relate to the claims alleged in this case, or to any topics Plaintiffs have pursued in the first three (of five) depositions of Microsoft executives. Further, production would require searching for and producing unnecessary agreements and may require producing contracts with third parties that contain confidentiality clauses (triggering notice burdens and implicating third parties' confidential information). Therefore, Plaintiffs' request is disproportional to the needs of this case.

**Interrogatory 4: Executives' Social Media Handles**

Microsoft has already provided Plaintiffs with the requested executives' social media handles that they have used for work purposes. Any of those executives' personal social media accounts are not relevant, are disproportionate to the needs of this case, and constitute private information outside of Microsoft's custody and control. Plaintiffs' issue with the phrasing about "known" social media accounts has been resolved. Microsoft explained that this means that it provided the information for all social media handles the executives used for work-related purposes.

**Requests for Admission 6 and 7: Microsoft and Activision as Horizontal Competitors**

Plaintiffs did not raise these requests over the course of several meet and confers and their first draft of this letter brief. But the addition provides a good example of how Plaintiffs continue to demand that the parties expend resources on irrelevant matters, including their horizontal theory that has been dismissed. Plaintiffs offer no explanation of the relevance of these requests, which patently only relate to a horizontal theory. They also seek a legal opinion and are vaguely worded. The Court should sustain Microsoft's objections.

---

four days before the first Plaintiff deposition. The day before the deposition, Plaintiffs' counsel admitted they had missed the email with the FTP link for that production.

Hon. Jacqueline Scott Corley
November 10, 2023
Page 8 of 8

                            Respectfully Submitted,

                            __/s/ *Tania Rice*__

                            *Counsel for Microsoft*

                            __/s/ *David Seidel*__

                            *Counsel for Plaintiffs*

cc: All counsel of record via ECF

**ATTESTATION OF FILER**

Pursuant to Civil L.R. 5-1(h)(3), regarding signatures, I, David Seidel, attest that concurrence in the filing of this document has been obtained.

Dated: November 10, 2023                                                                */s/ David Seidel*
                                                                                             David Seidel