November 10, 2023

**Via ECF**
The Honorable Jacqueline Scott Corley
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

      RE:    *Demartini, et al v. Microsoft Corporation*
               Case No: 3:22-cv-08991-JSC

Dear Judge Corley,

Microsoft Corporation ("Microsoft") moves to compel complete responses to Microsoft's Requests for Production, Set One ("RFP(s)") and Interrogatories, Set One.[1]

### MICROSOFT'S POSITION:

Microsoft is entitled to proportionate discovery on the key issues raised by Plaintiffs' claim, including any irreparable harm to Plaintiffs, whether that individual harm is related to the transaction, and whether equities are in the Plaintiffs' favor. For instance, Plaintiffs have made clear that their alleged irreparable harm is based on their fears that they would be unable to maintain their current gaming habits—especially with respect to accessing *Call of Duty* on their preferred platform. *See, e.g.,* Burns Decl. [ECF 145] ¶¶ 6-10; DeMartini Decl., [ECF 146] ¶¶ 11-14.

**1.    The Court Should Compel Production of Documents Responsive to Microsoft's Requests for Production**

Microsoft served eight, targeted Requests for Production on Plaintiffs on April 25, 2023. Plaintiffs objected to producing any documents responsive to any request. After a meet and confer on August 2, 2023, Plaintiffs produced documents that showed purchases/downloads of video games and some Xbox achievements and digital game libraries.[2] After reviewing the production, Microsoft sent a letter outlining remaining deficiencies and potential solutions for outstanding requests on October 6, 2023. The parties then conferred again on October 17, 2023. Plaintiffs confirmed that they would not produce documents in response to the following requests.

- **RFP 7 & 8**: Communications related to the merger between Microsoft and Activision, and posts disseminated on the internet in the past two years concerning video games. Plaintiffs' views on the merger and its impact to them are relevant to the veracity of their claims of personal, irreparable harm. Plaintiffs stated that they would not produce documents in response to these requests, but then on October 30 (the day before Mr. DeMartini's deposition),

---

[1] *See* Ex. 1 (Plaintiffs' excerpted responses to RFP), Ex. 2 (Mr. DeMartini's responses to Interrogatories, which are representative of identical responses served by all the Plaintiffs).
[2] Much of Plaintiffs' production are PlayStation receipts, each of which contain 5 blank pages.

Case 3:22-cv-08991-JSC   Document 293   Filed 11/10/23   Page 2 of 6

Hon. Jacqueline Scott Corley
November 10, 2023
Page 2 of 6

they produced 10 screenshots of texts messages between Plaintiffs discussing the merger or litigating against the merger. Microsoft seeks to compel a full production in response to its requests, including *all* communications related to the merger. Or, if Plaintiffs did not have any communications related to the merger (including between its announcement in January 2022 and the filing of this lawsuit in December 2022) outside of a small handful of texts, they are obligated to confirm that all documents have been produced. Microsoft does not seek to compel the production of privileged documents.

**2.     Plaintiffs Should Be Compelled to Supplement Their Responses to Microsoft's Interrogatories**

Plaintiffs similarly have not provided complete responses to Microsoft's Interrogatories. For certain parts, Plaintiffs gave no substantive response but said: "Plaintiff is continuing to investigate this Response." On the August 2, 2023, meet and confer, Plaintiffs represented that they did not continue to investigate, and that they believed their initial non-responses were "substantive and complete." Microsoft thus requests the Court to order full responses to the following Interrogatories:

- **Interrogatory 2**: The video games Plaintiffs played in the past 10 years, including whether they believe each title is a "Triple-A" game, as well as information for each title such as: the date range they played the title, the platforms on which they played them, the number of hours invested in a title, and whether they played multiplayer modes of a title. Plaintiffs responded with partial lists of games, but Plaintiffs' document productions demonstrate that the lists were incomplete, even with respect to the games played only in the past 5 years. And responses to other subparts are missing. For example, no Plaintiff provided the amount of time they spent on each video game. Microsoft does not otherwise have that information in its own or Plaintiffs' productions, particularly for games played on other platforms, but it is directly relevant to investigating Plaintiffs' assertions that *Call of Duty* is the most important game to them and their primary way of keeping in touch with friends. Plaintiffs are obligated to make reasonable efforts to provide their best answers or estimates. *See, e.g.*, *Pineda v. Abbott Labs.*, No. CV 18-03395 SVW (RAOx), 2021 U.S. Dist. LEXIS 166026, at *16 (C.D. Cal. July 8, 2021). Microsoft also directed Plaintiffs to other methods to discover time played in a given game, such as by looking at game levels, achievements, and saved campaigns..

