November 17, 2023

**Via ECF**
The Honorable Jacqueline Scott Corley
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

      RE:    *Demartini, et al v. Microsoft Corporation*
              Case No: 3:22-cv-08991-JSC

Dear Judge Corley,

Microsoft Corporation seeks a protective order precluding the deposition of Harvey Smith, the Creative Director of Arkane Studios (which was owned by ZeniMax Media and acquired by Microsoft in 2021).

## MICROSOFT'S POSITION:

Plaintiffs represented for nine months that they only needed to take five or six depositions. (Ex. A [excerpts of Tr. of 2/2/23 Status Conference at 17:4-5; Tr. of 4/12/23 Status Conference at 22:14-23:4; Tr. of 4/27/23 Status Conference at 4:14-24; 8/25/23 Status Conference Statement at 1].)  The depositions of those six senior Microsoft executives were first noticed in April and re-noticed in September.  The parties had numerous meet and confers during which Plaintiffs represented that these were the only Microsoft witnesses that they needed to depose.

Then, on November 1, Plaintiffs noticed the deposition of another Microsoft witness, Harvey Smith.  Plaintiffs have known about Mr. Smith at least since April, when they featured him in their amended complaint: "In a recent interview, the director of *Redfall*, Harvey Smith, stated: 'We got bought by Microsoft and that was a huge sea change.  They said, 'no PlayStation 5.  Now we're gonna do Game Pass, Xbox, and PC.'" (Ex. B [Am. Compl. at ¶ 5].)  But after securing their (re)depositions of top Microsoft executives, Plaintiffs have engaged in a campaign to seek increasingly more discovery from Microsoft and non-parties in the final weeks of fact discovery period.

Mr. Smith's testimony has no bearing on any claim or defense in this action.  Fed. R. Civ. Proc. 26(b)(1).  The Court addressed this issue in the parallel FTC action.  Microsoft's decision regarding *Redfall* is not indicative of what Microsoft will do with *Call of Duty*, because "[n]either *Starfield* nor *Redfall* are remotely similar to *Call of Duty*."  Case No. 23-cv-02880-JSC, Dkt. 327, at 44:15-16.  The relevance of Mr. Smith's commentary or impressions of Microsoft's executives' decision-making is even more attenuated.

Mr. Smith's testimony would be cumulative, duplicative, and redundant of topics that have been obtained (or were obtainable) from many other witnesses.  Fed. R. Civ. Proc. 26(b)(2)(C). The Microsoft executives that Plaintiffs are re-deposing have testified at length (in the FTC action and this action) about the decision to make *Redfall* exclusive.  They have been transparent that

*Redfall* was originally envisioned by ZeniMax as a multiplatform game and then after the acquisition of ZeniMax, Microsoft decided to make *Redfall* exclusive to its platforms. *See* Case No. 23-cv-02880-JSC, Dkt. 327, at 44:10-12. Mr. Smith's comment about *Redfall* becoming exclusive is not a new fact and testimony about that comment would add nothing to a topic that has been hashed and rehashed. The Microsoft decision-makers are the best source of information regarding this fact and the reasoning for the decision, and they have all testified multiple times.

Even if it were relevant to pinpoint the status of *Redfall*'s development at the time Microsoft decided to make it exclusive, there is no record to correct on that score. Matt Booty's testimony—[REDACTED]—did not conflict with Harvey Smith's interview statements that ZeniMax originally planned a PlayStation 5 version. It also does not raise any issue that has not already been addressed. In his deposition, Pete Hines, former head of publishing at Bethesda, testified that although they "had contemplated releasing a version for PlayStation 5," a reference to a PlayStation 5 version "d[id] not mean . . . a full in-development version." (Ex. C (Hines FTC Dep. 97:2–23).) Significantly, Mr. Smith did not say otherwise in the interview that Plaintiffs rely on.

Mr. Smith's deposition would be disproportionate to the needs of this case. Fed. R. Civ. Proc. 26(b)(1). For the reasons above, his testimony is not important to resolving any issue in this case. Indeed, the facts related to *Redfall* are undisputed and inconsequential. The burden of adding another deposition, which would occur in Texas, to a jam-packed end of the discovery period outweighs any benefit. *The parties already have eight depositions scheduled in the final eleven days of fact discovery.* Realistically, the only way to complete Mr. Smith's deposition is to conduct it after fact discovery closes. The (lack of) significance to his deposition does not justify a violation of the case schedule. The aggressive schedule in this case was based on the Plaintiffs' representation of the scope of discovery. Expanding that scope to include ever more document and deposition discovery in the waning days of fact discovery is disproportionate and unwarranted.

Finally, Plaintiffs did not confer with Microsoft about Mr. Smith's availability before noticing his deposition, as required by Local Rule 30-1. Mr. Smith is not available on November 17.

