December 5, 2023

**_Via ECF_**
The Honorable Jacqueline Scott Corley
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

      RE:    *Demartini, et al. v. Microsoft Corporation*
                Case No: 3:22-cv-08991-JSC

Dear Judge Corley,

      Plaintiffs move to compel Microsoft's responses to Plaintiffs' discovery requests.

**PLAINTIFFS' STATEMENT**

      Plaintiffs move to compel Microsoft to respond to Request for Production Number 16 and Requests for Admission Numbers 6 and 7. On November 15, the Court denied without prejudice Plaintiffs' previous motion to compel on these requests on the ground that the parties had never met and conferred over them. *See* ECF No. 294 at 2–3. However, the parties had already met and conferred by video conference over these requests. *See* Ex. A [declaration of D. Seidel]. On November 17, the parties met and conferred again, and the parties agreed that they had already met and conferred over these requests. *Id.* Plaintiffs therefore renew their motion to compel on these requests.[1]

      Under Rule 26 Plaintiffs may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Valentine v. Crocs, Inc.*, No. 22CV07463TLTPHK, 2023 WL 7461852, at *1 (N.D. Cal. Nov. 10, 2023) (citing Fed. R. Civ. P. 26(b)(1)). Under Rule 26, relevant material is

---

[1] Microsoft's assertion that this motion is "untimely" is frivolous and manipulative. This motion was first filed on November 10, and the Court ruled on these issues on November 15, holding that the parties had never met and conferred. But the parties in fact had met and conferred previously, which Microsoft now concedes. After meeting and conferring again on November 17, Plaintiffs sent Microsoft its portion of the renewed letter brief on November 19. Microsoft did not respond with its portion until November 21, just before the Thanksgiving holiday. Microsoft asserted new positions and statements that Plaintiffs considered to be misleading, and Plaintiffs were forced to edit their position to respond after the holiday. Plaintiffs sent Microsoft a revised joint letter brief on November 29. Microsoft then took five days to provide minimal edits to their position, sending their revised position on December 4. Microsoft's arguments on untimeliness should be rejected.

Hon. Jacqueline Scott Corley
December 5, 2023
Page 2 of 6

material "reasonably calculated to lead to the discovery of admissible evidence." *Gonzales v. Google, Inc.,* 234 F.R.D. 674, 679 (N.D. Cal. 2006) (citing Fed. R. Civ. P. 26(b)(1)). Once relevance is established, the party resisting discovery bears the burden of showing that the requested discovery is unduly burdensome and disproportionate to the needs of the case. *Petconnect Rescue, Inc. v. Salinas*, Case No. 20-CV-00527-LL-DEB, 2022 WL 1322854, at *2 (S.D. Cal. May 3, 2022). Microsoft has failed to sustain this burden.

### The Court should compel Microsoft to answer Requests for Admission 6 and 7.

Request for Admission Number 6 seeks an admission from Microsoft that it and Activision Blizzard compete in the development, publishing, and sale of video games. And Request for Production Number 7 seeks the same admission but with respect to Triple-A video games. *See* Ex. B [RFA's 6 and 7 and MSFT's Responses].

These requests for admission are highly relevant to Plaintiffs' claims. First, the admission goes directly to whether the merger may lessen competition in the platform-side markets under a foreclosure theory, because Microsoft's competition with Activision Blizzard in developing video games for platforms (including consoles, game library subscriptions, cloud-gaming, and operating systems) will inform the future ability and incentive of Microsoft to foreclose rivals, since it goes directly to the question of scarcity of the foreclosure inputs. For example, whether Microsoft and Activision Blizzard create games that compete with one another, is relevant to whether Microsoft is increasing its control over those competing games, which gives Microsoft more leverage (and incentive) to foreclose rivals from those inputs. Second, the admission goes directly to whether the merger may lessen competition in the development, publishing, and sale of video games through the elimination of a significant rival.

