January 5, 2024

**Via ECF**
The Honorable Jacqueline Scott Corley
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

  RE: *Demartini, et al v. Microsoft Corporation*
     Case No: 3:22-cv-08991-JSC

Dear Judge Corley,

  The parties jointly submit this letter brief regarding whether Plaintiffs may take the deposition of Microsoft's CEO, Satya Nadella.

## PLAINTIFFS' POSITION:

  There is no dispute, and Microsoft does not deny, that Mr. Nadella negotiated the acquisition and signed the merger agreement on behalf of Microsoft. Mr. Kotick, the CEO of Activision Blizzard, testified that he had numerous calls with his counterpart, Mr. Nadella, to discuss the acquisition. *See e.g.*, Ex. A [Kotick Dep.] at 23:24–24:1, 24:11–12. Indeed, Mr. Nadella himself has disclosed his involvement in the negotiations. *See* Ex. B [Nadella FTC Dep. (Sep. 27, 2022)] at 189:21–190:9 [REDACTED]. Nor is there any dispute that Mr. Nadella has oversight over the gaming business and actively manages it. He is involved in voluminous relevant communications and documents in this case. Plaintiffs thus noticed his deposition because he has relevant knowledge about the acquisition, Microsoft's strategic rationale for the largest technology merger ever, and how the acquisition fits in with Microsoft's other technology strategies and ambitions. Plaintiffs are therefore entitled to take his deposition. Given his involvement in this massive restructuring of the industry, Mr. Nadella's deposition is not disproportionate. Microsoft's objection should be denied.

  On August 31, 2023, the Court ordered the Microsoft and Activision depositions to go forward. *See* Hr'g Tr. (Aug. 31, 2023). Microsoft objected to the deposition of Satya Nadella under the so-called "apex" argument and requested leave to brief the issue. *Id.* at 7:13–19. The Court held that the parties should wait until after the other depositions concluded before briefing Microsoft's "apex" objection. *Id.* at 8:6–10. Microsoft and Plaintiffs met and conferred in October and agreed that the parties would brief Microsoft's objection after all the other depositions concluded, as ordered by the Court, and after the close of fact discovery, and that Microsoft had no objection to scheduling Mr. Nadella's deposition after the close of fact discovery if the Court overrules Defendant's objection. During the Case Management Conference on December 21, 2023, the Court ordered the parties to file briefing on the issue by January 5, 2024. *See* Hr'g Tr. (Dec. 21, 2023) at 1:12–14. The parties met and conferred again

on December 22, 2023. During that meet and confer, Plaintiffs offered to limit the deposition to no more than three hours. Microsoft refused and continued to object to his deposition. The parties agreed to brief the issue.

The default rule is that parties are entitled to take up to ten depositions without leave of court, and "[a]bsent extraordinary circumstances, it is very unusual for a court to prohibit the taking of a deposition." *Groupion, LLC v. Groupon, Inc.*, No. 11-0870 MEJ, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("[A] strong showing is required before a party will be denied entirely the right to take a deposition." (cleaned up)). Thus, even for high-level executives, "[i]f the noticing party makes a proper showing, the party resisting the apex deposition has a heavy burden to show why the deposition should be prevented." *Wonderland Nurserygoods Co. v. Baby Trend, Inc.*, No. 514CV1153JWHSPX, 2022 WL 1601402, at *2 (C.D. Cal. Jan. 7, 2022). This Court in *Finsar*, for example, overruled an apex objection where the noticing party made a "plausible showing that [the apex officer] may have first-hand knowledge of relevant matters as a percipient witness." *Finisar Corp. v. Nistica, Inc.*, No. 13-CV-03345-BLF(JSC), 2015 WL 3988132, at *3 (N.D. Cal. June 30, 2015). Other courts have held that where a party makes a "plausible showing that [the deponent] may have unique knowledge of relevant matters," the "apex" objection is generally overruled. *See Wonderland*, 2022 WL 1601402, at *3. This makes sense, given that the purpose behind the so-called apex objection "is to prevent harassment of a high-level corporate official *where he or she has little or no knowledge*." *Ray v. BlueHippo Funding, LLC*, No. C-06-1807 JSW (EMC), 2008 WL 4830747, at *2 (N.D. Cal. Nov. 6, 2008) (emphasis added). Thus, a reasonable inference that the deponent may have relevant knowledge is sufficient to overcome an "apex" objection. *See, e.g.*, *Opperman v. Path, Inc.*, No. 13-CV-00453-JST, 2015 WL 5852962, at *2 (N.D. Cal. Oct. 8, 2015) ("The Court does not doubt that Mr. [Morin] is a busy person with substantial responsibilities. But that fact does not control where, as here, there is a substantial basis to believe that he may have relevant information to which Plaintiff is entitled under the Federal Rules." (quoting *Hunt v. Cont'l Cas. Co.*, No. 13-CV-05966-HSG, 2015 WL 1518067, at *3 (N.D. Cal. Apr. 3, 2015))).

