March 22, 2024

**Via ECF**

The Honorable Jacqueline Scott Corley
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, CA 94102

      RE:    *Demartini, et al v. Microsoft Corporation*,
               Case No: 3:22-cv-08991-JSC

Dear Judge Corley,

      Pursuant to the Court's instructions during the March 14, 2024, case management conference, Plaintiffs and Defendant Microsoft Corporation ("Defendant" or "Microsoft") respectfully submit this Joint Letter Brief regarding (1) Plaintiffs' request for an order requiring Microsoft and Activision Blizzard to confirm in declarations that all documents required to be produced to Plaintiffs have been produced, and if not, for an order requiring production of any missing documents; (2) Plaintiffs' request that Microsoft's expert not be permitted to rely on or cite any documents that were not timely produced to Plaintiffs, and that any reference to such documents in her expert report, dated January 21, 2024, be stricken; and (3) Plaintiffs' request to reopen the deposition of Bobby Kotick for up to two hours.

## PLAINTIFFS' POSITION:

      The Court ordered the parties to close fact discovery on November 20, 2023. But on February 2, 2024, long after the depositions of Microsoft executives, and just before Plaintiffs' expert's rebuttal report was due, Microsoft produced over 60 gigabytes of documents to Plaintiffs containing over 14,000 documents, including over 10,000 emails, which included emails from CEO Bobby Kotick (the "Missing Documents"). Microsoft conceded that the Missing Documents were "inadvertently omitted," and that they should have been produced in April 2023, prior to Plaintiffs' motion for preliminary injunction. This failure to produce documents on a timely basis denied Plaintiffs the opportunity to use the Missing Documents when they needed them, and therefore denied Plaintiffs a fair process.

      That misstep was not the first time Microsoft and Activision Blizzard failed to comply with discovery obligations. Microsoft previously failed to timely produce its own documents, making a voluminous data production on November 20, 2023, again after Microsoft depositions had been completed, and just before Plaintiffs' expert's report was due. Plaintiffs detailed Microsoft's previous failure to timely produce documents in the parties' December 15, 2023, case management statement. *See* ECF No. 305. To resolve Microsoft's previous failure to timely produce data, the parties stipulated to an extension of time for Plaintiffs to file their rebuttal report having analyzed the data. *See* ECF No. 322.

      But, as noted, Microsoft was not done failing to meet its discovery obligations. On January 31, 2024, Plaintiffs learned that Microsoft and Activision Blizzard had again failed to

Hon. Jacqueline Scott Corley
March 22, 2024
Page 2 of 6

produce voluminous documents that had previously been produced to the FTC—i.e., the Missing Documents. Plaintiffs became aware of these Missing Documents only because Microsoft's expert, Dr. Elizabeth M. Bailey, relied on and cited some of them in her report. *See, e.g.*, Expert Report of Elizabeth M. Bailey, dated Jan. 12, 2024, at 71 n.165 (relying on a then-unproduced document to make the claim, "███████████████████████████████████████████████████████████████ (ABK-2R-01406546 at -46).").

When Plaintiffs asked where they could find the Missing Documents in Microsoft's productions, counsel informed Plaintiffs that they had been "inadvertently omitted" from the April 2023 production. Microsoft then produced the missing 60 gigabytes of documents to Plaintiffs on February 2, at 11:56 a.m. Pacific Time. Thus, Plaintiffs were deprived of the opportunity to use the Missing Documents as evidence from April 2023 until February 2024, a period during which Plaintiffs filed their motion for preliminary injunction and during which *all* of the depositions in this case occurred (save Satya Nadella's). Plaintiffs were therefore severely prejudiced by Microsoft and Activision Blizzard's failure to timely produce the Missing Documents.

The Missing Documents include numerous material documents and emails that further show that this merger may substantially lessen competition. For example, in one of the Missing Documents, an Activision Blizzard executive summary states that ███████████████████████████████████████████████████████████████████████████████████████████" *See* ABK-2R-01398652. The Missing Documents also include numerous documents showing that Activision was considering and preparing to ███████████████████████████████████████████. *See, e.g.*, ABK-2R-01516207 (An objective is to ███████████████████████"); ABK-2R-01562663 (stating that if successful, ███████████████████"); ABK-2R-01562701 ███████████████████████████); ABK-2R-01728979 (stating that ██████████████████████████████."

Accordingly, to mitigate any further prejudice, Plaintiffs respectfully request that the Court order that:

(1) Microsoft and Activision Blizzard submit declarations from relevant individuals certifying under oath that all documents required to be produced to Plaintiffs have been produced. Plaintiffs further request that if any documents still have not been produced, the Court order that they be produced within one week;

> (2) Microsoft's expert, Dr. Elizabeth M. Bailey, is not permitted to rely on or cite any of the Missing Documents, and that any reference to them in her expert report, dated January 21, 2024, is stricken; and
>
> (3) The Court grant leave for Plaintiffs to reopen the deposition of Bobby Kotick for two hours of further deposition testimony.