- **Interrogatory 3**: The dates on which Plaintiffs purchased their gaming platform(s) and date range during which they played games on those platforms. Plaintiffs provided only partial responses.

- **Interrogatory 8**: Plaintiffs' social media accounts. This information is relevant because it will allow Microsoft to investigate Plaintiffs' public statements on video games, video game platforms, and the merger, as well as Plaintiffs' online social behaviors with respect to gaming.

Hon. Jacqueline Scott Corley
November 10, 2023
Page 3 of 6

### PLAINTIFFS' POSITION:

Microsoft's motion significantly mischaracterizes the record. For the reasons set forth below, Plaintiffs have complied with their discovery obligations and appropriately objected to certain requests.

1. **Microsoft's' Motion to Compel Production of Documents Should be Denied.**

Microsoft's motion mischaracterizes the record. For example, Microsoft states that "Microsoft served eight, targeted Requests for Production on Plaintiffs on April 25, 2023," but that "Plaintiffs objected to producing any documents responsive to any request." That is not true. Plaintiffs timely served Microsoft with their responses and objections on May 25, 2023. For each request, Plaintiffs objected to the requests as written as being overly broad and unduly burdensome, but specifically stated that Plaintiffs were prepared to meet and confer with Microsoft to discuss agreeable parameters for their document production. Microsoft did not follow up for months. When the parties met and conferred for the first time on August 2, 2023, the parties discussed Plaintiffs' objections, and Microsoft agreed that they would limit their requests to a narrower scope. During the meet and confer, Microsoft informed Plaintiffs that the primary information sought from each Plaintiff was all relevant material from their gaming accounts. Microsoft also said they would follow up in writing to present a more limited set of requests. But Microsoft never did, and to date, never has. Despite failing to set forth in writing the limited set of requests that Microsoft agreed to, Plaintiffs promptly began to collect and produce all the Plaintiffs' gaming account information. Each Plaintiff sent counsel their gaming account logins, and counsel for Plaintiffs proceeded to collect and produce the information from their gaming accounts. Plaintiffs produced this information to Microsoft on August 18, 2023. Plaintiffs have also conducted a good faith search of other responsive materials, including searching through Plaintiffs bank and credit card statements, Amazon purchases, and other relevant locations. To date, Plaintiffs have produced over 5,577 pages to Microsoft.

**Request For Production 7 & 8**: Microsoft seeks Plaintiffs' communications related to the merger and all online posts about video games in the past two years. Plaintiffs are also moving to compel Microsoft's communications about the merger, but Microsoft is refusing to produce its own six executives' communications about the merger. There is little dispute that Microsoft's six executives' communications about the merger are far more relevant to whether the merger violates Section 7 of the Clayton Act than Plaintiffs' communications about the merger. Nor should Microsoft's executives be shielded from discovery burdens more so than the Plaintiffs. Moreover, the broad search requested is not important to resolving the issues in this case. And producing all communications related to the merger would be unduly burdensome because the vast majority of the communications are privileged. Requiring the preparation of a privilege log for communication with counsel about the merger is an unwarranted burden.

With respect to all online posts about video games in the last two years, Plaintiffs have proposed exchanging social media handles with Microsoft so that the parties can identify the relevant posts. But Microsoft has only provided the six executives' official Twitter and Facebook Threads handles, hampering Plaintiffs' ability to depose them about their online posts. Despite

refusing to provide the six executives' social media handles, Plaintiffs have already provided Microsoft with all of the social media handles of Plaintiffs Dante DeMartini and Beowulf Owen, the first two deponents. Thus, Plaintiffs have already provided Microsoft with more complete social media information than Microsoft.

   2. **Microsoft's' Motion to Compel Further Responses to Interrogatories Should be Denied.**

Defendant's request for Plaintiffs to supplement their interrogatory responses is without merit. Contrary to Defendant's assertion, Plaintiffs have spent substantial time fully investigating the information requested and have completed their interrogatory responses. Indeed, during the deposition of Mr. Owen, Defendant's counsel stated that Mr. Owen's response to the interrogatory "seems very comprehensive."