**PLAINTIFFS' POSITION:**

Plaintiffs properly noticed the deposition of Mr. Smith under Federal Rule of Civil Procedure 30. Pursuant to Rule 30, a party may depose any person without leave of court unless the parties have not stipulated to the deposition and the deposition would result in more than 10 depositions being taken. Fed. R. Civ. P. 30(a)(1)-(2)(A)(i). Plaintiffs properly noticed Mr. Smith's deposition and have taken less than 10 depositions. Plaintiffs are entitled to depose Mr. Smith.

A court may issue a protective order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c). The burden of persuasion under Fed. R. Civ. P. 26(c) is on the party seeking the protective order. *See, e.g.*, *U.S. E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006).

Microsoft argues first that the deposition seeks irrelevant information. But the basis for the deposition is straightforward and clear. Mr. Smith is the head of Microsoft's Arkane Studios,

which Microsoft acquired as part of its acquisition of ZeniMax in 2021. In a news article, Mr. Smith stated that once Microsoft acquired them, it was a "huge sea change" in terms of what platforms the studio created games for. Mr. Smith stated that their PlayStation 5 version of *Redfall* was canceled, and that Microsoft informed him that they were no longer going to make games for PlayStation, and instead they were "now gonna do Game Pass, Xbox, and [Windows]." *See* Ex. D [IGN Article]. There is no question that Microsoft's prior exclusivity decisions, particularly with AAA-publishers it has previously acquired, is highly relevant.

Mr. Booty is head of all of Microsoft's internal (first-party) game studios. He oversees studios such as Arkane. During Mr. Booty's deposition, Plaintiffs asked Mr. Booty to confirm that the article was true—that Microsoft did indeed cancel the PlayStation version of *Redfall*, and that it was indeed "a huge sea change" from what Arkane had been doing previously. But Mr. Booty denied the veracity of Mr. Smith's statements. Mr. Booty stated that ▮▮▮▮[1]▮▮▮▮." *Id.* [Booty Dep. Tr. 117: 10-11.] Mr. Booty insisted that ▮▮▮▮ *Id.* [Booty Dep. Tr. 118: 18-20.]

Plaintiffs are entitled to an opportunity to question Mr. Smith on his first-hand knowledge about what changed at Bethesda and Arkane studios after Microsoft purchased them. What was the "sea change" that Mr. Booty now claims is "revisionist history"? Mr. Smith's first-hand knowledge about his work before and after being purchased by Microsoft, and the exclusivity decisions at the time it happened, are relevant to Plaintiffs' theories.

Next, Microsoft argues that the deposition would be unduly burdensome, and "duplicative." But Mr. Smith was never deposed by the FTC. And Plaintiffs do not intend to depose Mr. Smith for very long. Because Microsoft appears to take a contradictory position as to whether the statements made by Mr. Smith are accurate, Plaintiffs are entitled to depose Mr. Smith about his public statements.

Finally, Microsoft argues that Plaintiffs delayed too long and failed to meet and confer over Mr. Smith's availability. But Microsoft fails to point out that Plaintiffs noticed Mr. Smith's deposition only seven days after Mr. Booty testified that Mr. Smith's statements were "revisionist history." And upon noticing the deposition, Plaintiffs immediately emailed counsel to discuss a mutually agreeable date and location. *See* Ex. F [Seidel email]. Microsoft argues that Plaintiffs delayed too long, yet simultaneously argues that Plaintiffs should have delayed even longer by first meeting and conferring over a deposition date. Plaintiffs took the proper course: Plaintiffs noticed the deposition as soon as they could after Mr. Booty's "revisionist history" testimony, and then immediately sought to meet and confer over an agreeable deposition date. Yet despite Plaintiffs' immediate offer to meet and confer over a deposition date, Microsoft failed to even respond. *Id.* Indeed, it was only until the parties met and conferred after Plaintiff Steve Herrera's deposition on November 9, 2023, that Microsoft even informed Plaintiffs that the deposition could not go forward on November 17, and that it would object to the deposition.

There is no basis to issue a protective order.

---

[1] *See* Ex. E [Booty Dep Tr. 118:14]

## CERTIFICATION

The undersigned lead counsel for each party certifies that they met and conferred via video conference regarding this discovery dispute. Microsoft has not made any offer to make Mr. Smith available for deposition, because it does not believe his deposition is warranted. Plaintiffs have agreed to take the noticed November 17 date off calendar, and to confer regarding a mutually convenient date if Mr. Smith is ordered to appear for a deposition.

Respectfully Submitted,

  /s/ Valarie C. Williams

*Counsel for Microsoft*

  /s/ Cadio Zirpoli

*Counsel for Plaintiffs*

cc: All counsel of record via ECF

## ATTESTATION OF FILER

Pursuant to Civil L.R. 5-1(h)(3), regarding signatures, I, [name], attest that concurrence in the filing of this document has been obtained.

Dated: November 17, 2023                    /s/ Valarie C. Williams