Microsoft claims that these requests are not relevant. But the Court previously granted Microsoft's motion to compel further interrogatory responses on the grounds that the Triple-A games that Plaintiffs play are relevant to Plaintiffs' allegations that "Plaintiffs 'would all be harmed by reduction in quality and output of Triple-A games.'" ECF No. 294 at 4. These requests for admission are also relevant, among other things, to whether this merger may reduce the quality and output of Triple-A games.

### The Court should compel Microsoft to answer Plaintiffs' Request Number 16.

Request for Production Number 16 seeks communications related to making video games exclusive to Microsoft platforms. *See* Ex. C [Pls' RFP 16 and MSFT's Response]. Plaintiffs have agreed to limit this request to communications post-February 2023, because Microsoft has already produced some communications related to exclusivity that occurred prior to February 2023 as part of its production to the FTC. But Microsoft has produced no communications after February 2023. Plaintiffs have also agreed to limit the request to communications of only six Microsoft executives: Phil Spencer, Tim Stuart, Matt Booty, Amy Hood, Brad Smith, and Satya Nadella.

Hon. Jacqueline Scott Corley
December 5, 2023
Page 3 of 6

Such requested materials are relevant for at least three reasons. First, the Request seeks material that would support Plaintiffs' position that Microsoft may foreclose its rivals from accessing important gaming content. Microsoft's communications related to making games exclusive to Microsoft platforms, or deciding not to provide its gaming content to rival platforms and the bases for doing so are directly relevant to Plaintiffs' foreclosure theory. Second, Microsoft has recently released widely popular Bethesda titles that are now exclusive to Microsoft platforms, such as *Redfall* (May 2023), and *Starfield* (September 2023). And Microsoft is currently developing numerous other AAA games, including the immensely popular and highly demanded *Elder Scrolls VI*. Microsoft's discussions concerning these and other games' exclusivity is highly relevant. Microsoft argues that these games' exclusivity is not relevant because these games are not similar to *Call of Duty*. But Microsoft's argument is frivolous because (1) Plaintiffs' claims are not restricted only to whether Microsoft will make *Call of Duty* exclusive; (2) Microsoft's exclusivity decisions about all of its AAA games, regardless of the genre, are important to understanding whether Microsoft may make Activision Blizzard games (not just *Call of Duty*) exclusive; and (3) Microsoft is likely developing games that are highly similar to *Call of Duty*, like its *Halo* franchise of games. Moreover, now that the merger is consummated, Microsoft is likely having discussions and making decisions about Activision content and on what platforms Activision content will be available.

Microsoft's only argument in favor of concealing these highly relevant communications is that (1) the FTC never asked for these post-February 2023 communications and therefore the Plaintiffs should not get them; (2) the Plaintiffs "made no showing as to what documents they are seeking; and (3) the request is not proportional to the needs of the case. But each of these arguments is misplaced.

First, there is no basis in law to hold that Microsoft's production in a related case defines the scope of discovery in this case. Such a proposition finds no support in the law, and Microsoft cites none. In fact, the Supreme Court has ruled just the opposite. In *United States v. Borden*, the Supreme Court held that private actions for injunctive relief under Section 16 of the Clayton Act, and governmental actions seeking identical injunctive relief, "may proceed simultaneously or in disregard of each other." 347 U.S. 514, 519 (1954). That holding makes sense. Through passage and then amendment of the Clayton Act, Congress codified an antitrust enforcement scheme that includes both private and public enforcement mechanisms. It did not give precedence or priority to either one. "These private and public actions were designed" so as to not be "mutually exclusive." *Id*. There is no legal authority for the position that the FTC's decision not to seek certain discovery precludes private plaintiffs from seeking and obtaining that discovery. That the FTC decided not to seek communications about exclusivity post-February 2023 is no basis to deny Plaintiffs that relevant material.