Microsoft cannot establish the extraordinary circumstances necessary to deny Plaintiffs the right to pursue relevant information they are entitled to under the Federal Rules. Mr. Nadella has unique knowledge relevant to this matter. Most importantly, he directly represented Microsoft in negotiations with Activision and signed the acquisition documents on behalf of Microsoft. Microsoft does not dispute this. He is therefore a percipient witness regarding the negotiations and the merger. As the Court held during the hearing related to Mr. Kotick's deposition, Plaintiffs "made a showing that the CEO is a percipient witness. He signed the merger document after all." *See* Hr'g Tr. (June 1, 2023) at 6.

Mr. Nadella also has non-duplicative percipient knowledge about Microsoft's gaming business, and how Microsoft's gaming business fits into Microsoft's larger plans and strategies. There are voluminous emails and other documentary records establishing Mr. Nadella's involvement in the relevant issues in this case. In Microsoft's production of documents to Plaintiffs, Nadella is the custodian of record for over 12,000 documents, and he is in the "to," "from," or "cc" fields of over 5,000 emails. As but one example, in an email sent from Mr.

Nadella to Mr. Spencer on July 18, 2022, Mr. Nadella states that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *See* Ex. C. Mr. Nadella then goes on to instruct Mr. Spencer regarding two goals for the XBOX business, and then says that the merger with Activision "▮▮▮▮▮▮." *Id.* Plaintiffs' counsel asked Mr. Spencer about this email, but Mr. Spencer is not the author of the email, and Microsoft's counsel objected on lack of foundation and speculation. *See* Ex. D [Spencer Dep.] at 46:11–12.

      Further, Mr. Nadella recently testified as a witness in the Department of Justice's antitrust case against Google. Mr. Nadella testified regarding Google's abuse of size and monopoly power, showing that Mr. Nadella has knowledge and experience with the harmful effects of exclusionary monopoly power, an issue relevant to this case as well.

      Microsoft's arguments are groundless and should be denied. First, Microsoft points to the deposition and trial testimony of Mr. Nadella in the FTC case to say that Plaintiffs should not be able to ask any questions of Mr. Nadella themselves. But Plaintiffs and the FTC have different case theories and are different Plaintiffs.[1] Moreover, Plaintiffs sought to participate in the FTC deposition of Mr. Nadella. But Microsoft and the FTC opposed Plaintiffs' request. Similarly, Plaintiffs sought to join and participate in the FTC trial. Microsoft again objected, and Plaintiffs were denied the right to participate and ask questions of Mr. Nadella. *See* ECF Nos. 223-2 and 224. Microsoft cannot claim undue burden after objecting to Plaintiffs' request to participate in the FTC action.

      Second, Microsoft accuses Plaintiffs of not actually needing Mr. Nadella's testimony, and that it would be a "waste of time" and disproportionate to the needs of the case. But the Federal Rules provide a default limit of ten depositions per side. To date, Plaintiffs have only taken six depositions of both Microsoft and Activision witnesses. And those depositions were limited to three hours (other than Mr. Spencer). Far from "wasting time," Plaintiffs are being highly targeted, securing incredibly relevant and revealing testimony from only a select handful of key witnesses. Mr. Nadella is one such witness and Plaintiffs are well within the 10-deposition default. His deposition is not disproportionate given this is one of the largest mergers of all time, which will unquestionably restructure the gaming industry forever.

      Lastly, Microsoft argues that any testimony from Mr. Nadella will be "duplicative" because other witnesses could provide their own testimony on the same subjects. But that argument fails. There is no dispute that Mr. Nadella has relevant knowledge and information. Microsoft did not (and cannot) provide a declaration from Mr. Nadella stating that he was not involved in the relevant issues and has no relevant percipient knowledge.