**MICROSOFT'S POSITION:**

Plaintiffs fail to cite any legal standard under which they are entitled to the discovery sanctions they seek. Neither Rule 26 (relating to initial disclosures) or Rule 37 (related to court orders compelling production) applies. The documents at issue are not even responsive to any of Plaintiffs' discovery requests. At the outset of discovery in this case, Microsoft offered to reproduce its productions to the FTC, for efficiency and in response to Plaintiffs' demands that Microsoft produce documents quickly. Activision followed suit, agreeing to provide Plaintiffs with its production to the FTC. Microsoft and Activision's continuing reproductions of material from the FTC action have given Plaintiffs access to an enormous volume of information—over 18 million pages.

Under any standard, sanctions are inappropriate where a discovery omission is harmless. *See* Fed. R. Civ. Proc. 37(c)(1). Here, any prejudice to Plaintiffs has been fully remedied.

Activision made its initial document production in April 2023. Due to a vendor error that neither side noticed, a small subset of the more than one million documents that Activision produced to the FTC had not transmitted when Activision reproduced its production to Plaintiffs. Plaintiffs did not alert Activision regarding the gaps in the Bates numbers within the production until over nine months later, when they realized that they did not have three of the documents cited in Microsoft's expert report. Activision promptly produced the documents to Plaintiffs within five days.

The parties' experts have relied on just a miniscule fraction of Activision's production. Plaintiffs' expert did not cite any documents from Activision's April 2023 production in his opening report, other than exhibits from the FTC hearing which also happened to be part of Activision's production. Microsoft's expert cited to only three of the documents from the inadvertently-delayed production. Plaintiffs and Microsoft negotiated a stipulation to give Plaintiff's expert additional time for his rebuttal expert report—giving him a month to incorporate the additional documents into his rebuttal. (Dkt. 336.) That stipulation remedied any prejudice to Plaintiffs.

Additionally, Plaintiffs (and their expert) do not appear to have found anything in the inadvertently-delayed Activision production that is relevant to their claim in this case. The documents they cite herein (which their expert also focuses on) relate to the future potential that Activision could compete horizontally against Microsoft in ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. That has nothing to do with the claim in Plaintiffs' operative complaint, which alleges a vertical foreclosure theory that Microsoft will make *Call of Duty* exclusive to its own gaming platforms. Plaintiffs' horizontal claim was dismissed. (*See* Dkt. 228.)

Regardless of the delayed production, Plaintiffs already had this information back in April 2023. Of the five "missing" documents that Plaintiffs cite, three are identical to documents that Activision produced to Plaintiffs in April 2023. (S*ee* ABK-2R-03385085; ABK-2R-03372561; ABK-2R-00958255.) For the other two documents Plaintiffs cite, there are documents from the April 2023 production that contain identical or very similar language to that which Plaintiffs quote here. (*See* ABK-2R-01567741; ABK-2R-02420102.) Despite having had access to this information for eight months prior to Mr. Kotick's deposition, Plaintiffs did not raise any of it, or use any similar documents, with Mr. Kotick. Indeed, Plaintiffs only asked Mr. Kotick about two documents in total at his deposition, and only one of those was from Activision's production. Thus, the inadvertent delay was inconsequential.

Plaintiffs make far too much of the fact that the documents at issue "included emails from [Mr.] Kotick." They conveniently ignore that these emails make up less than one percent of the more than 10,000 documents Activision produced from Mr. Kotick's custodial files. Meanwhile, only one of the five documents they complain about even came from Mr. Kotick's custodial files. And Plaintiffs fail to point to any information that was absent from Activision's prior productions. Against that backdrop, Plaintiffs do not even attempt to identify what new questions they may need to ask Mr. Kotick now that they could not have asked him three months ago.

Plaintiffs' delay in bringing this motion also demonstrates that it is unnecessary. *See Hilderman v. Enea Teksci*, 2008 U.S. Dist. LEXIS 136003, *5 (S.D. Cal. Nov. 25, 2008) (finding severe sanction of preclusion of evidence to be disproportionate to the alleged harm, in light of unexplained delay in bringing the matter before the court). Plaintiffs did not notice the gaps in the production for nine months. They negotiated and agreed to a stipulation addressing their claimed prejudice, without mentioning their plan to seek further relief. Then they waited another five weeks after the February 9 stipulation to raise the dispute in their portion of a letter brief. Civil Local Rule 7-8 requires parties seeking sanctions to make that motion "as soon as practicable." Plaintiffs should not be permitted to now capitalize on an inadvertent discovery issue for tactical advantage.