**Interrogatory 2:** In response to Interrogatory 2, Plaintiffs responded by identifying all video games played in the past 5 years, as well as answers to Microsoft's subparts, including the date range that Plaintiffs played the video game; the platform on which Plaintiffs played the video game; and whether Plaintiffs played the video games' multiplayer modes, as Microsoft requested. Plaintiffs' responses to this interrogatory is already voluminous. At the August 2, 2023, meet and confer, Defendant recognized that seeking information for the past 10 years would concern information from when many of the Plaintiffs were minors. The parties thus agreed to limit the response to the past five years. Microsoft acknowledged this limitation during Mr. Owen's deposition.

Microsoft's motion appears to concede that Plaintiffs have fully responded to Interrogatory 2 for the past 5 years, except for two subparts: (a) the amount of time each Plaintiff played every video game; and (b) whether the Plaintiff considers the game a Triple-A game. But Plaintiffs have objected to providing this information for the following reasons.

First, attempting to track how many hours they have played every game in the past 5 years is impossible, other than the playing-time information shown in documents that Microsoft already has. All of Plaintiffs' records that have tracked how many hours Plaintiffs have played the games have been produced. Plaintiffs directed Microsoft to its production of documents which provides the game-time tracking information within the Plaintiffs' game accounts. Any further clarification about game-time outside of those accounts' tracking information would be nothing more than speculation. To the extent Microsoft wishes to ask Plaintiffs to provide their best estimate of playing-time for each game, they may do so during each of their depositions, which they have already done at the depositions so far. But there is no verifiable way—other than through the account information that Microsoft already has—to provide accurate answers to this question.

Second, with respect to Plaintiffs' playing-time for each game on a Microsoft platform (like Xbox, Xbox Live, and GamePass), Microsoft already internally tracks this information. One

business day before Dante DeMartini's deposition[3], Microsoft produced (in response to an RFP from Plaintiffs sent four months earlier) all of the data that Microsoft already tracks for each Plaintiff. And the data shows that Microsoft is tracking its players on Xbox systems to a disturbing degree. Microsoft not only tracks players' game-playing history in minute detail, but even tracks and stores players' in-game and in-platform chat messages. Microsoft therefore already has all of the information it needs on Xbox systems, and Plaintiffs already provided the information they possess for all other platforms, including PlayStation Network; Xbox Live; Steam; Battle.Net; Riot Games; Epic Games; Apple; Mojang/Minecraft; and EA Sports.

Third, whether the Plaintiffs consider a game to be a Triple-A game is not relevant to any claims or defenses in this case. In contrast, Microsoft's consideration of Triple-A games is highly relevant because such considerations will influence Microsoft's decision making with respect to game development, publishing, exclusivity, and competition. But what an individual gamer considers to be a Triple-A game is not relevant.

**Interrogatory 3:** Microsoft's Rog 3 seeks the dates on which Plaintiffs purchased every single gaming platform and the "date range" during which they played games on those platforms for the **past 20 years**, which would include information from when the Plaintiffs were as young as six years old. Plaintiffs' responses to Interrogatory 3 are sufficient. They have already produced all of their available receipts for platforms after a reasonable search. Thus, Microsoft already has all the information available. Further, as discussed above, to the extent Microsoft wishes to get a best estimate of information outside of the receipts that Plaintiffs already produced, it may do so during deposition. Further answers to this interrogatory would be inherent speculation, incapable of verification beyond the information that Plaintiffs already produced to Microsoft and what Microsoft already tracks.

**Interrogatory 8:** Microsoft seeks "Plaintiffs' social media accounts." This interrogatory seeks information that is not relevant. Nonetheless, Plaintiffs produced all social media handles for Dante DeMartini and Beowulf Owen before their depositions. But Microsoft has refused to do the same, providing for the six Microsoft executives only their official Twitter and Facebook Threads handles. The six Microsoft executives were all heavily involved in the merger and Microsoft's gaming business. Their social media posts are therefore vastly more relevant than the Plaintiffs' posts about video games.

---

[3] Mr. DeMartini's deposition was at 9:30 a.m. on Tuesday October 24. Microsoft produced the data on DeMartini's playing statistics and in-game text messages after hours on Friday, October 20.

Hon. Jacqueline Scott Corley
November 10, 2023
Page 6 of 6

Respectfully Submitted,

*/s/ Valarie C. Williams*

*Counsel for Microsoft*

*/s/ David Seidel*

*Counsel for Plaintiffs*

cc: All counsel of record via ECF

## ATTESTATION OF FILER

Pursuant to Civil L.R. 5-1(h)(3), regarding signatures, I, Valarie Williams, attest that concurrence in the filing of this document has been obtained.

Dated: November 10, 2023                                        */s/ Valarie C. Williams*