Second, Microsoft argues that Plaintiffs should be denied because they have not made a showing as to what documents they seek. But that is not true. Plaintiffs request is simple: Plaintiffs seek the communications of six Microsoft executives related to exclusivity decisions of its gaming content from February 2023 until the present.

Hon. Jacqueline Scott Corley
December 5, 2023
Page 4 of 6

Third, the burden of searching for post-February 2023 communications of six specific Microsoft executives related to exclusivity of gaming is proportional to the needs of the case for two reasons. First, the scope of the request is limited to an 8-month period and directed towards six specific individuals. Second, as laid out above, the communications are highly relevant to Plaintiffs' case. The minimal burden of conducting a search and producing these targeted communications does not justify withholding this information on proportionality grounds.

Pursuant to the Court's order (ECF No. 294), Plaintiffs state the following: Plaintiffs' lead counsel (Cadio Zirpoli) met and conferred with Microsoft's lead counsel (Valarie Williams) multiple times to discuss these requests. Plaintiffs' final offer was that they would accept communications related to exclusivity decisions only for six Microsoft executives (Phil Spencer, Tim Stuart, Matt Booty, Sarah Bond, Brad Smith, and Satya Nadella) and only since February 2023. Microsoft did not offer any compromise position and asserted that it would not produce anything it did not produce in the separate FTC action. Microsoft has informed Plaintiffs that it did not produce to the FTC any communications related to exclusivity after February 2023.

## MICROSOFT'S STATEMENT:

Microsoft agrees that the parties have met and conferred regarding these requests, and never intended to imply otherwise. Its statements about the meet and confer process in the prior letter brief on these same requests (*see* Dkt. 292) were intended to convey the low priority that Plaintiffs have given to these requests. Microsoft served its responses to these requests on July 13. In the proceeding four months, there have been six discovery letter briefs, numerous drafts of those briefs, and numerous meet and confers. Plaintiffs did not mention these requests at all until November 6, days before the prior briefing submission (and after exchanging earlier letter brief drafts that did not address these requests).

However, Plaintiffs' motion should be denied. The Court did not invite a re-briefing on these requests. Plaintiffs further waited weeks to bring this motion, resulting in an untimely brief two weeks after fact discovery closed on November 20. (L.R. 37-3.)[2] And regardless, as discussed below, Plaintiffs still have not articulated any cogent basis for this discovery.

**Requests for Admission No. 6 and 7**

Plaintiffs restate the only argument that they made in their prior brief on this issue (Dkt. 292 at p. 4), which is that their requests are relevant to their dismissed horizontal claim: whether the merger would lessen competition "through the elimination of a significant rival." (*See* Dkt. 228, Order re: Motion to Dismiss, at 6-7.) They also add a new justification, which is still disconnected from their vertical claim. Whether Microsoft *subjectively* considered Activision to be one horizontal competitor (among many) does not impact the *factual* premise that Plaintiffs

---

[2] As Plaintiffs concede in their footnote 1, Microsoft promptly returned its portion of the letter brief within two days, and then Plaintiffs waited another eight days—until after the deadline to file discovery letter briefs had passed—before responding. This alone requires denial of Plaintiffs' motion.

now claim to be investigating: the number of alternative games that remain in the market with which competitors can compete, and Microsoft's ability and incentive to foreclose competition in any of Plaintiffs' alleged platform markets.

Accordingly, Plaintiffs have not articulated any cogent relevance of Requests No. 6 and 7. Fed. R. Civ. Proc. 26(b)(1). Microsoft's right to discovery about Plaintiffs' gaming habits and alleged harm has nothing to do with whether it should be required to respond to discovery requests that patently concern a dismissed claim.

Moreover, to the extent Plaintiffs are seeking something other than Microsoft's subjective opinion, these requests improperly seek a legal or expert opinion. *See, e.g.*, *Finjan, Inc. v. ESET, LLC*, 2018 U.S. Dist. LEXIS 171364, *14 (S.D. Cal. Oct. 3, 2018). They are also vaguely worded. The Court should sustain Microsoft's objections.