### MICROSOFT'S POSITION:

---

[1] *See, e.g., United States v. Borden Co.*, 347 U.S. 514 (1954) (holding that private and public actions seeking identical injunctive relief under the Clayton Act "may proceed simultaneously or in disregard of each other.").

Hon. Jacqueline Scott Corley
January 5, 2024
Page 4 of 6

This Court instructed Plaintiffs that they would have to show why they need Mr. Nadella's testimony before being permitted to depose him. (Tr. of 8/31/23 Status Conference at 7:20-8:10.) Despite having four months to come up with some basis for deposing Mr. Nadella, Plaintiffs have failed to identify any area of unique knowledge justifying an apex deposition, or any other valid justification for yet another presumably duplicative deposition. Their motion should be denied.

Plaintiffs acknowledge that in order to obtain an apex deposition, they must show that Mr. Nadella has unique first-hand, non-repetitive knowledge that is not available through less burdensome means. *Affinity Labs of Tex. v. Apple, Inc.*, 2011 U.S. Dist. LEXIS 53649, at *41-44 (N.D. Cal. May 9, 2011) (denying request to depose Apple's CEO); *Ramirez v. Zimmerman*, 2019 U.S. Dist. LEXIS 81336, *20 (S.D. Cal. May 14, 2019) (denying request to depose apex witness where the plaintiff did not establish that the witness's knowledge of planning was unobtainable from other sources). Although Mr. Nadella is Microsoft's CEO and signed the merger agreement, the Court has previously observed that it did not "see Mr. Nadella's testimony playing any role at all" in the *FTC v. Microsoft* hearing, which involved similar issues. (Tr. of 8/31/23 Status Conference, at 7:20-22.) Even beyond that point, Plaintiffs have not come close to meeting the test that they acknowledge applies. All they have done is identify a few vague and general topics—the negotiations over the Activision merger, Microsoft's gaming business, and the topic of monopoly power generally. These are topics they have already explored at length with other witnesses, on top of the fact that they already have transcripts of an investigational hearing and deposition of Mr. Nadella as well as his FTC trial testimony. Indeed, they have previously asserted that Mr. Spencer is the most knowledgeable witness on these relevant subjects, when they successfully attempted to get more deposition time with him than previously allotted. (*See* Dkt. 287.)

For similar reasons, Plaintiffs' request fails even without resort to the apex doctrine. Mr. Nadella's deposition would be duplicative of other testimony. Plaintiffs have had ample opportunity to obtain the information they seek—including through their own depositions of witnesses with superior knowledge. And the deposition is likely to be a waste of time and is disproportional to the needs of this case.

First, courts must limit discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. Proc. 26(b)(2)(C)(i); *see also Scalia v. Int'l Longshore & Warehouse Union*, 337 F.R.D. 281, 292 (N.D. Cal. 2020) (permitting only one deposition of a representative for each entity, where additional depositions would be duplicative). Plaintiffs make no attempt to deny that the topics on which they seek to depose Mr. Nadella are duplicative of prior depositions. Plaintiffs have access to mountains of testimony on every aspect of the Microsoft-Activision acquisition, including from Mr. Nadella. As noted above, they have his investigational hearing, deposition, and trial testimony, during which issues relevant to this merger were examined at length. Moreover, Plaintiffs have taken the depositions of 6 high-level executives, and Microsoft has produced 34 additional transcripts of sworn deposition and investigational hearing testimony from Microsoft and Activision witnesses. All told, Plaintiffs

Hon. Jacqueline Scott Corley
January 5, 2024
Page 5 of 6

have over 212 hours of deposition and investigational hearing testimony from Microsoft witnesses about the merger. Microsoft further produced the transcripts of 5 days of testimony from the hearing in *FTC v. Microsoft*—testimony which Plaintiffs' counsel attended in large part. By any measure, that would make further testimony from Mr. Nadella cumulative and duplicative.