Finally, the relief they seek is particularly inappropriate and untenable here. They seek extreme and unusual relief of preventing Microsoft's expert from relying on documents *while Plaintiffs' expert can rely on them*, which would be inappropriate even if Microsoft was at fault for the inadvertent delay. *See, e.g.*, *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (finding preclusion inappropriate where less drastic sanctions were available and there was no longer prejudice in preparing for trial due to a case extension). That preclusion sanction does not make any sense here, because the inadvertently-delayed production was made by a non-party. Further, with respect to another deposition, Mr. Kotick is no longer employed by Microsoft or Activision, nor is he represented by Microsoft's counsel for purposes of this litigation.

Hon. Jacqueline Scott Corley
March 22, 2024
Page 5 of 6

## PLAINTIFFS' REPLY:

As per the Court's Order Following the March 14, 2024 Case Management Conference (ECF No. 355) and its oral instructions to counsel during the case management conference, Plaintiffs submit the following reply to Microsoft's position.

Microsoft is wrong to argue that Plaintiffs "seek extreme and unusual relief of preventing Microsoft's expert from relying on documents *while Plaintiffs' expert can rely on them*." *Supra* at 4. As Microsoft is well aware, Plaintiffs' expert did not rely on any of the three Missing Documents that Dr. Bailey references in her report. *See supra* at 3. Plaintiffs' expert only cited to one of the three Missing Documents in his rebuttal report, rebutting Dr. Bailey's opinion based on that same document. Plaintiffs' requested relief is therefore narrow, highly targeted, and reasonable: the Court should preclude Dr. Bailey from relying on the three Missing Documents that she relied on in her report—which Dr. Cabral *did not rely on* in his report—so that *neither party's expert* relies on those three documents.

Microsoft is also wrong to suggest that there is no legal support for Plaintiffs' request to reopen a deposition to inquire about the Missing Documents. It is well settled that "courts generally permit a further deposition based on new material evidence." *See Aranda v. Nissan Motor Acceptance Corp.*, 2022 WL 18284912, at *2-3 (C.D. Cal. Oct. 14, 2022) (finding good cause to reopen deposition in light of new documents); *see Aguayo v. U.S. Bank*, 2014 WL 12695946, at *3 (C.D. Cal. April 21, 2014) (granting "Plaintiff's motion to re-open the deposition of Defendant's corporate witness to inquire about . . . newly produced documents").

Finally, Microsoft does not dispute that within the roughly 14,000 Missing Documents, there are numerous documents that disclose Activision's consideration and planning of ██████ ████████████████████████████████████████████████████████████████████████████████. Instead, Microsoft makes the frivolous argument that such evidence is entirely irrelevant because "Plaintiffs' horizontal claim was dismissed." Plaintiffs allege a single claim under Section 7 of the Clayton Antitrust Act, 15 U.S.C. § 18, which prohibits mergers that may substantially lessen competition, or "tend to create a monopoly." Evidence of Activision's plans ██████████ ████████████████████████████████████████ are highly relevant as it supports Plaintiffs' allegation that the merger both substantially lessens competition and "tends to create a monopoly," ████████████████████████████████████████. *Id.* The documents show that the acquisition by Microsoft eliminates Activision Blizzard's ability to ██████████ ████████████████████████████████████████████, thereby lessening competition and tending to create a monopoly.[1] Further, the evidence found in the Missing Documents shows that the acquisition ensures Activision's AAA content will be ████████████████████████ ████████████████████████████████. Plaintiffs have a right to question Mr. Kotick about these and other Activision documents that were produced after his deposition.

---

[1] The Supreme Court has held that an acquisition's elimination of a potential nascent competitor who may have entered the market was sufficient grounds to find the merger unlawful under Section 7. *See Ford Motor Co. v. U.S.*, 405 U.S. 562 (1972); *U.S. v. Falstaff Brewing Corp.*, 410 U.S. 526 (1973).

Hon. Jacqueline Scott Corley
March 22, 2024
Page 6 of 6

Respectfully Submitted,

*/s/ Cadio Zirpoli*
*Counsel for Plaintiffs*

*/s/ Valarie Williams*
*Counsel for Microsoft*

cc: All counsel of record via ECF

**ATTESTATION OF FILER**

Pursuant to Civil L.R. 5-1(h)(3), regarding signatures, I attest under penalty of perjury concurrence in the filing of this document has been obtained.

*/s/ Cadio Zirpoli*
Cadio Zirpoli