**Request for Production No. 16**

The parties have already briefed, and the Court has already resolved, the dispute over the production of post-February 2023 documents. With respect to Plaintiffs' demand for all communications related to the merger, the Court found that "Microsoft shall produce the same post-February 2023 documents to Plaintiffs as it has or will be producing in the FTC action," and nothing further, because Plaintiffs failed to make a showing that they are entitled to anything more. (Dkt. 294 at 1.) The Court also denied Plaintiffs' request (renewed here) for post-February 2023 communications regarding exclusivity, for two reasons: (1) Plaintiffs made no showing as to what documents they are seeking and (2) the issue had not been part of a meet and confer. (*Id.* at 2.) The first reason still applies and the Court did not invite a renewed motion. (*Id.*)

Even in their improper second attempt, Plaintiffs have not articulated what they believe they need for their case. Exclusivity decisions about *Redfall* and *Starfield* were made prior to February 2023, and Plaintiffs already have the documents related to those decisions. Plaintiffs have made no showing regarding why additional documents about *Elder Scrolls VI* (a roleplaying game that is in early development and is not expected to be released for several years) are relevant. Plaintiffs make a vague reference to other "AAA games" without even naming them. They acknowledge the Court's prior rulings that *Redfall* and *Starfield* are not comparable enough to be relevant to show what Microsoft will do with *Call of Duty*.[3] But they fail to make any showing of what games Microsoft has decided to make exclusive post-February

---

[3] *Call of Duty* is the one game that Plaintiffs claim is most important to them and would drive their platform purchasing decisions, and that is such a critical market input that competitors cannot compete with alternatives. But an admission that other Activision games are just as important cannibalizes Plaintiffs' own theory. If numerous games are "critical inputs," then competitors could compete with alternatives from other studios. Plaintiffs do not specify which other Activision games they seek to expand their theory to include, nor what post-February 2023 exclusivity decisions they believe would have bearing on decisions about those additional games.

Hon. Jacqueline Scott Corley
December 5, 2023
Page 6 of 6

2023 and why those games would provide a more apt comparison.  They did not ask about exclusivity decisions regarding other games during their depositions of Microsoft executives.

Plaintiffs' request is disproportionate to the needs of this case.  Fed. R. Civ. Proc. 26(b)(1). While no relevant post-February 2023 exclusivity decisions have been identified, a hunt for any communications that relate to past or future exclusivity would be burdensome.  It would involve searching through a large volume of documents about various video games to determine whether any exclusivity discussions occurred.  Conversely, Plaintiffs have not identified any documents they seek that are important to this case.  Plaintiffs do not substantively address these points, nor do they identify any particular exclusivity decision that is relevant.

Indeed, Plaintiffs have shown little care about seeking this discovery.  Their delay has resulted in a frantic, post-close of fact discovery request for an order that would require Microsoft to conduct an extensive search for documents well into the expert discovery period.  Plaintiffs' request is disproportional and should be denied for a second time.

**Meet and Confer Certification**

Lead counsel for Microsoft has met and conferred via video conference with Plaintiffs regarding this discovery dispute.  Microsoft's offer was that it will continue producing any post-February 2023 documents that it also produces to the FTC, which include documents and communications related to the pertinent recent agreements with Sony and Ubisoft.  It has been making those productions.

Respectfully Submitted,

  /s/ Cadio Zirpoli

*Counsel for Plaintiffs*

  /s/ Valarie Williams

*Counsel for Microsoft*

cc: All counsel of record via ECF

**ATTESTATION OF FILER**

Pursuant to Civil L.R. 5-1(h)(3), regarding signatures, I, Cadio Zirpoli, attest that concurrence in the filing of this document has been obtained.

Dated: December 5, 2023                                  */s/ Cadio Zirpoli*