Faced with this extensive record, it is no surprise that Plaintiffs cannot name a unique reason to depose Mr. Nadella. Instead, they cite a *single* email thread from 2022 that they would like to question him about. At the start, Plaintiffs overstate Mr. Nadella's contribution to the discussion: Mr. Nadella was not "instruct[ing]" Phil Spencer on goals for the business; the two were aligned on high-level strategy. (*See* Ex. C.) Plaintiffs have deposed the other three executives who participated in that email discussion. Mr. Spencer, in particular, provided detailed testimony about the business strategies discussed in the email thread, (Ex. D, Spencer Dep. Tr. at 41-50), and as Mr. Nadella has explained under oath to the FTC, Mr. Spencer is better suited to discuss specifics related to business strategies for the gaming business (*see, e.g.*, Ex. E, Nadella FTC Dep. Tr. at 159:15-24). The only question that drew an objection was a trivial inquiry about why Mr. Nadella did not say something specific in the email chain, and Mr. Spencer answered that question. (Ex. D at 46:9-21.) Nor can Plaintiffs complain that they are without Mr. Nadella's perspective on how gaming fits into Microsoft's range of business lines, because he testified about this subject in his FTC deposition. (Ex. E at 113-115.)

Second, Plaintiffs generally suggest that Mr. Nadella has information about the negotiation of the merger, strategic rationale, and "how the acquisition fits in with Microsoft's other technology strategies and ambitions." But courts must limit discovery where "the party seeking discovery has had ample opportunity to obtain the information." Fed. R. Civ. Proc. 26(b)(2)(C)(ii). Given "ample opportunity to obtain this information" from other witnesses, Plaintiffs have wasted it. To start, Mr. Spencer is the primary decision-maker regarding game exclusivity and, contrary to Plaintiffs' assertions, was the chief negotiator of the acquisition (*see, e.g.*, Ex. A, Kotick Dep. Tr. at 25:8-17). Plaintiffs point to testimony that only demonstrates Mr. Nadella's limited and high-level involvement. Upon asserting that Mr. Spencer "is knowledgeable on all aspects of Microsoft's gaming business and has relevant knowledge as to the numerous issues at the heart of this case, including all of the new contracts, game releases, and integration of Activision post-merger that is now ongoing," (Dkt. 287 at 2), Plaintiffs obtained additional time to depose him. During that deposition, Plaintiffs largely failed to use their time to cover new topics, instead retreading much of the FTC's questioning. They did not even question Mr. Spencer about the negotiation of the merger agreement. Plaintiffs' *choice* not to obtain this information from the primarily responsible person does not entitle them to depose Mr. Nadella now. More broadly, Plaintiffs have now had the chance to depose Mr. Smith (the Vice Chair of Microsoft), Ms. Hood, Mr. Stuart, and Mr. Booty—all high-ranking executives at Microsoft—and spent much of their time asking duplicative questions about the same small set of documents and themes. It is hard to imagine the deposition of Mr. Nadella being any different.

Third, courts must limit discovery that is irrelevant or disproportional to the needs of the case. Fed. R. Civ. Proc. 26(b)(1), (b)(2)(C)(iii); *see also Roberts v. Clark Cnty. Sch. Dist.*, 312

F.R.D. 594, 603 (D. Nev. 2016) ("lawyers must size and shape their discovery requests to the requisites of a case," requiring "active involvement of federal judges to make decisions regarding the scope of discovery"). Plaintiffs' arguments for deposing Mr. Nadella demonstrate that they are focused on inconsequential tangents. Plaintiffs' claims, taken at their broadest, focus on concerns about foreclosure of competition in the gaming industry. The sole document they wish to question Mr. Nadella on relates to the relationship between Microsoft's gaming and *non-gaming* business lines. Plaintiffs do not explain how that is relevant to any claim or defense in this action, let alone in any way that justifies further questioning of Mr. Nadella. Their closing contention, that Mr. Nadella has previously testified in a *different* antitrust case involving *different* companies in a *different* industry, only serves to underscore the degree to which their request represents an unwarranted fishing expedition.

Respectfully Submitted,

                                                                     */s/ Cadio Zirpoli*

                                                                     *Counsel for Plaintiffs*

                                                                     */s/ Tania Rice*

                                                                     *Counsel for Microsoft*

cc: All counsel of record via ECF

**ATTESTATION OF FILER**

Pursuant to Civil L.R. 5-1(h)(3), regarding signatures, I, Valarie Williams, attest that concurrence in the filing of this document has been obtained.

Dated: January 5, 2024                                                         */s/ Cadio Zirpoli*